UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

ARCH INSURANCE COMPANY,

        Plaintiff,

    v.

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER,
STEPHEN GRADY, TONE GRANT,
THOMAS HACKL, DAVID V. HARKINS,
SCOTT L. JAECKEL, DENNIS A. KLEJNA,
THOMAS H. LEE, ERIC G. LIPOFF, SANTO
C. MAGGIO, PETER MCCARTHY, JOSEPH
MURPHY, FRANK MUTTERER, RICHARD
N. OUTRIDGE, RONALD L. O'KELLEY,
SCOTT A. SCHOEN, WILLIAM M. SEXTON,
GERALD SHERER, PHILIP SILVERMAN and
ROBERT C. TROSTEN,

        Defendants.

---------------------------------------------------------- x



08 CIV 5252

NOTICE OF REMOVAL OF
ACTION PURSUANT TO 28
U.S.C. § 1452

RECEIVED
JUN 09 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    **PLEASE TAKE NOTICE** that, on this date, Eric G. Lipoff, Removing Defendant, by

his undersigned counsel, files this Notice of Removal pursuant to 28 U.S.C. § 1452 removing

this entire action from the Supreme Court of the State of New York, County of New York ("New

York State Court"), to the United States District Court for the Southern District of New York

("Court" or "New York District Court"). This Court has original jurisdiction over this matter

pursuant to 28 U.S.C. § 1334(b).

    In support of this Notice of Removal, the Removing Defendant states as follows:

1

## THE COMPLAINT

1.     This insurance action for declaratory relief arises out of the 2005 collapse of Refco, a provider of brokerage and clearing services in the international derivatives, currency and futures markets. Refco's collapse spawned numerous lawsuits (the "Underlying Matters"), almost all of which are pending in this Court.

2.     Plaintiff Arch Insurance Company ("Arch") is the fourth tier excess carrier for a tower of Directors & Officers liability insurance under which certain defendants are additional insureds.

3.     On or about January 4, 2008, Arch commenced a civil action by filing a summons and complaint in the New York State Court, captioned *Arch Insurance Co., et al. v. Agoglia, et al.*, Index No. 08600029. Upon information and belief, Arch made no attempt to serve that summons or complaint.

4.     On or about February 22, 2008, Arch filed a First Amended Complaint seeking a declaratory judgment that Arch's excess policy (the "Arch Policy") affords no coverage for the Defendants in connection with the Underlying Matters. A copy of the Amended Summons and First Amended Complaint are attached to this Notice of Removal, as Exhibit A (hereinafter "Arch Compl.").

5.     Specifically, Arch seeks a declaration that no coverage is available under its policy because of a "prior-knowledge" exclusion contained in the third tier excess policy issued by Allied World Assurance Company (U.S.), Inc. ("AWAC") (Count I), and because of a similar "prior knowledge" exclusion in the Arch Policy itself (Count II). (*See* Arch Compl. at ¶¶ 113-20).

2

6.    Pursuant to 28 U.S.C. § 1446(a), the Removing Defendant represents that apart from the Summons and Complaint attached hereto as Exhibit A, the Removing Defendant has received no other process, pleadings, motions, or orders in this action.

7.    The Arch Complaint mirrors, in substantial part, coverage litigation with two other excess carriers, Axis Reinsurance Company and XL Specialty Insurance Company, which have also denied coverage based on "prior knowledge" exclusions in their policies. Both of those coverage actions are also pending in this Court. *See Axis Reinsurance Co. v. Bennett et al.,* 07 Civ. 7924 (S.D.N.Y. Sept. 7, 2007) and Adv. Pro. No. 07-01712 (Bankr. S.D.N.Y. May 23, 2007), reference withdrawn, No. 08-Civ. 3242); and *XL Specialty Insurance Co. v. Agoglia et al.,* 08-Civ.-3821 (S.D.N.Y. Apr. 22, 2008). In addition, a third coverage litigation with the third excess tier carrier, Allied World Assurance Company (U.S.), Inc., is currently pending in the United States Bankruptcy Court for the Southern District of New York, and motions to withdraw the reference to the Bankruptcy Court, filed by Arch and Allied World Assurance Company (U.S.), Inc., are currently pending in this Court. *See Murphy v. Allied World Assurance Company (U.S.), Inc.,* Adv. Pro. No. 08-01133 (Bankr. S.D.N.Y. Mar. 12, 2008), motions to withdraw reference pending, 08 Civ. 4196 (S.D.N.Y. 2008).

## GROUNDS FOR REMOVAL PURSUANT TO 28 U.S.C. 1452(A)

8.    Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under § 1334 of this title." Under 28 U.S.C. § 1334(b), this Court has jurisdiction to hear all civil proceedings that are "related to cases under title 11," which is the Bankruptcy Code.

9.    This action is "related to" the Refco's Chapter 11 bankruptcy, which is currently pending in this district, See *In re Refco, Inc.,* No. 05-60006 (RDD) Bankr. S.D.N.Y.). The Arch

2037\1\605859.1

Policy, which is the subject of the Arch Complaint, is an asset of Refco's Chapter 11 estates. Indeed, it is precisely because the excess insurance policies are assets of the Refco's Chapter 11 estates that the Bankruptcy Court exercised its jurisdiction and ordered two other excess carriers to advance defense fees and costs for certain of the named defendants. *See Axis Reinsurance Co. v. Bennett et al.*, Adv. Pro. No. 07-01712 (Bankr. S.D.N.Y. May 23, 2007), reference withdrawn, No. 08-Civ. 3242; *Murphy v. Allied World Assurance Company (U.S.), Inc.*, Adv. Pro. No. 08-01133 (Bankr. S.D.N.Y. Mar. 12, 2008), motions to withdraw reference pending, 08 Civ. 4105 (S.D.N.Y. 2008).

10. The policies at issue, including the Arch Policy, also pertain to litigation pending before Judge Lynch in the Southern District of New York.

11. Accordingly, this action is "related to" the Refco Chapter 11 Cases, and removal is proper under 28 U.S.C. § 1452(a).

TIMELINESS

12. The Removing Defendant has timely filed this Notice of Removal within 30 days of receipt, through service or otherwise, of a copy of the initial pleading in accordance with 28 U.S.C. § 1446(b) and Fed. R. Bankr. P. 9027(a)(3). The Removing Defendant received, through service or otherwise, a copy of the initial pleading no earlier than May 13, 2008.

13. The Removing Defendant will promptly serve a copy of this Notice on counsel for Arch and file a copy of this Notice with the Clerk of the New York State Court in accordance with the terms of 28 U.S.C. § 1446(d) and Fed. R. Bankr. 9027(b) and (c). A true and correct copy of the Certificate of Service for this Notice of Removal is attached hereto as Exhibit B.

4

NON-CORE

14.    As required under Fed. R. Bankr. P. 9027(a)(1), the Removing Defendant states that the claims asserted against him are non-core, within the meaning of 28 U.S.C. § 157(b), and that he does not consent to entry of final orders or judgment by a bankruptcy judge.

RELATED CASES

15.    In addition to the Refco Chapter 11 Cases, the instant action is related to three other insurance coverage actions and numerous other civil litigations coordinated or consolidated for pre-trial purposes by the Judicial Panel on Multidistrict Litigation as a multi-district litigation in this Court under the caption In *re: Refco Securities Litigation*, No. 07 MDL 1902 (Dec. 28, 2007).[1]  Many of the factual allegations in the Refco MDL, which concern the alleged fraudulent scheme by certain alleged Refco insiders, serve as the basis for Arch's position that it has no obligation to provide insurance coverage under the Arch Policy.  Indeed, Arch's first cause of action brought in this action, relies upon the prior knowledge exclusion in the AWAC Policy, has already been brought in the Refco MDL by the very same defendants as those here as part of a declaratory judgment against AWAC.  The Refco MDL includes the following 14 civil actions, coordinated or consolidated for pre-trial purposes before the Honorable Gerard E. Lynch:

(a)    the consolidated securities class action, *In re Refco, Inc. Sec. Litig.*, 05 Civ. 8626 (S.D.N.Y. 2005) (consolidating 19 separate and independently filed actions);

(b)    the consolidated customer class action, *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, 06 Civ. 643 (S.D.N.Y. 2006) (consolidating two separate and independently filed actions);

(c)    *Kirschner v. Grant Thornton LLP et al.*, No. 07 Civ. 11604 (S.D.N.Y.

---

[1] Another related action for which coverage has been sought under the Arch Policy is *Kirschner v. Agoglia, et al*, Case No. 07-03060 (Bkrptcy. S.D.N.Y.)

(d)   *Am. Fin. Int'l Group Asia, LLC v. Refco, Inc. et al.*, 05 Civ. 8988

(e)   *Carmona v. Paulson et. al.*, 05 Civ. 9327 (S.D.N.Y. 2005);

(f)   *Thomas H. Lee Equity Fund V. L.P. et al. v. Bennett et. al.*, 05 Civ. 9608

(S.D.N.Y. 2005);

(g)   *Kirschner v. Thomas H. Lee Partners, L.P. et al.*, 07 Civ. 7074 (S.D.N.Y.

2007);

(h)   *Thomas H. Lee Equity Fund V, L.P. et al. v. Mayer, Brown, Rowe & Maw*

*L.L.P.*, 07 Civ. 6767 (S.D.N.Y. 2007).

(i)   *Kirschner v. Phillip R. Bennett, et al.*, 07 Civ. 8165 (S.D.N.Y. 2007);

(j)   *Axis Reinsurance Co. v. Bennett et al.*, 07 Civ. 7924 (S.D.N.Y. 2007);

(k)   *In re Refco Inc.*, 07 Civ. 9420 (S.D.N.Y. 2007),

(l)   *Kirschner v. Hackl*, 07 Civ. 9238 (S.D.N.Y. 2007),

(m)   *XL Specialty Co. v. Agoglia*, 08 Civ. 3821 (S.D.N.Y. 2008) and

(n)   *Murphy v. Allied World Assurance Company (U.S.), Inc.*, 08 Civ. 4105

(S.D.N.Y. 2008).

16.   In light of the substantial body of related litigation involving many of the same
parties, and common questions of law and fact, pending in the New York District Court, the
Removing Defendant will promptly file a notice of tag-along action with the Judicial Panel on
Multidistrict Litigation pursuant to J.P.M.L. Rule 7.4 to have this case coordinated or
consolidated for pre-trial proceedings with the related civil cases in Paragraph 15 above.
According to J.P.M.L. Rule 7.5(a), the Panel need not take any action in order to coordinate or
consolidate this action with the Refco MDL because this action has been filed in the transferee
district in which the Refco MDL is pending. Accordingly, the Removing Defendant, pursuant to

6

Local Rule 1.6(a), has noted on the Civil Cover Sheet filed with this Notice that this action is related to the Refco MDL.

WHEREFORE, the Removing Defendant respectfully requests that this Court accept this Notice of Removal of Action and grant him such other and further relief as the Court deems just and proper.

Dated: June 4, 2008                            Respectfully submitted,

NEIL GOTEINER
PARELLA BRAUN & ___ LLP

N___ A. G___ein___
235 Montgomery Street
San Fr___cisco, CA 94104
Telepho___e: (415) 954-4485
Facsimile: (415) 954-4480

*Attorneys for Defendant Eric G. Lipoff*

7

# EXHIBIT A.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

ARCH INSURANCE COMPANY, )
)
Plaintiff, )
)
v. )
)
JOHN D. AGOGLIA, PHILLIP R. )
BENNETT, LEO R. BREITMAN, EDWIN )
L. COX, SUKHMEET DHILLON, )
THOMAS H. DITTMER, NATHAN )
GANTCHER, STEPHEN GRADY, TONE )
GRANT, THOMAS HACKL, DAVID V. )
HARKINS, SCOTT L. JAECKEL, )
DENNIS A. KLEJNA, THOMAS H. LEE, )
ERIC G. LIPOFF, SANTO C. MAGGIO, )
PETER MCCARTHY, JOSEPH )
MURPHY, FRANK MUTTERER, )
RICHARD N. OUTRIDGE, RONALD L. )
O'KELLEY, SCOTT A. SCHOEN, )
WILLIAM M. SEXTON, GERALD )
SHERER, PHILIP SILVERMAN and )
ROBERT C. TROSTEN )
)
Defendants. )
)

---

Index No.: 08/600029

**AMENDED SUMMONS**

NEW YORK COUNTY CLERK'S OFFICE
FEB 22 2008
NOT COMPARED WITH COPY FILE

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or if the Complaint is not served with this summons, to serve a notice of appearance on plaintiff's attorneys, within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you in the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint. Plaintiff designates New York County as the place of trial.

NEWYORK/#191889.1

The basis for venue is that plaintiff Arch Insurance Company's principal place of business is located at One Liberty Plaza, 53rd Floor, New York, NY 10006, and the County of New York is therefore the proper venue for trial pursuant to CPLR §503(a).

Dated: February 21, 2008

Respectfully submitted,

VEDDER PRICE P.C.

By: _____
John H. Eickemeyer
Daniel C. Green

1633 Broadway
47th Floor
New York, New York 10019

(212) 407-7700

Of Counsel:

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
202-719-7000

*Attorneys for Plaintiff*
*Arch Insurance Company*

To:

John D. Agoglia
3 Sweet Hollow Ct.
St. James, NY 11780

Phillip R. Bennett
125 Colt Lane
Gladstone, NJ 07934

2

NEWYORK/#191889.1

Leo R. Breitman
7767 Wind Key Drive
Boca Raton, FL 33434

Edwin L. Cox
c/o Brian O'Connor, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Sukhmeet Dhillon
1 Upper Vintage
Laguna Niguel, CA 92677-9202

Thomas H. Dittmer
150 S. Wacker Drive, Suite 1200
Chicago, IL 60606-4201

Nathan Gantcher
86 Birchall Drive
Scarsdale, NY 10583

Stephen Grady
c/o Lawrence J. Kotler, Esq.
Duane, Morris & Heckscher LLP
30 South 17th Street
Philadelphia, PA 19103

Tone Grant
680 North Lake Shore Drive, Apt. 1620
Chicago, IL 60611

Thomas Hackl
c/o Avraham C. Moskowitz, Esq.
Moskowitz and Book, LLP
1372 Broadway
New York, NY 10018

David V. Harkins
Corn Point Road
Marblehead, MA 01945

Scott L. Jaeckel
151 Tremont Street, Apt. 25E
Boston, MA 02111-1123

3

Dennis A. Klejna
2301 E Street NW, Apt. A1010
Washington, DC 20037-2829

Thomas H. Lee
322 E. 57th Street
New York, NY  10022

Eric G. Lipoff
c/o Stephen M. Ray, Esq.
Robert A. Greenfield, Esq.
Stutman, Treister & Glatt PC
1901 Avenue of Stars, 12th Floor
Los Angeles, CA 90067

Santo C. Maggio
1825 8th Street South
Naples, FL  34102

Peter McCarthy
38 South Bridge Street
Poughkeepsie, NY 12601

Joseph Murphy
1038 Bloom Street
Hoboken, NJ  07030

Frank Mutterer
c/o Lawrence S. Lustberg, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

Ronald L. O'Kelley
6001 Trophy Drive, Apt. 1002
Naples, FL  34110

Richard N. Outridge
24 Pennbrook Dr.
Lincoln University, PA 19352

Scott A. Schoen
191 Kings Grant Road
Weston, MA  02493

4

William M. Sexton
c/o Stuart I. Friedman, Esq.
Ivan Kline, Esq.
Friedman & Wittenstein, P.C.
600 Lexington Avenue
New York, NY 10022

Gerald Sherer
333 Central Park West, Apt. 81
New York, NY  10025-7145

Philip Silverman
3 Edie Drive
Marlboro, NJ 07746

Robert C. Trosten
895 Scioto Drive
Franklin Lakes, NJ 07417

5

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

ARCH INSURANCE COMPANY,                    )
                                           )
                    Plaintiff,             )        Index No.: 08-600029
                                           )
v.                                         )
                                           )
JOHN D. AGOGLIA, PHILLIP R.                )        **FIRST AMENDED COMPLAINT**
BENNETT, LEO R. BREITMAN, EDWIN            )        **FOR DECLARATORY JUDGMENT**
L. COX, SUKHMEET DHILLON,                  )
THOMAS H. DITTMER, NATHAN                  )
GANTCHER, STEPHEN GRADY, TONE              )
GRANT, THOMAS HACKL, DAVID V.              )
HARKINS, SCOTT L. JAECKEL,                 )
DENNIS A. KLEJNA, THOMAS H. LEE,           )
ERIC G. LIPOFF, SANTO C. MAGGIO,           )
PETER MCCARTHY, JOSEPH                     )
MURPHY, FRANK MUTTERER,                    )
RICHARD N. OUTRIDGE, RONALD L.             )
O'KELLEY, SCOTT A. SCHOEN,                 )
WILLIAM M. SEXTON, GERALD                  )
SHERER, PHILIP SILVERMAN and               )
ROBERT C. TROSTEN,                         )
                                           )
                    Defendants.            )
                                           )

---

NEW YORK
COUNTY CLERKS OFFICE

FEB 22 2008

NOT COMPARED
WITH COPY FILE

In support of its first amended complaint against defendants, plaintiff Arch Insurance

Company ("Arch") alleges as follows:

## INTRODUCTION

1.   Arch issued an excess directors, officers and corporate liability insurance policy to

Refco, Inc. ("Refco") for the period from August 11, 2005 to August 11, 2006 (the "Arch

Policy"). Since August 11, 2005, numerous lawsuits and governmental and/or regulatory

investigations (the "Underlying Matters") involving certain individuals insured under the Arch

Policy have been instituted and various of those individuals have tendered the Underlying

Matters to Arch for coverage under the Arch Policy. Arch brings this action against the defendants named herein ("Defendants") to seek a declaration that the Arch Policy affords no coverage for the Defendants in connection with the Underlying Matters.

2.  This is the second lawsuit that Arch has filed in this court for a declaration regarding the parties' rights and responsibilities under the Arch Policy. The first lawsuit (Index No. 600805/06) was dismissed without prejudice by Justice Freedman in an opinion dated February 20, 2007 based on two factors that no longer exist. First, the Arch Policy contains a limit of liability that is $10 million excess of $40 million in underlying limits, and Justice Freedman ruled that it was entirely speculative whether the Underlying Matters would ever generate losses that would implicate the Arch Policy. Since that ruling, the limits of the underlying policies have been depleted at a voracious pace. As of the filing of this first amended complaint, the underlying insurers have advanced approximately $27.5 million in attorneys' fees and costs, and the bevy of law firms representing the individual insureds is generating over $2 million per month in additional fees and costs. Thus, contrary to the position that the individual insureds advanced before this Court when Arch filed its first action, it is far from speculative whether, setting aside the dispositive coverage issues that Arch outlines in this complaint based on the unique terms of its Policy, the Arch limit will be implicated.

3.  Justice Freedman also held that Arch could not proceed with the first action because the question whether any insured had knowledge of facts or circumstances that might give rise to a claim as of the Arch Policy inception date – key issue for purposes of the exclusions that form the basis for Arch's denial of coverage – would overlap with issues that were not yet adjudicated in the Underlying Matters. That impediment no longer exists. Beginning on December 19, 2007, three former executives of Refco – namely, its former Chairman, President and Chief

2

Executive Officer, Phillip R. Bennett, its former Chief Financial Officer, Robert C. Trosten, and

its former Executive Vice President, Santo C. Maggio – pleaded guilty to a number of federal

charges, including conspiracy, securities, wire and bank fraud, making false filings with the SEC,

making false statements to Refco's auditors and money laundering. In connection with their

guilty pleas, Bennett, Trosten and Maggio, all of whom are insureds under the Arch Policy, each

admitted that he knew of and participated in the wrongdoing that is at the heart of the allegations

in the Underlying Matters. These guilty pleas and related admissions of fact, which establish

that Bennett, Trosten and Maggio knew of the wrongdoing at the time of the inception of the

Arch Policy, trigger the applicability of the exclusions identified in this amended complaint as to

all of the Defendants in this action with respect to the Underlying Matters without regard to the

outcome of any unresolved proceeding involving any other Defendant. Thus, the second ground

for the dismissal of Arch's first action no longer exists.

### JURISDICTION AND VENUE

4.    This Court has jurisdiction to resolve an actual controversy between Arch and the

Defendants pursuant to the New York Declaratory Judgment Act, CPLR § 3001.

5.    Personal jurisdiction over Defendants is proper pursuant to CPLR § 301 and § 302.

Defendants possess sufficient minimum contacts with the state of New York to render the

exercise of jurisdiction by a New York court permissible under traditional notions of fair play

and substantial justice. Defendants were directors or officers of Refco, a corporation with its

principal place of business in New York.[1]  As directors and/or officers of Refco, Defendants

---

[1] "Refco", as used herein, refers to Refco, Inc., the publicly-traded company formed in
connection with an August 2005 initial public offering, Refco Group Ltd., LLC ("RGL"), the
company through which Refco, Inc.'s business primarily was conducted prior to the offering, and
the subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

transacted business in the state of New York. In addition, some or all of Defendants seek coverage under the Arch Policy for the Underlying Matters. Accordingly, Defendants have an ongoing contractual relationship with Arch, a corporation with its principal place of business in New York. Finally, most of the lawsuits comprising the Underlying Matters were filed in the federal courts located in New York. These lawsuits allege that Defendants committed acts in the state of New York and/or acts outside the state of New York that could reasonably be expected to have consequences in the state of New York.

6.    Venue is proper in this County under CPLR § 503 because Arch has its principal place of business in this County.

## PARTIES

7.    Arch is an insurance company that is organized and exists pursuant to the laws of the state of Missouri. Arch has its principal place of business in New York County, New York.

8.    Defendant John D. Agoglia ("Agoglia") served as a senior vice president at Refco Securities, LLC, a subsidiary of Refco, Inc., at times relevant to this action. Upon information and belief, Agoglia is a citizen of New York.

9.    Defendant Phillip R. Bennett ("Bennett") served as the Chairman, President and Chief Executive Officer of Refco until October 2005, when he took a leave of absence at the request of the Refco board of directors. Upon information and belief, Bennett is a citizen of New Jersey.

10. Defendant Leo R. Breitman ("Breitman") served as a director of Refco at times relevant to this action. Upon information and belief, Breitman is a citizen of Florida.

11. Defendant Edwin L. Cox ("Cox") served as a director of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Cox is a citizen of Texas.

4

12. Defendant Sukhmeet Dhillon ("Dhillon") served as Executive Vice President of Refco Group Ltd., LLC and as Executive Vice President of the entity that became Refco LLC, during times relevant to this complaint. Upon information and belief, Dhillon is a citizen of California.

13. Thomas H. Dittmer ("Dittmer") served as Chairman and CEO of Refco during times relevant to this action. Upon information and belief, Dittmer is a citizen of Illinois.

14. Defendant Nathan Gantcher ("Gantcher") served as a director of Refco at times relevant to this action. Upon information and belief, Gantcher is a citizen of New York.

15. Defendant Stephen Grady ("Grady") was COO of Refco Global Futures LLC, a Refco subsidiary, during times relevant to this action. Upon information and belief, Grady is a citizen of New Jersey.

16. Defendant Tone Grant ("Grant") served as President of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Grant is a citizen of Illinois.

17. Defendant Thomas Hackl ("Hackl") served as Executive Vice President of RGL at times relevant to this action. Upon information and belief, Hackl is a citizen of Geneva, Switzerland.

18. Defendant David V. Harkins ("Harkins") served as a Director of Refco at times relevant to this action. Upon information and belief, Harkins is a citizen of Massachusetts.

19. Defendant Scott L. Jaeckel ("Jaeckel") served as a Director of Refco at times relevant to this action. Upon information and belief, Jaeckel is a citizen of Massachusetts.

20. Defendant Dennis A. Klejna ("Klejna") served as Executive Vice President and General Counsel of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Klejna is a citizen of Washington, D.C.

5

21. Defendant Thomas H. Lee ("Lee") served as a Director of Refco at times relevant to this action. Upon information and belief, Lee is a citizen of New York.

22. Defendant Eric G. Lipoff ("Lipoff") served as Executive Vice President of a Refco subsidiary at times relevant to this action. Upon information and belief, Lipoff is a citizen of California.

23. Defendant Santo C. Maggio ("Maggio") served as an Executive Vice President of Refco and as President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd. at times relevant to this action. Upon information and belief, Maggio is a citizen of Florida.

24. Defendant Peter McCarthy ("McCarthy") served as Executive Vice-President of Refco Securities at times relevant to this action. Upon information and belief, McCarthy is a citizen of New Jersey.

25. Defendant Joseph Murphy ("Murphy") served as President of Refco from October 2005 to November 28, 2005, when he resigned. Murphy also served as Chief Executive Officer of Refco Global Futures and President of Refco, LLC at times relevant to this action. Upon information and belief, Murphy is a citizen of New Jersey.

26. Defendant Frank Mutterer ("Mutterer") served as Controller of Refco Group Ltd., LLC, during times relevant to this action. Upon information and belief, Mutterer is a citizen of New Jersey.

27. Defendant Richard N. Outridge ("Outridge") served as CFO of Refco Capital Management at times relevant to this action. Upon information and belief, Outridge is a citizen of Pennsylvania.

6

28. Defendant Ronald L. O'Kelley ("O'Kelley") served as a Director of Refco at times relevant to this action. Upon information and belief, O'Kelley is a citizen of Florida.

29. Defendant Scott A. Schoen ("Schoen") served as a Director of Refco at times relevant to this action. Upon information and belief, Schoen is a citizen of Massachusetts.

30. Defendant William M. Sexton ("Sexton") served as Executive Vice President and Chief Operating Officer of Refco at times relevant to this action. Upon information and belief, Sexton is a citizen of Iowa.

31. Defendant Gerald Sherer ("Sherer") served as Executive Vice President and Chief Financial Officer of Refco at times relevant to this action. Upon information and belief, Sherer is a citizen of New York.

32. Defendant Philip Silverman ("Silverman") served as Secretary of Refco at times relevant to this action. Upon information and belief, Silverman is a citizen of New Jersey.

33. Robert C. Trosten ("Trosten") served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Trosten is a citizen of New Jersey.

## FACTUAL ALLEGATIONS

### The Arch Policy

34. The Arch Policy is an excess directors, officers and corporate liability policy. It has a policy period of August 11, 2005 to August 11, 2006 and a limit of liability of $10 million excess of $40 million in underlying insurance. A copy of the Arch Policy is attached as Exhibit A.

35. Various other insurers issued underlying insurance policies to Refco. U.S. Specialty Insurance Company issued a primary policy with limits of $10 million excess of applicable retentions (the "Primary Policy"). A copy of the Primary Policy is attached as Exhibit B. Lexington Insurance Company issued a first excess policy with limits of $7.5 million excess of

$10 million (the "Lexington Policy"). A copy of the Lexington Policy is attached as Exhibit C.

Axis Reinsurance Company issued a second excess policy with limits of $10 million excess of

$17.5 million (the "Axis Policy"). A copy of the Axis Policy is attached as Exhibit D. Allied

World Assurance Company issued a third excess policy with limits of $12.5 million excess of

$27.5 million (the "AWAC Policy"). A copy of the AWAC Policy is attached as Exhibit E.

Each of the underlying policies has a policy period of August 11, 2005 to August 11, 2006.

     36. In general, the Arch Policy applies in conformance with the terms and conditions of

the Primary Policy and in conformance with the terms and conditions in the Arch Policy or any

other underlying insurance "further limiting or restricting coverage." Arch Policy, Section I.C.

The Arch Policy provides that "[i]n no event shall this Policy grant broader coverage than that

provided by the most restrictive policy included in the Underlying Insurance." *Id.* The Arch

Policy provides that coverage thereunder applies only after exhaustion of the **Underlying Limit**

solely as a result of actual payment under the **Underlying Insurance** in connection with

**Claim(s).** *Id.*, Section I.B.[2]

     37. Subject to all of its terms and conditions, the Arch Policy affords five types of

specified coverage. First, the Arch Policy affords specified coverage to **Insured Persons** for

"**Loss** arising from **Claims** first made during the **Policy Period** . . . for **Wrongful Acts**, except

when and to the extent that the **Company** has paid such **Loss** to or on behalf of the **Insured**

**Persons** as indemnification or advancement." Primary Policy, Insuring Agreement (A).

**Insured Persons** is defined in relevant part as "any past, present or future director or officer of

---

[2] Policy language appearing herein in bold typeface is defined in the policy being quoted, and appears in bold typeface in that policy.

the **Company** . . . ."  Primary Policy, Definition F(1).  The **"Company"** is Refco Inc. and its

subsidiaries.  Primary Policy, Definitions (C), (H), (O), Declarations Item 1.

38. Second, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the Company for "**Loss** arising from . . . **Claims** first made during the **Policy**

**Period** . . . against the **Insured Persons** for **Wrongful Acts**, if the **Company** has paid such **Loss**

to or on behalf of the **Insured Persons** as indemnification or advancement."  Primary Policy,

Insuring Agreement (B)(1).

39. Third, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the Company for "**Loss** arising from **Securities Claims** first made during the **Policy**

**Period** . . . against the **Company** for **Wrongful Acts**."  Primary Policy, Insuring Agreement

(B)(2).

40. Fourth, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the "**Controlling Shareholder**," defined as Bennett, for "**Loss** arising from a

**Securities Claim** first made during the **Policy Period** . . . against such **Controlling Shareholder**

for **Wrongful Acts**, provided, that one or more **Insured Persons** and/or the **Company** are and

remain co-defendants in such **Securities Claim** along with such **Controlling Shareholder**."

Primary Policy, Endorsement No. 15.

41. Fifth, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the Company for "all **Derivative Demand Investigation Costs** incurred by the

**Company** as a result of a **Derivative Demand** first received by the **Company's** Board of

Directors and reported in writing to the Insurer during the **Policy Period** . . . up to the amount of

the **Derivative Demand Investigation Costs Sub-Limit**" of $250,000.  Primary Policy,

Endorsement No. 11.

9

42. The AWAC Policy contains the following provision: "It is hereby understood and agreed that the **Insurer** shall not be liable for **Loss** in connection with any claim or claims made against the **Insureds** alleging, arising out of, based upon, in consequence of, or attributable to facts or circumstances of which any Insured had knowledge as of inception and (i) which a reasonable person would suppose might afford valid grounds for a claim which would fall within the scope of the coverage hereunder; or (ii) which indicate the probability of any such claim." AWAC Policy, Endorsement No. 3 ("AWAC Prior Knowledge Exclusion").

43. The Arch Policy contains the following provision: "If any **Insured** as of August 11, 2005 has any knowledge of or information concerning any act, error, omission, fact, matter or circumstance that might give rise to a **Claim** under this Policy, the **Excess Insurer** shall not be liable to make any payment under this Policy as a result of a **Claim** arising out of, based upon or attributable to any such act, error, omission, fact, matter or circumstance." Arch Policy, Endorsement No. 4 (the "Arch Prior Knowledge or Information Exclusion").

44. The Arch Policy defines **Insured(s)** as "any person(s) or entity(ies) that are entitled to coverage under the **Followed Policy** at its inception." Arch Policy, § III.B. The "**Followed Policy**" is the Primary Policy. Arch Policy, § III.C.; Declarations, Item 4.

45. The Arch Policy and underlying insurance policies contain other terms, conditions and limitations that may ultimately be implicated in this action.

46. Defense Costs have been advanced to certain Defendants under the Primary Policy, the Lexington Policy and the Axis Policy.[3] As of the filing of this first amended complaint, the

---

[3] The coverage defenses that Arch advances in this action are unique to the Arch Policy; thus, the fact that U.S. Specialty and Lexington advanced fees and costs has no bearing on the coverage issues presented in this case. Axis was ordered by the Refco bankruptcy court to advance fees and costs despite its denial of coverage based on its unique policy provisions and

10

advancement of defense costs has exhausted the $10 million limit of the Primary Policy, the

$7.5 million limit of the Lexington Policy, and the $10 million limit of the Axis Policy. The law

firms representing the defendants in the Underlying Matters are currently generating attorneys'

fees and costs in the vicinity of $2 million *per month*. Thus, it is far from conjectural that the

Arch Policy limits will be implicated unless this Court promptly adjudicates the coverage issues

presented in this case.

**The Events at Refco**

47. The Arch Policy incepted on August 11, 2005. On the same day, Refco conducted its

initial public offering.

48. On October 10, 2005, Refco issued a press release. The press release announced that

the Company had been carrying an undisclosed receivable of $430 million from an entity

controlled by Bennett. Refco stated that "[b]ased on the results of the review to date, the

Company believes that the receivable was the result of the assumption by an entity controlled by

Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company,

which may have been uncollectible." Moreover, Refco stated that although the receivable "was

reflected on the Company's prior period financials, as well as on the Company's May 31, 2005

balance sheet," the receivable "was not shown as a related party transaction in any such

financials. For that reason, and after consultation by the Audit Committee with the Company's

independent accountants, the Company determined, on October 9, 2005, that its financial

statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28,

---

contrary to the language in the operative policies. Axis has appealed that order to the United
States District Court for the Southern District of New York.

2004, February 28, 2005, and May 31, 2005, taken as a whole, for each of Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon."

49. On October 11, 2005, Refco issued a second press release. The press release announced that Bennett had repaid the $430 million receivable in full. The press release also provided further information on the nature of the receivable: "Based on the results of the internal investigation to date, the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998. These obligations were transferred periodically to the entity controlled by Mr. Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts. The fact that the receivable was from a company controlled by Mr. Bennett was hidden at the end of quarterly and annual reporting periods by reason of transfers to a third party customer account that we currently believe is unaffiliated with Mr. Bennett or anyone else at the Company."

50. On October 17, 2005, Refco and certain of its unregulated subsidiaries filed for Chapter 11 bankruptcy protection.

51. On January 16, 2007, a federal grand jury returned a third superseding indictment against Bennett, Trosten and Grant (the "S3 Indictment"). The S3 Indictment charged Bennett, Trosten and Grant with securities fraud, conspiracy to commit securities fraud, wire fraud, bank fraud and money laundering. The S3 Indictment also charged Bennett with making false filings with the SEC and making false statements to Refco's auditors. A copy of the S3 Indictment is attached hereto as Exhibit F.

52. On February 15, 2008, Bennett, who is an **Insured** under the Arch Policy, pleaded guilty to all charges against him in the S3 Indictment. Five days later, on February 20, 2008,

12

Trosten, who also is an **Insured** under the Arch Policy, similarly pleaded guilty to charges of

conspiracy, securities, wire and bank fraud and money laundering.

53. The S3 Indictment charged that, beginning in the mid 1990's, Bennett, Trosten and

their co-conspirators engaged in a scheme to mask the true financial performance of Refco.

Specifically,

> [s]tarting at least as early as the mid 1990s, BENNETT and
> GRANT schemed to hide the true financial health of Refco from
> its banks, counterparties, auditors, and investors. Starting at least
> as early as the late 1990s, BENNETT and GRANT embarked on a
> strategy to mask the true performance of Refco's business in order
> to sell the company for their own benefit and that of Refco's other
> owners. To that end, over the ensuing years, BENNETT,
> TROSTEN, GRANT and others known and unknown
> systematically (1) covered up both Refco's own losses and
> customer losses for which Refco became responsible; (2) moved
> Refco operating expenses off the company's books; and (3) padded
> Refco's revenues, all in an effort to mislead Refco's banks,
> counterparties, auditors and investors, with the goals of keeping
> Refco in business and then selling it for the maximum benefit to its
> owners and senior management.

S3 Indictment, ¶ 7.

54. According to the S3 Indictment, in furtherance of the scheme, Bennett, Trosten and

their co-conspirators made and caused Refco and others on its behalf to make false and

fraudulent statements to Refco's banks, counterparties, customers, auditors and investors, and to

create false audited financial statements and false public filings with the SEC.

55. The S3 Indictment charged that the scheme permitted Refco to engage in, among

other things, Refco's August 2005 initial public offering of stock, in which the public purchased

approximately $583 million of Refco common stock based on a false and fraudulent registration

statement.   S3 Indictment, ¶ 8.

56. According to the S3 Indictment, the scheme was hatched in 1997, when Refco

directly and indirectly incurred a series of substantial trading losses that threatened the continued

viability of its business. S3 Indictment, ¶ 9. In response to those losses, Bennett, Trosten and

others moved losses and expenses out of Refco and into Refco Group Holdings, Inc. ("RGHI"),

an entity that owned Refco and that was owned by, among others, Bennett and Grant, in an effort

to mask Refco's financial condition. This strategy increased the debt owed by RGHI to Refco

(the "RGHI Receivable"), which ultimately grew to over $1 billion. *Id.*

57. The S3 Indictment charged that, beginning as early as February 1998, Bennett and

others directed a series of transactions every year designed to hide the "huge and growing"

RGHI Receivable from, among others, Refco's auditors, by temporarily paying down all or part

of the RGHI Receivable over Refco's fiscal year-end and replacing it with a receivable from one

or more other entities not related to Bennett or Refco. S3 Indictment at ¶ 21. Bennett and others

caused this cover-up to occur "at every fiscal year-end from at least the fiscal year-end on

February 28, 1998 through the fiscal year-end on February 29, 2004." *Id.* Beginning in 2004,

Bennett and others began causing these cover-up transactions to occur at the ends of Refco's

quarterly reporting periods. *Id.* at ¶ 46.

58. The S3 Indictment further charged that Bennett, Trosten and others participated in a

scheme to defraud participants in the 2004 leveraged buyout of Refco, which was led by private

equity fund Thomas H. Lee Partners, by misleading the fund and purchasers of the $600 million

in notes and $800 million in bank debt about the true financial health of Refco. S3 Indictment, ¶

34.

59. Based on these and other allegations, the S3 Indictment charged Bennett as follows:

| COUNT | CHARGE |
|---|---|
| 1 | Conspiracy to commit securities fraud, wire fraud, to make false filings with the SEC, to make material misstatements to auditors, bank fraud and money laundering |

| Count | Charge |
|-------|--------|
| 2 | Securities fraud in connection with the sale of 9% Senior Subordinated Notes due 2012 |
| 3 | Securities fraud in connection with the purchase and sale of Refco common stock |
| 4 | False filing with the SEC in connection with the filing of Refco's Form 10-K under the Exchange of 1934 on July 19, 2005 |
| 5, 6 | False filing with the SEC in connection with the filing of certain registration statements under the Securities Act of 1933 on April 6, 2005 and August 8, 2005 |
| 7 – 13 | Wire fraud in connection with certain electronic communications between June 22, 2004 and August 5, 2005, including the transmission of Refco's Form 10-K on July 19, 2005 and its registration statements on April 6, 2005 and August 8, 2005 |
| 14 | Material misstatements to auditors |
| 15 | Bank fraud in connection with the 2004 leverage buyout transaction |
| 16 – 20 | Money laundering in connection with proceeds of the 2004 leverage buyout transaction |

60. On February 15, 2008, Bennett pleaded guilty to all twenty counts against him in the

S3 Indictment. A copy of the transcript of the hearing ("2/15 Tr.") is attached hereto as Exhibit

G. During the hearing at which Bennett pleaded guilty, the following exchange occurred

between the Court and Bennett:

> THE COURT: Mr. Bennett, did you commit the crimes for which you've been charged?
>
> THE DEFENDANT: I did, your honor.
>
> THE COURT: Would you tell me in your own words what you did?

15

THE DEFENDANT: Your Honor, during the period that I served as CEO of Refco, I agreed with other Refco executives to enter into a series of transactions at the end of Refco's financial reporting periods to make it appear as if a receivable due to Refco from Refco Upholdings, Inc. [sic], a related party, was instead due from an independent third-party customer.

The IGHI [sic] receivable was composed of, amongst other things, historical customer losses, bad debts, and expenses that IGHI [sic] had incurred on behalf of Refco.

I, along with other Refco executives, have caused Refco to enter into these transactions in order to conceal the size and nature of the IGHI [sic] receivable. We concealed the receivable from, amongst others, Refco's auditors, Thomas H. Lee Partners, various lenders who, in 2004, participated in Refco's senior secured credit facility, and the issuance of 9 percent senior subordinated notes, and also investors in Refco's common stock.

Among the lenders to whom I knowingly caused the IGHI [sic] receivable to be misrepresented was HSBC Bank, referenced in Count Fifteen of the indictment. I and other Refco executives also used the interstate wires to accomplish these acts within this district, as referenced in Counts Seven through Thirteen. Furthermore, I caused funds obtained from the transaction with Thomas H. Lee Partners, referenced in paragraph 34 of the indictment, to be wired to various parties receiving proceeds from the transaction, as referenced in Counts Sixteen through Twenty, knowing that this money had been unlawfully obtained.

The IGHI [sic] receivable and related party transaction used to conceal it were material information that Refco investors and lenders would have wanted to have known prior to investing in or lending money to Refco. While I believed that I would be able to pay the IGHI [sic] receivable down over time, and did, in fact, ultimately pay [sic] off the receivable balance in its entirety, I knew that obtaining funds from Refco's investors and lenders based on misleading financial statements was also wrong.

I also caused Refco to file documents with the SEC, namely S1, S4, and 10-K that did not disclose the full extent of the IGHI [sic] receivable or the transactions used to conceal it; and, thus, were false and misleading with respect to material facts. I knew that failing to disclose these facts in public filings and in connection with Refco's sale and registration of Refco's notes and common stock was wrong , and I deeply regret having done so.

16

Your Honor, I take full responsibility for my actions . . . .

2/15 Tr. at 16-20.

61. At the conclusion of the February 15, 2008 hearing, the Court found that Bennett

pleaded guilty knowingly and voluntarily:

> THE COURT: Mr. Bennett, I'm satisfied that you understand the
> nature of the charges against you and the consequences of your
> plea; and that your plea is made voluntarily and knowingly; and
> that there is a sufficient factual basis for it. Accordingly, I will
> accept your plea of guilty . . . .

2/15 Tr. at 20.

62. The S3 Indictment charged Trosten as follows:

| Count | |
|-------|--|
| 1 | Conspiracy to commit securities fraud, wire fraud, to make false filings with the SEC, to make material misstatements to auditors, bank fraud and money laundering |
| 2 | Securities fraud in connection with the sale of 9% Senior Subordinated Notes due 2012 |
| 7, 8 | Wire fraud in connection with certain electronic communications between June 22, 2004 and August 3, 2004 5, 2005, including e-mails to representatives of Thomas H. Lee Partners |
| 15 | Bank fraud in connection with the 2004 leverage buyout transaction |
| 17-18 | Money laundering in connection with proceeds of the 2004 leverage buyout transaction |

63. On February 20, 2008, Trosten pleaded guilty to Counts 1, 2, 7, 15 and 17 against

him in the S3 Indictment. A copy of the transcript of the hearing ("2/20 Tr.") is attached hereto

as Exhibit H. During the hearing at which Trosten pleaded guilty, the following exchange

occurred between the Court and Trosten:

17

THE COURT: Mr. Trosten, did you commit the offenses that you are pleading guilty to?

THE DEFENDANT: I did, your honor.

THE COURT: Would you tell me, please, what you did?

\*       \*       \*

THE DEFENDANT: Your Honor, while I was employed at Refco, I agreed with other Refco executives to hide the true nature of Refco's finances on Refco's financial statements. I knew that Refco's financial statements did not accurately reflect Refco's financial condition, because the financial statements did not disclose the full amount that Refco Group Holdings, Inc., a related party, owed to Refco. I understood that the RGHI receivable was underreported because Phillip Bennett, Refco's former chief executive officer, and other Refco executives, including me, were involved in a series of transaction at the end of Refco's financial reporting periods to make it appear as if a receivable was due from third-party customers rather than from a related party.

The RGHI receivable was composed of, amongst other things, historic customer losses, bad debts, and expenses that RGHI incurred on behalf of Refco.

In addition, I participated in a number of transactions that padded or inflated Refco's income. For example, I participated in transactions that shifted expenses off the books of Refco and onto the books of Refco Group Holdings, Inc.

I, along with other Refco executives, agreed to conceal the true size and nature of the RGHI receivable from, amongst others, Refco's auditors, Thomas H. Lee Partners; HSBC, which, in 2004, participated in Refco's senior secured credit facility, as referenced in . . . paragraph 41 and Count Fifteen of the indictment; and investors who purchased bonds that Refco issued in 2004, as referenced in Count Two of the indictment.

I left the company in August 2004, one year before the IPO of Refco. I and other executives used the interstate wires to accomplish these acts within this district, as referenced in Count Seven of the indictment.

Furthermore, I received funds obtained from the transaction with Thomas H. Lee Partners, referenced in paragraph 34 of the indictment, which I knew were proceeds from unlawful activity, as referenced in Count Seventeen.

18

> The RGHI receivable and transactions used to conceal it were
> material information that Refco investors and lenders would have
> wanted to know before investing in or lending money to Refco.
>
> I knew that obtaining funds from Refco investors and lenders
> based on misleading financial information was wrong . . . .
>
> Your Honor, I take full responsibility for my actions and my
> conduct . . . .

2/20 Tr. at 17-20.

64. At the conclusion of the February 20, 2008 hearing, the Court found that Trosten

pleaded guilty knowingly and voluntarily:

> THE COURT: Mr. Trosten, I am satisfied that you understand the
> nature of the charges against you and the consequences of your
> plea, and that your plea is made voluntarily and knowingly, and
> that there is a factual basis for your. I will, therefore, accept your
> plea of guilty.

2/20 Tr. at 20.

65. Meanwhile, on December 19, 2007, Maggio, who is an **Insured** under the Arch

Policy, pleaded guilty to a four-count criminal information (the "Maggio Information") charging

him with conspiracy, securities fraud and wire fraud. A copy of the Maggio Information is

attached hereto as Exhibit I.

66. The Maggio Information, which included nearly all of the same charges of

misconduct as the S3Indictment, charged that Maggio was one of Bennett's and Trosten's co-

conspirators and that he participated in the conduct underlying the conspiracy. In particular, the

Maggio Information charged that Maggio participated in the scheme to hide the RGHI

Receivable and to mask the true financial condition of Refco in the several years prior to the

August 11, 2005 initial public offering.

67. Based on these and other allegations, the Maggio Information charged Maggio as

follows:

| Count | Charge |
|-------|--------|
| 1 | Conspiracy to commit securities fraud, wire fraud, to make false filings with the SEC, to make material misstatements to auditors, bank fraud and money laundering |
| 2 | Securities fraud in connection with the sale of 9% Senior Subordinated Notes due 2012 |
| 3 | Securities fraud in connection with the purchase and sale of Refco common stock |
| 4 | Wire fraud in connection with the electronic transmission of Refco's Form 10-K on July 19, 2005 |

68. On December 19, 2007, Maggio pleaded guilty to every count in the Maggio

Information. A copy of the transcript of the hearing ("12/19 Tr.") is attached hereto as Exhibit J.

During the hearing at which Maggio pleaded guilty, the following exchange occurred between

the Court and Maggio:

> THE COURT: Did you commit the offenses for which you have been charged, Mr. Maggio?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Tell me what you did.
>
> \*         \*         \*
>
> THE DEFENDANT: Your Honor, from the late 1990s to October 2005 I was a senior executive at Revko [sic] Ink [sic]. During that period I participated with others to hide the true financial health of Revko [sic] from banks, counter-parties, auditors and investors. With my knowledge and active participation Revko's [sic] substantial losses were covered up as revenues padded [sic] and certain operating expenses were moved off its book. Among the acts I personally engaged in [sic] the signing of loan agreements referencing paragraphs 61-D [loan agreement signed in furtherance of the conspiracy on or about February 20, 2004] and 61-P [loan agreement signed in furtherance of the conspiracy on or about February 23, 2005] of the indictment.
>
> As a result of my conduct and that of my coconspirators false financial statements were issued to obtain debt financing

20

> from the public including 9 percent senior subordinated notes referenced in Count Two of the indictment.
>
> To consummate the sale of 57 percent of Revko [sic] to a group headed by Thomas H. Lee in 2004 and to obtain $800 million in bank financing the same year and to effect the Revko [sic] initial public offering in 2005. [sic] Moreover, with my knowledge false financial statements were filed with the SEC including form 10K referencing Count Four. The mails and interstate wires were used as part of the fraudulent scheme.
>
> I deeply regret my conduct and the harm that it has caused.
>
> THE COURT: First of all, with respect to all of the activities that you've indicate you participated in it knowingly?
>
> THE DEFENDANT: Yes.

12/19 Tr. at 17-18.

69. At the conclusion of the December 19, 2007 hearing, the Court found that Maggio pleaded guilty knowingly and voluntarily:

> Based on defendant's allocution and the recommendations by the government I find that the defendant understands the nature, the charges and consequences of his guilty plea. I also find that the plea is voluntary and that there is a factual basis for the plea. I, therefore, recommend that the plea be accepted . . . .

12/19 Tr. at 20.

70. As demonstrated by each of their guilty pleas to counts that alleged their knowledge of, *inter alia,* efforts to hide the RGHI Receivable from the investing public prior to 2005, Bennett, Trosten and Maggio, as of August 11, 2005, had knowledge of or information concerning acts, errors, omissions, facts, matters or circumstances that might give rise to a Claim under the AWAC Policy or the Arch Policy.

**The Underlying Matters**

71. Beginning on October 12, 2005, various lawsuits were filed against the Defendants.

21

72. A criminal complaint was filed against Bennett (the "Bennett Criminal Complaint")

on October 12, 2005 in *United States v. Bennett*, No. 05-1720 (S.D.N.Y.).

73. The Bennett Criminal Complaint alleged that Bennett knowingly "hid from investors

in [Refco's] August 2005 initial public offering of stock . . . the existence of hundreds of millions

of dollars of related party transactions between Refco and a company controlled by Bennett,

including causing Refco to file a false and fraudulent S-1 registration statement with the

Securities and Exchange Commission." Bennett Criminal Complaint, ¶ 9. A federal grand jury

in New York subsequently returned a criminal "Indictment" against Bennett that was filed on or

about November 10, 2005 in *United States v. Bennett, et al.*, No. 05-1192 (S.D.N.Y.). This

indictment repeated and expanded upon the allegations in the Bennett Criminal Complaint. On

or about October 24, 2006, the grand jury returned a "Superseding Indictment" that named both

Bennett and Trosten, and a "Second Superseding Indictment" against them on or about

November 16, 2006. On January 16, 2007, a "Third Superseding Indictment" – referred to above

as the "Bennett Indictment" – that added Grant as a defendant was filed. On December 19, 2007,

the Information against Maggio was filed. Each of these filings alleged, among other things, that

the defendant(s) named therein engaged in a scheme to hide the RGHI receivable from the

investing public. Collectively, the proceedings initiated by these filings will be referred to herein

as the "Criminal Proceedings".

74. The Bennett Criminal Complaint was tendered to Arch for coverage under the Arch

Policy on or about October 13, 2005, and the Indictment, the Superseding Indictment, the Second

Superseding Indictment and/or the Third Superseding Indictment were tendered to Arch for

coverage under the Arch Policy thereafter.

75. The suits *Mazur et al. v. Refco, Inc., et al.*, No. 05-8626 (S.D.N.Y.), *Frontpoint Fin. Serv., Inc. v. Refco, Inc., et al.*, No. 05-8663 (S.D.N.Y.), *Lieber v. Refco, Inc., et al.*, No. 05-8667 (S.D.N.Y.), *Weiss v. Refco, Inc., et al.*, No. 05-8691 (S.D.N.Y.), *Glaubach v. Refco, Inc., et al.*, No. 05-8692 (S.D.N.Y.), *Gross v. Refco, Inc., et al.*, No. 05-8697 (S.D.N.Y.), *Salamone v. Refco, Inc. et al.*, No. 05-8716 (S.D.N.Y.), *RD Partners LLC v. Refco, Inc., et al.*, No. 05-8737 (S.D.N.Y.), *Wakefield v. Refco, Inc., et al.*, No. 05-8742 (S.D.N.Y.), *Gaugler v. Bennett, et al.*, No. 05-8886 (S.D.N.Y.), *Baker v. Bennett, et al.*, No. 05-8923 (S.D.N.Y.), *Nathanson v. Bennett, et al.*, No. 05-8926 (S.D.N.Y.), *Becker v. Refco, Inc., et al.*, No. 05-8929 (S.D.N.Y.), *Mettupatti v. Bennett, et al.*, No. 05-9048 (S.D.N.Y.), *Weiss v. Bennett, et al.*, No. 05-9126 (S.D.N.Y.), *Weit v. Bennett, et al.*, No. 05-9611 (S.D.N.Y.), *Esses v. Bennett, et al.*, No. 05-9654 (S.D.N.Y.), *City of Pontiac General Employees Retirement System v. Bennett et al.*, No. 05-9941 (S.D.N.Y.), *Gensheimer v. Bennett*, No. 05-10318 (S.D.N.Y) and *Teachers' Retirement System of the State of Illinois et al. v. Lee, et al.*, No. 05-10403 (S.D.N.Y.) are purported class action securities fraud lawsuits that have been consolidated for pre-trial purposes under Case No. 05-8626 (the "Securities Litigation"). The First Amended Consolidated Class Action Complaint ("FAC") was filed in the consolidated proceedings on May 5, 2006, and the Second Amended Consolidated Class Action Complaint was filed on or about December 3, 2007.

76. The FAC and SAC allege that Refco's initial public offering registration statement and prospectus were materially false and misleading. Specifically, they allege that the registration statement and prospectus failed to disclose the existence of the RGHI Receivable. The FAC further alleges that the Refco financial statements incorporated in Refco's registration statement and prospectus were inaccurate because they failed to disclose the related-party transactions between Refco and RGHI designed to hide the RGHI Receivable. Included among

the defendants named in the SAC are Bennett, Sherer, Sexton, Maggio, Murphy, Silverman, Klejna, Trosten, Grant, O'Kelley, Breitman, Gantcher, Lee, Harkins, Jaeckel, and Schoen.

77. Beginning on or about October 14, 2005, some of the lawsuits comprising the Securities Litigation were tendered to Arch for coverage under the Arch Policy. The FAC was tendered to Arch by letter dated April 28, 2006.

78. The suits *David Fine v. Bennett, et al.*, No. 05-8701 (S.D.N.Y), and *Mehta v. Bennett, et al.*, No. 05-8748 (S.D.N.Y.), which were shareholder derivative actions (the "Derivative Litigation"), have been dismissed. Bennett, Sherer, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley, Schoen, Sexton and Murphy, among others, were named as defendants in the Derivative Litigation.

79. The complaints in the Derivative Litigation alleged that Refco's initial public offering registration statement and prospectus were materially false and misleading. Specifically, the complaints alleged that the registration statement and prospectus failed to disclose the existence of the RGHI Receivable. The complaints further alleged that the Refco financial statements incorporated in its registration statement and prospectus were inaccurate because they failed to disclose the related-party transactions between Refco and RGHI that were designed to hide the RGHI Receivable.

80. The *Mehta* complaint was tendered to Arch for coverage under the Arch Policy on or about October 17, 2005.

81. The suit *Bawag P.S.K. Bank v. Refco Inc., et al.*, No. 05-60006 (S.D.N.Y. Bankr.), Adv. No. 05-03161, was filed on November 16, 2005 (the "Bawag Action"). The Bawag Action names Bennett (among others) as a defendant.

24

82. The complaint in the Bawag Action alleges that the plaintiff was fraudulently induced to loan approximately $420 million to Bennett on October 10, 2005. The complaint alleges that Bennett failed to disclose that he sought the loan to pay off the RGHI Receivable, a "related-party receivable resulting from the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to Refco [that] likely was impaired and not collectible." Bawag Action Complaint, § 17. The complaint alleges that Bennett "knew that if BAWAG had been aware of any of the key facts set forth in [Refco's] October 10, 2005 Press Release, BAWAG would not have made the Loan." *Id.*, § 30.

83. The Bawag Action was tendered to Arch for coverage under the Arch Policy on or about November 30, 2005.

84. The suit *Thomas H. Lee Equity Fund V, L.P., et al. v. Bennett, et al.*, No. 05-9608 (S.D.N.Y.), was filed on November 14, 2005 (the "THL Funds Action"). The THL Funds Action names Bennett, Grant and Maggio, among others, as defendants.

85. The complaint in the THL Funds Action alleges that in June 2004, the plaintiffs invested approximately $507 million in Refco. The complaint alleges that despite the plaintiffs' due diligence efforts, they were unaware that "Bennett intentionally and deliberately engaged in accounting fraud in order to mask a group of largely worthless receivables, bad debts and questionable obligations that, if accurately portrayed on the Company's financial statements, would have materially reduced Refco's value." THL Funds Action Complaint, § 4. Specifically, the complaint alleges that Bennett "nowhere disclosed to the THL Funds that what appeared to be a good and valid receivable from a third-party customer was actually a receivable from RGHI, an entity controlled by Bennett, representing hundreds of million dollars [sic] of customer losses and obligations that would never be repaid to the Company." *Id.*, § 30. The complaint alleges

that the Refco financial statements provided to the plaintiffs during their due diligence review in 2003 and 2004 were materially false and misleading.

86. The THL Funds Action was tendered to Arch for coverage under the Arch Policy on or about February 13, 2006.

87. The complaint in *Unovalores Ltd. v. Bennett*, No. L1564-05 (Sup. Ct. of New Jersey, Somerset County, Law Division) (the "Unovalores Action") was filed in New Jersey state court on or about November 1, 2005.

88. The plaintiff in the Unovalores Action, which identifies itself as a Refco Capital account holder, names only Mr. Bennett as a defendant. Plaintiff alleges that it entered into a Repurchase Transaction with Refco on August 31, 2005, in reliance upon representations in Refco's registration statement and other filings concerning Refco's financial health. Those representations were false, according to the complaint, because they concealed massive receivables owed by an entity controlled by Mr. Bennett and at least one-half billion dollars of related party transactions with Mr. Bennett.

89. The Unovalores Action was tendered to Arch for coverage under the Arch Policy on or about February 13, 2006.

90. The complaint in *American Financial International Group v. Refco, Inc., et al.*, No. 05-8988 (S.D.N.Y.) (the "American Financial Action"), was filed in the Southern District of New York on or about October 21, 2005, an amended complaint was filed on April 13, 2006, and a second amended complaint was filed on June 30, 2006.

91. The plaintiff in the American Financial Action identifies itself as a Delaware LLC that traded currencies through an account at Refco F/X Associates, LLC ("RefcoFX"). The suit is a purported class action brought on behalf of all persons who traded currencies through, or had

26

currency trading accounts with, RefcoFX from August 11, 2005 through the date the amended complaint was filed and who have been damaged. Included among the defendants named in the second amended complaint are Bennett, Sherer, Sexton, Maggio, Trosten, Mutterer and Silverman. The second amended complaint generally alleges the same conduct that is the subject of the Criminal Proceedings and the Securities Litigation.

92. The complaint in the American Financial Action was tendered to Arch for coverage under the Arch Policy on or about October 25, 2005, and the amended complaint was tendered to Arch in May 2006.

93. The complaint in *Global Management Worldwide Limited v. Philip R. Bennett, et al.,* No. 06-0643 (S.D.N.Y.) (the "Global Management Litigation"), was filed in the Southern District of New York on or about January 26, 2006, and a Consolidated Amended Class Action Complaint was filed in September 2006.

94. The plaintiff in the Global Management Litigation identifies itself as a corporation organized under the laws of Nassau, the Bahamas, that was a brokerage customer of Refco Capital Markets, Ltd. ("RCM"). The suit is a purported class action brought on behalf of all brokerage customers of RCM who, at any time from October 17, 2000 to October 17, 2005, entrusted securities to RCM and/or Refco Securities, LLC, directly or indirectly, as custodian and broker for safe-keeping, and continued to hold positions with RCM on October 17, 2005 or thereafter. Plaintiffs generally allege that, during the purported class period, Refco, either directly or through its affiliates, incurred billions of dollars in losses, and tried to hide those losses by surreptitiously selling securities held by RCM in custody for class members. Plaintiffs allege that the financial statements filed by Refco with the SEC during the purported class period were false and misleading because they fraudulently omitted these losses, as well as the scheme

27

to hide the losses by selling securities stolen from plaintiffs and by building up and hiding the

RGHI Receivable. Plaintiffs further allege that they relied upon these false and misleading

financial statements and the purported financial integrity of Refco in entrusting securities to

RCM.

95. The Global Management Litigation was tendered to Arch for coverage under the Arch

Policy on or about March 14, 2006.

96. On or about October 9, 2007, two separate lawsuits were brought by seven

investment entities that maintained accounts at RCM: (1) *VR Global Partners L.P., et al. v.*

*Bennett, et al.,* Case No. 07-8686 (S.D.N.Y.) and (2) *Capital Management Select Fund Ltd., et*

*al., v. Bennett, et al.,* Case No. 07-8688 (S.D.N.Y.). The complaints, which were tendered to

Arch in October 2007, also allege that Refco insiders schemed to hide the RGHI Receivable,

thereby inducing plaintiffs to maintain accounts at RCM, and converted securities owned by

plaintiffs to hide losses incurred by Refco. The defendants in the *VR Global* and *Capital*

*Management* litigations include Bennett, Sexton, Maggio, Murphy, Silverman, Trosten, Grant,

Lee, Harkins, Jaeckel, Schoen and Outridge. By order dated November 20, 2007, the Global

Management Litigation was consolidated for pre-trial purposes with the *VR Global* and *Capital*

*Management* litigations. The consolidated proceedings will be referred to herein as the "RCM

Brokerage Customer Securities Litigation."

97. The complaint in *Kirschner v. Thomas H. Lee Partners, L.P.,* No. 07-7074 (S.D.N.Y)

(the "Trustee/THL Partners Litigation"), was filed in the Southern District of New York on or

about August 8, 2007.

98. The plaintiff in the Trustee/THL Partners Litigation identifies himself as the trustee of

the Refco Litigation Trust ("Trustee"). The individual defendants named in the complaint are

Lee, Harkins, Jaeckel, and Schoen. The Trustee generally alleges that the individual defendants breached fiduciary duties owed to Refco by failing to inform themselves of Refco's true financial state – including efforts to hide the RGHI Receivable – before making business decisions on behalf of Refco.

99. The complaint in the Trustee/THL Partners Litigation was tendered to Arch for coverage under the Arch Policy by letter dated August 16, 2007.

100.    The complaint in *Kirschner v. Grant Thornton LLP, et al.*, No. 2007L008818 (Cook County, Ill.) (the "Grant Thornton Litigation"), was filed in Illinois state court on August 21, 2007, and was removed to federal court on or about September 19, 2007 as Case No. 07-cv-05306 (N.D. Ill.).

101.    The Grant Thornton Litigation was brought by the Trustee. The individual defendants named in the complaint include Bennett, Maggio, Trosten, and Grant. The Trustee generally alleges that these defendants engaged in a scheme to hide Refco's true financial condition, which included efforts to hide the RGHI Receivable.

102.    The complaint in the Grant Thornton Litigation was tendered to Arch for coverage under the Arch Policy by letter dated September 20, 2007.

103.    The complaint in *Kirschner v. Agoglia, et al.*, Adv. Pro. No. 07-3060 (Bankr. S.D.N.Y.) (the "Agoglia Litigation"), was filed on or about October 15, 2007.

104.    The Agoglia Litigation was brought by the Trustee. The individual defendants named in the complaint are Agoglia, Bennett, Cox, Dittmer, Dhillon, Grady, Grant, Lipoff, Maggio, McCarthy, Murphy, Mutterer, Sexton, and Trosten. The Trustee alleges that Bennett and others "orchestrated a massive financial fraud designed to inflate Refco's financial position artificially until such time as it could be sold", Compl. ¶ 59, a fraud that included the hiding of

29

the RGHI Receivable. The Trustee seeks to recover transfers made to defendants under avoidance provisions of the Bankruptcy Code and to recover the value of the transfers under a theory of unjust enrichment.

105.    The complaint in the Agoglia Litigation was tendered to Arch for coverage under the Arch Policy by letters dated November 8 and November 21, 2007.

106.    The complaint in *Kirschner v. Thomas Hackl, et al.*, No. 07-9238 (S.D.N.Y.) (the "Hackl Litigation"), was filed on or about October 15, 2007.

107.    The Hackl Litigation was brought by the Trustee. The only individual defendant named in the complaint is Hackl. The Trustee alleges that Bennett, Hackl and others engaged in a scheme to hide the true financial condition of Refco, including efforts to hide the RGHI Receivable, and seeks recovery from Hackl under counts alleging, *inter alia,* breach of fiduciary duty, civil conspiracy, aiding and abetting fraud, and unjust enrichment.

108.    The complaint in *Kirschner v. Bennett, et al.*, Case No. 602869 (New York County, New York) (the "Trustee/Bennett Litigation"), was filed in the Supreme Court of New York on or about August 27, 2007, and was removed to federal court on or about September 17, 2007 as Case No. 07-08165 (S.D.N.Y.).

109.    The plaintiff in the Trustee/Bennett Litigation identifies himself as the trustee of the Refco Private Actions Trust and assignee of all claims related to Refco belonging to, among others, certain former Refco customers who maintained accounts at, and entrusted funds to, RCM. The individual defendants named in the complaint are Bennett, Maggio, Trosten and Grant. The complaint alleges, *inter alia,* that these defendants engaged in a scheme to hide Refco's true financial condition, including engaging in steps to hide the RGHI Receivable. This

30

conduct allegedly induced RCM customers to entrust assets with RCM, which allegedly were later converted for Refco's use.

110.    The Trustee/THL Partners Litigation, the Grant Thornton Litigation, the Trustee/Bennett Litigation, the Agoglia Litigation and the Hackl Litigation are collectively referred to herein as the "Trustee Litigation."

111.    Upon information and belief, various governmental and/or regulatory investigations of or proceedings involving one or more of the defendants (the "Regulatory Matters") are ongoing, and one or more of the defendants has sought or may seek coverage for such matters.

112.    The proceedings discussed above, including the Criminal Proceedings, the Securities Litigation, the Derivative Litigation, the Bawag Action, the THL Funds Action, the Unovalores Action, the American Financial Action, the RCM Brokerage Customer Securities Litigation, the Trustee Litigation, and the Regulatory Matters, collectively are referenced herein as the "Underlying Matters."

## COUNT I

## DECLARATORY JUDGMENT THAT THE AWAC PRIOR KNOWLEDGE EXCLUSION BARS COVERAGE FOR THE UNDERLYING MATTERS

113.    Arch incorporates by reference each of the allegations of paragraphs 1 through 112 above.

114.    As of August 11, 2005, Bennett, Trosten and Maggio possessed knowledge of facts and circumstances that a reasonable person would suppose might afford valid grounds for a claim or that would indicate the probability of any such claim.

31

115.    The Underlying Matters consist of Claims alleging, arising out of, based upon, in consequence of, or attributable to such facts and circumstances.

116.    Arch seeks a declaration that based upon the AWAC Prior Knowledge Exclusion, the Arch Policy does not provide coverage for any loss arising out of the Underlying Matters.

## COUNT II

### DECLARATORY JUDGMENT THAT THE ARCH PRIOR KNOWLEDGE OR INFORMATION EXCLUSION BARS COVERAGE FOR THE UNDERLYING MATTERS

117.    Arch incorporates by reference each of the allegations of paragraphs 1 through 116 above.

118.    As of August 11, 2005, Bennett, Trosten and Maggio possessed knowledge or information concerning acts, errors, omissions, facts, matters or circumstances that might give rise to a Claim under the Arch Policy.

119.    The Underlying Matters consist of Claims arising out of, based upon, or attributable to such acts, errors, omissions, facts, matters or circumstances.

120.    Arch seeks a declaration that, based upon the Arch Prior Knowledge or Information Exclusion, the Arch Policy does not provide coverage for any loss arising out of the Underlying Matters.

### OTHER COVERAGE DEFENSES

121.    Other Arch Policy terms and conditions may ultimately be implicated.  Nothing in this Complaint should be construed as a waiver by Arch of any other coverage defenses under the Arch Policy or underlying policies with respect to any claim or potential claim and Arch reserves the right to raise all other terms and conditions of the Arch Policy and underlying policies as defenses to coverage as appropriate.

WHEREFORE, Arch requests that the Court enter a declaration and judgment in its favor:

A.   Declaring that, for the reasons set forth in Count I, the Arch Policy does not provide coverage to any Defendant for any Loss incurred in connection with the Underlying Matters;

B.   Declaring that, for the reasons set forth in Count II, the Arch Policy does not provide coverage to any Defendant for any Loss incurred in connection with the Underlying Matters;

C.   Awarding Arch such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

D.   Awarding Arch its fees and costs incurred in prosecuting this action.

Dated:  February 21, 2008                     Respectfully submitted,

                                              VEDDER PRICE P.C.

                                              By: _____
                                                  John H. Eickemeyer
                                                  Daniel C. Green

                                              1633 Broadway
                                              47th Floor
                                              New York, New York  10019
                                              (212) 407-7700

                                              Of Counsel:

                                              Daniel J. Standish
                                              Marc E. Rindner
                                              Cara Tseng Duffield
                                              WILEY REIN LLP
                                              1776 K Street, NW
                                              Washington, DC 20006
                                              (202) 719-7000

                                              *Attorneys for Plaintiff*
                                              *Arch Insurance Company*

33

# EXHIBIT B.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Kay Arentsen, declare:

I am a resident of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 235 Montgomery Street, 17th Floor, San Francisco, California  94104.  On June 4, 2008, I served a copy of the within document(s):

**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1452**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

See Attached Service List

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2008, at San Francisco, California.

_Kay Arentsen_
Kay Arentsen

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

20371\1605906.1

| | |
|---|---|
| John A. Eickemeyer<br>VEDDER, PRICE, KAUFMAN &<br>KAMMHOLZ, P.C.<br>1633 Broadway<br>New York, New York 10019<br>Telephone: (212) 407-7700<br><br>Daniel J. Standish<br>Cara Tseng Duffield<br>WILEY REIN & FIELDING LLP<br>1776 K Street, NW<br>Washington, DC 20006<br><br>*Attorneys for Plaintiff Arch Insurance Company* | Norman L. Eisen<br>Laura E. Neish<br>ZUCKERMAN SPAEDER LLP<br>1540 Broadway, Suite 1604<br>New York, NY 10036<br>Telephone:   (212) 704-9600<br>Facsimile:   (212) 740-4256<br><br>*Attorneys for Defendant Tone N. Grant* |
| Helen B. Kim<br>KATTEN MUCHIN ROSENMAN<br>LLP<br>575 Madison Avenue<br>New York, NY 10022<br>Telephone: (212) 940-8800<br>Facsimile: (212) 940-8776<br><br>*Attorneys for Defendant Dennis A. Klejna* | Ivan Kline<br>FRIEDMAN & WITTENSTEIN<br>A Professional Corporation<br>600 Lexington Avenue<br>New York, NY 10022<br>Telephone:   (212) 750-8700<br>Facsimile:   (212) 223-8391<br><br>*Attorneys for Defendants William M. Sexton and Gerald M. Sherer* |
| Richard Cashman<br>HELLER EHRMAN LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036-6524<br>Telephone:   (212) 832-8300<br>Facsimile:   (212) 763-7600<br><br>*Attorneys for Defendant Philip Silverman* | Norman L. Eisen<br>Laura E. Neish<br>ZUCKERMAN SPAEDER LLP<br>1540 Broadway, Suite 1604<br>New York, NY 10036<br>Telephone:   (212) 704-9600<br>Facsimile:   (212) 740-4256<br><br>*Attorneys for Defendant Tone N. Grant* |
| John J. Jerome<br>SAUL EWING LLP<br>245 Park Avenue, 24th Floor<br>New York, NY 10167<br>Telephone:   (212) 672-1996<br>Facsimile:   (212) 672-1920<br><br>*Attorneys for Defendant Joseph Murphy* | Lawrence S. Lustberg<br>GIBBONS P.C.<br>One Pennsylvania Plaza, 37th Floor<br>New York, NY 10119-3701<br>Telephone:   (212) 649-4700<br>Facsimile:   (212) 333-5980<br><br>*Attorneys for Defendant Frank Mutterer* |

203371\1605906.1

| | |
|---|---|
| Claire P. Gutekunst<br>PROSKAUER ROSE LLP<br>1585 Broadway<br>New York, NY 10036-8299<br>Telephone:    (212) 969-3421<br>Facsimile:    (212) 969-2900<br><br>*Attorneys for Defendant Richard N.*<br>*Outridge* | William Fleming<br>GAGE SPENCER & FLEMING, LLP<br>410 Park Avenue – 9th Floor<br>New York, NY 10022<br>Telephone:    (212) 768-4900<br>Facsimile:    (212) 768-3629<br><br>*Attorneys for Defendants John D.*<br>*Agoglia and Peter McCarthy* |
| Greg A. Danilow<br>Michael F. Walsh<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Telephone:    (212) 310-8000<br>Facsimile:    (212) 310-8007<br><br>*Attorneys for Defendants Leo R.*<br>*Breitman, Nathan Gantcher, David V.*<br>*Harkins, Scott L. Jaeckel, Thomas H.*<br>*Lee, Ronald L. O'Kelley, and Scott A.*<br>*Schoen* | |

Farella Braun & Martel LLP<br>235 Montgomery Street, 17th Floor<br>San Francisco, CA 94104<br>(415) 954-4400

20371\1605906.1