John H. Eickemeyer (JE-8302)
Daniel C. Green (DG-0059)
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019

Daniel J. Standish (*pro hac vice*)
Marc E. Rindner (*pro hac vice*)
Cara Tseng Duffield (*pro hac vice*)
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006

*Attorneys for Plaintiff Arch Insurance Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARCH INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 08-CIV-5252 (GEL)** |
| ) | **ECF Case** |
| **JOHN D. AGOGLIA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

Annexed hereto are true copies of filings originally made in the Supreme Court of the State of New York, County of New York, in the action *Arch Insurance Co. v. Agoglia, et al.*, Index No. 08/600029, which was removed to this Court on or around June 9, 2008.

The record is supplemented by the undersigned counsel for the plaintiff Arch Insurance Company, pursuant to a letter from such counsel which was So Ordered by the Court on July 21, 2008 and entered into the docket on July 22, where it was assigned ECF No. 26. The supplementary filings are as follows:

| Document Number | Document Title |
|---|---|
| | |
| 1. | Summons and Complaint (and Exhibits A-G thereto) |
| 2. | Amended Summons and First Amended Complaint for Declaratory Judgment (and Exhibits A-J thereto) |

1

| 3. | Affidavit of Service of Summons and Complaint and of Amended Summons and Complaint Upon Enumerated Defendants (and Exhibits 1-15 thereto) |
|---|---|
| 4. | Request for Judicial Intervention |
| 5. | Statement in Support of Request for Assignment to Commercial Division (and Exhibit A thereto) |
| 6. | Notice of Motion for the *Pro Hac Vice* Admission of Cara Tseng Duffield, Marc E. Rindner and Daniel J. Standish |
| 7. | Affirmation of Daniel C. Green in Support of the *Pro Hac Vice* Admission of Cara Tseng Duffield, Marc E. Rindner and Daniel J. Standish (and Exhibits 1-3 thereto) |
| 8. | Affidavit of Service of Enumerated Filings Upon Defendant Cox |
| 9. | So Ordered Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett with annexed Judgment Entered by Clerk |
| 10. | Notice of Discontinuance as to Defendant Cox |
| 11. | Stipulation of Partial Discontinuance with Prejudice as against Defendant Trosten |
| 12. | Notice of Motion and Affirmation of Richard Cashman (and Exhibits A-Z thereto) |
| 13. | Memorandum of Law in Support of the Insureds' Motion to Dismiss the First Amended Complaint for Declaratory Judgment |
| 14. | Corrected Notice of Motion |
| 15. | Corrected Memorandum of Law in Support of the Insureds' Motion to Dismiss the First Amended Complaint for Declaratory Judgment |
| 16. | Notice of Appearance of Zuckerman Spaeder LLP on Behalf of Defendant Grant |
| 17. | Notice of Motion for Admission *Pro Hac Vice* of Norman L. Eisen and Affirmation of Laura E. Neish in Support Thereof |
| 18. | Affirmation of John H. Eickemeyer in Support of Arch Insurance Company's Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint (and Exhibits A-M thereto) |

2

| 19. | Plaintiff Arch Insurance Company's Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint |
|---|---|
| 20. | Notice of Entry of So Ordered Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett (annexed as Exhibit A thereto) |
| 21. | Corrected Affidavit of Service of Notice of Entry Upon Enumerated Defendants |
| 22. | Reply Affirmation of Richard Cashman (and Exhibits A-D thereto) |
| 23. | Reply Memorandum of Law in Support of the Insureds' Motion to Dismiss the First Amended Complaint for Declaratory Judgment |
| 24. | Affidavit of Service of Summons and Complaint and of Amended Summons and Complaint upon Defendants Dhillon and Lipoff |
| 25. | Notice of Motion for Voluntary Discontinuance as Against Defendants Thomas H. Dittmer and Stephen Grady; Affirmation of Daniel C. Green in Support of Motion for Voluntary Discontinuance as Against Defendants Thomas H. Dittmer and Stephen Grady |
| 26. | So Ordered Stipulation of Partial Discontinuance with Prejudice as against Defendant Maggio |
| 27. | Order Granting *Pro Hac Vice* Admission of Cara Tseng Duffield, Marc E. Rindner, and Daniel J. Standish |
| 28. | Order Granting *Pro Hac Vice* Admission of Norman Eisen |
| 29. | Notice of Filing of Notice of Removal (annexed as Exhibit A thereto) |

NEWYORK/#198626.1

Date:  July 31, 2008

Respectfully submitted,


By:     s/  John H. Eickemeyer
        John H. Eickemeyer  (JE-8302)
        jeickemeyer@vedderprice.com
        Daniel C. Green  (DG-0059)
        dgreen@vedderprice.com
        VEDDER PRICE P.C.
        1633 Broadway, 47th Floor
        New York, NY 10019
        (212) 407-7700

        Daniel J. Standish (*pro hac vice*)
        dstandish@wileyrein.com
        Marc E. Rindner (*pro hac vice*)
        mrindner@wileyrein.com
        Cara Tseng Duffield (*pro hac vice*)
        cduffield@wileyrein.com
        WILEY REIN LLP
        1776 K Street, N.W.
        Washington, D.C. 20006
        (202) 719-7000

        *Counsel for Plaintiff Arch Insurance Company*

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

ARCH INSURANCE COMPANY,

                    Plaintiff,

        -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R.
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON,
THOMAS H. DITTMER, NATHAN GANTCHER,
STEPHEN GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL, DENNIS A.
KLEJNA, THOMAS H. LEE, ERIC G. LIPOFF, SANTO
C. MAGGIO, PETER MCCARTHY, JOSEPH MURPHY,
FRANK MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER, PHILIP
SILVERMAN and ROBERT C. TROSTEN,

                    Defendants.
------------------------------------------------------------------x

Index No.: 08/600029

**NOTICE OF
APPEARANCE**

FILED

MAY - 7 2008

NEW YORK
COUNTY CLERK'S OFFICE

**PLEASE TAKE NOTICE** that the undersigned hereby appears on behalf of Defendant

Tone Grant in the above-captioned matter. Please serve copies of all papers in this matter upon

the undersigned attorney at the address listed below.

Dated: New York, New York
      May 2, 2008

               ZUCKERMAN SPAEDER LLP

               By:
                  Laura E. Neish, Esq.
                  1540 Broadway
                  Suite 1604
                  New York, New York 10036
                  Tel: (212) 704-9600
                  Fax: (212) 704-4256
                  *Attorneys for Defendant Tone Grant*

RECEIVED

MAY 0 2 2008

TRIAL SUPPORT OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

ARCH INSURANCE COMPANY,                               :

                        Plaintiff,           :

          -against-                                    :

JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R.           :
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON,             :
THOMAS H. DITTMER, NATHAN GANTCHER,                   :
STEPHEN GRADY, TONE GRANT, THOMAS HACKL,              :
DAVID V. HARKINS, SCOTT L. JAECKEL, DENNIS A.         :
KLEJNA, THOMAS H. LEE, ERIC G. LIPOFF, SANTO          :
C. MAGGIO, PETER MCCARTHY, JOSEPH MURPHY,             :
FRANK MUTTERER, RICHARD N. OUTRIDGE,                  :
RONALD L. O'KELLEY, SCOTT A. SCHOEN,                  :
WILLIAM M. SEXTON, GERALD SHERER, PHILIP              :
SILVERMAN and ROBERT C. TROSTEN,                      :

                     Defendants          :
-------------------------------------------------------------------x

Index No.: 08/600029

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                         *ss.:*
COUNTY OF NEW YORK  )

      ELLEN STINES, being duly sworn, deposes and says:

    1.     I am not a party to this action and am 18 years of age or older.

    2.     I am an administrative assistant employed by the Zuckerman Spaeder LLP, attorneys

for Defendant Tone Grant in the above-referenced matter.

    3.     I hereby certify that on this 2nd day of May, 2008, I caused to be served a true and

accurate copy of the foregoing Notice of Appearance via first class mail, postage prepaid

addressed to the following:

John H. Eickemeyer, Esq.
Daniel C. Green, Esq.
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, NY 10019
(212) 407-7700
*Attorneys for Plaintiff Arch Insurance Company*

Jeffrey T. Golenbock, Esq.
GOLENBOCK EISMAN ASSOR
 BELL &PESKO LLP
437 Madison Avenue
New York, NY 10022
(212) 907-7373
*Attorneys for Defendant Phillip R. Bennett*

Paul A. Ferrillo, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8372
*Attorneys for Defendants Leo R. Breitman, Nathan
Gantcher, David V. Harkins, Scott L. Jaeckel,
Thomas H. Lee, Ronald L. O'Kelley, and Scott A.
Schoen*

Thomas C. Wolford, Esq.
NEAL GERBER & EISENBERG, LLP
2 North LaSalle Street
Chicago, IL 60602
(312) 269-5675
*Attorneys for Defendant Thomas H. Dittmer*

Helen Kim, Esq.
KATTEN MUCHIN ROSENMAN, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4525
*Attorneys for Defendant Dennis Klejna*

John R. Jerome, Esq.
SAUL EWING, LLP
245 Park Avenue, 24th Floor
New York, NY 10167
(212) 672-1995
*Attorneys for Defendant Joseph Murphy*

William Fleming, Esq.
GAGE SPENCER & FLEMING, LLP
410 Park Avenue
New York, NY 10022
(212) 769-4900
*Attorneys for Defendants John D. Agoglia
and Peter J. McCarthy*

Brian O'Connor, Esq.
WILKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8251
*Attorneys for Defendant Edwin L. Cox*

Neil A. Goteiner, Esq.
FARELLA, BRAUN & MARTEL
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
(415) 954-4485
*Attorneys for Defendants Sukhmeet
Dhillon and Eric Lipoff*

Lawrence J. Kotler, Esq.
DUANE MORRIS
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1514
*Attorneys for Defendant Stephen Grady*

Scott E. Hershman, Esq.
HUNTON & WILLIAMS
200 Park Avenue, 43rd Floor
New York, NY 10166
(212) 309-1053
*Attorneys for Defendant Santo C. Maggio*

Janet Costello, Esq.
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102
(973) 596-4825
*Attorneys for Defendant Frank Mutterer*

Claire P. Gutekunst, Esq.
PROSKAUER ROSE, LLP
1585 Broadway
New York, NY 10036
(212) 969-3421
*Attorneys for Defendant Richard N. Outridge*

Richard Cashman, Esq.
HELLER EHRMAN, LLP
Time Square Tower
7 Time Square
New York, NY 10036
(212) 847-8796
*Attorneys for Defendant Philip Silverman*

Ivan O. Kline, Esq.
FRIEDMAN & WITTENSTEIN, P.C.
600 Lexington Avenue
New York, NY 10022
(212) 750-8700
*Attorneys for Defendants William M.
Sexton and Gerald Sherer*

Barbara Moses, Esq.
MORVILLO, ABRAMOWITZ, GRAND,
 IASON & SILBERBERG, PC
565 Fifth Avenue
New York, NY 10017
(212) 880-9540
*Attorneys for Defendant Robert C.
Trosten*

Ellen Stines

Sworn to before me this
____ day of May, 2008.

Notary Public

JER WEI CHEN
Notary Public, State of New York
No. 01CH6174210
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires 09/17/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

ARCH INSURANCE COMPANY,                                  :

                                    Plaintiff,           :          Index No.: 08/600029

                                                         :

        -against-                                        :          **NOTICE OF MOTION
                                                         :          FOR ADMISSION *PRO
                                                         :          HAC VICE* OF
JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R.              :          NORMAN L. EISEN**
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON,                :
THOMAS H. DITTMER, NATHAN GANTCHER,                      :
STEPHEN GRADY, TONE GRANT, THOMAS HACKL,                 :
DAVID V. HARKINS, SCOTT L. JAECKEL, DENNIS A.            :
KLEJNA, THOMAS H. LEE, ERIC G. LIPOFF, SANTO             :
C. MAGGIO, PETER MCCARTHY, JOSEPH MURPHY,                :
FRANK MUTTERER, RICHARD N. OUTRIDGE,                     :
RONALD L. O'KELLEY, SCOTT A. SCHOEN,                     :
WILLIAM M. SEXTON, GERALD SHERER, PHILIP                 :
SILVERMAN and ROBERT C. TROSTEN,                         :

                                    Defendants           :

-------------------------------------------------------------------x



**PLEASE TAKE NOTICE** that, upon the accompanying affirmation of Laura E. Neish,

sworn to May 2, 2008, the affidavit of Norman L. Eisen, Esq., with exhibit, annexed thereto, and all

the papers and proceedings heretofore had herein, Defendant Tone Grant will move this Court, on

the 15th day of May, 2008, at 9:30 a.m., at Room 130 of the Supreme Court of the State of New

York, County of New York, 60 Centre Street, New York, New York, for an Order pursuant to 22

NYCRR § 520.11 admitting Norman L. Eisen, Esq. *pro hac vice* as counsel for Tone Grant in this

action, together with such other and further relief as the Court may deem just and proper.



**PLEASE TAKE FURTHER NOTICE** that, pursuant to C.P.L.R. 2214(b), opposing papers,

if any, must be served on the undersigned no later than May 13, 2008.

Dated: New York, New York
       May 2, 2008

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By: _____
    Laura E. Neish, Esq.
    1540 Broadway
    Suite 1604
    New York, New York 10036
    Tel: (212) 704-9600
    Fax: (212) 704-4256

    *Attorneys for Defendant*
    *Tone Grant*

TO:

John H. Eickemeyer, Esq.
Daniel C. Green, Esq.
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, NY 10019
(212) 407-7700
*Attorneys for Plaintiff Arch Insurance Company*

William Fleming, Esq.
GAGE SPENCER & FLEMING, LLP
410 Park Avenue
New York, NY 10022
(212) 769-4900
*Attorneys for Defendants John D. Agoglia and
Peter J. McCarthy*



2

Jeffrey T. Golenbock, Esq.
GOLENBOCK EISMAN ASSOR BELL & PESKO LLP
437 Madison Avenue
New York, NY 10022
(212) 907-7373
*Attorneys for Defendant Phillip R. Bennett*

Paul A. Ferrillo, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8372
*Attorneys for Defendants Leo R. Breitman, Nathan*
*Gantcher, David V. Harkins, Scott L. Jaeckel,*
*Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen*

Brian O'Connor, Esq.
WILKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8251
*Attorneys for Defendant Edwin L. Cox*

Neil A. Goteiner, Esq.
FARELLA, BRAUN & MARTEL
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
(415) 954-4485
*Attorneys for Defendants Sukhmeet Dhillon and Eric Lipoff*

Thomas C. Wolford, Esq.
NEAL GERBER & EISENBERG, LLP
2 North LaSalle Street
Chicago, IL 60602
(312) 269-5675
*Attorneys for Defendant Thomas H. Dittmer*

Lawrence J. Kotler, Esq.
DUANE MORRIS
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1514
*Attorneys for Defendant Stephen Grady*

3

Helen Kim, Esq.
KATTEN MUCHIN ROSENMAN, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4525
*Attorneys for Defendant Dennis Klejna*


Scott E. Hershman, Esq.
HUNTON & WILLIAMS
200 Park Avenue, 43rd Floor
New York, NY 10166
(212) 309-1053
*Attorneys for Defendant Santo C. Maggio*

John R. Jerome, Esq.
SAUL EWING, LLP
245 Park Avenue, 24th Floor
New York, NY 10167
(212) 672-1995
*Attorneys for Defendant Joseph Murphy*

Janet Costello, Esq.
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102
(973) 596-4825
*Attorneys for Defendant Frank Mutterer*

Claire P. Gutekunst, Esq.
PROSKAUER ROSE, LLP
1585 Broadway
New York, NY 10036
(212) 969-3421
*Attorneys for Defendant Richard N. Outridge*

Ivan O. Kline, Esq.
FRIEDMAN & WITTENSTEIN, P.C.
600 Lexington Avenue
New York, NY 10022
(212) 750-8700
*Attorneys for Defendants William M. Sexton and
Gerald Sherer*

Richard Cashman, Esq.
HELLER EHRMAN, LLP
Time Square Tower
7 Time Square
New York, NY 10036
(212) 847-8796
*Attorneys for Defendant Philip Silverman*


Barbara Moses, Esq.
MORVILLO, ABRAMOWITZ, GRAND,
 IASON & SILBERBERG, PC
565 Fifth Avenue
New York, NY 10017
(212) 880-9540
*Attorneys for Defendant Robert C. Trosten*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x

ARCH INSURANCE COMPANY,                                    :
                                                           :         Index No.: 08/600029
                                          Plaintiff,       :
                                                           :
                                                           :
                     -against-                             :         **AFFIRMATION OF**
                                                           :         **LAURA E. NEISH**
JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R.                :         **IN SUPPORT OF THE**
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON,                  :         ***PRO HAC VICE***
THOMAS H. DITTMER, NATHAN GANTCHER,                        :         **ADMISSION OF**
STEPHEN GRADY, TONE GRANT, THOMAS HACKL,                   :         <u>**NORMAN L. EISEN**</u>
DAVID V. HARKINS, SCOTT L. JAECKEL, DENNIS A.              :
KLEJNA, THOMAS H. LEE, ERIC G. LIPOFF, SANTO               :
C. MAGGIO, PETER MCCARTHY, JOSEPH MURPHY,                  :
FRANK MUTTERER, RICHARD N. OUTRIDGE,                       :
RONALD L. O'KELLEY, SCOTT A. SCHOEN,                       :
WILLIAM M. SEXTON, GERALD SHERER, PHILIP                   :
SILVERMAN and ROBERT C. TROSTEN,                           :
                                                           :
                                          Defendants       :
------------------------------------------------------------------------x

   Laura E. Neish, an attorney duly admitted to practice law before the courts of this State,

under the penalties of perjury, hereby affirms as follows:

   1.  I am an attorney with Zuckerman Spaeder LLP, attorneys of record for Tone Grant

herein. I make this affirmation in support of the motion for *pro hac vice* admission of Norman L.

Eisen, Esq., and in compliance with Section 520.11 of the Rules of the Court of Appeals.

   2.  Accompanying this affirmation as Exhibit 1 is the affidavit of Norman L. Eisen,

duly sworn the 1st of May, 2008.

   3.  As Norman L. Eisen's affidavit shows, he is a member in good standing of the Bar

of the District of Columbia.

   4.  By allowing Mr. Eisen to be admitted *pro hac vice*, he can appear, in association

with me, to represent his client, a party in the above-entitled proceeding before this Court.

5.    I will keep Mr. Eisen apprised of all matters pertaining to this case, and all papers

in connection therewith should be served upon me.

6.    There has been no prior request for this relief in this action.

WHEREFORE, it is prayed that the Court grant the relief requested in the Notice of

Motion, granting leave to Norman L. Eisen, Esq., to make appearances before this Court *pro hac*

*vice* with the undersigned counsel on behalf of Tone Grant and for such other and further relief as

the Court deems just and proper.

Dated: May 2, 2008

Laura E. Neish

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------x
                                  :

ARCH INSURANCE COMPANY,               :      Index No.: 08/600029

                       Plaintiff,      :

                                  :

           -against-            :      **AFFIDAVIT OF**
                                  :      **NORMAN L. EISEN**
JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R.    :     **IN SUPPORT OF HIS**
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON,   :     ***PRO HAC VICE***
THOMAS H. DITTMER, NATHAN GANTCHER,       :     **ADMISSION**
STEPHEN GRADY, TONE GRANT, THOMAS HACKL, :
DAVID V. HARKINS, SCOTT L. JAECKEL, DENNIS A.:
KLEJNA, THOMAS H. LEE, ERIC G. LIPOFF, SANTO   :
C. MAGGIO, PETER MCCARTHY, JOSEPH MURPHY, :
FRANK MUTTERER, RICHARD N. OUTRIDGE,       :
RONALD L. O'KELLEY, SCOTT A. SCHOEN,        :
WILLIAM M. SEXTON, GERALD SHERER, PHILIP    :
SILVERMAN and ROBERT C. TROSTEN,         :
                                  :

                      Defendants      :
---------------------------------------------------------------x

DISTRICT OF COLUMBIA :
                   :  SS.:
                   :

**NORMAN L. EISEN**, being duly sworn, deposes and says:

        1.       I am a partner at Zuckerman Spaeder LLP, resident in its Washington, D.C. office.

I am counsel for Tone Grant in connection with matters in issue in this proceeding. Tone Grant

has requested that I represent him before this Court. Accordingly, I hereby respectfully seek

admission *pro hac vice* to participate as counsel for Tone Grant in this matter, together with

Laura E. Neish, Esq., upon whom all papers should be served.

        2.       I am a member in good standing of the Bar of the District of Columbia, as

evidenced by the Certificate of Good Standing attached hereto as Exhibit A. I have not been the

subject of any disciplinary proceedings or criminal charges by any Bar or court during the last

five years.

3.      I have not been denied admission to the courts of any state or to any federal court

during the last five years.

4.      I am familiar with, and shall comply with, the standards of professional conduct

imposed upon members of the Bar of the State of new York, including the rules of court

governing the conduct of attorneys and the Disciplinary Rules of the Code of Professional

Responsibility.

_____
                                    Norman L. Eisen

Sworn to and subscribed before me
on this the 1ˢᵗ day of May, 2008.

_____
       Notary Public

DARLENE P. WHITE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires August 14, 2012

2



# District of Columbia Court of Appeals
## Committee on Admissions
### 500 Indiana Avenue, N.W. — Room 4200
### Washington, D. C. 20001
### 202 / 879-2710

I, GARLAND PINKSTON, JR., Clerk of the District of Columbia

Court of Appeals, do hereby certify that

NORMAN L. EISEN

was on the     13TH     day of          NOVEMBER, 1992,

duly qualified and admitted as an attorney and counselor and

entitled to practice before this Court and is, on the date

indicated below, an active member in good standing of this Bar.

In Testimony Whereof, I have
hereunto subscribed my name
and affixed the seal of this
Court at the City of
Washington, D.C., on May 1,
2008.

GARLAND PINKSTON, JR., CLERK

By: _____
                Deputy Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

ARCH INSURANCE COMPANY,                    :       Index No.: 08/600029

                           Plaintiff,       :

                                    :       **ORDER FOR THE**

               -against-           :       ***PRO HAC VICE*** **ADMISSION**

                                    :       **OF NORMAN L. EISEN**

JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R.  :
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON, :
THOMAS H. DITTMER, NATHAN GANTCHER,    :
STEPHEN GRADY, TONE GRANT, THOMAS HACKL, :
DAVID V. HARKINS, SCOTT L. JAECKEL, DENNIS A. :
KLEJNA, THOMAS H. LEE, ERIC G. LIPOFF, SANTO  :
C. MAGGIO, PETER MCCARTHY, JOSEPH MURPHY, :
FRANK MUTTERER, RICHARD N. OUTRIDGE,    :
RONALD L. O'KELLEY, SCOTT A. SCHOEN,      :
WILLIAM M. SEXTON, GERALD SHERER, PHILIP   :
SILVERMAN and ROBERT C. TROSTEN,       :

                           Defendants    :

------------------------------------------------------------------x

**THIS MATTER**, having been brought by Zuckerman Spaeder LLP, 1540 Broadway, Suite 1604, New York, New York 10019, attorneys for defendant Tone Grant, for an Order permitting the *pro hac vice* admission of Norman L. Eisen, Esq., and the Court having considered the papers submitted and for good cause shown;

It is on this _5_ day of _June_, 2008,

**ORDERED** that the *pro hac vice* admission of Norman L. Eisen, Esq., of the law firm of Zuckerman Spaeder LLP, is hereby granted; and it is

**FURTHER ORDERED** that Norman L. Eisen, Esq., of the law firm of Zuckerman Spaeder LLP, 1800 M Street, N.W., Suite 1000, Washington, D.C. 20006, is hereby admitted to the Bar of the State of New York for the purpose of representing defendant Tone Grant before this Court in this action; and it is

**FURTHER ORDERED** that:

1. Norman L. Eisen, Esq. shall comply with the standards of professional conduct imposed upon members of the New York bar, including the Rules of Court governing the conduct of attorneys and the Disciplinary Rules of the Code of Professional Responsibility; and

2. Norman L. Eisen, Esq. shall be subject to the jurisdiction of the courts of this State with respect to any acts occurring during the course of the attorney's participation in this matter.

3. A copy of this order shall be served on all parties within ten (10) days.

_____
Honorable Helen E. Freedman, J.S.C.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x

ARCH INSURANCE COMPANY,                             :

                          Plaintiff,            :

                                              :

                  -against-          :

JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R. :
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON, :
THOMAS H. DITTMER, NATHAN GANTCHER,           :
STEPHEN GRADY, TONE GRANT, THOMAS HACKL, :
DAVID V. HARKINS, SCOTT L. JAECKEL, DENNIS A. :
KLEJNA, THOMAS H. LEE, ERIC G. LIPOFF, SANTO :
C. MAGGIO, PETER MCCARTHY, JOSEPH MURPHY, :
FRANK MUTTERER, RICHARD N. OUTRIDGE,          :
RONALD L. O'KELLEY, SCOTT A. SCHOEN,           :
WILLIAM M. SEXTON, GERALD SHERER, PHILIP      :
SILVERMAN and ROBERT C. TROSTEN,               :
                                          :

                         Defendants     :
-----------------------------------------------------------------------x

Index No.: 08/600029

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                              *ss.:*
COUNTY OF NEW YORK  )

         ELLEN STINES, being duly sworn, deposes and says:

1.      I am not a party to this action and am 18 years of age or older.

2.      I am an administrative assistant employed by the Zuckerman Spaeder LLP, attorneys

for Defendant Tone Grant in the above-referenced matter.

3.      I hereby certify that on this 2nd day of May, 2008, I caused to be served a true and

accurate copy of the foregoing NOTICE OF MOTION FOR ADMISSION *PRO HAC VICE* OF

NORMAN L. EISEN; AFFIRMATION OF LAURA E. NEISH IN SUPPORT OF THE *PRO

HAC VICE* ADMISSION OF NORMAN L. EISEN; AFFIDAVIT OF NORMAN L. EISEN IN

1796037.1

SUPPORT OF HIS *PRO HAC VICE* ADMISSION and PROPOSED ORDER via first class

mail, postage prepaid addressed to the following:

John H. Eickemeyer, Esq.
Daniel C. Green, Esq.
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, NY 10019
(212) 407-7700
*Attorneys for Plaintiff Arch Insurance Company*

William Fleming, Esq.
GAGE SPENCER & FLEMING, LLP
410 Park Avenue
New York, NY 10022
(212) 769-4900
*Attorneys for Defendants John D. Agoglia
and Peter J. McCarthy*

Jeffrey T. Golenbock, Esq.
GOLENBOCK EISMAN ASSOR
 BELL &PESKO LLP
437 Madison Avenue
New York, NY 10022
(212) 907-7373
*Attorneys for Defendant Phillip R. Bennett*

Brian O'Connor, Esq.
WILKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8251
*Attorneys for Defendant Edwin L. Cox*

Paul A. Ferrillo, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8372
*Attorneys for Defendants Leo R. Breitman, Nathan
Gantcher, David V. Harkins, Scott L. Jaeckel,
Thomas H. Lee, Ronald L. O'Kelley, and Scott A.
Schoen*

Neil A. Goteiner, Esq.
FARELLA, BRAUN & MARTEL
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
(415) 954-4485
*Attorneys for Defendants Sukhmeet
Dhillon and Eric Lipoff*

Thomas C. Wolford, Esq.
NEAL GERBER & EISENBERG, LLP
2 North LaSalle Street
Chicago, IL 60602
(312) 269-5675
*Attorneys for Defendant Thomas H. Dittmer*

Lawrence J. Kotler, Esq.
DUANE MORRIS
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1514
*Attorneys for Defendant Stephen Grady*

Helen Kim, Esq.
KATTEN MUCHIN ROSENMAN, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4525
*Attorneys for Defendant Dennis Klejna*

Scott E. Hershman, Esq.
HUNTON & WILLIAMS
200 Park Avenue, 43rd Floor
New York, NY 10166
(212) 309-1053
*Attorneys for Defendant Santo C. Maggio*

1796037.1

John R. Jerome, Esq.
SAUL EWING, LLP
245 Park Avenue, 24th Floor
New York, NY 10167
(212) 672-1995
*Attorneys for Defendant Joseph Murphy*
Claire P. Gutekunst, Esq.
PROSKAUER ROSE, LLP
1585 Broadway
New York, NY 10036
(212) 969-3421
*Attorneys for Defendant Richard N. Outridge*

Richard Cashman, Esq.
HELLER EHRMAN, LLP
Time Square Tower
7 Time Square
New York, NY 10036
(212) 847-8796
*Attorneys for Defendant Philip Silverman*

Janet Costello, Esq.
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102
(973) 596-4825
*Attorneys for Defendant Frank Mutterer*
Ivan O. Kline, Esq.
FRIEDMAN & WITTENSTEIN, P.C.
600 Lexington Avenue
New York, NY 10022
(212) 750-8700
*Attorneys for Defendants William M.*
*Sexton and Gerald Sherer*

Barbara Moses, Esq.
MORVILLO, ABRAMOWITZ, GRAND,
 IASON & SILBERBERG, PC
565 Fifth Avenue
New York, NY 10017
(212) 880-9540
*Attorneys for Defendant Robert C.*
*Trosten*

_____
Ellen Stines

Sworn to before me this
2nd day of May, 2008.

_____
Notary Public

JER WEI CHEN
Notary Public, State of New York
No. 01CH6174210
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires 09/17/2011

3

1796037.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------

ARCH INSURANCE COMPANY,

                          Plaintiff,

           -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER, STEPHEN
GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC
G. LIPOFF, SANTO C. MAGGIO, PETER
MCCARTHY, JOSEPH MURPHY, FRANK
MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN and ROBERT C.
TROSTEN,

                        Defendants.

-------------------------------------------------------------

Index No. 08/600029
IAS Part 39

Justice Helen E. Freedman

## AFFIRMATION OF JOHN H. EICKEMEYER IN SUPPORT OF ARCH INSURANCE COMPANY'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

JOHN H. EICKEMEYER affirms under penalty of perjury the following:

1.      I am a member of the bar of the State of New York.  I am a shareholder of Vedder Price P.C. and counsel to Plaintiff Arch Insurance Company ("Arch") in this matter.

2.      I respectfully submit this affirmation in support of Arch's Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint (the "Opposition").

3.      The following is a list of the exhibits cited in Arch's Opposition.  A true and correct copy of each document is attached hereto.

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Press release, "Refco Announces Undisclosed Affiliate Transaction" (Oct. 10, 2005) |
| B | Press release, "Refco Supplements Prior Disclosure" (Oct. 11, 2005) |
| C | Reply Brief in Support of Defendant Phillip R. Bennett's Motion to Stay Action, *Arch Ins. Co. v. Bennett, et al.*, No. 06/600805 (N.Y. Sup. Ct.) |
| D | Reply Memorandum in Support of Officer Defendants' Motion to Dismiss or Stay the Amended Complaint, *Arch Ins. Co. v. Bennett, et al.*, No. 06/600805 (N.Y. Sup. Ct.) |
| E | Opposition of Defendants Klejna, Murphy, Sexton, Sherer and Silverman to Motion to Intervene of Arch Insurance Company, *Axis Reins. Co. v. Bennett, et al.*, No. 07-01712 (RDD) (Bankr. S.D.N.Y.) |
| F | Excerpts of Aug. 30, 2007, Hearing Transcript, *Axis Reins. Co. v. Bennett, et al.*, No. 07-01712 (RDD) (Bankr. S.D.N.Y.) |
| G | Indictment, *United States v. Grant*, S4 05 cr 1192 (NRB) |
| H | April 17, 2008, Minute Entry, *United States v. Grant*, 05 cr 1192 (NRB) |
| I | Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett, *Arch Ins. Co. v. Agoglia*, No. 08/600029 (N.Y. Sup. Ct.) |
| J | Stipulation of Partial Discontinuance with Prejudice, *Arch Ins. Co. v. Agoglia*, No. 08/600029 (N.Y. Sup. Ct.) |
| K | Allied World Assurance Company's Motion to Withdraw the Reference from the Bankruptcy Court, *Murphy v. Allied World Assurance Co.*, No. 08-01133 (RDD) (Bankr. S.D.N.Y.) |
| L | November 12, 2007, letter from John D. Hughes |
| M | Defendant Dennis A. Klejna's Memorandum of Law in Support of Motion to Enjoin Arbitration, *Murphy v. Allied World Assurance Co.*, No. 08-01133 (RDD) (Bankr. S.D.N.Y.) |

Dated: New York, New York
     May 8, 2008

_____
John H. Eickemeyer

# Exhibit A

EX-99.1 2 a05-17426_1ex99d1.htm EX-99.1

**Exhibit 99.1**

## Refco Announces Undisclosed Affiliate Transaction

NEW YORK, October 10, 2005 - Refco Inc. (NYSE: RFX) today announced that it had discovered through an internal review a receivable owed to the Company by an entity controlled by Phillip R. Bennett, Chief Executive Officer and Chairman of the Board of Directors, in the amount of approximately $430 million. Mr. Bennett today repaid the receivable in cash, including all accrued interest. Based on the results of the review to date, the Company believes that the receivable was the result of the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company, which may have been uncollectible. The Company believes that all customer funds on deposit are unaffected by these activities. Independent counsel and forensic auditors have been retained to assist the Audit Committee in an investigation of these matters.

This receivable from the entity controlled by Mr. Bennett was reflected on the Company's prior period financials, as well as on the Company's May 31, 2005 balance sheet. The receivable was not shown as a related party transaction in any such financials. For that reason, and after consultation by the Audit Committee with the Company's independent accountants, the Company determined, on October 9, 2005, that its financial statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28, 2004, February 28, 2005, and May 31, 2005, taken as a whole, for each of Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon.

At the request of the Board of Directors Mr. Bennett has taken a leave of absence. William M. Sexton, who recently announced his impending resignation as Executive Vice President and Chief Operating Officer of Refco Inc. and Refco Group Ltd., LLC, will remain with the Company and has been appointed as Chief Executive Officer of Refco Inc. Mr. Sexton said, "I am staying at Refco because I believe in our employees, customers and franchise. I am excited about the opportunities ahead and am eager to work with our management team to help the Company achieve even greater success." Joseph J. Murphy, Chief Executive Officer of Refco Global Futures and President of Refco LLC, has been appointed President of Refco Inc.

and Refco Capital Markets, Ltd. Mr. Murphy said, "We continue to see strong momentum across our businesses with record derivative contract and foreign exchange volume in the quarter." Mr. Sexton and Mr. Murphy have been leaders of the senior management team at Refco for the past six years, and have been instrumental in the Company's growth and success. Also at the request of the Board, Santo C. Maggio, President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd., has taken a leave of absence. Peter McCarthy has been appointed President of Refco Securities, LLC.

In light of the Audit Committee's investigation, the Company, Refco Group Ltd., LLC and Refco Finance Inc. each will likely delay the filing of its Quarterly Report on Form 10-Q for the quarterly period ending August 31, 2005, due on October 17, 2005. The Company cannot estimate at this time when the Fiscal 2006 second quarter Form 10-Q filings will be made or when the Audit Committee investigation will be concluded.

Business Highlights

For the quarter ended August 31, 2005, derivatives brokerage and clearing contract volumes increased by 61 million contracts, or 40.3%, to 212 million contracts for the second quarter compared to the same quarter a year ago, and by 5 million contracts, or 2.5%, compared to the quarter ended May 31, 2005.

Foreign exchange dollar volumes increased by $172 billion, or 56.4%, to $477.4 billion for the second quarter compared to the same quarter a year ago, and by $67.6 billion, or 16.5%, compared to the quarter ended May 31, 2005.

The average net customer securities financing portfolio, or average domestic net repo book, increased by 27.4% for the quarter ended August 31, 2005 to $47.0 billion from $36.9 billion for the quarter ended August 31, 2004.

As of August 31, 2005, cash and cash equivalents were $648.6 million (of which approximately $230 million was subsequently used to redeem a portion of the Company's subordinated debt), and regulated subsidiaries reported net capital of $665.8 million and excess

2

regulatory capital of $279.3 million. These figures do not reflect the $433 million received today from Mr. Bennett to settle his outstanding receivable.

### About Refco Inc.

Refco Inc. (NYSE: RFX) is a diversified financial services organization with operations in 14 countries and an extensive global institutional and retail client base. Refco's worldwide subsidiaries are members of principal U.S. and international exchanges, and are among the most active members of futures exchanges in Chicago, New York, London and Singapore. In addition to its futures brokerage activities, Refco is a major broker of cash market products, including foreign exchange, foreign exchange options, government securities, domestic and international equities, emerging market debt, and OTC financial and commodity products. Refco is one of the largest global clearing firms for derivatives. For more information, visit www.refco.com.

### Cautionary Note Regarding Forward-Looking Statements

This press release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of the 1995. In this press release, all statements other than statements of historical fact are forward looking statements that involve risks and uncertainties and actual results could differ. These forward looking statements are based on assumptions that we have made in light of our experience and on our perceptions of historical events, current conditions, expected future developments and other factors we believe are appropriate under the circumstances. Although we believe that these forward looking statements have a reasonable basis, you should be aware that numerous factors, including the outcome of the Audit Committee's investigation; changes in domestic and international market conditions; competition; our ability to attract and retain customers; our relationships with introducing brokers; retention of our management team; our ability to manage our growth or integrate future acquisitions, our exposure to significant credit risks with respect to our customers, international operations and expansion, system failures, the performance of third-party suppliers, changes in regulations or exchange membership requirements, the effectiveness of compliance and risk

3

management methods, potential litigation or investigations, employee or introducing broker misconduct or errors, reputational harm, and changes in capital requirements, could cause actual results to differ materially from our expectations. Because of these factors, we caution that you should not place undue reliance on any of our forward looking statements. Further, any forward looking statement speaks only as of today. It is impossible for us to predict how new events or developments may affect us. The Company disclaims any intention or obligation to update or revise any forward-looking statements, either to reflect new information or developments or for any other reason.

4

# Exhibit B

EX-99.2 3 a05-17426_1ex99d2.htm EX-99.2

Exhibit 99.2

### Refco Supplements Prior Disclosure

NEW YORK, October 11, 2005 - Refco Inc. (NYSE: RFX) today supplemented its disclosure yesterday regarding its discovery of a receivable owed to the Company by an entity controlled by Phillip R. Bennett. The receivable in the amount of approximately $430 million was repaid yesterday in full. Based on the results of the internal investigation to date, the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998. These obligations were transferred periodically to the entity controlled by Mr. Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts. The fact that the receivable was from a company controlled by Mr. Bennett was hidden at the end of quarterly and annual reporting periods by reason of transfers to a third party customer account that we currently believe is unaffiliated with Mr. Bennett or anyone else at the Company. The nature and facts surrounding these transfers are being investigated by the Audit Committee.

The Company confirms that it has adequate liquidity to run the business in the ordinary course.

The Company also announced that it had voluntarily contacted the United States Securities and Exchange Commission, the Commodity Futures Trading Commission, the New York Stock Exchange, and other regulators and is cooperating fully with them.

### About Refco Inc.

Refco Inc. (NYSE: RFX) is a diversified financial services organization with operations in 14 countries and an extensive global institutional and retail client base. Refco's worldwide subsidiaries are members of principal U.S. and international exchanges, and are

among the most active members of futures exchanges in Chicago, New York, London and Singapore. In addition to its futures brokerage activities, Refco is a major broker of cash market products, including foreign exchange, foreign exchange options, government securities, domestic and international equities, emerging market debt, and OTC financial and commodity products. Refco is one of the largest global clearing firms for derivatives. For more information, visit www.refco.com.

### Cautionary Note Regarding Forward-Looking Statements

This press release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of the 1995. In this press release, all statements other than statements of historical fact are forward looking statements that involve risks and uncertainties and actual results could differ. These forward looking statements are based on assumptions that we have made in light of our experience and on our perceptions of historical events, current conditions, expected future developments and other factors we believe are appropriate under the circumstances. Although we believe that these forward looking statements have a reasonable basis, you should be aware that numerous factors, including the outcome of the Audit Committee's investigation; changes in domestic and international market conditions; competition; our ability to attract and retain customers; our relationships with introducing brokers; retention of our management team; our ability to manage our growth or integrate future acquisitions, our exposure to significant credit risks with respect to our customers, international operations and expansion, system failures, the performance of third-party suppliers, changes in regulations or exchange membership requirements, the effectiveness of compliance and risk management methods, potential litigation or investigations, employee or introducing broker misconduct or errors, reputational harm, and changes in capital requirements, could cause actual

results to differ materially from our expectations. Because of these factors, we caution that you should not place undue reliance on any of our forward looking statements. Further, any forward looking statement speaks only as of today. It is impossible for us to predict how new events or developments may affect us. The Company disclaims any intention or obligation to update or revise any forward-looking statements, either to reflect new information or developments or for any other reason.

# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------- x

ARCH INSURANCE COMPANY,

       Plaintiff

    - against -

PHILLIP R. BENNETT, LEO R. BREITMAN, NATHAN
GANTCHER, TONE GRANT, DAVID V. HARKINS,
SCOTT L. JAECKEL, DENNIS A. KLEJNA, THOMAS
H. LEE, SANTO C. MAGGIO, JOSEPH MURPHY,
RONALD L. O'KELLEY, PERRY ROTKOWITZ,
SCOTT A. SCHOEN, WILLIAM M. SEXTON,
GERALD SHERER, PHILIP SILVERMAN and
ROBERT C. TROSTEN.

       Defendants.

-------------------------------------------------------------- x

Index No.   06/600805

**REPLY BRIEF IN SUPPORT OF DEFENDANT PHILLIP R. BENNETT'S MOTION TO STAY ACTION**

*360010.1*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

ARGUMENT ................................................................................................................ 1

A.    THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT A STAY
      PENDING COMPLETION OF BENNETT'S RELATED CRIMINAL TRIAL ................. 1

B.    ALL THE RELEVANT FACTORS WEIGH IN FAVOR OF GRANTING A STAY ........ 3

      1.   Arch Will Not Suffer Prejudice From A Stay Of This Action ........................................ 3

      2.   A Stay Has The Potential To Determine All Questions In This Action .......................... 4

CONCLUSION ............................................................................................................... 7

## TABLE OF AUTHORITIES

### CASES

*Access Capital, Inc. v. DeCicco*, 302 A.D.2d 48, 752 N.Y.S.2d 658 (1st Dept. 2002).................3

*Britt v. International Bus Services, Inc.*, 255 A.D.2d 143,
    679 N.Y.S.2d 616 (1st Dept. 1998) ..............................................................................1

*Budget Mortgage Bankers, Ltd. v. Maza*, 5 Misc.3d 1031, 799 N.Y.S.2d 159, 2004 WL
    2952870 (N.Y. Sup.)........................................................................................................5

*DeSiervi v. Liverzani*, 136 A.D.2d 527, 523 N.Y.S.2d 147 (2d Dept. 1988) .............................3, 5

*Employers Insurance Of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122 (Ill. 1999) ..........3

*Garden City Irrigation, Inc. v. Salamanca*, 7 Misc.3d 1014,
    801 N.Y.S.2d 234, 2005 WL 927001 (April 18, 2005, N.Y. Sup.) ......................................5, 6

*In re Kopf*, 169 A.D.2d 428, 564 N.Y.S.2d 149 (1st Dept. 1991) ................................................2

*Oleshkeo v. NY Liquor Authority*, 21 N.Y.2d 778, 228 N.Y.S.2d 474,
    235 N.E.2d 447 (1968) .....................................................................................................2

*Pierre Associates Incorporated v. Citizens Casualty Co.*, 32 A.D.2d 495,
    304 N.Y.S.2d 158 (1st Dept. 1969) ..................................................................................4

*Somoza v. Pechnik*, 3 A.D.3d 394, 772 N.Y.S.2d 2 (1st Dept. 2004) .............................................4

*State v. Carey Resources, Inc.*, 97 A.D.2d 508, 467 N.Y.S.2d 876 (2d Dept. 1983).....................2

*Stolowski v. 234 East 178th Street LLC*, 12 Misc.3d 1159, 2006 WL 1408410 (N.Y.Sup.)
    (May 22, 2006) ................................................................................................................1

*Stuart v. Tomasino*, 148 A.D.2d 370 (1st Dept. 1989) .................................................................2

*Zonghetti v. Jeromack*, 140 A.D.2d 561, 541 N.Y.S.2d 235 799 N.Y.S.2d 159,
    2004 WL 2952870 (N.Y. Sup.) ........................................................................................1

### STATUTES

C.P.L.R. § 2201 ..........................................................................................................................5

Defendant Phillip R. Bennett submits this Reply Brief in support of his motion for a stay of plaintiff Arch Insurance Company's ("Arch") action for declaratory judgment that it is not obligated to advance defendant Bennett's defense fees and costs in connection with his defense of various lawsuits brought against him arising out of the demise of Refco, Inc. (Hereinafter, these lawsuits are collectively referred to as the "underlying litigations.")

## ARGUMENT

**A.     The Court Should Exercise Its Discretion to Grant a Stay Pending Completion of Bennett's Related Criminal Trial.**

As demonstrated in Bennett's opening brief, it is well settled that the Court has broad discretion to grant a stay of a civil action pending completion of a related criminal action in order to avoid the risk of inconsistent adjudications, application of proof and potential waste of judicial resources. *Zonghetti v. Jeromack*, 140 A.D. 2d 561, 541 N.Y.S.2d 235 (1st Dept. 1989; *Budget Mortgage Bankers, Ltd. v. Maza*, 5 Misc.3d 1031(A), 799 N.Y.S.2d 159, 2004 WL 2952870 at *3-4 (N.Y. Sup.).

The law is also clear that a defendant's intention to invoke his constitutional right against self incrimination is a compelling factor in the court's exercise of its discretion. *Britt v. International Bus Services, Inc.*, 255 A.D.2d 143, 144, 679 N.Y.S.2d 616 (1st Dept. 1998). Public poicy strongly favors disposition of cases on their merits. Forcing Bennett to litigate this action while invoking his right not to testify would be contrary to this policy. *Stolowski v. 234 East 178th Street LLC*, 12 Misc.3d 1159(A), 2006 WL 1408410 (N.Y.Sup.) (May 22, 2006) (granting a limited stay of a civil action as to individuals against whom criminal actions were pending). Only through a stay of this action can Bennett's constitutional right against self-incrimination *and* his right to mount a proper defense against the charges asserted by Arch be preserved.

Arch argues that the Court is not *obligated* to grant a stay, a point defendant does not dispute. *See* Opposition at 2. In support of its argument that the Court should exercise its discretion to deny a stay, Arch cites a number of cases in which the courts have declined to grant stays, but without exception these cases are inapposite, and are distinguishable both factually and legally.

For example, in *Oleshkeo v. NY Liquor Auth.*, 21 N.Y.2d 778, 228 N.Y.S.2d 474, 235 N.E.2d 447 (1968), the court refused to enjoin the State Liquor Authority from proceeding with a hearing to revoke the plaintiff's liquor license, despite the fact that the plaintiff was facing a criminal trial arising out of related events, because the plaintiff "had not shown exhaustion of his rights to protect himself in other ways or satisfactorily explained an inordinate delay in bringing his criminal prosecution to trial, or why he had not moved for dismissal of the indictment because of such delay." *Id* at 780. In this case, Bennett's criminal trial is scheduled to commence this coming March, and a stay during the pendency of the criminal proceeding would not plainly not create an inordinate delay

Arch also mistakenly relies upon *In re Kopf*, 169 A.D.2d 428, 429, 564 N.Y.S.2d 149 (1st Dept. 1991), and *Stuart v. Tomasino*, 148 A.D.2d 370, 373 (1st Dept. 1989). The court in both cases declined to issue stays pending the completion of criminal *investigations*; however, there were no criminal *actions* pending against either defendant. Thus, unlike in Bennett's circumstances, it was unclear whether there would in fact be criminal proceedings commenced, and if so, when they might start or end.

Arch's additional citations address varying points of law that are not relevant here. *See State v. Carey Resources, Inc.*, 97 A.D.2d 508, 467 N.Y.S.2d 876 (2d Dept. 1983) (remitting case to Supreme Court to conduct an *in camera* inquiry to assess the validity of the

assertion of the privilege against self-incrimination where officer of corporation was invoking the privilege to decline to produce records and documents of the corporation over which he had custody in a representative capacity); *Access Capital, Inc. v. DeCicco*, 302 A.d.2d 48, 51-53, 752 N.Y.S.2d 658, (1st Dept. 2002) (ruling on whether summary judgment is appropriate where a defendant asserts the privilege against self-incrimination and fails to present evidence on his own behalf in a civil case).

This action is most similar to *DeSiervi v. Liverzani*, 136 A.D.2d 527, 523 N.Y.S.2d 147 (2d Dept. 1988), in which the Appellate Division upheld the trial court's grant of the defendant's motion to stay pending the resolution of a criminal prosecution against him. The court in *DeSiervi* found that while the stay of the civil action "may cause inconvenience and delay to the plaintiff, the protection of [defendant's] constitutional right against self-incrimination is the more important consideration." *Id.* at 148. The situation here is identical. The protection of Bennett's constitutional right against self-incrimination is plainly of greater importance than the plaintiff's interest in avoiding a short delay.

**B.    All the Relevant Factors Weigh in Favor of Granting a Stay.**

1.    **Arch will not suffer prejudice from a stay of this action.**

In its Opposition, Arch identifies two ways in which it claims it would suffer prejudice if this action is stayed. Both are meritless.

*First*, Arch claims that Defendants may argue that under Illinois law, Arch has waived its ability to deny coverage for the underlying litigations if Arch fails to prosecute this declaratory judgment action. *See* Opposition at 5. That principal of Illinois law, however, already has been satisfied by this action. Arch relies upon *Employers Ins. Of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1138 (Ill. 1999), which holds that "(w)here an insurer waits to bring its declaratory judgment until after the underlying action has been resolved by judgment

or settlement, the insurer's declaratory judgment is untimely as a matter of law." Arch has brought its declaratory judgment action, thus satisfying the requirement articulated by the court in *Ehlco*. Arch does not explain how a stay issued by the Court, over Arch's objection, would somehow make Arch's declaratory judgment action untimely, where the action was brought before the underlying litigations have been resolved.

*Second*, Arch argues that it will be prejudiced if it faces a settlement demand for its limits and has not obtained a declaration of its rights. *See* Opposition at 5. This claim is entirely speculative. There have been no such settlement demands, and Arch has not presented the Court with any basis to believe that this will occur at any time in the near future. Indeed, the underlying litigations have only just begun.

Moreover, Arch has not demonstrated that the potential judgment, settlement and defense costs in connection with the underlying litigations will ever amount to more than the Arch excess floor. There is certainly no need for Arch to resolve these issues before the criminal trial has been completed.

In short, Arch has not demonstrated that it would be prejudiced by a delay of this case until the upcoming criminal proceeding is completed. In sharp contrast, there can be no dispute that Bennett would be seriously prejudiced if he were forced to choose between his constitutional right against self-incrimination and responding to the merits of Arch's claims.

## 2.    A stay has the potential to determine all questions in this action.

In its Opposition, Arch argues that the Court should deny the stay because the resolution of the criminal case will not dispose of all the issues in this action. *See* Opposition at 7. Arch relies upon *Pierre Associates Incorporated v. Citizens Cas. Co.*, 32 A.D.2d 495, 496, 304 N.Y.S.2d 158, 160 (1st Dept. 1969) and *Somoza v. Pechnik*, 3 A.D.3d 394, 394, 772 N.Y.S.2d 2, 3 (1st Dept. 2004) for the proposition that a stay of one action is appropriate only

where the decision in one will determine all the question in the other. But neither of these cases involve a stay requested for the pendency of a criminal proceeding, and thus the important constitutional right to the Fifth Amendment was not at stake in either case. These cases do not overrule the authority cited in Bennett's opening brief stating that, in exercising its discretion under C.P.L.R. § 2201, the Court should consider whether a stay would serve to reduce the scope of discovery and to simplify the issues. See *DeSiervi v. Liverzani*, 136 A.D.2d 527, 528, 523 N.Y.S.2d 147 (2d Dept. 1988); *Budget Mortgage Bankers, Ltd. v. Maza*, 5 Misc.3d 1031(A), 799 N.Y.S.2d 159, 2004 WL 2952870 at *3-4 (N.Y. Sup.).

Arch also argues that the Court should deny a stay because "a verdict *in favor* of Bennett would be unlikely to have any impact on this case." Opposition at 8, *emphasis added*. But the fact that a verdict *against* Bennett would resolve many of the issues in this case is enough to warrant a stay. In evaluating whether to grant a stay, "the Court must consider the collateral estoppel effect that would result *if* [defendant] were to be found guilty after trial or plead guilty," *Garden City Irrigation, Inc. v. Salamanca*, 7 Misc.3d 1014(A), 801 N.Y.S.2d 234, 2005 WL 927001 (April 18, 2005, N.Y. Sup.), *emphasis added*.[1] Thus the Court does not require certainty that a criminal proceeding will result in collateral estoppel in order to stay the proceeding.

The court in *Garden City* stayed the prosecution of the civil case pending the final determination of the criminal action against the same defendant, where the defendant indicated

---

[1] In its Opposition, Arch attempts to distinguish *Garden City Irrigation, Inc. v. Salamanca* from the instant case on the grounds that in *Garden City*, the court considered that the defendant might be required to make restitution if she pleads guilty or is convicted, which would "affect or possibly obviate the need to conduct discovery or have a trial of this action." Id. at *4. While Arch is correct that a determination that Bennett needs to make restitution would not have an impact on Arch's claims, a determination that Bennett had "prior knowledge" would affect or possibly obviate the need to conduct discovery or have a trial of this action. As a result, the decision in *Garden City* is squarely on point with this case.

that she would assert her Fifth Amendment right if required to testify in the civil action, and because "the resolution of the criminal action _may_ result in this case either not requiring discovery or a trial or significantly simplify and streamline discovery and trial." _Id._ at *4, _emphasis added._ The possibility of a guilty verdict, and the resulting collateral estoppel effect, are factors for the Court to consider, regardless that the defendant might in fact be found not guilty.

Finally, Arch argues that resolution of the criminal case will not dispose of issues regarding the other Insured's prior knowledge. Arch's own pleadings belie this argument. Arch's Amended Complaint does not include a single allegation that any of the other Insureds had prior knowledge. Instead, Arch seeks a declaration that it need not provide coverage for any loss arising out of the underlying litigations based solely on the allegation that Bennett possessed "prior knowledge." _See_ Amended Complaint, ¶¶ 77-83. Thus if the criminal proceeding establishes that Bennett had "prior knowledge," the knowledge of the other Insureds will be moot.

In summary, Arch fails to rebut the argument that allowing the criminal action to proceed prior to the civil action will preserve judicial resources, and may obviate the need for a trial or simplify the issues to be tried in this action. In a last, desperate, and nonsensical attempt to forestall a stay, Arch argues that a stay prior to discovery is premature, and that nothing "would prevent Bennett from seeking a stay or an appropriate protective order at some further stage of this case." Opposition at 9. Arch misses the point. In order to preserve Bennett's Fifth Amendment rights, as well as his ability to defend against this action, a stay is required _before_ he is required to respond to the merits of Arch's amended complaint or engages in discovery.

## CONCLUSION

For the reasons set forth above, this Court should grant Bennett's motion and stay this action pending completion of the criminal case against Bennett.

Dated: October 31, 2006
New York, New York

GOLENBOCK, EISEMAN, ASSOR, BELL
& PESKOE

By: *Deborah A. Adler*
        Jeffrey T. Golenbock, Esq.
        Deborah A. Adler, Esq.

437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300

*355278.1*

-7-

# Exhibit D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ARCH INSURANCE COMPANY,

            Plaintiff,

    -against-

PHILLIP R. BENNETT, LEO R. BREITMAN, NATHAN
GANTCHER, TONE GRANT, DAVID V. HARKINS,
SCOTT L. JAECKEL, DENNIS A. KLEJNA,
THOMAS H. LEE, SANTO C. MAGGIO, JOSEPH
MURPHY, RONALD L. O'KELLEY, PERRY
ROTKOWITZ, SCOTT A. SCHOEN, WILLIAM M.
SEXTON, GERALD SHERER, PHILIP SILVERMAN
and ROBERT C. TROSTEN,

            Defendants.

INDEX NO. 600805/06

---

## REPLY MEMORANDUM IN SUPPORT OF OFFICER DEFENDANTS' MOTION TO DISMISS OR STAY THE AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Ona T. Wang
Helen B. Kim
Joseph L. Chairez (*pro hac vice* to be filed)
BAKER & HOSTETLER LLP
666 Fifth Avenue
New York, NY 10103
Tel: 212-589-4200; Fax: 212-589-4201
*Attorneys for Defendants Dennis Klejna
and Joseph Murphy*

Holly Kulka
HELLER EHRMAN LLP
7 Times Square
New York, NY 10036
Tel: 212-847-8601; Fax: 212-763-7600
*Attorneys for Defendant Philip Silverman*

Stuart I. Friedman
Ivan O. Kline
Elizabeth D. Meacham
FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Tel: 212-750-8700; Fax: 212-223-8391
*Attorneys for Defendants Gerald Sherer and
William M. Sexton*

Barbara Moses
Rachel Korenblat
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, NY 10071
Tel: 212-856-9600; Fax: 212-856-9494
*Attorneys for Defendant Robert C. Trosten*

Laura Neish
ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, NY 10036
Tel: 212-704-9600; Fax: 212-704-4256

    -and-

Michael T. Hannafan (*pro hac vice* filed)
Blake T. Hannafan (*pro hac vice* filed)
HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive, Suite 1208
Chicago, IL 60601
Tel: 312-527-0055; Fax: 312-527-0220
*Attorneys for Defendant Tone N. Grant*

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................................... 1

I.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A
     JUSTICIABLE CONTROVERSY ................................................................................ 1

     A.   The Entire Complaint Should Be Dismissed As Premature Because No
          Actual Controversy Now Exists Between Arch And Defendants ........................ 1

     B.   At The Very Least, Count III, For A Declaration That The Arch Policy
          Affords No Coverage For Defense Costs, Should Be Dismissed As
          Premature ..................................................................................................... 4

     C.   Counts I And II Are Also Not Ripe Because They Are Based On A
          Contention Of Fact – Bennett's Alleged Prior Knowledge – That Will Be
          Determined In The Underlying Matters ........................................................... 6

          1.   Bennett's Alleged Prior Knowledge Will Be Determined In The
               Underlying Matters ............................................................................... 6

          2.   Arch Will Not Be Prejudiced By Dismissal Of Counts I And II ............... 8

          3.   In The Alternative, Counts I And II Should Be Stayed Because
               Bennett Will Invoke His Fifth Amendment Rights ................................. 10

II.  COUNT I SHOULD ALSO BE DISMISSED OR STAYED BECAUSE OF THE
     AWAC DISPUTE RESOLUTION CLAUSE, WHICH BINDS ARCH ........................ 10

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ACandS, Inc. v. Aetna Cas. & Sur. Co.,*
  666 F.2d 819 (3d Cir. 1981).................................................................... 3

*Access Capital, Inc. v. DeCicco,*
  302 A.D.2d 48, 752 N.Y.S.2d 658 (1st Dep't 2002) ............................... 10

*Allstate Ins. Co. v. Santiago,*
  98 A.D.2d 608, 469 N.Y.S.2d 343 (1st Dep't 1983) ................................. 7

*Am. Ins. Assoc. v. Chu,*
  64 N.Y.2d 379, 487 N.Y.S.2d 311 (1985) ............................................... 1

*Bd. of Educ., Utica School Dist. # 1 v. Delle Cese,*
  65 Misc. 2d 473, 318 N.Y.S.2d 46 (Sup. Ct. Oneida Co. 1971)............... 14

*Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,*
  90 F.3d 671 (2d Cir. 1996).................................................................... 4

*Clarendon Nat'l Ins. Co. v. Lan,*
  152 F. Supp. 2d 506 (S.D.N.Y. 2001)............................................... 11, 12

*Continental Casualty Co. v. PPG Indus., Inc.,* No. 86 C 6076, 1987 WL 6601
  (N.D. Ill. Feb. 6, 1987)......................................................................... 5

*Corbetta Constr. Co. v. George F. Driscoll Co.,*
  17 A.D.2d 176, 233 N.Y.S.2d 225 (1st Dep't 1962) ............................... 12

*Cutro v. Sheehan Agency, Inc.,*
  96 A.D.2d 669, 466 N.Y.S.2d 733 (3d Dep't 1983) ................................. 4

*Fagnani v Am. Home Assur. Co.,* 64 N.Y.2d 967, 488 N.Y.S.2d 646 (1985) ............................... 5

*First State Ins. Co. v. J&S United Amusement Corp.,*
  67 N.Y.2d 1044, 504 N.Y.S.2d 88 (1986) .......................................... 8, 9

*General Re Corp. v. Foxe,*
  177 Misc. 2d 867, 678 N.Y.S.2d 459 (Sup. Ct. N.Y. Co. 1998) ............ 11

*Gulf Underwriters Ins. Co. v. Verizon Commc'ns., Inc.,*
  -- N.Y.S.2d --, 2006 WL 2621039 (1st Dep't Sept. 14, 2006) ............... 11

*Hanna v. Zumpano,*
  267 A.D.2d 1028, 701 N.Y.S.2d 553 (4th Dep't 1999)........................... 14

*Household Mfg., Inc. v. Liberty Mutual Ins. Co.,* No. 85 C 8519, 1986 WL 4121
  (N.D. Ill. March 27, 1986)..................................................................... 5

*Kalisch-Jarcho, Inc. v. City of New York,*
  72 N.Y.2d 727, 536 N.Y.S.2d 419 (1988) .......................................... 14

*Little v. Willis,*
  55 A.D.2d 854, 390 N.Y.S.2d 347 (4th Dep't 1976)......................... 14, 15

# TABLE OF AUTHORITIES
### (continued)

Page

*Nardi v. Povich*,
No. 105554/06, 2006 WL 2127714 (Sup. Ct. N.Y. Co. July 31, 2006)
(Fried, J.)...............................................................................................................13

*Nat'l Recreational Prods., Inc. v. Gans*,
46 A.D. 618, 359 N.Y.S.2d 803 (1st Dep't 1974) ..............................................12

*Prashker v. United States Guarantee Co.*,
1 N.Y.2d 584, 154 N.Y.S.2d 910 (1956) ..............................................................7

*President v. Jenkins*,
180 N.J. 550, 853 A.2d 247 (2004)........................................................................5

*Rhinestone v. New York City Transit Auth.*,
142 A.D.2d 562, 530 N.Y.S.2d 227 (2d Dep't 1988) .................................14, 15

*Smith Barney Shearson Inc. v. Sacharow*,
91 N.Y.2d 39, 666 N.Y.S.2d 990 (1997) ............................................................12

*Special Jet Serv., Inc. v. Federal Ins. Co.*, 83 F.R.D. 596 (W.D. Pa. 1979)..................5

*State of New York v. Philip Morris Inc.*,
30 A.D.3d 26, 813 N.Y.S.2d 71 (1st Dep't 2006) .......................................12, 13

*United States v. South-Eastern Underwriters Assn.*,
322 U.S. 533 (1944)...............................................................................................13

*Utica Mutual Ins. Co. v. Gulf Ins. Co.*,
306 A.D.2d 877, 762 N.Y.S.2d 730 (4th Dep't 2003)........................................13

*Verizon New York Inc. v. Broadview Networks, Inc.*,
5 Misc. 3d 346, 781 N.Y.S.2d 211 (Sup. Ct. N.Y. Co. 2004) ...........................13

## OTHER AUTHORITIES

18 Couch on Insurance (2d rev. ed. 1983) ..........................................................................5

9 U.S.C. § 2..........................................................................................................................13

9 U.S.C. §§ 1 *et seq*.............................................................................................................13

Defendants Tone Grant, Dennis A. Klejna, Joseph Murphy, William M. Sexton, Gerald Sherer, Philip Silverman and Robert C. Trosten (collectively, the "Officer Defendants")[1] respectfully submit this Reply Memorandum of Law in support of their motion, pursuant to CPLR 3211 (a)(1), (a)(2) and (a)(7), to dismiss the Amended Complaint For Declaratory Judgment (the "Amended Complaint") in its entirety or, in the alternative, for a stay pursuant to CPLR 2201.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A JUSTICIABLE CONTROVERSY

#### A. The Entire Complaint Should Be Dismissed As Premature Because No Actual Controversy Now Exists Between Arch And Defendants

Arch does not dispute that, in order to maintain a declaratory judgment action, there must be an actual controversy, involving "present, rather than hypothetical, contingent or remote, prejudice to plaintiffs." *Am. Ins. Assoc. v. Chu,* 64 N.Y.2d 379, 383, 487 N.Y.S.2d 311 (1985). Nor does Arch dispute that it is a fourth-tier excess carrier, with no obligation to provide any coverage until $40 million in Underlying Insurance[2] has been exhausted. Arch maintains, however, that there is presently an "actual controversy" between it and the Defendants based on the amount of damages claimed by the plaintiffs in certain of the Underlying Matters. (Opp. at 9.) But Arch ignores a number of critical facts demonstrating that it is entirely speculative whether the Arch Policy will ever be triggered.

---

[1] The Officer Defendants are all former officers of Refco, Inc. ("Refco") or its affiliates. In addition to the Officer Defendants, the Defendants in this action include former Refco CEO Phillip Bennett, Santo C. Maggio, Perry Rotkowitz, and seven former directors of Refco. With respect to Rotkowitz, Arch has indicated that it would not oppose Rotkowitz's motion to dismiss to the extent that his motion is without prejudice. (Opp. at 6 n.3.)

[2] All terms defined in the Memorandum in Support of Officer Defendants' Motion to Dismiss or Stay, dated September 18, 2006 ("Initial Br."), are assigned the same meaning here. "Opp." refers to Arch's Memorandum In Opposition to the Officer Defendants' Motion to Dismiss or Stay.

First, there has been no showing as to which, if any, of the claims in the Underlying Matters has any merit as against one or more of the Defendants in this action, many of whom have moved to dismiss some or all of the claims against them. Indeed, the Amended Complaint does not even allege that Defendants' liability will exceed $40 million so as to trigger the Arch Policy.

Equally significantly, the plaintiffs in the Underlying Matters have many sources of recovery other than from the Defendants herein (the "Officer/Director Defendants"). To begin, the Officer/Director Defendants are far from the only defendants in the Underlying Matters. Rather, there are numerous "deep pocket" defendants who are not insureds under the Arch Policy (or any of the Underlying Insurance), thus significantly reducing the realistic exposure of the Officer/Director Defendants. For example, in the consolidated class action securities litigation (the "Securities Litigation") referred to by Arch (Opp. at 9), there are 28 defendants other than the Officer/Director Defendants, including Refco's auditing firm (Grant Thornton) and fifteen investment banking firms that served as underwriters for Refco's securities. (*See* Reply Affirmation of Rachel Korenblat ("Korenblat Reply Aff."), Ex. 1.)

Additionally, one of the non-Officer/Director Defendants, BAWAG P.S.K. Bank für Arbeit und Wirschaft und Österreichische Postsparkasse Aktiengesellschaft ("BAWAG"), has already reached a "global settlement" with the creditors committee in the Refco bankruptcy, the plaintiffs in the Securities Litigation, and Thomas H. Lee entities (the plaintiffs in another of the Underlying Matters specifically cited by Arch (Opp. at 9)) pursuant to which BAWAG will make payments of at least $683 million. (*See* Korenblat Reply Aff., Ex. 2.) At least $108 million from BAWAG's payments will go to the plaintiffs in the Securities Litigation; at least $84 million will go to Thomas H. Lee entities; and, remaining amounts will go to the Refco creditors, many of whom are the plaintiffs in other Underlying Matters. *Id.* Further, the Refco creditors will be receiving significant payments in the bankruptcy proceedings from other Refco assets, which will greatly reduce their damages. For example, Refco senior subordinated

- 2 -

noteholders, who are part of the plaintiff class in the Securities Litigation, are expected to receive a distribution which constitutes 83.4% of the outstanding balance on these notes. (*Id.* at p. 55 and pp. 12-13 of the Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries.)

Accordingly, notwithstanding the amounts sued for in the Underlying Matters, there is substantial uncertainty as to whether the Arch Policy will ever be triggered, and thus a decision on Arch's claims may well be merely advisory.

None of the cases cited by Arch compels a finding that its action is justiciable. Rather, each of those cases turned on the particular facts before the court, which showed a sufficient likelihood that the policy or policies at issue would be triggered. None of those cases allowed a fourth-tier excess carrier to bring its own declaratory judgment action prior to exhaustion of even the primary insurance, and, none appears to have allowed any insurer with a coverage threshold anywhere near $40 million to maintain such a declaratory judgment action based solely on the amount of damages claimed in an underlying action.

Finally, Arch essentially ignores the public policy concerns raised in our Initial Brief (p. 15) as to the unnecessary burden Arch seeks to impose on the individuals who are supposed to be the beneficiaries of the Arch Policy. Rather, Arch asserts, without elaboration, that "significant policy considerations" support its request for declaratory relief.[3] In actuality, there is no need for Arch to now maintain this action. Most telling in this regard is the fact that none of the other excess insurers in the tower of Directors & Officers liability insurance, including the three beneath Arch, has felt it necessary to bring an action against any of the Officer/Director Defendants, even though each could seek to assert some or all of the same claims as are brought by Arch.

---

[3] The case cited by Arch, *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819 (3d Cir. 1981), is factually inapposite, as it involved a dispute between two insurers as to their obligations to a single insured that was a defendant in several underlying actions.

In sum, the underlying primary policy limits of the U.S. Specialty Policy have yet to be exhausted, none of the excess policies has been triggered, and it remains purely speculative whether Arch's $10 million fourth-tier excess policy will ever be tapped. Thus, Arch's action is premature, and should be dismissed. *See, e.g., Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,* 90 F.3d 671, 673, 675 (2d Cir. 1996); *Cutro v. Sheehan Agency, Inc.,* 96 A.D.2d 669, 466 N.Y.S.2d 733, 734 (3d Dep't 1983).

**B.     At The Very Least, Count III, For A Declaration That The Arch Policy Affords No Coverage For Defense Costs, Should Be Dismissed As Premature**

In our Initial Brief (p. 16), we showed that Count III of the Amended Complaint fails to allege an "actual controversy," as it is entirely speculative whether Arch's fourth-tier excess policy will ever be triggered for defense fees or costs incurred by Defendants. In response, Arch contends that, in view of the number of Underlying Matters and the number of law firms involved, defense costs alone could exceed the $40 million threshold required to trigger the Arch policy. (Opp. at 12.) But even if this unlikely scenario were ever to occur, it would occur years from now, and thus Arch's claim remains premature. At present, the $10 million primary policy is not even close to being exhausted. U.S. Specialty Insurance Company recently made payments totaling approximately $1.2 million, covering an additional two month period, thereby bringing its total payments to approximately $4.9 million. (*See* Korenblat Reply Aff. Ex. 3.) Even if the pace of $600,000 per month of defense costs continues,[4] which is by no means certain or even likely, the $40 million threshold required to trigger the Arch Policy will not be met for another five years.

Arch also argues that Count III presents an actual controversy because the Defendants' potential liability, combined with their Defense Costs, could exceed the $40 million of Underlying Insurance. (Opp. at 12.) Arch has not articulated, however, how this could cause its

---

[4]  The number of law firms involved may soon decrease since, as noted above, many of the Officer/Director Defendants have moved to dismiss some or all of the claims against them.

policy to be triggered for Defense Costs, and it is plainly speculative as to any such scenario ever occurring.

In any event, even if this Court were to conclude that Count III is somehow justiciable, it should stay Count III pursuant to CPLR 2201. Count III is premised on the definition of "Loss" in the policy issued by Lexington Insurance Company ("Lexington"), the first-tier excess carrier. It is plainly preferable to have the interpretation of the Lexington Policy adjudicated in an action to which Lexington is a party.[5] In that regard, on October 17, certain of the Officer/Director Defendants filed an action against Lexington in the Superior Court of the State of New Jersey, Hudson County, seeking a declaration that the Lexington Policy covers Defense Costs. (See Korenblat Aff. Ex. 4.)[6] The other Officer/Director Defendants have been named as additional defendants in that action. In these circumstances, this Court should stay Count III, so that the

---

[5]  Indeed, as a general proposition, courts and commentators agree that additional or excess insurers are not necessary parties to a suit between an insured and its primary or first layer excess insurer. See, e.g., Continental Casualty Co. v. PPG Indus., Inc., No. 86 C 6076, 1987 WL 6601, at * 2 (N.D. Ill. Feb. 6, 1987); Household Mfg., Inc. v. Liberty Mutual Ins. Co., No. 85 C 8519, 1986 WL 4121, at *3 (N.D. Ill. March 27, 1986); 18 Couch on Insurance § 74:618 (2d rev. ed. 1983) ("An excess insurer is not a necessary party to a declaratory judgment proceeding brought by the primary insurer.") Cf. Special Jet Serv., Inc. v. Federal Ins. Co., 83 F.R.D. 596, 599 (W.D. Pa. 1979) (citing 18 Couch, supra, at § 74:505) ("'The fact that an insurer is concerned with the results of a lawsuit does not mean that it is . . . a necessary party therein.'"). Moreover, where, as here, the language of the Lexington Policy concerning coverage of Defense Costs is ambiguous on its face, the New Jersey court may review extrinsic evidence submitted by the parties to resolve the ambiguity so it comports with the reasonable expectations of the insureds. See Fagnani v Am. Home Assur. Co., 64 N.Y.2d 967, 488 N.Y.S.2d 646 (1985); President v. Jenkins, 180 N.J. 550, 853 A.2d 247 (2004). Clearly, Arch, as a non-party to the Lexington Policy, is in no position to submit such extrinsic evidence. It is Lexington, not Arch, that is in the best position to litigate the meaning of the Lexington Policy.

[6]  As set forth in our Initial Brief (p. 5), while Lexington has agreed to advance Defense Costs once the U.S. Specialty Policy is exhausted, it has reserved its rights to seek repayment of such advances on the ground that Defense Costs are not covered. In contrast to the Arch Policy, there is little question but that the Lexington Policy will be triggered for Defense Costs.

- 5 -

question of whether the Lexington Policy covers Defense Costs may be determined in the action against Lexington.[7]

C.    **Counts I And II Are Also Not Ripe Because They Are Based On A Contention Of Fact – Bennett's Alleged Prior Knowledge – That Will Be Determined In The Underlying Matters**

1.    **Bennett's Alleged Prior Knowledge Will Be Determined In The Underlying Matters**

Our Initial Brief (pp. 18-19) set forth the well-established rule that an action for declaratory relief regarding coverage may not be maintained where coverage turns on a factual issue that will be determined in the underlying action. This rule applies squarely to Counts I and II in the Amended Complaint, which seek a declaration that the Arch Policy does not provide coverage for any of the Underlying Matters based on Arch's contention that Bennett possessed knowledge of facts regarding Refco so as to trigger "prior-knowledge" exclusions in the AWAC and Arch Policies.

Arch seeks to downplay or obscure the significance of Bennett's "prior knowledge" in assessing whether the prior-knowledge exclusions are applicable. Arch argues that the exclusions turn on whether the Underlying Matters are claims "arising out of, based upon or attributable to" any "act, error, omission, fact, matter or circumstance that might give rise to a Claim" and of which "any Insured as of August 11, 2005 has any knowledge." (Opp. at 14-15.) However, Arch ignores the fact that the "knowledge" of an insured that it must prove for this purpose in this case is the very same "knowledge" that is at issue in the Underlying Matters.

Arch cannot dispute that Counts I and II of its Amended Complaint are premised on allegations as to what Bennett knew and when he knew it. The Amended Complaint specifically alleges (*see* Am. Compl. ¶¶ 48, 77, 81) that Bennett had knowledge as of August 11, 2005 of facts and circumstances relating to Refco's financial condition so as to trigger the prior

---

[7]    As set forth in our Initial Brief (p. 16 n.8), if not dismissed, all Counts in the Amended Complaint should also be stayed under CPLR 2201 until such time as the Arch Policy is close to being triggered, to avoid prejudice to the Defendants.

knowledge exclusions.[8]  In addition, Arch cannot dispute that Bennett's knowledge of Refco's financial condition is one of the key factual questions that must be determined in the Underlying Matters.  Indeed, the allegations against Bennett in the Amended Complaint are essentially the same as those made against him in the Underlying Matters.  Accordingly, the issue of Bennett's knowledge must be determined in the Underlying Matters, not in this action for declaratory relief.  *See, e.g., Allstate Ins. Co. v. Santiago*, 98 A.D.2d 608, 469 N.Y.S.2d 343 (1st Dep't 1983).

Arch also contends that dismissal of Counts I and II is not required because the factual issue they raise is "far narrower" than the factual issues in the Underlying Matters.  (Opp. at 13.)  However, the presence of additional factual issues in the Underlying Matters is irrelevant. The test is whether the factual matter at issue in the coverage action will be determined in the underlying action, as will occur here.  *See, e.g., Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 590-93, 154 N.Y.S.2d 910, 915-17 (1956).

Arch's position also ignores the very substantial risk of inconsistent factual findings if the declaratory action proceeds, which risk is just as great even when there are additional factual issues in the underlying actions.  As the Court of Appeals has recognized in dismissing a request for declaratory relief:

> The facts might be decided in one manner in the declaratory judgment action, and differently in the principal actions, with the consequence that the liability of the carrier or lack of it might be decided on facts other than those to be established between the parties in the main action or actions.

*Id.* at 591, 154 N.Y.S.2d at 915.

Notably, Arch has not cited a single relevant case in support of its position.  Rather, Arch cites five out-of-state cases applying the laws of other jurisdictions (Opp. at 15-16), each of

---

[8]  While Arch cites (Opp. at 15, 16) to the language in the policies as to the knowledge of "any Insured" precluding coverage, it has not alleged prior knowledge by any other Defendant.  (Am. Compl. at ¶¶ 48, 77, 81.)  Moreover, even if Arch does seek to amend its complaint so as to add allegations as to prior knowledge of any other Insured, the analysis set forth above and in our Initial Brief will still be fully applicable as long as that person's knowledge is also an issue in the Underlying Matters.

- 7 -

which addressed whether the particular facts known to an insured were sufficient to trigger a "prior knowledge" exclusion – an issue not germane to this motion. None of these cases discusses justiciability, or whether declaratory relief regarding "knowledge" is foreclosed by the inevitable litigation of that very same "knowledge" in the underlying action.

Ultimately, Arch cannot escape the legion of New York cases cited by Defendants, holding that a declaratory judgment of an insurer's obligation to indemnify may be granted before the trial of the underlying action "only if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer may eventually be held liable under its policy." (*See* Initial Br. at 17.) Here, the possibility exists that Bennett did not have "prior knowledge" as alleged by Arch, which would render the exclusions on which Arch relies inapplicable. That factual issue must be resolved in the Underlying Matters.

2.   **Arch Will Not Be Prejudiced By Dismissal Of Counts I And II**

Arch contends in the alternative that Counts I and II should not be dismissed because it will be left without an adequate remedy. (Opp. at 16.) Arch is wrong.

Of course, this Court need not even address this contention, since the fact that Bennett's prior knowledge will be determined in the Underlying Matters requires dismissal of these counts for non-justiciability in any event, as we have shown above. *First State Ins. Co. v. J&S United Amusement Corp.*, 67 N.Y.2d 1044, 504 N.Y.S.2d 88 (1986), relied on by Arch, is not to the contrary. In contrast to the case at bar, the exclusion on which the insurer sought to rely in *First State* turned on a factual issue that would not necessarily be determined in the underlying action. Thus, the insurer was given the opportunity to avoid dismissal if it could show that it would consequently be left without an adequate remedy. *Id.* at 1046, 504 N.Y.S.2d at 89.

Even if the availability of another remedy for Arch must be considered, Counts I and II must still be dismissed. Arch has already denied coverage based on the prior knowledge exclusions. *See* Opposition Affirmation of John H. Eickemeyer ("Eickemeyer Aff."), Ex. 1 (denial letter), pp. 12-15. In the context, its remedy is quite clear and adequate: in

- 8 -

conformance with its denial letter, it may simply refuse to indemnify any of the Defendants when and if their liability ever does exceed $40 million so as to trigger the Arch Policy. *See, e.g., First State Ins. Co.*, 67 N.Y.2d at 1046, 504 N.Y.S.2d at 89 (defense of indemnity action by insured is normal remedy for insurer relying on an exclusion).

Arch asserts nonetheless that it may not have an adequate remedy if Counts I and II are dismissed because settlement demands in the Underlying Matters "could occur at any time," and it will then be forced to address such demands "in a climate of substantial uncertainty about the key coverage issues." (Opp. at 17.) However, that identical argument could be made by *any* insurer seeking to pursue a declaratory judgment action to establish the absence of coverage, as there could always be "settlement demands" in any underlying action. Indeed, the entire line of cases cited above and in our Initial Brief as to the non-justiciability of claims such as Counts I and II would be rendered meaningless if Arch's argument were accepted.[9]

Not surprisingly, Arch has not cited to a single case from New York to support its argument as to the absence of an adequate remedy.[10] Moreover, as noted above, the fact that the other excess carriers which have denied coverage based on one or more of the same exclusions cited by Arch have not felt compelled to commence a declaratory judgment action belies any claim of prejudice by Arch.

In contrast to the lack of harm to Arch from a dismissal of Counts I and II, the Defendants will be burdened with needless, extensive, and likely duplicative, costs should these claims go forward. It is indisputable that this declaratory action will involve many of the same

---

[9]  If Arch ever does face "settlement demands" in any of the Underlying Matters, it, like any litigant, will simply have to assess the strength of its position, as set forth in its letter denying coverage, in deciding whether to contribute towards a settlement.

[10]  Moreover, the Third Circuit case cited by Arch, *ACandS, Inc.*, is inapposite, as noted above (n.2). Arch also cites to the decision by the Refco Bankruptcy Court to lift the automatic stay so as to allow Arch to pursue this action. (Opp. at 18.) That decision, however, did not address justiciability, or any other issue under New York law. Rather, the Bankruptcy Court relied on Arch's representations, based on "duty to defend" cases under Illinois law, on potential prejudice to Arch if it did not pursue an action challenging the directors' and officers' right to coverage. (Eickemeyer Aff., Ex. 2, at 100-01.)

- 9 -

facts and evidence as the Underlying Matters. Discovery will thus not only be lengthy and expensive, and will encompass numerous non-parties, but it will also duplicate much of the discovery in the Underlying Matters. Imposing such costs on the Defendants – who are supposed to benefit from Arch's Policy, not be victimized by it – is particularly inappropriate in light of the fact that Arch's coverage obligation is $35 million from being triggered.

### 3.    In The Alternative, Counts I And II Should Be Stayed Because Bennett Will Invoke His Fifth Amendment Rights

Bennett, on whom Arch relies on for the "prior knowledge" exclusion, has stated that he will assert his Fifth Amendment privileges if this matter proceeds. (*See* Bennett's Mtn. to Stay.) In Arch's Memorandum of Law in Opposition to Defendant Bennett's Motion to Stay, Arch argues that a stay is not proper if the Fifth Amendment is invoked to benefit oneself. However, Arch cites case law that holds it is appropriate to grant a stay pending the resolution of a criminal case for the benefit of other parties. (Arch Opp. to Bennett at 4) (citing *Access Capital, Inc. v. DeCicco*, 302 A.D.2d 48, 52, 752 N.Y.S.2d 658, 662 (1st Dep't 2002).) Arch thus recognizes the logic of staying a declaratory action involving other parties whose rights will depend on the knowledge and testimony of one person, who has stated that he will not testify.

Arch seeks to use the "prior knowledge" exclusions – and thus seeks to use Bennett's alleged knowledge – to avoid coverage for all Defendants, not just for Bennett. The Officer Defendants cannot present a proper defense in this action without Bennett's testimony, yet he has declared that he will assert his Fifth Amendment rights pending the resolution of criminal charges against him. The prejudice to the Officer Defendants based on Bennett's position is obvious. Accordingly, even if Counts I and II are not dismissed, they should be stayed as to the Officer Defendants until such time as Bennett will no longer assert his Fifth Amendment rights.

### II.    COUNT I SHOULD ALSO BE DISMISSED OR STAYED BECAUSE OF THE AWAC DISPUTE RESOLUTION CLAUSE, WHICH BINDS ARCH

Arch contends that it is not bound by the ADR provision found in the AWAC policy because "the only parties to the AWAC ADR provision are AWAC and the insureds." (Opp.

- 10 -

at 19.)  AWAC and the insureds are the only signatories to the AWAC Policy.  But Arch agreed

to "follow the form" of the AWAC Policy, and is thereby bound by its ADR clause.  *See Gulf*

*Underwriters Ins. Co. v. Verizon Commc'ns., Inc.*, -- N.Y.S.2d --, 2006 WL 2621039, at *1 (1st

Dep't Sept. 14, 2006).[11]

      Arch agreed in its Policy with the insureds that "the insurance coverage afforded by this

Policy shall apply in conformance with the terms and conditions of the Followed Policy [the U.S.

Specialty Policy] and in conformance with any terms and conditions further limiting or

restricting coverage in this Policy or **in any other Underlying Insurance**."  (Am. Compl. Ex. A

(Section 1 C of the Arch Policy; emphasis added).)  The term "Underlying Insurance" includes

the AWAC Policy.  *Id.* (Section III C, D; Item 5 of the Declarations Page).  Thus, Arch is bound

to the "terms and conditions" of the AWAC Policy, which includes the ADR clause, just as if it

was a party to the AWAC Policy.  *See Clarendon Nat'l Ins. Co. v. Lan*, 152 F. Supp. 2d 506, 520

(S.D.N.Y. 2001) ("A nonsignatory to an agreement containing an arbitration provision can be

compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with

the signatory to the arbitration agreement which incorporates the existing arbitration clause");

*General Re Corp. v. Foxe*, 177 Misc. 2d 867, 880, 678 N.Y.S.2d 459, 468 (Sup. Ct. N.Y. Co.

1998) (finding that nonsignatory to arbitration agreement was bound to agreement because, in

part, nonsignatory agreed to ensure a signatory's obligations under the contract).

      Courts routinely find that arbitration and other ADR clauses, such as the AWAC clause,

bind nonsignatories like Arch when the clauses broadly provide that "[a]ny and all disputes or

---

[11]  In *Gulf Underwriters Ins. Co.*, the First Department squarely held that the plaintiff excess
insurance carrier was bound to the primary insurance policy's arbitration clause "by operation of
[the carrier's] excess coverage policy." 2006 WL 2621039, at *1.  The court went on to rule that
the insured defendant, Verizon, did not have a right to compel the plaintiff to arbitrate the
plaintiff's declaratory action, but only because the arbitration clause in question narrowly
provided that only claims **by the insured against the insurer** were subject to arbitration, not
vice versa.  *Id.*  Thus, the court explained that "[s]ince Verizon is not the insurer, there is no
arbitration requirement which conditions plaintiff's ability to seek judicial review." *Id.*  In sharp
contrast, the AWAC ADR provision broadly provides that "[a]ny and all disputes" rising under
the policy "shall be subject to [ADR]." (Am. Compl. Ex. E at 5.)

differences which may arise under the policy . . . shall be subject to [ADR]." (Am. Compl. Ex. E at 5.) *See Clarendon Nat'l Ins. Co.*, 152 F. Supp. 2d at 520-21 (finding arbitration clause similar to the AWAC clause to be binding on a nonsignatory). Undeniably, Count I is a dispute "arising under" the AWAC policy, because Arch seeks to utilize the AWAC prior knowledge exclusion to avoid its contractual duties to the insureds. (*See* Am. Compl. ¶ 79.)

The cases relied upon by Arch for its proposition that "courts exercise caution to avoid foisting the obligations of ADR agreements upon non-parties" (*see* Opp. at 19) are inapposite. Specifically, in *Corbetta Constr. Co. v. George F. Driscoll Co.*, 17 A.D.2d 176, 179, 233 N.Y.S.2d 225, 228 (1st Dep't 1962), unlike here, the plaintiff did not execute any agreements incorporating the terms and conditions of the contract that contained the arbitration clause. *Id.* (subcontract at issue did not "incorporate[] the main contract [which provided for arbitration] [or] its terms either directly, by reference or even by implication"). In *Nat'l Recreational Prods., Inc. v. Gans*, 46 A.D. 618, 619, 359 N.Y.S.2d 803, 805 (1st Dep't 1974), the issue was whether a guarantor to an employment contract containing an arbitration clause needed to be a party to an arbitration between the employer and employee. The First Department held that the guarantor need not be a party so long as the guarantor was bound to the results of the arbitration. *Id.* Here, the insureds are not seeking to require that Arch be a party to an ADR proceeding with AWAC; rather, Arch is seeking to negate the ADR provision altogether.

Arch cannot selectively utilize what it deems to be the benefits of the AWAC Policy (*i.e.*, the prior knowledge exclusion) while ignoring the insureds' contractual right to ADR in the same Policy. Nor should this Court permit Arch to eviscerate the insureds' rights through a declaratory judgment action. Indeed, it is well established that New York public policy strongly favors enforcing arbitration clauses. *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49, 666 N.Y.S.2d 990, 995 (1997) ("[t]his decision [upholding enforcement of an arbitration clause] fortifies and advances the long and strong public policy favoring arbitration"); *State of New York v. Philip Morris Inc.*, 30 A.D.3d 26, 31, 813 N.Y.S.2d 71, 75 (1st Dep't 2006) ("Arbitration is

- 12 -

strongly favored under New York law."). Federal law is in accord. Recently, in *Nardi v. Povich*, No. 105554/06, 2006 WL 2127714, at *4-5 (Sup. Ct. N.Y. Co. July 31, 2006) (Fried, J.), this Court reemphasized the strong federal policy favoring arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). *Id.*[12] In a decision holding that a nonsignatory was bound to an arbitration agreement, Justice Fried noted that "any ambiguities as to the scope of an arbitration provision governed by the FAA would be properly resolved in favor of arbitration." *Id.* at 5 (internal quotations omitted). Likewise, the court in *Verizon New York Inc. v. Broadview Networks, Inc.*, 5 Misc. 3d 346, 350 n.4, 781 N.Y.S.2d 211, 214 n.4 (Sup. Ct. N.Y. Co. 2004), stressed that "courts should construe arbitration clauses as broadly as possible and any doubt or ambiguity as to the scope of the arbitration agreement should be resolved in favor of arbitration." *Id.* (internal quotations and citations omitted); *see also Philip Morris, Inc.*, 30 A.D.3d at 31, 813 N.Y.S.2d at 75 ("[a]ny doubts as to whether an issue is arbitrable will be resolved in favor of arbitration").

Arch's position – that it may cherry-pick certain provisions of the AWAC Policy while disregarding the ADR clause – would not only negate the Officer Defendants' right to ADR; if adopted by the courts, it would set an untenable precedent, whereby one insurance carrier in a tower could easily override the contractual rights of insureds under other policies. Indeed, the carrier which did sign the ADR agreement could, as a practical matter, avoid its ADR obligations altogether by arranging for an excess carrier to litigate the dispute by proxy. Such a result would open the door to enormous mischief and offend the strong public policy in favor of ADR.

---

[12] The FAA provides in pertinent part that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Nardi*, 2006 WL 2127714, at *3 (quoting 9 U.S.C. § 2). The FAA is applicable to insurance contracts because "insurance transactions constitute commerce within the meaning of the Commerce Clause." *Utica Mutual Ins. Co. v. Gulf Ins. Co.*, 306 A.D.2d 877, 878, 762 N.Y.S.2d 730, 732 (4th Dep't 2003) (citing *United States v. South-Eastern Underwriters Assn.*, 322 U.S. 533, 553 (1944)).

Arch next contends that this Court should not dismiss or stay Count I because the Officer Defendants have not yet commenced an ADR proceeding against AWAC. (Opp. at 19.) But New York courts have long recognized that defendants need not take affirmative steps to initiate ADR. *See Bd. of Educ., Utica School Dist. # 1 v. Delle Cese*, 65 Misc. 2d 473, 478, 318 N.Y.S.2d 46, 51 (Sup. Ct. Oneida Co. 1971) ("one who does not wish to take the affirmative of compelling arbitration still has the right to have the action at law stayed"). Indeed, the court in *Bd. of Educ., Utica School Dist. # 1* reasoned that "[i]t is traditional that a defendant may ordinarily let a sleeping dog lie until he is in danger of being bitten." *Id.* at 477, 318 N.Y.S.2d at 50 (internal quotations omitted). The insureds are not in immediate danger of "being bitten" by AWAC, which is the third-tier insurance carrier – one tier below Arch. (*See* Officer Defs' Mem. at 6.) Defendants would need to exhaust approximately $22.6 million before the AWAC Policy is triggered. Defendants' "failure" to initiate a premature ADR proceeding against AWAC – to resolve a dispute which is still entirely speculative – cannot be used to justify Arch's attempt to end-run the ADR clause entirely. Tellingly, AWAC has not initiated any ADR proceeding either. This means one of two things: either AWAC (like the insureds) believes that the "dispute" is premature, or else AWAC is in collusion with Arch to avoid its ADR obligations.

Finally, Arch erroneously asserts that Count I cannot be dismissed before the ADR process has been completed. (Opp. at 20.) But the weight of the law is overwhelmingly to the contrary. In actions seeking a declaratory judgment, such as Count I, New York courts routinely "decline to exercise jurisdiction over such an action in favor of the contractual arbitration provisions," regardless of whether those proceedings are completed, pending, or not yet begun. *Hanna v. Zumpano*, 267 A.D.2d 1028, 1028-29, 701 N.Y.S.2d 553, 554 (4th Dep't 1999) (quoting *Little v. Willis*, 55 A.D.2d 854, 390 N.Y.S.2d 347, 348 (4th Dep't 1976)). *See also Kalisch-Jarcho, Inc. v. City of New York*, 72 N.Y.2d 727, 731-32, 536 N.Y.S.2d 419, 421 (1988) (declaratory action was improper in light of arbitration agreement between the parties); *Rhinestone v. New York City Transit Auth.*, 142 A.D.2d 562, 563, 530 N.Y.S.2d 227, 228 (2d

- 14 -

Dep't 1988) (Supreme Court "should have declined to exercise jurisdiction over the claim . . . in deference to the pending arbitration proceeding") (internal citations omitted); *Little*, 55 A.D.2d at 854, 390 N.Y.S.2d at 348 (upholding Supreme Court's dismissal of declaratory action as "proper" because of arbitration clause).

For all of these reasons, Count I should be dismissed, or in the alternative, stayed in accordance with the AWAC ADR provision.

## CONCLUSION

Based on the foregoing, and the reasons discussed in the Officer Defendants' Initial Brief, the Officer Defendants' motion to dismiss or, in the alternative, for a stay should be granted in its entirety.

Dated:  October 31, 2006

Barbara Moses
Rachel Korenblat
**MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.**
565 Fifth Avenue
New York, NY 10071
Telephone:  212-856-9600
Facsimile:  212-856-9494

*Attorneys for Defendant Robert C. Trosten*

Respectfully submitted,

Ona T. Wang
Joseph L. Chairez (*pro hac vice* to be filed)
Helen B. Kim
**BAKER & HOSTETLER LLP**
666 Fifth Avenue
New York, NY 10103
Telephone:  212-589-4200
Facsimile:  212-589-4201

*Attorneys for Defendants Dennis Klejna and Joseph Murphy*

- 15 -

_[signature]_

Stuart I. Friedman
Ivan O. Kline
Elizabeth D. Meacham
**FRIEDMAN & WITTENSTEIN**
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Telephone:    212-750-8700
Facsimile:    212-223-8391

*Attorneys for Defendants Gerald Sherer and William M. Sexton*

_[signature]_

Holly Kulka
**HELLER EHRMAN WHITE & MCAULIFFE, LLP**
7 Times Square
New York, NY 10036
Telephone:    212-847-8601
Facsimile:    212-763-7600
*Attorneys for Defendant Philip Silverman*

_[signature]_

Laura Neish
**ZUCKERMAN SPAEDER LLP**
1540 Broadway, Suite 1604
New York, New York 10036
Telephone:    212-704-9600
Facsimile:    212-704-4256

-and-

Michael T. Hannafan (*pro hac vice* to be filed)
Blake T. Hannafan (*pro hac vice* to be filed)
**HANNAFAN & HANNAFAN, LTD.**
One East Wacker Drive, Suite 1208
Chicago, IL  60601
Telephone:    312-527-0055
Facsimile:    312-527-0220
*Attorneys for Defendant Tone N. Grant*

- 16 -

# Exhibit E

Hearing Date:  August 30, 2007, 10:00 a.m.
Reply Date:  August 29, 2007

| | |
|---|---|
| MATTHEW R. GOLDMAN (MG-0719) | RICHARD CASHMAN (RC-4769) |
| WENDY J. GIBSON | HELLER EHRMAN LLP |
| BAKER & HOSTETLER LLP | Times Square Tower |
| 3200 National City Center | 7 Times Square |
| 1900 E. 9th Street | New York, NY  10036-6524 |
| Cleveland, OH  44114 | Telephone:    212-832-8300 |
| Telephone:    216-621-0200 | Facsimile:    212-763-7600 |
| Facsimile:    216-696-0740 | *Attorneys for Defendant Philip Silverman* |
| | |
| HELEN B. KIM (HK-8757) | STUART I. FRIEDMAN (SF-9186) |
| BAKER & HOSTETLER LLP | IVAN KLINE (IK-9591) |
| 333 South Grand Avenue, Suite 1800 | FRIEDMAN & WITTENSTEIN |
| Los Angeles, CA 90071-1523 | A Professional Corporation |
| (213) 975-1600 (Telephone) | 600 Lexington Avenue |
| (213) 975-1740 (Facsimile) | New York, NY  10022 |
| *Attorneys for Defendants Dennis A. Klejna* | Telephone:    212-750-8700 |
| *and Joseph Murphy* | Facsimile:    212-223-8391 |
| | *Attorneys for Defendants William M. Sexton* |
| | *and Gerald M. Sherer* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- x
In re                                                :        Chapter 11
                                                     :
REFCO INC., et al.,                                  :        Case No. 05-60006 (RDD)
                                                     :
                            Debtors.                 :        Jointly Administered
                                                     :
----------------------------------------------------- x
                                                     :
AXIS REINSURANCE COMPANY,                            :        Adv. Proc. No. 07-01712-rdd
                                                     :
                            Plaintiff,               :
                  v.                                 :
                                                     :        *Electronically Filed*
PHILLIP R. BENNETT, et al.,                          :
                                                     :
                            Defendants.              :
----------------------------------------------------- x

**OPPOSITION OF DEFENDANTS DENNIS KLEJNA, JOSEPH MURPHY,
WILLIAM M. SEXTON, GERALD SHERER AND PHILIP SILVERMAN TO MOTION
TO INTERVENE OF ARCH INSURANCE COMPANY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

     A.     Background ..................................................................................... 3

     B.     The Refco D&O Policies .......................................................... 3

     C.     The Prior Arch Litigation......................................................... 5

     D.     The Present Adversary Proceeding ........................................ 7

     E.     Arch's Motion to Intervene...................................................... 7

ARGUMENT .................................................................................................................... 8

ARCH'S MOTION FOR INTERVENTION UNDER RULE 24(B) SHOULD BE DENIED..... 8

CONCLUSION.............................................................................................................. 12

501461634

Defendants Dennis Klejna, Joseph Murphy, William M. Sexton, Gerald Sherer and Philip

Silverman (collectively, the "Officer Defendants"), each a former officer of Refco, Inc. or its

direct or indirect subsidiaries (collectively, "Refco"), submit this Memorandum in opposition to

the motion by Arch Insurance Company ("Arch"), pursuant to Rule 24(b) of the Federal Rules of

Civil Procedure, for entry of an order permitting Arch to intervene as a counterclaim defendant

in the instant adversary proceeding.

## PRELIMINARY STATEMENT

The present adversary proceeding was commenced by Axis Reinsurance Company

("Axis"), the second excess insurer in the tower of Directors and Officers ("D&O") liability

insurance obtained by Refco for the policy period that began in August 2005. Axis seeks a

declaratory judgment that there is no coverage for any of the defendants herein under Axis'

policy (the "Axis Policy"). The Officer Defendants have filed counterclaims against Axis which

seek declaratory and injunctive relief under the Axis Policy. The Officer Defendants have also

filed a motion for an order directing Axis to pay their defense costs while coverage under the

Axis Policy is being litigated in this adversary proceeding.

Arch, the fourth excess insurer in the Refco D&O tower, seeks to intervene as a

counterclaim defendant for the ostensible purpose of opposing the Officer Defendants' motion

for advancement of defense costs. As is apparent from the face of Arch's motion and its

proposed "Reply and Affirmative Defenses" to the Officer Defendants' Counterclaims against

Axis (Arch Motion to Intervene, Exs. B, C, D), Arch's intervention motion is nothing short of

bizarre: The Officer Defendants' Counterclaims assert no claims against Arch and seek no

determination or interpretation of any provision under the Arch policy (the "Arch Policy"). Yet,

Arch seeks to file "Replies" that respond to factual allegations asserted by the Officer

- 2 -

Defendants against Axis (not Arch) and to assert affirmative defenses on behalf of Arch (not Axis) to non-existent claims against Arch. Arch's proposed "Replies" would inject issues that need not and should not be adjudicated as part of this adversary proceeding.

Similarly, and critically for its motion, Arch's moving papers clearly state that Arch seeks to litigate the issue of whether its own policy – and not the Axis Policy – requires advancement of defense costs. However, the Arch Policy is not at issue in this action and the Officer Defendants have not sought advancement under the Arch Policy. For this reason alone, intervention should be denied.

In addition, because it is constrained by an order of the New York State Supreme Court that dismissed as premature an action brought by Arch in 2006, Arch is not seeking to adjudicate herein the ultimate issue of whether there is coverage under the Arch Policy, but instead seeks to oppose advancement of defense costs and to litigate the merits of its prior knowledge exclusion in that context – even though no one is seeking advancement of defense costs against Arch and the New York State Supreme Court made clear that the issue of "prior knowledge" for purposes of the exclusion must be determined in the underlying actions. This procedural gamesmanship by Arch is not only improper, but would result in plain judicial inefficiency and prejudice to the Officer Defendants, as the issue of coverage under the Arch Policy is not pending before any court, and Arch is plainly seeking to have two "bites at the apple" in trying to avoid advancement.

Finally, as Arch itself acknowledges that "Axis and Arch have relied upon different policy provisions in denying coverage" and states that, as a result, different showings will be required in order to obtain advancement, Arch has failed to even make the threshold showing required under Rule 24(b) of a common question of law or fact. Even if Arch has made that

- 3 -

showing, however, it is clear that this Court should exercise its broad discretion under Rule 24(b) and deny Arch's motion.

## STATEMENT OF FACTS

### A.    Background

The collapse of Refco in October 2005 and the bankruptcy filings that quickly followed led to a series of civil lawsuits, government investigations, and criminal proceedings, a number of which remain pending. Of particular note, discovery has begun in *In re Refco, Inc. Securities Litigation*, 05 Civ. 8626 (S.D.N.Y.) (the "Securities Litigation"), a class action brought on behalf of Refco bondholders and shareholders.

As set forth above, the Officer Defendants are former officers of Refco. Because of their positions with Refco, each of the Officer Defendants has been named as a defendant in one or more of several lawsuits arising from the collapse of Refco (the "Underlying Matters"), including the Securities Litigation, although none of the Officer Defendants has been charged with any wrongdoing by any governmental body. The Officer Defendants have tendered the Underlying Matters to, and/or demanded indemnification from, Refco's insurers.

### B.    The Refco D&O Policies

Refco procured a tower of D&O insurance, consisting of a primary policy and five excess policies for the policy period of August 11, 2005 to August 11, 2006. The primary D&O policy was issued by U.S. Specialty ("U.S. Specialty") with a $10,000,000 limit of liability (the "U.S. Specialty Policy," or "Primary Policy"). (A copy of the U.S. Specialty Policy is attached as Exhibit B to the Axis Complaint ("Compl.") in this action.) Although U.S. Specialty initially reserved its rights as to coverage, it has paid or reimbursed the defense costs of the insureds with respect to the Underlying Matters up to its policy limit.

- 4 -

The first excess policy above the U.S. Specialty Policy was issued by Lexington Insurance Company ("Lexington") (the "Lexington Policy," attached to the Complaint as Exhibit C). The limit of liability of the Lexington Policy is $7,500,000 in excess of the $10,000,000 Primary Policy. Lexington initially reserved its rights, and specifically denied coverage for defense costs on the ground that the Lexington policy's definition of "Loss" excluded attorneys' fees and costs. However, Lexington subsequently agreed, subject to a reservation of rights, to voluntarily advance attorneys' fees and costs under the Lexington Policy to insureds who entered into an agreement to repay advances if it was subsequently determined that there was no coverage for defense costs under the U.S. Specialty Policy or the Lexington Policy.[1] As of August 2007, Lexington has paid or reimbursed the defense costs of the insureds with respect to the Underlying Matters up to its policy limit.

Axis issued the second excess policy, with a limit of liability of $10,000,000 above the $17,500,000 in underlying coverage. (*See* Compl. Ex. A.) By letter dated March 6, 2006, Axis asserted various grounds for denying coverage to the insureds for the Underlying Actions. (*See* Compl. Ex. G.)

---

[1] On or about October 17, 2006, defendants Dennis Klejna and Joseph Murphy filed a declaratory judgment action in New Jersey Superior Court against Lexington seeking a declaration that the Lexington Policy covers defense fees and costs. Declaration of Helen B. Kim ("Kim Decl."), dated Aug. 23, 2007, Ex. A at p. 3. Incredibly, Arch now suggests that it was somehow improper for Klejna and Murphy to litigate against Lexington, rather than against Arch, the issue of the construction of the Lexington Policy. (*See* Arch Motion to Intervene ¶ 12.) Plainly, the New Jersey court disagreed. In response to Lexington's motion to this Court for relief from the automatic stay for leave to intervene in the *Arch* action then pending in New York Supreme Court, the New Jersey court preliminarily enjoined Lexington from intervening in the *Arch* action and also denied Lexington's motion to dismiss. Kim Decl. Ex. A at p.3. On August 3, 2007, based on a Stipulation of Law and Facts agreed to by Lexington, Murphy and Klejna, the New Jersey court granted summary judgment in favor of Klejna and Murphy, holding that the Lexington Policy's definition of "Loss" included defense costs and fees. Kim Decl. Ex. B. The New Jersey court also awarded Klejna and Murphy their attorneys fees and costs in litigating the New Jersey action. *Id.* at pp. 2-3.

Arch also wrongly contends that the Officer Defendants took inconsistent positions on "ripeness" (*see* Arch Motion to Intervene ¶ 12). The Officer Defendants did no such thing. The Officer Defendants contended – and the New York court agreed – that the coverage lawsuit by *Arch*, the fourth excess insurer, was not ripe. But neither the insureds nor Lexington ever contended that the issue of whether the Lexington Policy covered defense costs was not ripe as to *Lexington*, the first excess insurer. Kim Decl. Ex. C.

- 5 -

The third excess carrier is Allied World Assurance Company ("AWAC"), with a policy providing a limit of liability of $12,500,000 (the "AWAC Policy") in excess of $27,500,000 in underlying insurance.  Although AWAC has also denied coverage, in part based upon Endorsement No. 3 to the AWAC Policy, its "Prior Knowledge Exclusion," the AWAC Policy contains a provision that mandates alternative dispute resolution between the Insureds and AWAC with respect to disputes over provisions in the AWAC Policy.

As indicated above, Arch is the fourth excess carrier on the Refco D&O insurance tower, with a policy limit of liability of $10 million in excess of $40 million in underlying insurance.

C.    **The Prior Arch Litigation**

On or about March 9, 2006, Arch commenced an action in the New York Supreme Court seeking a declaratory judgment that the Arch Policy "affords no coverage for [insureds] in connection with the Underlying Matters" (the "Arch action").  In addition to the Arch Policy, Arch invoked provisions of both the Lexington and AWAC policies in alleging no coverage. Notably, Arch did not rely upon any provision of the Axis Policy in its declaratory judgment action.

The first count in the *Arch* action sought a declaratory judgment that the "prior knowledge" exclusion in the AWAC Policy barred coverage for the Underlying Matters under the Arch Policy, based upon the Arch Policy's incorporation of any "terms and conditions in . . . any other underlying insurance 'further limiting or restricting coverage.'" (Jacobs Decl. Ex. 3, at ¶¶ 24, 76-79.)  Arch asserted that the AWAC Policy's prior knowledge exclusion should apply due to facts and circumstances allegedly known to Bennett as of August 11, 2005, the policy inception date.  (*Id.* at ¶ 77.)

- 6 -

Arch's second count sought a declaratory judgment that the "prior knowledge" exclusion in the Arch Policy also barred coverage for any loss arising out of the Underlying Matters. (*Id.* at ¶¶ 80-83.) As with the AWAC "prior knowledge" exclusion, Arch alleged that its own prior knowledge exclusion applied due to facts and circumstances allegedly known to Bennett as of August 11, 2005. (*Id.* at ¶ 81.) Notably, Arch's complaint did not assert the existence of, or seek to invoke, a "prior knowledge" exclusion in the Axis Policy.

Arch's third count for declaratory relief alleged that the Lexington Policy did not provide any coverage for defense costs, and that the Arch Policy also thus provided no coverage for such costs incurred by the insureds in connection with the Underlying Matters. (Jacobs Decl. Ex. 3, at ¶¶ 84-88.)[2]

In September 2006, the defendant insureds filed motions to stay and/or dismiss the Arch action. Each of the Officer Defendants moved to dismiss the action on multiple grounds, including for failure to allege a justiciable controversy because the action was premature. (*See* Jacobs Decl. Ex. 5, at pp. 1-10.) On February 20, 2007, Justice Freedman granted the motion and dismissed Arch's entire action without prejudice "as premature because at present the chances of Arch's policy being triggered are too remote." (*See id.* Ex. 6, at p. 3.) As an additional ground for dismissal, the court held that the first and second counts of the Arch complaint, invoking the "prior knowledge" provisions of the AWAC and Arch policies, were not ripe because such counts were "predicated on claims against Bennett that will be determined in the Underlying Lawsuits." (*Id.*) Arch did not appeal from Justice Freedman's February 20, 2007 order (the "Dismissal Order").

---

[2]  As noted above, litigation in New Jersey to which Lexington was a party has now established that the Lexington Policy does cover defense costs.

### D.    The Present Adversary Proceeding

On May 24, 2007, Axis commenced the instant adversary proceeding, seeking a declaration that its policy does not provide coverage for the Underlying Actions for any of the insureds.[3] On or about July 12, 2007, each of the Officer Defendants filed an Answer to the Axis Complaint and asserted Counterclaims for declaratory and injunctive relief under the Axis Policy.[4] The Counterclaims request (1) a declaration that none of the grounds in the Complaint provides Axis with a valid basis for refusing coverage and (2) permanent injunctive relief requiring Axis to make payments in accordance with Axis' contractual obligations.

Also on July 12, 2007, the Officer Defendants filed a motion for an order to compel Axis to pay defense costs in the Underlying Matters upon the exhaustion of the Lexington Policy (the "Advancement Motion").[5] Axis filed papers in opposition to the Advancement Motion on or about August 13, 2007.

### E.    Arch's Motion to Intervene

On or about August 10, 2007, Arch filed its motion to intervene in the present adversary proceeding pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.  In an attempt to avoid violating Justice Freedman's Dismissal Order, Arch expressly states that it "does not seek to adjudicate herein the question of whether there is coverage for the Underlying Matters under the Arch Policy." (Arch Motion to Intervene, at ¶ 3.)  Rather, "Arch seeks to intervene as a defendant to the Officer Defendants' counterclaims to the limited extent that the Officer

---

[3]   Specifically, the Axis Complaint seeks to avoid coverage under the Axis Policy for all Insureds on four grounds: (1) Count I of the Complaint relies on a January 14, 2005 letter signed by Phillip Bennett ("Bennett") as the President and CEO of Refco Group Ltd., LLC; (2) Count II of the Complaint relies on Bennett's failure to answer a question in the application for coverage submitted to U.S. Specialty; (3) Count III of the Complaint relies on a purported "Knowledge Exclusion Endorsement" to the Axis Policy; and (4) Count IV of the Complaint relies upon Clause XI of the Axis Policy.  Although the Officer Defendants have moved for advancement under the Axis Policy, no portion of the Axis Policy has yet been tapped in connection with the Underlying Matters.

[4]   On August 1, defendants Dennis Klejna and Joseph Murphy filed an Amended Answer and Counterclaims.

[5]   Defendants Phillip Bennett, Tone Grant and Robert Trosten joined in the Advancement Motion.

- 8 -

Defendants seek to force the advancement of defense expenses prior to the adjudication of the coverage issues." (*Id.* at ¶ 2.) In other words, Arch seeks to intervene only on the issue of advancement.

However, Arch seeks to oppose advancement under the *Arch* Policy – not the *Axis* Policy -- notwithstanding the fact that the Officer Defendants have never sought advancement under the Arch Policy and have moved for advancement of defense costs solely under the Axis Policy. (*See* Arch Motion ¶¶ 15, 18-19.)

## ARGUMENT

### ARCH'S MOTION FOR INTERVENTION
### UNDER RULE 24(B) SHOULD BE DENIED

Rule 24(b) of the Federal Rules of Civil Procedure provides for permissive intervention. Under Rule 24(b) "anyone *may* be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." (Emphasis added.) "Permissive intervention . . . is discretionary with the trial court" and such "discretion . . . is very broad." *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). "In fact, 'a denial of permissive intervention has virtually never been reversed.'" *Id.* (quoting *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 990 n.19 (2d Cir. 1984)).

Denial of Arch's motion to intervene is plainly warranted for multiple reasons under the facts here. To begin, by its motion, Arch seeks to oppose the advancement of defense costs under the *Arch* Policy in connection with the Underlying Matters. *See* Arch Motion to Intervene ¶ 15 ("Arch seeks to intervene to litigate the issue whether the Arch Policy requires Arch to advance defense costs pending a final judicial declaration as to coverage issues"). However, the Officer Defendants have never sought advancement under the Arch Policy. In fact, an additional

- 9 -

$22.5 million in coverage on the Refco D&O tower must be exhausted before the Arch Policy will even begin to be accessed. There is simply no reason why the Officer Defendants, whose motion for advancement was made solely in connection with the Axis Policy, should now be forced by Arch to litigate the separate, non-ripe issue of advancement under the Arch Policy. *See Continental Casualty Co. v. ZHA, Inc.*, 154 F.R.D. 281, 283 (M.D. Fla. 1994) (denying permissive intervention to general liability insurer where the general liability insurer was not a party to a contract between the professional liability insurer and insured that was at issue in the case, and the question of responsibility under such contract would not be determinative as to whether the general liability insurer had liability under its own, separate policies).

By its own argument, Arch's attempt to litigate the issue of advancement under the Arch Policy is also procedurally improper because there is no underlying claim for relief against Arch to support a claim for advancement of defense costs against Arch. Arch avers in its proposed papers in opposition to the Officer Defendants' Advancement Motion (Arch Motion to Intervene, Ex. A at p. 20.) that inasmuch as an advancement motion is in the nature of a motion for preliminary injunctive relief, there must be an underlying claim for relief to support a claim for advancement of defense costs. Here, none of the Officer Defendants or any of the other individual Insureds have asserted any pleading seeking affirmative relief against Arch in this adversary proceeding. Nor has Arch filed any pleading against the Insureds (which would violate Justice Freedman's Dismissal Order, in any event). Accordingly, by Arch's logic, on that ground alone, Arch's attempt to intervene for the purpose of opposing a non-existent claim for advancement of costs against Arch would be improper.

Arch's motion should also be denied because it is plainly attempting an "end run" around the Dismissal Order in its New York action, which held that the Officer Defendants do not yet

- 10 -

have to litigate with Arch over the Arch Policy. As Arch concedes in its Motion, the New York Supreme Court held that "[t]he facts necessary to adjudicate application of the Arch Prior Knowledge Exclusion were 'central to the Underlying Matters and must be adjudicated in those actions.'" Arch Motion to Intervene, ¶ 11. The New York Supreme Court's Dismissal Order is *res judicata* as to Arch, and Arch thus has no right now to litigate the merits of the Arch prior knowledge exclusion in this action, either in the context of ultimate coverage or in the context of an advancement motion.

Moreover, because Arch is not seeking to have the issue of coverage under the Arch Policy adjudicated here, its motion would result in obvious judicial inefficiency by forcing two separate adjudications of issues raised by the policy – one in the context of advancement and the other on the issue of actual coverage. Such a result, contrary to Arch's contention, would also clearly prejudice the Officer Defendants, who may have to bear the costs of litigating with Arch twice. Further, Arch would be given "two bites at the apple." If this Court were to now rule that advancement would be required under the Arch Policy if hereafter sought by the Officer Defendants, Arch would no doubt then seek to litigate coverage under its policy in another forum, and try to use a favorable ruling to avoid the obligation to advance defense costs.

In contrast, Arch would not be prejudiced by a denial of its motion to intervene because it would be able to fully litigate the issue of advancement under the Arch Policy if and when that issue is raised in another proceeding. While Arch argues that Axis cannot adequately represent Arch's interests (Arch Motion ¶ 19), it does so only with respect to issues under the Arch Policy which, absent Arch's motion being granted, will not be litigated in this action. Arch cannot and does not argue that Axis is incapable of adequately representing its own interests in opposing advancement under the Axis Policy.

- 11 -

Arch further asserts that it "easily satisfies the requirement . . . that its claim and the existing action share a "common question of law or fact." (*See* Arch Motion ¶ 18.) However, Arch itself acknowledges that "Axis and Arch have relied upon different policy provisions in denying coverage" and states that, as a result, different showings will be required in order to obtain advancement. (*See id.* ¶ 19.) While Arch and Axis may share a "common interest" as insurers in opposing advancement motions, such interest does not satisfy the threshold showing required under Rule 24(b) of a common question of law or fact. *See County of Chautauqua v. International Insurance Company*, No. CIV-88-557E, 1989 WL 13461 *2 (W.D.N.Y. Feb. 15, 1989) ("mutual self-interest" between plaintiff and proposed intervenor in plaintiff succeeding on its claim was not sufficient to satisfy the prerequisites of permissive intervention); *Kheel v. Am. Steamship Owners Mutual Protection & Indemnity Assoc.*, 45 F.R.D. 281, 284 (S.D.N.Y. 1968) (stating that "[t]he mere existence of a third person's interest in the outcome of pending litigation is insufficient to warrant intervention" and citing to the possibility of creating "complication and confusion" in denying permissive intervention).

Finally, Arch has not cited to a single case granting intervention under facts remotely similar to those presented here. In fact, in two of the three cases cited in Arch's moving papers, the Second Circuit affirmed the district court decisions *denying* permissive intervention. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001); *H.L. Hayden Co. of New York, Inc.*, 797 F.2d at 87, 89. In the third case cited by Arch, *International Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007), the non-party's motion under Rule 24(b) to intervene as a party-plaintiff was granted, but the court specifically noted there that "defendants [had] *no objection* to the permissive joinder." (Emphasis added.) Moreover, the case is not at all

- 12 -

factually on point, as, among other things, the proposed intervenor plaintiff was the licensor of the plaintiff.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Court should exercise its broad discretion and deny Arch's motion to intervene as a counterclaim defendant in the present adversary proceeding against Axis. Specifically, the Officer Defendants respectfully request that the Court: (1) deny Arch permission to intervene as a counterclaim-defendant and reject Arch's pleadings in intervention; (2) reject Arch's memorandum in opposition to the Officer Defendants' Advancement Motion; and (3) disallow Arch from being heard at the August 30, 2007 hearing on the Advancement Motion.

Dated: August 23, 2007

Respectfully submitted,

MATTHEW R. GOLDMAN (MG-0719)
WENDY J. GIBSON
BAKER & HOSTETLER LLP

/s/ Matthew R. Goldman
Matthew R. Goldman
3200 National City Center
1900 E. 9th Street
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

HELEN B. KIM (HK-8757)
BAKER & HOSTETLER LLP
333 South Grand Avenue, Suite 1800
Los Angeles, CA 90071-1523
Telephone: (213) 975-1600
Facsimile : (213) 975-1740
*Attorneys for Defendants*
*Dennis A. Klejna and Joseph Murphy*

STUART I. FRIEDMAN (SF-9186)
IVAN KLINE (IK-9591)

- 13 -

STUART I. FRIEDMAN (SF-9186)
IVAN KLINE (IK-9591)
FRIEDMAN & WITTENSTEIN
A Professional Corporation

/s/ Ivan Kline
600 Lexington Avenue
New York, NY 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391
*Attorneys for Defendants William M. Sexton
and Gerald M. Sherer*


RICHARD CASHMAN (RC-4769)
HELLER EHRMAN LLP

/s/ Richard Cashman
Richard Cashman
Times Square Tower
7 Times Square
New York, NY 10036-6524
Telephone: (212) 832-8300
Facsimile: (212) 763-7600
*Attorneys for Defendant Philip Silverman*

- 14 -

## CERTIFICATE OF SERVICE

A copy of the foregoing has been served by fax, personal delivery, or email, on August 23, 2007, on the attached service list.

/s/ Matthew R. Goldman
Matthew R. Goldman

J. Gregory Milmoe
Skadden, Arps, Slate, Meagher & Flom LLP
Four Time Square
New York, NY 10036-6522
(212) 735-3000 (Telephone)

Steven Wilamowsky
Bingham McCutchen
399 Park Avenue
New York, NY 10022-4689
(212) 705-7960 (Telephone)
(212) 752-5378 (Facsimile)

Andrew D. Velez-Rivera
Office of the U.S. Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004
(212) 510-0500 (Telephone)
(212) 668-2255 (Facsimile)

Robert M. Novick
Jeffrey R. Gleit
Kasowitz Benson Torres & Friedman LLP
1633 Broadway
New York, NY 10019
(212) 506-1700 (Telephone)

Wayne E. Borgeest
Joan M. Gilbride
Robert A. Benjamin
Kaufman Borgeest & Ryan LLP
200 Summit Lake Dr.
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)

Stuart I. Friedman
Ivan Kline
Friedman & Wittenstein
600 Lexington Avenue
New York, NY 10022
(212) 750-8700 (Telephone)
(212) 223-8391 (Facsimile)

Richard Cashman
Chakshu S. Patel
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524
(212) 832-8300 (Telephone)
(212) 763-7600 (Facsimile)

Luc A. Despins
Milbank, Tweek, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000 (Telephone)

Donald S. Bernstein
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
(212) 450-4000 (Telephone)

Timothy B. DeSieno
Mark W. Deveno
Bingham McCutcheon LLP
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (Telephone)

Susheel Kirpalani
Quinn Emanuel Urquhart Oliver & Hedges LLP
51 Madison Avenue
New York, NY 10017
(212) 849-7000 (Telephone)

Jeffrey T. Golenbock
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue
New York, NY 10022
(212) 907-7300 (Telephone)
(212) 754-0330 (Facsimile)

Scott E. Hershman
Stephen R. Blacklocks
Richard Soto
Hunton & Williams LLP
200 Park Avenue
New York, NY 10166
(212) 309-1000 (Telephone)

Greg A. Danilow
Paul A. Ferrillo
Weil Gotshal & Manges LLP
767 Fifth Avenue, 35th Floor
New York, New York 10153
(212) 310-8372 (Telephone)
(212) 310-8007 (Facsimile)

Barbara Moses
Rachel Marissa Korenblat
Morvillo, Abramowitz, Grand, Lason, Anello &
Bohrer, P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600 (Telephone)
(212) 856-9494 (Facsimile)

Gabriel Del Virginia
Law Offices of Gabriel Del Virginia
641 Lexington Avenue, 21st Floor
New York, New York 10022
(212) 371-5478 (Telephone)
(212) 371-0460 (Facsimile)

Daniel J. Standish
Jonathan M. Jacobs
Cara T. Duffield
Wiley Rein LLP
1776 K Street NW
Washington DC 20006
(202) 719-7000 (Telephone)
(202) 719-7049 (Facsimile)

Laura E. Neish
Norman L. Eisen
Thomas G. Macauley
Zuckerman, Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036-4039
(212) 704-9600 (Telephone)
(212) 704-4256 (Facsimile)

Blake Tyler Hannafan
Michael T. Hannafan & Associates, Ltd.
One East Wacker Drive, Suite 1208
Chicago, IL 60601
(312) 527-0055 (Telephone)
(312) 527-0220 (Facsmile)

Dylan G. Trache
Wiley Rein LLP
7925 Jones Branch Drive
McLean, VA 22102
(703) 905-2800 (Telephone)
(703) 905-2820 (Facsimile)

101821827

# Exhibit F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
In Re:                              :    05-60006
                                    :
      REFCO, LLC,                   :
                                    :
               Debtor.              :
------------------------------------X
                                    :
AXIS REINSURANCE COMPANY,           :    07-1712
                                    :
               Plaintiff,           :
                                    :
               v.                   :    One Bowling Green
                                    :    New York, New York
BENNETT, et al.,                    :
                                    :    August 30, 2007
               Defendants.          :
------------------------------------X

                 TRANSCRIPT OF HEARING ON MOTIONS
             BEFORE THE HONORABLE ROBERT D. DRAIN
                UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Klejna/Murphy:          MATTHEW R. GOLDMAN, ESQ.
                            HELEN B. KIM, ESQ.
                            Baker & Hostetler LLP
                            3200 National City Center
                            1900 East 9th Street
                            Cleveland, Ohio  44114-3485

For Director Defendants:    MICHAEL F. WALSH, ESQ.
                            SCOTT E. COHEN, ESQ.
                            Weil, Gotshal & Manges LLP
                            767 Fifth Avenue
                            New York, New York  10153-0119


For Axis Reinsurance:       JOAN M. GILBRIDE, ESQ.
                            WAYNE BORGEEST, ESQ.
                            ROBERT A. BENJAMIN, ESQ.
                            Kaufman, Borgeest & Ryan LLP
                            200 Summit Lane Drive
                            Valhalla, New York 10595


                            (Appearances continue on next page.)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

APPEARANCES CONTINUED:

For Defendants Schoen,          PAUL FERRILLO, ESQ.
  Jaekel Lee, Harkins,          Weil, Gotshal & Manges LLP
  Brightman, O'Kelly            767 Fifth Avenue
  and Gantscher:                New York, New York  10153-0119


For Phillip Silverman:          RICHARD CASHMAN, ESQ.
                                Times Square Tower
                                7 Times Square
                                New York, New York  10036-6524


For Tone Grant:                 NORMAN L. EISEN, ESQ.
                                Zuckerman Spaeder LLP
                                1800 M Street NW, Suite 1000
                                Washington, D.C.  20036-5802

For Phillip Bennett:            DEBORAH ADLER, ESQ.
                                Golenbock, Eiseman, Assor,
                                  Bell & Peskoe LLP
                                457 Madison Avenue
                                New York, New York  10022


For Arch Insurance:             DANIEL STANDISH, ESQ.
                                Wiley Rein LLP
                                1776 K Street NW
                                Washington, D.C.  20006

For Robert Trosten:             RACHEL M. KORENBLAT, ESQ.
                                Morvillo, Abramowitz, Grand,
                                  Jason, Anello & Bohren, PC
                                565 Fifth Avenue
                                New York, New York  10017


(Appearances continue on next page.)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


APPEARANCES CONTINUED:



For Sexton and Sherer:        IVAN O. KLINE, ESQ.
                              Friedman & Wittenstein
                              600 Lexington Avenue
                              New York, New York  10022



Court Transcriber:            RUTH ANN HAGER
                              TypeWrite Word Processing Service
                              356 Eltingville Boulevard
                              Staten Island, New York 10312


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

4

1 (Proceedings began at 10:20 a.m.)

2           THE COURT:  Okay.  Refco and the Axis Reinsurance

3 matters.

4                 [Pause in the proceedings.]

5           MR. GOLDMAN:  Good morning, Your Honor.

6           THE COURT:  All right.  There are a number of

7 matters on that generally come under the heading of the Axis

8 Reinsurance matters.

9           Have the parties discussed any particular order

10 that they want to proceed in?

11           MR. GOLDMAN:  Good morning, Your Honor.  Matthew

12 Goldman, Baker & Hostetler.  I will be speaking on behalf of

13 what we have called the moving defendants, the parties seeking

14 a preliminary injunction for advancement of defense costs.

15           Yes, I have spoken with Joan Gilbride -- yeah.  I

16 have spoken with Joan Gilbride.  I believe at least insofar as

17 Axis and the other moving defendants are concerned, the

18 appropriate procedure would be that this Court first determine

19 whether or not Arch should be permitted to intervene so that we

20 can determine whether or not they would be heard.

21           THE COURT:  Right.  I agree with you.

22           MR. GOLDMAN:  Our suggestion --

23           THE COURT:  I'd go with that first.

24           MR. GOLDMAN:  Okay.  Thank you, Your Honor.  Then

25 our suggestion would be that we proceed with the motion to

5

1    advance defense costs, the motion to file by the motions to

2    dismiss or to stay.  And insofar as the lift stay motions are

3    concerned, there is no objection to lifting the stay to the

4    extent that it is applicable to deal with the defense cost

5    issues.  That's not in dispute at all.  The only thing that is

6    potentially at issue in the lift stays in my supplemental

7    motion asking for permission to also enter into settlements.

8    We can put that at the end because nothing about the lift stay

9    interferes with this argument.

10            THE COURT:  Okay.  I appreciate that probably a

11   fair amount of thought went into that order of proceeding and

12   perhaps some tactical considerations, too, but it strikes me

13   given the lack of any opposition, except the limited amount to

14   the part of the lift stay motion that it ought to be be lifted

15   for all purposes, that I should hear the motion to dismiss

16   first and then deal with the issue of advancing defense costs,

17   particularly since the debtor doesn't seem to care about that

18   and it appears to be no dispute because they haven't taken any

19   position whatsoever on this and they've not opposed lifting the

20   stay.

21            MR. GOLDMAN:  Your Honor, I didn't actually say

22   it's that material in that order.

23            THE COURT:  Okay.

24            MR. GOLDMAN:  So, yeah, if the Court wishes to do

25   dismissal first, that is fine with us, Your Honor.

6

1      THE COURT:  Okay.  That's fine.

2      MR. GOLDMAN:  All right.  So I think then that

3  means that we start with intervention?

4      THE COURT:  So I need to hear from Arch, then,

5  first.

6      MR. GOLDMAN:  Thank you, Your Honor.

7      MR. STANDISH:  Good morning, Your Honor.  Daniel

8  Standish of Wiley Rein on behalf of Arch Insurance Company.

9      Your Honor, we seek to intervene in this case for

10  the limited purpose of opposing the request for the advancement

11  of defense costs notwithstanding the existence of a coverage

12  defense that bars coverage for the claim in its entirety.

13      Arch is in the same tower of insurance as Axis.

14  Arch has the policy that is ten million dollars excess of 40

15  million dollars.  At this point, the underlying limits have

16  been depleting rapidly.  We understand that the burn rate at

17  this juncture is about two million dollars a month.

18      The demand is that the officer defendants in this

19  case have made that Axis pay for their defense fees and costs

20  on an as-incurred basis notwithstanding the existence of a

21  threshold defense.  That is an issue that will affect Arch, as

22  well, in two different ways.  One, it will affect the amount of

23  the policy limits that remain under the Arch layer, as well as

24  affect Arch's rights potentially as a precedential matter if and

25  when Arch's policy is reached, which at this point given the

7

1  burn rate at least the amounts incurred would certainly

2  implicate that level.  So for that reason, Arch has a very

3  strong interest of that particular issue.

4           Arch also feels strongly about intervening in this

5  case because as Your Honor may recall in June of 2006 Your

6  Honor gave leave for Arch to file its declaratory judgment

7  action in New York Supreme Court in order to obtain an

8  adjudication of the coverage issues.  Your Honor found that

9  Arch would be prejudiced if it were unable to do so.

10          Once we got before Justice Freedman, the officer

11 defendants who are now demanding that Axis advance defense fees

12 and costs argued to Justice Freedman that the Arch suit should

13 be dismissed without prejudice, because it was totally

14 speculative whether or not the erosion of the underlying layers

15 would ever occur and Arch's policy would be implicated.  And

16 even if it did implicate Arch's layer, Arch could simply stand

17 on its denial and refuse to pay, thus directly contrary to the

18 position that they've now taken before this court in demanding

19 advancement.

20          So for that reason, we feel that Arch's interest --

21          THE COURT:  That wasn't the only reason they

22 opposed it, right?

23          MR. STANDISH:  That was not the only reason.

24 That's correct, Your Honor.  There was also an argument that it

25 would overlap with the underlying facts at issue in the

8

1   criminal prosecution going forward.

2          But Justice Freedman specifically did not reach

3   the issue of whether or not the insurers could be obligated to

4   include advance defense fees and costs notwithstanding the

5   existence of a threshold coverage defense.

6          Arch has moved promptly to intervene, Your Honor.

7   We've briefed this contemporaneously.  We filed with our

8   intervention papers our opposition to the request for

9   advancement and we don't feel that any of the defendants would

10  be prejudiced by the intervention.  In fact, it would be far

11  more efficient to adjudicate this issue in the context of the

12  same proceeding than have it litigated again at some future

13  juncture against Arch in a separate pleading.

14         So for that reason, Your Honor, we submit that

15  permissive intervention is appropriate here and should be, Arch

16  should be permitted to be in for this purpose.

17         THE COURT:  But it's not necessarily the same

18  issue, is it?

19         MR. STANDISH:  With respect to the primary policy

20  language it is, Your Honor.  Both the Axis policy and the Arch

21  policy incorporate by reference the language on which the

22  officers are relying for the advancement of defense fees and

23  costs.  They're focusing in the primary policy in condition (d)

24  that says that the insurer shall advance the covered advanced

25  costs on an as-incurred basis.  The dispute over whether or not

9

1    the advancement of covered advanced costs is required when the
2    policy excludes the defense costs is the same issue as to both
3    Axis and Arch.

4            The only distinction is in the policy provisions
5    on which Arch and Axis are relying for the denial of coverage.
6    Arch has its own prior knowledge exclusion in its policy and
7    there is no dispute in that case that that exclusion exists and
8    that it applies.  There's a dispute in the Axis case over
9    whether or not the exclusion actually is in the policy.  Axis
10   obviously takes the position that it is, but that dispute
11   doesn't exist as to Arch.

12           But with respect to the primary policy language,
13   the question of whether advancement of "covered defense costs"
14   means you have to advance uncovered defense costs is precisely
15   the same.

16           THE COURT:  Okay.

17           MR. STANDISH:  Thank you, Your Honor.

18           MR. KLINE:  Good morning, Your Honor.  Ivan Kline
19   from Friedman & Wittenstein in New York.

20           We represent in this action two of the officer
21   defendants, William Sexton and Sherer, arguing against the
22   intervention on behalf of them as well as defendants Klejna,
23   Murphy and Silverman, who are the five sort of moving insureds
24   on the advancement motion.

25           And even assuming there is some common question of

10

1    law, this is clearly a case where the Court should exercise its

2    discretion to deny the motion.  This case is about coverage

3    under the Axis policy, not the Arch policy.  We've asserted a

4    counterclaim against Axis; under the Axis policy we have not.

5    They are not mentioned or in any way involved the Arch policies

6    and we've made an advancement motion solely as against Axis

7    because its policy is now the one that's up, so to speak.

8            We have no claims against Arch.  We haven't asked

9    for advancement against Arch.  Arch wants to litigate not just

10   advancement in the abstract.  It specifically says it wants to

11   intervene to litigate whether the Arch policy requires Arch to

12   advance defense costs, but nobody's made that request, so I

13   don't know against whom they're going to litigate that, because

14   we haven't made the motion.  So procedurally there is a flaw in

15   what they seek to do, because nobody is seeking relief against

16   Arch, so they can't really be heard on an issue of when their

17   policy requires advancement of defense costs.  In fact, they

18   rely very clearly on a specific provision of their policy,

19   which we have not briefed, we have not addressed because we

20   have no claims against them.

21           There's also a procedural flaw which their own

22   proposed opposition brief sets out and that they didn't address

23   in their reply when we pointed it out.  They state in their

24   proposed brief and in opposing advancement that in order for

25   there to be an advancement motion, there has to be an

11

1    underlying claim to support the request for relief, which
2    advancement would go with.  For example, the five moving
3    insureds have counterclaims against Axis and it's those
4    counterclaims with declaratory injunctive relief that support
5    our request for advancement.
6            Arch points that out because it says others aren't
7    really empowered to advancement anyway, but then it still seeks
8    to adjudicate advancement under its policy just by itself
9    without being hooked on in any way to any claim by or against
10   it.  And it's created its own procedural conundrum.  It
11   recognized it can't come in here to seek to intervene and
12   litigate coverage under the policy, because that would be
13   barred by Justice Freedman's order.  So instead they're seeking
14   just to litigate this advancement issue, but you can't really
15   litigate that in the abstract by itself without the "coverage"
16   under the policy also being in dispute.  They themselves state
17   that in their proposed opposition brief.
18           In terms of the other procedural flaw would be if
19   Your Honor granted that intervention, you know, then what?  We
20   haven't made a motion against Arch, so how can Your Honor
21   adjudicate whether advancement is required under the Arch
22   policy when we haven't briefed it, and we have no intention at
23   this point of briefing it, and may never have to brief it.
24           And in terms of judicial efficiency, some court is
25   going to have the coverage dispute against Arch unless it, you

12

1    know, goes away due to one cause or another.  It's not going to

2    be this court, because by their own statement they can't come in

3    here now to seek to adjudicate coverage.  So to have this court

4    somehow rule in the abstract on advancement under the Arch

5    policy simply makes no sense when some other court will have

6    the coverage issue.  And in both cases they're going to be

7    raising the prior knowledge exclusion in their policy as the

8    key provision to look at.

9            Now, clearly for purposes of efficiency, if we

10   ever want to seek advancement under the Arch policy, we'll have

11   to do something.  We'll have to do it in some court where

12   coverage is also at issue.  And in terms of what Arch's counsel

13   said we're already inconsistent positions, advancement was not

14   an issue before this.

15           THE COURT:  Oh, you don't have to get into that

16   one.

17           MR. KLINE:  All right.  I think that covers the

18   points I want to make, unless Your Honor has some further

19   questions.

20           THE COURT:  Okay.  Why isn't counsel right that, as

21   you said, the common issue here is coverage under the primary

22   policy and coverage was raised in state court so why isn't this

23   really an end run around the state court decision?

24           MR. KLINE:  There are different coverage issues.

25   This coverage issue is not reached by Justice Freedman.  At

13

1    pages 3 to 4 of the rule --

2            THE COURT:  But she said it was premature and this

3    shouldn't be happening now.

4            MR. KLINE:  She found that the litigation of the

5    application of the Arch exclusion was premature.  What Justice

6    Freedman did not reach was the question that is being presented

7    by the motion for preliminary injunction to be argued this

8    morning of whether or not under language of the primary policy

9    and applicable law an insurance company that has denied,

10   regardless of the basis, can't -- has to be obligated to advance

11   defense fees and costs notwithstanding the existence of that

12   coverage defense when the demand is made and has to instead

13   litigate issues of coverage all the way to a conclusion and

14   then try to recoup those amounts.

15           That limited question is the question on which

16   Arch seeks to intervene here, and that's the question that's

17   presented by the motion for preliminary judgment.  Regardless

18   of what the specific coverage defense is, the common issue is

19   whether or not given the language of the primary policy that

20   only requires the advancement of covered defense costs, the

21   Court should turn a blind eye to that language and enforce the

22   advancement of those defense fees and costs anyway until there's

23   some final adjudication in the coverage litigation.

24           THE COURT:  But I mean, you're using the same term,

25   "covered," "coverage."  It's the same term and it's the same

14

1   analysis, isn't it, that she went through?

2           MR. KLINE:  No, Your Honor.  The analysis --

3           THE COURT:  I mean, I understand that she had an

4   alternative basis for her ruling, so one of her bases -- we

5   went through this point on coverage.

6           MR. KLINE:  Your Honor, Justice Freedman did not

7   look at the advancement language in the policy.  In the Supreme

8   Court, the director defendants actually asked Justice Freedman

9   to enter an order for the advancement of defense fees and costs

10  until final adjudication of the coverage issue.  And in her

11  opinion she expressly did not reach that issue, so the specific

12  issue on which we seek to intervene in this matter were reached

13  by Justice Freedman.

14          THE COURT:  They're not asking for it here.

15          MR. KLINE:  They are, Your Honor, in their

16  preliminary injunction papers.

17          THE COURT:  Not from Arch.

18          MR. KLINE:  They are asking it from Axis and it

19  will be the same issue under the primary policy language

20  because both Arch and Axis incorporate by reference conditions

21  D-2 and D-3, which are at issue in this case.

22          Because of that overlap Arch has an interest in

23  the income.  I have no doubt that depending on the outcome here

24  one side or the other will be able to tout that, if and when

25  the Arch layer is ever reached.  And, given the burn rate on

15

1  defense expenses and the demands for settlement that are now

2  being bandied about, I have no doubt that the existence of

3  coverage under the Arch policy will be squarely at issue in the

4  very near future based on the communications that we're

5  receiving.  And at that point, we're going to have to deal with

6  this issue.  It's much more efficient to deal with the issue in

7  one proceeding when that same language is at issue on that

8  issue.

9          THE COURT:  Even though you have different

10  language in your own policy from --

11          MR. KLINE:  The exclusionary language differs.

12  That's correct, Your Honor.

13          THE COURT:  Okay.

14          MR. STANDISH:  Your Honor, I just want to

15  reiterate.  Their motion very clearly says they seek to

16  intervene to litigate the issue whether the Arch policy

17  requires Arch to advance defense costs.  They're not coming in

18  seeking to just talk about whether in general we can get

19  advancement or whether under the Axis policy we're entitled to

20  advancement and question whether they even have standing to do

21  that.

22          In that sense, they're like any insurer that may be

23  out there that may have language similar to the primary policy

24  in any case.  You wouldn't allow that insurer to come and

25  intervene in this case.  And here, they've already been told by

16

1  Justice Freedman they really can't do what they're now seeking

2  to do.  And if you look at their proposed brief, it's full of

3  references that their policy, their prior knowledge to

4  exclusion: they're seeking to argue the applicability of that

5  exclusion albeit to try to avoid advancement as against them,

6  which has not been sought.

7           THE COURT:  Okay.  Arch Insurance Company has

8  moved for permission to intervene under Rule 24(b) incorporated

9  by Bankruptcy Rule 7024 in this declaratory judgment litigation

10 between a lower tier insurer, Axis Reinsurance Company and

11 various defendants, former directors and officers of Refco,

12 Inc.  The movant acknowledges that there's not a complete

13 overlap of the issues in the Axis Reinsurance litigation and

14 the litigation that it would want to pursue if it were

15 permitted to intervene, which would be to seek a declaratory

16 judgment that it -- that is, Arch -- would not be obligated

17 under the Arch policy to advance defense costs to the directors

18 and officer beneficiaries of Refco's insurance with it.  That is

19 because exclusions relied upon by Arch in its policy differ

20 from exclusions relied upon by Axis.

21          The common issue that Arch relies upon for

22 purposes of Rule 24(b) is language in the first-tier policy

23 pertaining to covered claims as they relate to defense costs,

24 among others -- or "losses," as defined in the policy -- which

25 is a link in the logical chain that if broken might prevent

17

1  Arch from pursuing certain of its arguments, if not all of
2  them, that it does not have to advance coverage.  No
3  beneficiary of the policy has actually apparently at this time
4  sought to compel Arch to advance coverage.  I would also note
5  that the debtor in this case has appeared to be completely
6  neutral on the issue and is not a party to this litigation and
7  has taken no position whatsoever.

8           It appears to me that to the extent that it is a
9  common issue of law (and fact to the extent there's any factual
10 issue) in interpreting the relevant insurance policies, it
11 would not be a proper exercise of my discretion to permit Arch
12 to intervene.  As is clear from the briefing on the motions
13 before the Court today in connection with the Axis Reinsurance
14 matter, first, the actual language of the policy is important.
15 Second, issues of ripeness or whether the Axis litigation is
16 premature are important and are to some extent fact driven, in
17 particular driven by the claimed exigencies faced by the policy
18 beneficiaries, the officers and officers who have felt the
19 pinch of not getting the coverage at that tier.

20          To my mind, it would therefore be inefficient to
21 include Arch in this litigation at this time, and it would
22 instead be efficient to pursue the issues that are truly before
23 the Court in this litigation: that is, the issues involving
24 Axis and the directors and officers' claims against Axis and not
25 use this litigation as a funnel to invite any prospective

18

1    insurer to join some sort of massive proceeding.

2              That's compounded by two other considerations.

3    First, I note that Arch pursued in New York State court

4    declaratory judgment litigation regarding the terms of its own

5    policy and "coverage" under that policy, and the state court

6    ruled that that litigation was premature.  It seems to me, in

7    large extent this is an end run around that ruling -- that,

8    i.e., Arch's request to intervene here would be an end run

9    around that ruling -- and at a minimum that if I permitted Arch

10   to intervene, we would be frequently interrupted in litigation

11   by considerations of whether what Arch is in particular seeking

12   at that particular moment (if I permitted it to intervene)

13   would be an end run around that order or whether the order

14   would be binding on it.

15             Finally, as I noted at the pretrial conference on

16   this matter, I continue to have some concern, given (a) that

17   Refco's plan is confirmed and effective and substantially

18   consummated and (b) that Refco, the debtor, has no

19   participation in this litigation at all, as to the extent of my

20   jurisdiction over it.  And in light of all the other factors

21   that I've already mentioned arguing that I should not exercise

22   my discretion to further expand this adversary proceeding to

23   involve other insurers, it seems to me that Arch's issues, if

24   they're to be brought at all, should be brought in another court

25   when they become ripe.

19

1          So I'm not sure which of these counsel here took

2     the lead on this matter, but certainly you could submit an

3     order consistent with my ruling denying the motion.

4          I would ask you just to send a -- well, you can

5     work it out among yourselves.  I'd just ask one of you to send a

6     copy to Arch's counsel.  You don't have to settle it on him, but

7     just send him a copy at the same time you're sending it to

8     chambers, or as a courtesy you may want to send it to him a day

9     before, so he can determine that it's consistent with my ruling.

10

11          MR. KLINE:  Okay.  No problem.

12          THE COURT:  Okay.  Okay.  All right.  So that

13     leads to the motion to dismiss.

14               [Pause in the proceedings.]

15          MR. WALSH:  Michael Walsh from Weil, Gotshal &

16     Manges on behalf of all of what we call the director

17     defendants.  That's Brightman, Ganter, Harkins, Jeakel, Lee,

18     O'Kelly and Schoen.  It seems like Your Honor is very familiar

19     with the background here, but I can just run through the

20     structure if that would be helpful.

21          THE COURT:  Okay.

22          MR. WALSH:  Refco arranged the known insurance in

23     the amount of 70 million dollars.  That consists of a primary

24     policy and five excess policies.  Axis provides a third tier in

25     that tower, that is, the second excess policy and all of the

# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

UNITED STATES OF AMERICA

       -v-

TONE N. GRANT,

            Defendant.

------------------------------------- x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   FEB 2 6 2008
```

:
:
:
:
:
:
:
:
:

INDICTMENT

S4 05 Cr. 1192 (NRB)

## COUNT ONE

(Conspiracy To Commit Securities Fraud, Wire Fraud,
Bank Fraud and Money Laundering)

The Grand Jury charges:

### RELEVANT ENTITIES AND PERSONS

1. At certain times relevant to this Indictment, Refco Inc. was a Delaware corporation with its principal place of business in New York, New York. From at least the mid-1990s, the business of Refco Inc. and its predecessor entities included providing execution and clearing services for exchange-traded derivatives and providing prime brokerage services in the fixed income and foreign exchange markets. Refco Inc. held its initial public offering of common stock on or about August 10, 2005. Prior to on or about August 10, 2005, Refco Inc.'s predecessor entities were privately held. Refco Inc. and its predecessor entities are referred to herein collectively as "Refco."

2. At certain times relevant to this Indictment, TONE N. GRANT, the defendant, held a senior management position at

Refco.  From at least in or about 1997 through in or about 1998, GRANT was the President of Refco.  At certain times relevant to this Indictment, GRANT indirectly held a significant ownership interest in Refco.

3.    At certain times relevant to this Indictment, Phillip R. Bennett, a coconspirator not named herein, was the President and Chief Executive Officer of Refco.  At all times relevant to this Indictment, Bennett had a substantial ownership interest in Refco, directly and indirectly.

4.    At all times relevant to this Indictment, Bank Für Arbeit Und Wirtschaft Und Österreichische Postparkasse Aktiengesellschaft,("BAWAG"), was the fourth largest bank in Austria.  BAWAG was owned at various times by, among other entities, the Austrian Trade Unions Association, formally known as Österreichischer Gewerkschaftsbund (ÖGB).  At various times relevant to this Indictment, BAWAG indirectly held a substantial ownership interest in Refco.

5.    At all times relevant to this Indictment, Refco Group Holdings, Inc. ("RGHI") was a privately-held Delaware corporation that held a substantial ownership interest in Refco.  At various times relevant to this Indictment, RGHI was owned in whole or in part by TONE N. GRANT and Phillip R. Bennett.

2

## THE SCHEME TO DEFRAUD

6.    From at least as early as in or about the mid-1990s, TONE N. GRANT, the defendant, and Phillip R. Bennett, together with others known and unknown, schemed to hide the true financial health of Refco from its banks, counterparties, auditors, and investors.  Starting at least as early as the mid-1990s, GRANT, Bennett and others embarked on a strategy to mask the true performance of Refco's business in order to sell the company for their own benefit and that of Refco's other owners. To that end, over the ensuing years, GRANT, Bennett and others known and unknown systematically (1) covered up both Refco's own losses and customer losses for which Refco became responsible; (2) moved Refco operating expenses off the company's books; and (3) padded Refco's revenues, all in an effort to mislead Refco's banks, counterparties, auditors and investors, with the goals of keeping Refco in business and then selling it for the maximum benefit to its owners and senior management.

7.    In furtherance of this scheme, Phillip R. Bennett, TONE N. GRANT, and others known and unknown, made and caused Refco and others on its behalf to make false and fraudulent statements to Refco's banks, counterparties, customers, auditors, and investors, and to create false audited financial statements and false public filings with the United States Securities and Exchange Commission ("SEC").  The scheme included obtaining,

3

through fraud, the following:  lines of credit for Refco; the
private sale of notes prior to 2004; the sale of 57 percent of
Refco to a group headed by Thomas H. Lee Partners in 2004; the
sale of approximately $600 million of notes to the public in
2004; approximately $800 million of bank financing obtained in
2004; and the August 2005 initial public offering of stock
("IPO") in Refco Inc., in which the public purchased
approximately $583 million of Refco common stock based on a false
and fraudulent registration statement.

### Early Origins Of Refco's Financial Problems

8.    In or about the mid-1990s, Refco was wholly owned
by RGHI, which in turn was owned by TONE N. GRANT, the defendant,
Phillip R. Bennett, and one other partner.  As of early 1997,
RGHI owed Refco at least approximately $106 million.  Starting
later in 1997, Refco directly and indirectly incurred a series of
substantial trading losses that threatened the continued
viability of Refco's business.  In response to these losses, at
various times between in or about May 1997 and in or about
October 2005, GRANT, Bennett, and their coconspirators, moved
losses and expenses out of Refco and into RGHI, and artificially
padded Refco's revenues at the expense of RGHI, in an effort to
hide Refco's true liabilities, manipulate its reported earnings,
and thereby seek to defraud a purchaser into buying the firm at a
price that would pay off the accumulated debt and ensure a profit

4

to Refco's owners.  This strategy resulted in an enormous increase in the already large debt from RGHI to Refco that eventually totaled more than $1 billion.  The debt by RGHI to Refco, carried on Refco's books as a receivable from RGHI, was over time comprised of, among other things, the following principal components: (a) liabilities incurred by Refco when brokerage customers to whom it had extended credit defaulted on their obligations, which were later transferred to RGHI; (b) Refco's proprietary trading losses; (c) various operating expenses incurred by Refco and paid in the first instance by Refco but later transferred to RGHI as an increase in RGHI's debt to Refco; and (d) transactions designed to pad Refco's revenues in which the benefits accrued to Refco and the associated costs were incurred by RGHI.

9.  As a commodities, securities, and futures brokerage and clearing firm, Refco extended credit to customers, allowing customers to make securities, commodities, and futures trades in accounts held at Refco.  In the later 1990s, certain Refco customers to whom Refco had extended credit sustained hundreds of millions of dollars of trading losses in their accounts at Refco.  When the customers were unable to make payments on the credit Refco had extended, Refco liquidated certain of the positions and assumed the resulting losses in the customers' accounts.  Refco sustained large losses of this type,

5

among other times, in 1997, totaling at least approximately $275 million.  These customer losses included the following:

### Asian Debt Crisis Customers

10.  In or about May 1997, a group of Refco customers to whom Refco had extended credit for the purpose of investing in Asian markets sustained large losses in connection with the Asian debt crisis.  When those customers were unable to cover their losses, Refco paid the losses, using hundreds of millions of dollars of customer funds within the unregulated segments of its business.  By the end of May 1997, these losses totaled more than $310 million, and, at the end of December 1997, based on changed market conditions, they totaled approximately $185 million.

### Customer 1

11.  In or about October 1997, a Refco customer to whom Refco had extended credit ("Customer 1"), lost more than $90 million in a series of transactions carried out on the Chicago Mercantile Exchange ("CME").  When Customer 1 could not cover his margin requirements, Refco was forced to meet the margin call from the CME, using the proceeds of an intra day loan from a financial institution to meet its margin requirements, and then using customer funds taken from the unregulated segments of Refco's business to repay the intra day loan.

12.  Recognizing that public acknowledgment of a loss of more than $90 million would threaten Refco's continued

6

existence, TONE N. GRANT and others falsely represented to the public and other customers that Refco had not sustained a significant loss as a result of Customer 1's losses. In addition, GRANT and Bennett significantly misrepresented the size of the loss to Refco's auditors.

13. TONE N. GRANT and Phillip R. Bennett, having misrepresented to third parties that Refco had not suffered a significant loss as a result of Customer 1's trading activity, caused at least $71 million of debt owed by Customer 1 from the trading losses to be transferred to become a debt from RGHI to Refco.

### Proprietary Trading Losses

14. In the late 1990s, Refco also incurred substantial losses from proprietary trades, or trades carried out on its own behalf. For example, in or about 1998, Refco lost at least approximately $40 million in a related party account on an investment in Russian bonds after the Russian Government defaulted on its obligations.

### Refco Expenses Moved To RGHI

15. Beginning at least as early as 1998, Phillip R. Bennett and others, with the knowledge of TONE N. GRANT, the defendant, schemed to reduce Refco's expenses (therefore falsely increasing Refco's apparent profitability) by moving Refco computer expenses off of Refco's books and onto the books of

7

RGHI, in the following years in the following amounts:

| Fiscal Year End | Amount Transferred to RGHI |
|---|---|
| 2000 | $7,378,927.80 |
| 2001 | $8,797,189.98 |
| 2002 | $9,393,846.76 |
| 2003 | $7,002,153.65 |
| 2004 | $4,876,657.60 |
| 2005 | $5,028,053.21 |
| 2006 | $3,595,030.92 |

16.   The result of these actions was to create a large and growing debt owed by RGHI to Refco.  By in or about February 1999, RGHI owed Refco at least approximately $252 million.  In addition, as of in or about February 1999, at least approximately $170 million of customer losses for which Refco was responsible were held in accounts within Refco Global Finance, a consolidating Refco subsidiary.   Thus, a total of at least approximately $422 million in customer losses, Refco losses, and other expenses, principally from the sources outlined above, had accumulated by February 1999.

**Refco's Losses Funded By Use Of Customer Funds**

17.   Starting at least in or about 1997, Phillip R. Bennett, with the knowledge of TONE N. GRANT, and others, caused Refco to use customer funds to cover its losses.  As a result, Refco was perpetually short of cash and was often unable to cover settlement of its customers' transactions.  Accordingly, Bennett

8

and others, with GRANT's knowledge, caused Refco to fail systematically to meet settlement on its customer transactions, often on a daily basis, in amounts that exceeded, at times, $100 million a day. Bennett, GRANT and others then caused Refco to repeatedly misrepresent to the financial institutions to whom Refco owed money to settle Refco's customers' transactions that its failure to make settlement was an error, when in fact Refco purposefully selected, on a rotating basis, institutions with whom it would fail to make settlement, and attempted to stagger its failures to make settlement with each institution so as not to arouse suspicion from the institutions that Refco was in fact unable to fulfill its daily settlement obligations.

## BAWAG Invests In Refco

18. By the end of 1998, Refco was in a precarious financial condition, in light of the significant customer and proprietary trading losses it had absorbed and the resulting daily failure to make settlement on customer transactions. In order to address that problem, in or about late 1998, Phillip R. Bennett and TONE N. GRANT sought a capital contribution from a long-time Refco customer, BAWAG Bank of Austria. In a transaction that closed in 1999, BAWAG through an affiliate purchased a ten percent ownership interest in Refco for approximately $95 million, and lent Refco approximately $85 million of additional capital in return for an option to purchase

9

an additional ten percent of Refco.

## Hiding The RGHI Receivable

19. Throughout the period covered by this Indictment, Refco's books were audited by independent auditors on an annual basis, with a fiscal year-end on the last day of February. Among the items the auditors examined each year were "related party transactions," and, in particular, transactions between and among Refco and RGHI.

20. Beginning at least as early as February 1998, Phillip R. Bennett, on behalf of RGHI, hid the size of the huge and growing RGHI receivable from, among others, Refco's auditors, by carrying out a series of transactions in order temporarily to pay down all or part of the RGHI receivable over Refco's fiscal year-end and replace it with a receivable from one or more other entities not related to Bennett or Refco. At certain times, Bennett also caused the Asian Debt Crisis Customer Losses, which were held in an account at Refco Global Finance, a consolidating entity within Refco Group, to temporarily be transferred out of Refco to RGHI and then, together with the rest of the RGHI receivable, transferred to one or more third parties not affiliated with Refco over its fiscal year-end. Bennett and others, with the knowledge of TONE N. GRANT, caused the reduction of all or part of the RGHI receivable in this manner at every fiscal year-end from at least the fiscal year-end on February 28,

10

1998 through the fiscal year-end on February 29, 2004. Bennett and others directed these transactions in order to hide the existence of the related party receivable and the underlying causes of its existence from Refco's auditors, banks, investors, and others.

21. In 1998 and 1999, Refco and RGHI carried out year-end cover-up transactions in a manner similar to that described below, in the following approximate amounts:

| Date | Approximate Customer Loans |
|------|---------------------------|
| February 1998 | $175 million |
| February 1999 | $265 million |

22. Beginning in 2000, Refco's year-end cover-up transactions were of two types:  transactions with Refco customers, and transactions with BAWAG. In summary, these year-end transactions were carried out in the following approximate amounts and with the following parties during the 2000 to August 2004 period:

| Date | Approximate Customer Loans | BAWAG Loans | Approximate Total Loan Amount |
|------|---------------------------|-------------|------------------------------|
| Feb. 2000 | $310 million | $300 million | $610 million |
| Feb. 2001 | $450 million | $300 million | $750 million |
| Feb. 2002 | $625 million | $300 million | $925 million |
| Feb. 2003 | $650 million | $250 million | $900 million |
| Feb. 2004 | $720 million | $250 million | $970 million |
| May 2004 | $700 Million | $0 | $700 million |

23.    These transactions typically followed standard patterns.  For example, in or about February 2000, Phillip R. Bennett caused the following transactions to occur with several customers and BAWAG, for the purpose of paying down a portion of the RGHI receivable over the February 2000 year-end:

a.    Three different customers (collectively, the "Three Customers") lent a total of approximately $310 million to RGHI, which it then used to pay down its obligation to Refco.  At the same time, Refco lent to the Three Customers $310 million. As a result, it appeared on Refco's books and records that Refco had $310 million in receivables from the Three Customers, and the debt from RGHI appeared to be reduced by $310 million.  In or about March 2000, the transactions were unwound, with Refco lending $310 million back to RGHI (thus increasing the amount owed by RGHI to Refco by $310 million), which RGHI then used to pay back the Three Customers the full amount of the loan.  To ensure a profit for the Three Customers, the interest rate that RGHI paid to the Three Customers was higher than the interest rate that the Three Customers paid to Refco. Each of the transactions with the customers were memorialized in loan agreements between Refco, RGHI and the Three Customers, similar to the agreements that follow:

(i).    On or about February 25, 2000, Refco Capital Markets, Ltd. a Bermuda corporation controlled by

12

Refco, loaned Customer 2, one of the Three Customers, approximately $150 million. The loan was to be repaid on March 9, 2000.

(ii). On or about the same day, February 25, 2000, Customer 2 loaned approximately $150 million to RGHI. The repayment date was on or about March 9, 2000. The loan agreement for this loan was executed by Bennett on behalf of RGHI. The interest rate on this loan was 15 basis points higher than the interest rate on the loan from Refco Capital Markets to Customer 2, thereby assuring Customer 2 a profit.

(iii). On or about the same date, Bennett signed a letter of guaranty to Customer 2 on behalf of Refco Group, Ltd., assuring Customer 2 that, should RGHI default on its approximately $150 million obligation to Customer 2, Refco Group, Ltd. would make Customer 2 whole.

b. At or around the same time as the transactions with the Three Customers, BAWAG loaned RGHI $300 million in cash. RGHI then used the $300 million to pay off $300 million of its debt to Refco, and Refco then loaned to BAWAG $225 million, using the remaining $75 million to fund its operations. In or about March 2000, the transaction was unwound. Refco lent $300 million to RGHI, thus recreating a $300 million debt to Refco from RGHI. RGHI then used the $300 million to pay off the loan from BAWAG. No loan documents were prepared to document

13

this or any of the subsequent BAWAG transactions.

24.   In addition to the year-end transactions described above, which were designed to hide from Refco's auditors and investors the losses and other components of the RGHI receivable, Phillip R. Bennett, TONE N. GRANT and others consistently lied and caused others to lie to Refco's auditors in an effort to cover up the size of those losses and other expenses contained in the RGHI receivable.

## Refco Sells Notes Based On False Financial Information

25.   At various times prior to August 2004, Phillip R. Bennett, TONE N. GRANT and others, in furtherance of the scheme to defraud Refco's potential investors, caused Refco to raise capital through the private placement of certain notes.  These notes were sold to investors based, in part, on audited financial statements prepared for Refco's auditors that were rendered false and misleading by the year-end cover-up transactions outlined above and the siphoning of Refco expenses out of Refco and into RGHI.

## Refco Obtains Credit Counterparty Relationships Based On False Financial Information

26.  Because Refco was constantly in need of cash to cover its transactions and meet settlement, Refco sought and obtained credit from banks and other financial institutions, including a revolving line of credit from a number of financial institutions, including JP Morgan Chase, beginning in or about

14

1998, that eventually grew to more than $300 million.  For each such transaction, including the annual renewal of the revolving line of credit, Refco submitted to the proposed creditor the fraudulent financial statements and made other false statements that materially misstated the financial health of Refco.

### Refco Helps BAWAG Hide Its Own Balance Sheet Problems

27.  Between 2000 and 2005, while BAWAG assisted Refco in hiding the RGHI receivable in the manner described above, Refco assisted BAWAG in hiding its own balance sheet problem.  In or about early 2000, BAWAG entrusted approximately €350 million of BAWAG's funds to an investment advisor, who by the end of 2000 reported to the bank that he had lost substantially all of those funds.  In order to disguise this loss on its balance sheet, BAWAG held in an account at Refco certain worthless bonds and other investments that Refco maintained at a false value that, over time, reached at least approximately €500 million.  These fake assets were purportedly housed at Refco and maintained at an inflated value for BAWAG's benefit until 2005.

### BAWAG Invests Further In Refco

28.   In or about 2003 and 2004, BAWAG, through a series of off-shore corporate entities, made two contributions to Refco totaling approximately $467,415,000.  In return, BAWAG received the right to approximately 27.2 percent of the proceeds of the sale of Refco and, together with its existing interest in

15

20 percent of Refco, had rights to approximately 47 percent of the proceeds of a sale of the company.

### RGHI's "Exit Strategy" Develops

29.  In or about 2003, Phillip R. Bennett hired the investment bank Credit Suisse First Boston ("CSFB") to assist in selling Refco.

30.  In connection with RGHI's plan to sell Refco, Refco and RGHI management (a) continued to siphon Refco expenses and losses into RGHI, and (b) padded Refco's reported revenue in order to hit budgeted income targets set by Bennett and others to disguise the ongoing operational problems at the company.

31.  In order to further make Refco appear more attractive to a potential purchaser or investor, from at least in or about April 2003, through and including in or about August 2004, Refco management shifted at least approximately $34 million in proprietary trading losses that Refco suffered from Refco to RGHI, and thus making it appear that Refco was more profitable than it actually was, and increasing the debt owed by RGHI to Refco.

### The Fraudulent Leveraged Buyout Transaction

32.  In or about 2003, Phillip R. Bennett and others began negotiations with Thomas H. Lee Partners, a private equity fund, regarding that entity's possible purchase of a controlling stake in Refco as part of a leveraged buyout transaction.  On or

16

about June 8, 2004, TONE N. GRANT and Bennett executed an Equity Purchase and Merger Agreement (the "EPMA") with Thomas H. Lee Partners that set forth the terms of the deal.  At the time that GRANT signed the EPMA, GRANT had full knowledge of the more than $1 billion of debt that RGHI owed to Refco, and knew and expected that as part of the leveraged buyout transaction, misrepresentations regarding Refco would be made to the participants in the leveraged buyout, including Thomas H. Lee Partners, banks and the purchasers of the notes.

33.    As a necessary part of this transaction, and as required by the EPMA, shortly prior to the closing of the leveraged buyout transaction, Phillip R. Bennett purchased TONE N. GRANT's ownership interest in Refco for approximately $4 million, plus a 50 percent interest in profits made by Bennett in a future sale of Bennett's interest in Refco, not to exceed $275 million.  As ultimately carried out on or about August 5, 2004, the leveraged buyout was structured as follows:  Thomas H. Lee Partners, through an affiliate, purchased a 57 percent ownership interest in Refco, in return for approximately $511 million of new capital; simultaneously, Refco sold $600 million in notes and obtained $800 million in financing from a syndicate of banks.

**Lies To Thomas H. Lee Partners**

34. In connection with the leveraged buyout transaction, Phillip R. Bennett and others caused Refco's audited

financial statements for the year ending February 2004 to be provided to Thomas H. Lee Partners. Those audited financial statements were false and misleading in the following respects, among others:

a. The financial statements hid the size of the related party receivable from RGHI, which at the end of February 2004 was, but for the cover-up loan transactions, at least approximately $1 billion, whereas the financial statements misleadingly reported that the "$105 million due from related parties, included in loans receivable at February 28, 2003, was received by February 29, 2004."

b. The financial statements falsely reported Refco's net income for the year as $187 million, when in fact that number was inflated.

35. In connection with the leveraged buyout transaction, Phillip R. Bennett and others falsely stated that Refco did not engage in proprietary trading, when in fact, as they well knew, it did, had incurred substantial losses through that trading, and had transferred some of those losses to RGHI for the purpose of hiding them.

### Lies To The Note Purchasers

36. In connection with the leveraged buyout transaction, Phillip R. Bennett and others provided to the note underwriters and note purchasers the following false and

18

misleading information:

        a.    Refco's audited financial statements for the year ended February 29, 2004, containing the same false and misleading statements described above in paragraph 34;

        b.    Bennett and others falsely represented that Refco did not suffer significant historical customer losses, and specifically denied that Refco incurred a significant loss from the collapse of the Asian markets when, in fact, that collapse caused the Asian Debt Crisis Customer Losses; and

        c.    Bennett and others falsely stated that Refco did not engage in proprietary trading, when in fact, as they well knew, it did, had incurred substantial losses through that trading, and had transferred some of those losses to RGHI for the purpose of hiding them.

### Lies To The Bank Syndicate

    37.   In connection with the leveraged buyout transaction, Phillip R. Bennett and others provided to the bank syndicate that was raising the $800 million in loans for Refco as part of the leveraged buyout transaction the following false and misleading information:

        a.    Refco's audited financial statements for the year ended February 29, 2004, containing the same false and misleading statements described above in paragraph 34;

        b.    Bennett and others falsely represented that

19

Refco did not suffer significant historical customer losses, and specifically denied that Refco incurred a significant loss from the collapse of the Asian markets when, in fact, that collapse caused the Asian Debt Crisis Customer Losses; and

        c.   Bennett and others falsely stated that Refco did not engage in proprietary trading, when in fact, as they well knew, it did, had incurred substantial losses through that trading, and had transferred some of those losses to RGHI for the purpose of hiding them.

      38.  The leveraged buyout transaction closed on or about August 5, 2004, and Refco received a total of approximately $1.9 billion.  Thereafter, Phillip R. Bennett caused the distribution of funds, which had been wired into an RGHI bank account at JP Morgan Chase in New York, New York, directly or indirectly, to the following persons and entities, among others:

| Recipient | Approximate Amount |
|---|---|
| BAWAG | $842 million |
| Refco (used to pay down RGHI receivable) | $306 million |
| Bennett | $25 million |
| GRANT | $16 million |
| Other Former Equity Partners | $81.5 million |
| Other Refco Officers, Employees, and Affiliated Parties | $160 million |

      39.  In connection with the leveraged buyout transaction, Phillip R. Bennett and others falsely represented to

Thomas H. Lee Partners that Refco had accumulated approximately $500 million cash in retained profits and that it would be distributing those retained profits through a dividend to its shareholders at the time of the leveraged buyout. In fact, Refco had not retained $500 million in profits, but had funded an account at BAWAG with $110 million in customer funds and a $390 million loan from BAWAG. At the end of the leveraged buyout transaction, Bennett distributed the $110 million taken from Refco to BAWAG as payment for its participation in this aspect of the fraud, and then wrote off $390 million of the RGHI debt to Refco against the $390 million "dividend" "paid" to RGHI as owner of Refco.

## Bennett Plans To Take Refco Public

40.    After the leveraged buyout, Phillip R. Bennett, who remained the Chief Executive Officer of Refco following the transaction, and others planned to sell a portion of Refco to the public through an Initial Public Offering ("IPO") of stock in Refco.

41.    Between the August 2004 leveraged buyout and the August 2005 IPO, Phillip R. Bennett continued his manipulation of Refco's finances: At each quarter and year-end period, Bennett caused cover-up loan transactions designed to hide the existence and size of the RGHI receivable from Refco's auditors and investors; and Bennett continued to cause Refco expenses to be

21

assumed by RGHI and to artificially pad Refco's revenues by the means previously described.  Bennett caused the following quarter- and year-end transactions:

| Date | Approximate Customer Loans | Bawag Loans | Approximate Total Loan Amount |
|------|---------------------------|-------------|------------------------------|
| August 2004 | $485 million | 0 | $485 million |
| November 2004 | $545 million | 0 | $545 million |
| February 2005 | $345 million | $250 million | $595 million |
| May 2005 | $450 million | 0 | $450 million |

### Refco's Public Filings And Publicly Traded Securities

42.  In 2005, Refco registered certain of its securities with the SEC and, with that registration, was required to make certain additional public filings with the SEC.

43.  On or about April 6, 2005, Refco filed an S-4 registration statement with the SEC in connection with its offer to exchange $600 million of the senior subordinated notes originally issued in August 2004 for $600 million of senior subordinated notes registered under the Securities Act of 1933. Phillip R. Bennett signed the registration statement on or about April 6, 2005 in New York, New York.  Registration of these notes permitted them to be traded publicly.  The S-4 contained several material misstatements about Refco, including the audited financial statements which failed to reflect the related party

22

transactions described above or the debt owed to Refco from RGHI. The S-4 also cited inflated revenue and income numbers that resulted from the revenue padding and expense shifting described above and falsely claimed that Refco did not engage in proprietary trading.

44.    On or about July 19, 2005, as required by the Securities Exchange Act of 1934 (the "Exchange Act") and applicable rules, Refco filed with the SEC its annual report for the year ended February 28, 2005 on Form 10-K.    Phillip R. Bennett signed the annual report on or about July 19, 2005 in New York, New York.    Bennett also signed two certifications regarding the annual report.    As noted above, the financial statements contained in the annual report were fraudulent in that, among other things, they failed to reflect the related party receivable, the padded revenue, and the shifted expenses.

45.    On or about August 8, 2005, Refco filed an S-1 registration statement with the SEC in connection with its initial public offering of common stock.

46.    The S-4 registration statement, 10-K annual report, and S-1 registration statement required the disclosure of (a) certain transactions between Refco and its management and (b) certain debts owed directly or indirectly by any executive officer of Refco to Refco, during Refco's past fiscal year and, for the registration statements, during Refco's prior two fiscal

23

years.  These disclosures were required in order to apprize investors of, among other things, potential conflicts of interest by management.

47.  The S-4 registration statement, 10-K annual report, and S-1 registration statement each failed to disclose the related party transactions and the related party indebtedness between Refco and RGHI outlined above.  In particular, these public filings failed to disclose: (a) the existence of hundreds of millions of dollars of indebtedness by RGHI to Refco during 2004 and 2005; (b) the transactions at quarter- and fiscal year-end during 2004 and 2005 by which RGHI temporarily paid down its debt to Refco, the guaranties by Refco of the third party lenders' loans to RGHI, and the subsequent re-assumption of the debt by RGHI, each of which was a related party transaction required to be disclosed in the public filings.

## Refco's August 2005 IPO

48.  On or about August 10, 2005, in reliance on, among other things, Refco's public filings and the accompanying audited financial statements, the public bought approximately $583 million of Refco's common stock.  Following the initial public offering, Refco's common stock was listed on the New York Stock Exchange under ticker symbol "RFX."

## End Of Quarter Transactions In August 2005

49.  In or about late August 2005, after the completion

24

of Refco's IPO, Phillip R. Bennett caused Refco to carry out $420 million in cover-up transactions with a Refco customer that temporarily transformed all or part of the RGHI receivable into a receivable from that customer.  After the August 31, 2005 end of Refco's second quarter, the $420 million in cover-up transactions were unwound.

## Public Disclosure Of The Related Party Debt

50.  In or about early October 2005, Refco discovered an approximately $430 million receivable on its books from RGHI. It demanded repayment of the debt by Phillip R. Bennett, who repaid Refco approximately $430 million on or about October 10, 2005, having received an emergency loan in that approximate amount from BAWAG.

51.  On or about October 10, 2005, Refco issued a press release announcing the following:

> [Refco] discovered through an internal review a receivable owed to the Company by an entity controlled by Phillip R. Bennett, Chief Executive Officer and Chairman of the Board of Directors, in the amount of approximately $430 million. Mr. Bennett today repaid the receivable in cash, including all accrued interest. Based on the results of the review to date, the Company believes that the receivable was the result of the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company, which may have been uncollectible. The Company believes that all customer funds on deposit are unaffected by these activities. Independent counsel and forensic auditors have been retained to assist the Audit Committee in an investigation of these matters.

52. Following Refco's announcement of its discovery of this related party receivable, the market price of Refco stock plummeted, resulting in a loss of well more than $1 billion in market capitalization.

53. On or about October 17, 2005, Refco filed a petition in bankruptcy in the United States Bankruptcy Court for the Southern District of New York. Refco's common stock was subsequently delisted by the New York Stock Exchange.

## THE CONSPIRACY

54. From in or about the mid-1990s up to in or about October 2005, in the Southern District of New York and elsewhere, TONE N. GRANT, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, namely: (a) to commit fraud in connection with the purchase and sale of securities issued by Refco, in violation of Sections 78j(b) and 78ff of Title 15, United States Code, and Section 240.10b-5 of Title 17, Code of Federal Regulations; (b) to commit wire fraud, in violation of Section 1343 of Title 18, United States Code; (c) to commit bank fraud, in violation of Section 1344 of Title 18, United States Code; and (d) to commit money laundering, in violation of Section 1957(a) of Title 18, United States Code.

26

## OBJECTS OF THE CONSPIRACY

### Securities Fraud

55.   It was a part and object of the conspiracy that
TONE N. GRANT, the defendant, and others known and unknown,
unlawfully, willfully, and knowingly, by the use of the means and
instrumentalities of interstate commerce, the mails, and
facilities of national securities exchanges, directly and
indirectly, would and did use and employ, in connection with the
purchase and sale of securities, manipulative and deceptive
devices and contrivances, in violation of Title 17, Code of
Federal Regulations, Section 240.10b-5, by: (a) employing
devices, schemes, and artifices to defraud; (b) making untrue
statements of material facts and omitting to state material facts
necessary in order to make the statements made, in the light of
the circumstances under which they were made, not misleading; and
(c) engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon a person,
in connection with the purchase and sale of notes issued by Refco
and the common stock of Refco Inc., all in violation of Title 15,
United States Code, Sections 78j(b) and 78ff.

### Wire Fraud

56.   It was further a part and object of the conspiracy
that TONE N. GRANT, the defendant, and others known and unknown,
unlawfully, willfully, and knowingly, having devised and

27

intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, all in violation of Title 18, United States Code, Section 1343.

### Bank Fraud

57. It was further a part and object of the conspiracy that TONE N. GRANT, the defendant, and others known and unknown, unlawfully, willfully and knowingly, would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, to wit, HSBC, and to obtain moneys, funds, credits, assets, securities and other property owned by, and under the custody and control of, a financial institution, to wit, HSBC, whose deposits were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises, all in violation of Title 18, United States Code, Section 1344.

### Money Laundering

58. It was further a part and object of the conspiracy that TONE N. GRANT, the defendant, and others known and unknown, in an offense involving and affecting interstate and foreign

28

commerce, unlawfully, willfully and knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit, securities fraud, bank fraud, and wire fraud, in violation of Title 18, United States Code, Section 1957(a).

## MEANS AND METHODS OF THE CONSPIRACY

59.  Among the means and methods by which TONE N. GRANT, the defendant, Phillip R. Bennett and their co-conspirators would and did carry out the conspiracy were the following:

a.    TONE N. GRANT, the defendant, misrepresented to the public the size of customer losses for which Refco was responsible.

b.    TONE N. GRANT, the defendant, Phillip R. Bennett, and their coconspirators transferred losses incurred by Refco to GRANT and Bennett's company, RGHI.

c.    TONE N. GRANT, the defendant, Phillip R. Bennett and their coconspirators concealed the size and related party nature of the debt owed by RGHI to Refco by causing Refco and others to carry out loan transactions over fiscal year-end and fiscal quarter-end dates to move the RGHI receivable to one or more Refco customers.

d.    TONE N. GRANT, the defendant, and his

29

coconspirators used facilities of interstate commerce, including the use of interstate telephone calls and interstate wire transfers, in furtherance of the objects of the conspiracy.

e.    TONE N. GRANT, the defendant, and his coconspirators misrepresented to customers, potential customers, lenders, investors and others that Refco did not engage in proprietary trading.

## Overt Acts

60.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about late 1997, TONE N. GRANT, the defendant, misrepresented to the public that Refco had not taken a significant loss in connection with the trading of Customer 1.

b.    On or about May 15, 1998, TONE N. GRANT, the defendant, and others signed a letter to Refco's auditors misrepresenting, among other things, that "the accounting records underlying the financial statements accurately and fairly reflect, in reasonable detail, the transactions of the company" and that Refco had properly "recorded or disclosed" all "related party transactions and related amounts receivable or payable."

c.    On or about February 20, 2004, in New York, New York, Phillip R. Bennett signed a guaranty letter on behalf of Refco Group Ltd., LLC regarding an approximately $720 million

30

loan from a Refco customer to RGHI.

        d.  On or about April 27, 2004, Phillip R. Bennett signed a letter to Refco's auditors representing, among other things, that all related party transactions and related party amounts receivable had been fully disclosed to the auditors.

        e.  On or about May 17, 2004, TONE N. GRANT, the defendant, met with Phillip R. Bennett at a hotel in lower Manhattan to discuss the more than $1 billion debt that they, as the owners of RGHI, owed to Refco.

        f.  On or about August 5, 2004, RGHI caused the transfer of approximately $4 million to TONE N. GRANT, the defendant.

        g.  On or about August 8, 2004, Phillip R. Bennett caused the transfer of approximately $12 million to TONE N. GRANT, the defendant.

        h.  On or about August 8, 2005, in New York, New York, Phillip R. Bennett signed Refco's S-1 registration statement.

        (Title 18, United States Code, Section 371).

## COUNT TWO

(Securities Fraud)

The Grand Jury further charges:

61.  The allegations contained in paragraphs 1 through

53, 59 and 60 of this Indictment are repeated and realleged as if fully set forth herein.

62. In or about 2004, in the Southern District of New York and elsewhere, TONE N. GRANT, the defendant, and others, unlawfully, willfully, and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of 9% Senior Subordinated Notes due 2012, issued by Refco Group Ltd., LLC and Refco Finance, Inc.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2).

## COUNT THREE

(Wire Fraud)

The Grand Jury further charges:

63. The allegations contained in paragraphs 1 through 53, 59 and 60 of this Indictment are repeated and realleged as if fully set forth herein.

64. On or about August 5, 2004, in the Southern District of New York, TONE N. GRANT, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, in connection with the scheme set forth above, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, GRANT caused a $4 million wire transfer to be sent from RGHI's JP Morgan Chase account in New York, New York to GRANT's Harris Trust Account in Chicago, Illinois.

(Title 18, United States Code, Sections 1343 and 2).

## COUNT FOUR

(Bank Fraud)

The Grand Jury further charges:

65. The allegations contained in paragraphs 1 through

33

53, 59 and 60 of this Indictment are repeated and realleged as if fully set forth herein.

66.  In or about 2004, in the Southern District of New York, TONE N. GRANT, the defendant, unlawfully, willfully and knowingly, would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, to wit, HSBC, and to obtain moneys, funds, credits, assets, securities and other property owned by, and under the custody and control of, a financial institution, to wit, HSBC, whose deposits were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344 and 2).

## COUNT FIVE

(Money Laundering)

The Grand Jury further charges:

67.  The allegations contained in paragraphs 1 through 53, 59 and 60 of this Indictment are repeated and realleged as if fully set forth herein.

68.  On or about August 5, 2004, in the Southern District of New York, TONE N. GRANT, the defendant, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully and knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property that was of a value greater than $10,000, to wit, a

34

$4 million wire transfer to be sent from RGHI's JP Morgan Chase account in New York, New York, to GRANT's Harris Trust Account in Chicago, Illinois, and that was derived from specified unlawful activity, to wit, securities fraud, bank fraud, and wire fraud, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1957(a) and 2).

## FORFEITURE ALLEGATION WITH RESPECT TO
## COUNTS ONE THROUGH THREE

69.   As a result of committing one or more of the foregoing securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 as alleged in Counts One and Two; wire fraud offenses, in violation of Title 18, United States Code, Section 1343, as alleged in Counts One and Three, TONE GRANT, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities and wire fraud offenses, including without limitation at least $2.4 billion in United States currency, representing the amount of proceeds obtained as a result of the charged wire and securities fraud offenses.

## FORFEITURE ALLEGATION WITH RESPECT TO
## COUNTS ONE, FOUR AND FIVE

70.  As a result of committing one or more of the foregoing bank fraud offenses, in violation of Title 18, United States Code, Section 1344, as alleged in Counts One and Four of this Indictment, and the money laundering offenses, in violation of Title 18, United States Code, Section 1957(a), as alleged in Counts One and Five of this Indictment, TONE N. GRANT, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, any property constituting or derived from the proceeds obtained directly or indirectly as a result of the bank fraud offenses and all property, real and personal, involved in the money laundering offenses and all property traceable to such property, including but not limited to the following:

a.  At least $800 million in United States currency, representing the amount of proceeds obtained as a result of the charged bank fraud offenses; and

b.  At least $2.4 billion in United States currency, in that such sum in aggregate is property which was involved in the charged money laundering offenses or is traceable to such property.

## SUBSTITUTE ASSETS PROVISION

71.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

36

(i)   cannot be located upon the exercise of due diligence;

(ii)  has been transferred or sold to, or deposited with, a third party;

(iii)  has been placed beyond the jurisdiction of the court;

(iv)  has been substantially diminished in value; or

(v)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 371, 981, 982, 1343, 1344; Title 15, United States Code, Sections 77x, 78j(b), 78o(d), 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.15d-2; Title 21, United States, Section 853(p); and Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

37

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v -

### TONE N. GRANT,

**Defendant.**

## INDICTMENT

S4 05 Cr. 1192 (NRB)

(18 USC §371; 15 USC §§ 78j(b) and 78ff; 17 CFR §
240.10b-5,18 USC § 2; 18 USC 1343, 2; 18 USC 1344,2: 18
USC 1957(a).)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

Foreperson.

2/26/08  Filed  Indictment.

J Mag. J. Katz

# Exhibit H

ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CRIMINAL DOCKET FOR CASE #: 1:05-cr-01192-NRB-3

Case title: USA v. Bennett

Date Filed: 11/10/2005

Assigned to: Judge Naomi Reice
Buchwald

**Defendant (3)**

**Tone N. Grant**                    represented by  **Benjamin M. Block**
Zuckerman, Spaeder, LLP
1540 Broadway
Suite 1604
New York, NY 10036-4039
(212)704-9600
Fax: (212) 704-4256
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Norman L. Eisen**
Zuckerman Spaeder LLP
1800 M Street, N.W
Washington, DC 20036
(202)-778-1824
Fax: (202)-822-8106
Email: neisen@zuckerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roger E. Zuckerman**
Zuckerman Spaeder, LLP
1800 M Street, N.W., Suite 1000
Washington, DC 20036
(202) 778-1802
Fax: (202) 822-8106
Email: rzuckerman@zuckerman.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aitan David Goelman**

Zuckerman Spaeder LLP
1800 M Street, N.W
Washington, DC 20036
202-778-1996
Fax: (202)-822-8106
Email: agoelman@zuckerman.com
*ATTORNEY TO BE NOTICED*

**Laura Elizabeth Neish**
Zuckerman, Spaeder LLP(NYC)
1540 Broadway
Suite 1604
New York, NY 10036-4039
(212)-704-9600
Fax: (212)-704-4256
Email: lneish@zuckerman.com
*ATTORNEY TO BE NOTICED*

**Shawn Patrick Naunton**
Shawn P. Naunton
150 East 56th Street
Apt. 6-E
New York, NY 10022
(646) 429-9447
Email: snaunton@zuckerman.com
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
|---|---|
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1r) | |
| 18:371 CONSPIRACY TO DEFRAUD THE UNITED STATES (CONSPIRACY) (1s) | |
| MANIPULATIVE AND DECEPTIVE DEVICES (2r) | |
| 15:78j(b)&78ff; 17CFR 240.10B-5; & 18:2 SECURITIES EXCHANGE PENALTIES (SECURITIES FRAUD) (2s) | |
| 18:1343&2 FRAUD BY WIRE, RADIO, OR TELEVISION (WIRE FRAUD) (3s) | |
| 18:1344 & 2 BANK FRAUD (4s) | |

18:1957 & 2 INTERSTATE
COMMERCE (MONEY
LAUNDERING)
(5s)

FRAUD BY WIRE, RADIO, OR
TELEVISION
(11r)

BANK FRAUD
(15r)

FEDERAL STATUTES, OTHER -
MONEY LAUNDERING
(19r)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

USA                                    represented by   **Christopher Louis Garcia**
                                                        U.S. Attorney's Office, SDNY (St
                                                        Andw's)
                                                        One St. Andrew's Plaza
                                                        New York, NY 10007
                                                        212-637-1022
                                                        Fax: 2126372527
                                                        Email: christopher.garcia@usdoj.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **David C. Esseks**
                                                        U.S. Attorney's Office, SDNY (St
                                                        Andw's)
                                                        One St. Andrew's Plaza
                                                        New York, NY 10007
                                                        212 637 2328
                                                        Fax: 212 637 2452

Email: David.Esseks@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcia R. Isaacson**
United States Attorneys Office
One St. Andrew's Plaza
New york, NY 10007
212-637-2211
Email: marcia.isaacson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcia Ruth Isaacson**
U.S. Attorney's Office, SDNY (86
Chambers St.)
86 Chambers Street
New York, NY 10007
(212) 637-2200
Fax: (718) 422-1712
Email: marcia.isaacson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Neil Michael Barofsky**
U.S. Attorney's Office, SDNY (St
Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2200
Fax: (212) 637-0086
Email: neil.barofsky@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/16/2007 | 47 | ORDER as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. IT IS HEREBY ORDERED that the S3 Indictment is to be sealed, except for distribution to the Government and the defendants in this criminal action, and that the Redacted S3 Indictment is to be filed in lieu of the original S3 Indictment. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 1/16/2007)(st) (Entered: 01/30/2007) |
| 01/16/2007 | 48 | (S3) REDACTED SUPERSEDING INDICTMENT FILED as to Phillip R. Bennett (1) count(s) 1rsss, 2rsss-3rsss, 4rsss, 5rsss-6rsss, 7rsss-13rsss, 14rsss, 15rsss, 16rsss-20rsss, Robert C. Trosten (2) count(s) 1rss, 2rss, 7rss-8rss, 15rss, 17rss-18rss, Tone N. Grant (3) count(s) 1r, 2r, 11r, 15r, 19r. (Attachments: # 1 Part 2 of (S3) Indictment) (st) (Entered: 01/30/2007) |

| 01/16/2007 | | Case Designated ECF as to Tone N. Grant. (pr) (Entered: 03/12/2008) |
|---|---|---|
| 01/19/2007 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald :Initial Appearance as to Tone N. Grant held on 1/19/2007. Dft pres w/atty. AUSAs are pres. (ja) (Entered: 02/01/2007) |
| 01/19/2007 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald :Arraignment (on S3 Redacted Superseding Indictment) as to Phillip R. Bennett (1) Counts 1rss, 2rsss-3rsss, 4rsss, 5rsss-6rsss, 7rsss-13rsss, 14rsss, 15rsss, 16rsss-20rsss; Robert C. Trosten (2) Counts 1rss, 2rss, 7rss-8rss, 15rss, 17rss-18rss; and Tone N. Grant (3) Counts 1r, 2r, 11r, 15r, and 19r held on 1/19/2007. All dfts pres w/atty(s), AUSAs Barosky and Esseks pres. Crt rptr pres. Dfts plead not guilty to Superseding Indictment. STT excluded for Grant until trial date of 10/9/07. (ja) (Entered: 02/01/2007) |
| 01/19/2007 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald : Plea entered by Phillip R. Bennett (1) Counts 1rsss, 2rsss-3rsss, 4rsss, 5rsss-6rsss, 7rsss-13rsss, 14rsss, 15rsss, and 16rsss-20rsss; Robert C. Trosten (2) Counts 1rss, 2rss, 7rss-8rss, 15rss, and 17rss-18rss; and Tone N. Grant (3) Counts 1r, 2r, 11r, 15r, 19r -- Not Guilty. (ja) (Entered: 02/01/2007) |
| 01/19/2007 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald :Bond Hearing as to Tone N. Grant held on 1/19/2007. Dft Grant pres w/atty. Bail for Grant set: $10M PRB, secured by property, FR cosigner, travel in continental U.S. only, passport surrendered, regular pretrial supervision for district of his residence, agreement not to apply for another passport. (ja) (Entered: 02/01/2007) |
| 01/31/2007 | 50 | Appearance Bond Entered as to Tone N. Grant in amount of $ 10,000,000. $10,000,000 PRB; secured by property; financially responsible co-signer; travel in continental US only; passport surrendered; regular pretrial supervision for district of his residence; agreement not to apply for another passport. (bw) (Entered: 02/01/2007) |
| 02/08/2007 | 53 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 1/19/07 before Judge Naomi Reice Buchwald. (jbe) (Entered: 02/08/2007) |
| 02/09/2007 | 54 | ENDORSED LETTER as to Tone N. Grant addressed to Judge Buchwald from Aitan D. Goelman dated 2/7/07 re: Mr. Grant proposes that he file his severance motion no later than 3/7 and any additional pretrial motions no later then 4/9. SO ORDERED. The govt has no objection to these dates, and the govt requests 2 weeks to respond to any motion filedby Mr. Grant, with leave to petition the court for additional time if necessary. Mr. Grant would request 10 days withinwhich to file any reply to the govt's briefsin opposition. SO ORDERED.. (Signed by Judge Naomi Reice Buchwald on 2/8/07)(pr) (Entered: 02/09/2007) |
| 02/16/2007 | 59 | NOTICE OF ATTORNEY APPEARANCE: Aitan David Goelman appearing for Tone N. Grant. (Goelman, Aitan) (Entered: 02/16/2007) |

| 02/22/2007 | 61 | MOTION for Roger E. Zuckerman to Appear Pro Hac Vice.Document filed by Tone N. Grant. (jw) (Entered: 03/07/2007) |
|---|---|---|
| 03/01/2007 | | CASHIERS OFFICE REMARK as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant in the amount of $25.00, paid on 02/22/2007, Receipt Number 607019. Pro Hac Vice payment for Roger E. Zuckerman. (jd) (Entered: 03/01/2007) |
| 03/07/2007 | 62 | MEMORANDUM in Opposition by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant re 21 MOTION to Produce *Pursuant to Federal Rules of Criminal Procedure 16(a)(1)(E)(i) and 16(d)(2).*, 30 FIRST MOTION for Bill of Particulars., 61 MOTION for Roger E. Zuckerman to Appear Pro Hac Vice., 14 MOTION for Bill of Particulars.. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit)(Esseks, David) (Entered: 03/07/2007) |
| 03/07/2007 | 63 | MOTION to Sever Defendant. Document filed by Tone N. Grant. (Attachments: # 1 Affidavit Aitan D. Goelman)(Goelman, Aitan) (Entered: 03/07/2007) |
| 03/07/2007 | 64 | MEMORANDUM in Support by Tone N. Grant re 63 MOTION to Sever Defendant.. *Tone N. Grant* (Attachments: # 1 Exhibit A-Proof of Claim# 2 Exhibit B -Hannafan Cover Letter# 3 Exhibit C Reuters Article# 4 Exhibit D New York Post Article# 5 Exhibit E Feb. 16, 2007 letter from Goelman to Esseks and Barofsky# 6 Exhibit F Feb. 16, 2007 Letter from Goelman to Esseks and Barofsky)(Goelman, Aitan) (Entered: 03/07/2007) |
| 03/08/2007 | 65 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 1/19/2007 before Judge Naomi Reice Buchwald. (aba) (Entered: 03/08/2007) |
| 03/08/2007 | 66 | NOTICE OF ATTORNEY APPEARANCE: Laura Elizabeth Neish appearing for Tone N. Grant. *Zuckerman Spaeder LLP* (Neish, Laura) (Entered: 03/08/2007) |
| 03/08/2007 | 67 | NOTICE OF ATTORNEY APPEARANCE: Shawn Patrick Naunton appearing for Tone N. Grant. *Zuckerman Spaeder LLP* (Naunton, Shawn) (Entered: 03/08/2007) |
| 03/12/2007 | 71 | MOTION for Norman L. Eisen, Esq. to Appear Pro Hac Vice. Document filed by Tone N. Grant. Dated 3/9/07. [608783 $25 3/12/07] (bw) Additional attachment(s) added on 4/13/2007 (Espinell, Antonia). (Entered: 03/16/2007) |
| 03/13/2007 | 68 | NOTICE of Government's Second Bill of Particulars as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant (Korologos, Lisa) (Entered: 03/13/2007) |
| 03/14/2007 | 70 | ORDER For Admission Pro Hac Vice On Written Motion, as to Tone N. Grant. It is hereby ORDERED that Roger E. Zuckerman, Esq. is admitted to practice pro hac vice as counsel for Deft Tone N. Grant in the above-captioned case in the U.S.D.C. for the S.D.N.Y. All attorneys appearing |

| | | |
|---|---|---|
| | | before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. This action is assigned to the ECF system, and counsel shall immediately apply for an ECF password at nysd.uscourts.gov. Counsel shall forward the pro hac vice fee to the Clerk of the Court. (Signed by Judge Naomi Reice Buchwald on 3/13/07) (bw) (Entered: 03/15/2007) |
| 03/14/2007 | | Attorney update in case as to Tone N. Grant. Attorney Roger E. Zuckerman for Tone N. Grant added. (bw) (Entered: 03/15/2007) |
| 03/21/2007 | 73 | ORDER For Admission Pro Hac Vice On Written Motion as to Tone N. Grant. It is hereby ORDERED that Norman L. Eisen, Esq. is admitted to practice pro hac vice as counsel for Deft Tone N. Grant in the above-captioned case in the U.S.D.C. for the S.D.N.Y. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. This action is assigned to the ECF system, and counsel shall immediately apply for an ECF password at nysd.uscourts.gov. Counsel shall forward the pro hac vice fee to the Clerk of the Court. (Signed by Judge Naomi Reice Buchwald on 3/20/07) (bw) (Entered: 03/21/2007) |
| 03/21/2007 | | CASHIERS OFFICE REMARK as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant on 73 Order,, in the amount of $25.00, paid on 03/12/2007, Receipt Number 608783. (jd) (Entered: 03/21/2007) |
| 03/30/2007 | 76 | MEMORANDUM in Opposition by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant re 63 MOTION to Sever Defendant.. (Barofsky, Neil) (Entered: 03/30/2007) |
| 03/30/2007 | 77 | POST-INDICTMENT RESTRAINING ORDER as to Robert C. Trosten, Tone N. Grant. (See attached orderfor full text) (Signed by Judge Naomi Reice Buchwald on 3/28/07)(pr) (Entered: 04/02/2007) |
| 03/30/2007 | 78 | MEMORANDUM as to Robert C. Trosten, Tone N. Grant.Should there come a time when a deft believes that he hasa basis to challenge the restraining order and a resolution cannot be worked out between that deft and the govt, we will ofcourse entertain an appropiate motion. (See attached memorandum for full text) (Signed by Judge Naomi Reice Buchwald on 3/29/07)(pr) (Entered: 04/02/2007) |
| 04/09/2007 | 80 | REPLY MEMORANDUM OF LAW in Support as to Tone N. Grant re: 63 MOTION to Sever Defendant.. (Goelman, Aitan) (Entered: 04/09/2007) |
| 04/10/2007 | 81 | NOTICE OF ATTORNEY APPEARANCE Neil Michael Barofsky appearing for USA. (Barofsky, Neil) (Entered: 04/10/2007) |
| 04/12/2007 | 82 | MOTION to Compel *Pretrial Discovery*. Document filed by Tone N. Grant. (Goelman, Aitan) (Entered: 04/12/2007) |
| 04/12/2007 | 83 | DECLARATION of Aitan D. Goelman in Support as to Tone N. Grant re: 82 MOTION to Compel *Pretrial Discovery*.. (Attachments: # 1 Exhibit A - Feb. 16, 2007 Ltr to Esseks re: Rule 16 Discovery# 2 Exhibit |

| | | |
|---|---|---|
| | | B - Feb. 16, 2007 Ltr to Esseks re: Bill of Particulars# 3 Exhibit C - April 9, 2007 Ltr to Goelman re: discovery and bill of particulars# 4 Exhibit D - Feb. 27, 2007 email to Esseks re: grand jury exhibits)(Goelman, Aitan) (Entered: 04/12/2007) |
| 04/12/2007 | 84 | AFFIDAVIT of Ashley Weaver in Support as to Tone N. Grant re 82 MOTION to Compel *Pretrial Discovery*.. (Goelman, Aitan) (Entered: 04/12/2007) |
| 04/12/2007 | 85 | MEMORANDUM in Support by Tone N. Grant re 82 MOTION to Compel *Pretrial Discovery*.. (Goelman, Aitan) (Entered: 04/12/2007) |
| 04/13/2007 | 86 | ENDORSED LETTER as to Tone N. Grant addressed to Judge Buchwald from Aitan Goelman dated 4/13/07 re: Reschedule Briefing., as to Tone N. Grant. Request that Mr. Grant be granted an additional week to file this motion. JUDGE MEMO-ENDORSEMENT..SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 4/12/07)(jw) (Entered: 04/16/2007) |
| 04/17/2007 | 87 | ENDORSED LETTER as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant addressed to Judge Buchwald from Neil Barofsky / David Esseks, AUSAs dated 4/13/07 re: Proposed briefing schedule for Grant's discovery motion. Re: Govt response no later than 5/4/07, & Grant's reply, no later than 5/14/07. So ordered.. (Signed by Judge Naomi Reice Buchwald on 4/16/07)(pr) (Entered: 04/18/2007) |
| 04/17/2007 | | Set/Reset Deadlines as to Tone N. Grant:Grant's reply due by 5/14/2007. Govt response due by 5/4/2007. (pr) (Entered: 04/18/2007) |
| 04/23/2007 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald :Status Conference as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 4/23/2007. Present: AUSAs David Esseks, Neil Barofsky, Christopher Garcia; Defense counsel David Frankel, Adam Ford, Christopher Morvillo, Aitan Goelman, Roger Zuckerman; Court Reporter. Oral argument held on deft Grant's motion to sever. Decision reserved. No change on bail conditions. (bw) (Entered: 04/26/2007) |
| 05/04/2007 | 88 | RESPONSE to Motion by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant re 82 MOTION to Compel *Pretrial Discovery*.. (Barofsky, Neil) (Entered: 05/04/2007) |
| 05/04/2007 | 89 | MEMORANDUM AND ORDERdenying 63 Motion to Sever Defendant as to Tone N. Grant (3)In sum because Grant has not approached a showing that a joint trial woould prevent a jury from making a reliable judgment about his guilt or innocence as indicated, his motion is denied. It is so ordered. (See attached order for full text). (Signed by Judge Naomi Reice Buchwald on 5/3/07) (pr) (Entered: 05/07/2007) |
| 05/08/2007 | 90 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 4/23/07 before Judge Naomi Reice Buchwald. (tro) (Entered: 05/08/2007) |
| 05/14/2007 | 91 | REPLY TO RESPONSE to Motion by Tone N. Grant re 82 MOTION to |

| | | |
|---|---|---|
| | | Compel *Pretrial Discovery*.. (Goelman, Aitan) (Entered: 05/14/2007) |
| 05/14/2007 | 92 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 4/23/07 before Judge Naomi Reice Buchwald. (tro) (Entered: 05/14/2007) |
| 05/17/2007 | 94 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on April 23, 2007 before Judge Naomi Reice Buchwald. (jpo) (Entered: 05/17/2007) |
| 06/13/2007 | 95 | NOTICE OF ATTORNEY APPEARANCE Christopher Louis Garcia appearing for USA. (Garcia, Christopher) (Entered: 06/13/2007) |
| 06/27/2007 | 96 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 5/22/07 before Judge Naomi Reice Buchwald. (jbe) (Entered: 06/27/2007) |
| 06/29/2007 | 97 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 5/22/07 before Judge Naomi Reice Buchwald. (jbe) (Entered: 06/29/2007) |
| 07/11/2007 | 98 | FILING ERROR - ELECTRONIC FILING FOR NON-ECF DOCUMENT - MOTION in Limine In Opposition To Request For Adjournment Of The Trial Date (LETTER). Document filed by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Barofsky, Neil) Modified on 7/12/2007 (KA). (Entered: 07/11/2007) |
| 07/11/2007 | 99 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 4/23/07 before Judge Naomi Reice Buchwald. (jbe) (Entered: 07/11/2007) |
| 07/18/2007 | 100 | CONFIDENTIALITY AND PROTECTIVE ORDER as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. Non-party Petitioner Zahava Trosten has filed a Petition to Vacate a Restraining Order; Zahava Trosten provided to the Court under seal certain private and confidential information... and consented to producing to the gov't certain portions of the Sealed Information in connection with the Petition;... It is hereby ORDERED that: 1) the sealed information produced shall be used by the gov't only in connection with the petition... 2) the sealed information shall be labeled "CONFIDENTIAL" and shall be treated as such...; 3)... the Sealed Information to be filed with the Court shall be filed under seal in proper sealing envelopes... 4) this Confidentiality and Protective Order shall survive and remain in full force and effect after the termination of the Petition... ; and 5) this Confidentiality and Protective Order shall be effective immediately upon signature by this Court. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 7/17/07)(ja) (Entered: 07/18/2007) |
| 07/31/2007 | 101 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 7/19/07 before Judge Naomi Reice Buchwald. (jbe) (Entered: 07/31/2007) |

| 08/07/2007 | 102 | TRANSCRIPT of Proceedings (CONFERENCE) as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 7/31/07 before Judge Naomi Reice Buchwald. (jdo) (Entered: 08/07/2007) |
| 08/13/2007 |  | Minute Entry for proceedings held before Judge Naomi Reice Buchwald : AUSA Rua Kely, Agent Robert Manchak, Diona Parker. Oral Argument as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 8/13/2007 re: 100 Order for Petitioner Zahava Tristen's motion to lift restraining order. Motion denied from the bench. (ja) (Entered: 08/15/2007) |
| 08/20/2007 | 104 | TRANSCRIPT of Proceedings as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant held on 7/19/07 before Judge Naomi Reice Buchwald. (jbe) (Entered: 08/20/2007) |
| 09/11/2007 | 105 | NOTICE of Government's Third Bill of Particulars as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant (Kelly, Rua) (Entered: 09/11/2007) |
| 09/18/2007 | 106 | FILING ERROR - DEFICIENT DOCKET ENTRY - (NO APPEARANCE ON FILE FOR THIS CASE) - NOTICE of Change of Address as to Tone N. Grant. New Address: Hannafan & Hannafan, LTD., One East Wacker Drive, Suite 2800, Chicago, Illinois, United States of America 60601, 3125270055. (Hannafan, Blake) Modified on 9/26/2007 (lb). (Entered: 09/18/2007) |
| 09/20/2007 | 108 | NOTICE OF ATTORNEY APPEARANCE: Norman L. Eisen appearing for Tone N. Grant. (Eisen, Norman) (Entered: 09/20/2007) |
| 02/05/2008 | 112 | ENDORSED LETTER as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant addressed to Judge Buchwald from Attorney David S. Frankel dated 1/31/08 re: submitted all behalf of all defts to request the Court's permission to serve subpoenas duces tecum pursuant to F.R.Cr.P. 17(c) returnable in advance of trial. All defense counsel share the view that providing for pretrial services of subpoenas should make for more efficient and expeditious trial proceedings. ENDORSEMENT: So Ordered. (Signed by Judge Naomi Reice Buchwald on 2/5/08)(bw) (Entered: 02/05/2008) |
| 02/07/2008 | 114 | FILING ERROR - ELECTRONIC FILING FOR NON-ECF DOCUMENT - MOTION for Disclosure of Coconspirators (GOVERNMENT'S LIST OF CONCONSPIRATORS). Document filed by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. (Garcia, Christopher) Modified on 2/8/2008 (KA). (Entered: 02/07/2008) |
| 02/08/2008 |  | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Christopher Louis Garica as to Tone N. Grant: to MANUALLY RE-FILE Document No. 114 Government's List of Coconspirators. This document is not filed via ECF. (KA) (Entered: 02/08/2008) |
| 02/08/2008 |  | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Christopher Louis Garcia as to |

| | | |
|---|---|---|
| | | Tone N. Grant: to MANUALLY RE-FILE Document No. 114 Government's List of Coconspirators. This document is not filed via ECF. (KA) (Entered: 02/08/2008) |
| 02/12/2008 | 115 | MOTION in Limine *Regarding Scope of Defense Case*. Document filed by Tone N. Grant. (Attachments: # 1 Exhibit A to Motion in Limine Regarding Scope of Defense Case)(Naunton, Shawn) (Entered: 02/12/2008) |
| 02/18/2008 | 116 | WITNESS LIST by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. (Garcia, Christopher) (Entered: 02/18/2008) |
| 02/18/2008 | 117 | MOTION in Limine *regarding Admissibility of Alleged Co-Conspirator Statements*. Document filed by Tone N. Grant. (Goelman, Aitan) (Entered: 02/18/2008) |
| 02/18/2008 | 118 | MOTION in Limine *Regarding Timing of Production of Witness Statements*. Document filed by Tone N. Grant. (Goelman, Aitan) (Entered: 02/18/2008) |
| 02/18/2008 | 119 | MOTION in Limine *to Preclude Evidence of Purportedly False Advertising*. Document filed by Tone N. Grant. (Attachments: # 1 Exhibit A - Part One, # 2 Exhibit A - Part Two)(Goelman, Aitan) (Entered: 02/18/2008) |
| 02/26/2008 | 120 | (S4) SUPERSEDING INDICTMENT FILED as to Tone N. Grant (3) count(s) 1s, 2s, 3s, 4s, 5s. (pr) (Entered: 02/27/2008) |
| 02/27/2008 | 121 | Proposed Voir Dire Questions by Tone N. Grant. (Goelman, Aitan) (Entered: 02/27/2008) |
| 02/27/2008 | 123 | Proposed Jury Instructions by Tone N. Grant. (Goelman, Aitan) (Entered: 02/27/2008) |
| 02/28/2008 | 124 | MOTION to Quash *Subpoena to Jody Watkins as an Abuse of the Grand Jury Process*. Document filed by Tone N. Grant. (Attachments: # 1 Exhibit A)(Goelman, Aitan) (Entered: 02/28/2008) |
| 02/28/2008 | 125 | PROPOSED EXAMINATION OF JURORS by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. (Garcia, Christopher) (Entered: 02/28/2008) |
| 02/28/2008 | 126 | Request To Charge by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. (Attachments: # 1 Supplement Part 2, # 2 Supplement Part 3)(Garcia, Christopher) (Entered: 02/28/2008) |
| 02/28/2008 | 127 | MEMORANDUM in Opposition by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant re 117 MOTION in Limine *regarding Admissibility of Alleged Co-Conspirator Statements*., 118 MOTION in Limine *Regarding Timing of Production of Witness Statements*., 115 MOTION in Limine *Regarding Scope of Defense Case*., 119 MOTION in Limine *to Preclude Evidence of Purportedly False Advertising*.. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit |

| | | Exhibit F, # 7 Exhibit Exhibit G)(Garcia, Christopher) (Entered: 02/28/2008) |
|---|---|---|
| 03/04/2008 | 128 | MEMORANDUM in Opposition by USA as to Tone N. Grant re 124 MOTION to Quash *Subpoena to Jody Watkins as an Abuse of the Grand Jury Process*.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kelly, Rua) (Entered: 03/04/2008) |
| 03/04/2008 | 129 | REPLY MEMORANDUM OF LAW in Support as to Tone N. Grant re: 117 MOTION in Limine *regarding Admissibility of Alleged Co-Conspirator Statements.*, 118 MOTION in Limine *Regarding Timing of Production of Witness Statements.*, 115 MOTION in Limine *Regarding Scope of Defense Case.*, 119 MOTION in Limine *to Preclude Evidence of Purportedly False Advertising*.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Goelman, Aitan) (Entered: 03/04/2008) |
| 03/06/2008 | 133 | MOTION for Benjamin M. Block to Appear Pro Hac Vice. Document filed by Tone N. Grant. [Cashier's Remark: $25 644022] (bw) (bw). (Entered: 03/10/2008) |
| 03/07/2008 | 131 | REPLY MEMORANDUM OF LAW in Support as to Tone N. Grant re: 124 MOTION to Quash *Subpoena to Jody Watkins as an Abuse of the Grand Jury Process*.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Goelman, Aitan) (Entered: 03/07/2008) |
| 03/09/2008 | 132 | WITNESS LIST by USA as to Phillip R. Bennett, Robert C. Trosten, Tone N. Grant. (Garcia, Christopher) (Entered: 03/09/2008) |
| 03/11/2008 | 135 | MEMORANDUM AND ORDER as to Tone N. Grant.Pending before this court are 4 in limine motions and a motion to quash a govt subpoena filed by deft Tone N. Grant. We examine Grant's motions seriatim, as indicated. So Ordered. (see attached Memorandum & Order for the complete text) (Signed by Judge Naomi Reice Buchwald on 3/11/08)(pr) (Entered: 03/12/2008) |
| 03/13/2008 | 137 | ORDER FOR ADMISSION PRO HAC VICE ON WRITTEN MOTION granting 133 Motion for BENJAMIN M.BLOCK to Appear Pro Hac Vice as to Tone N. Grant (3)(see the attached order for the full text). (Signed by Judge Naomi Reice Buchwald on 3/12/08) (pr) (Entered: 03/13/2008) |
| 03/13/2008 | | Attorney update in case as to Tone N. Grant. Attorney Benjamin M. Block for Tone N. Grant added.. (pr) (Entered: 03/13/2008) |
| 03/14/2008 | 138 | EXHIBIT LIST by Tone N. Grant. (Goelman, Aitan) (Entered: 03/14/2008) |
| 03/14/2008 | 139 | WITNESS LIST by Tone N. Grant. (Goelman, Aitan) (Entered: 03/14/2008) |
| 03/14/2008 | 140 | Certificate of Service of 138 Exhibit List by Tone N. Grant. Document was served on United States of America on 3/14/08. Service was made by FEDERAL EXPRESS. (Goelman, Aitan) (Entered: 03/14/2008) |

| 03/16/2008 | 141 | MEMORANDUM in Opposition by USA as to Tone N. Grant re 115 MOTION in Limine *Regarding Scope of Defense Case*.. (Attachments: # 1 Exhibit Exhibit A)(Garcia, Christopher) (Entered: 03/16/2008) |
|---|---|---|
| 03/17/2008 | 143 | SUPPLEMENTAL REPLY MEMORANDUM OF LAW in Support as to Tone N. Grant re: 115 MOTION in Limine *Regarding Scope of Defense Case*.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Goelman, Aitan) (Entered: 03/17/2008) |
| 03/18/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Status Conference as to Tone N. Grant held on 3/18/2008. For Gov't Neil Barofsky, Chris Garcia. For Deft Roger Zuckerman, Goelman, Benjamin Block present. Oral argument about: Deft's offer of proof regarding introduction of consciousness of innocence evidence: Ruling is that Proffered evidence of testimony by the Hannafans is excluded. Deft can still argue consciousness of innocence as an inference in closing. (jw) (Entered: 03/25/2008) |
| 03/24/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Voir Dire begun on 3/24/2008 Tone N. Grant (3) on Count 1, 1r, 1s, 2, 2r, 2s, 3s, 4s, 5s, 11, 11r, 15, 15r, 19, 19r. Present: For Govt, AUSAs Neil Barofsky, Chris Garcia; for Deft, Attorneys Roger Zuckerman, Aitan Goelman. Jury Panel called; Voir Dire conducted by Judge Buchwald; Jury selected; Jury instructions given by Judge Buchwald. (bw) (Entered: 03/25/2008) |
| 03/24/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Selection as to Tone N. Grant held on 3/24/2008. (bw) (Entered: 03/25/2008) |
| 03/24/2008 | | Jury Instructions as to Tone N. Grant. (bw) (Entered: 03/25/2008) |
| 03/24/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 3/24/2008. (bw) (Entered: 03/25/2008) |
| 03/25/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 3/25/2008. For Gov't: Neil Barofsky and Chris Garcia; for dft: Roger Zuckerman, Aitan Goerman. Opening statements, testimony of Russell Schave and Victor Niederhoffer. (ja) Modified on 4/8/2008 (ja). (Entered: 04/08/2008) |
| 03/26/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Jury Trial as to Tone N. Grant held on 3/26/2008. For Gov't: Neil Barofsky and Chris Garcia; for dft: Roger Zuckerman, Aitan Goerman. Testimony of Stephen Rossi. (ja) (Entered: 04/08/2008) |
| 03/27/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Jury Trial as to Tone N. Grant held on 3/27/2008. For Gov't: Neil Barofsky and Chris Garcia; for dft: Roger Zuckerman, Aitan Goerman. Testimony of Stephen Rossi. (ja) (Entered: 04/08/2008) |
| 03/28/2008 | 145 | TRANSCRIPT of Proceedings as to Tone N. Grant held on 3/18/2008 |

| | | before Judge Naomi Reice Buchwald. (ama) (Entered: 03/28/2008) |
|---|---|---|
| 03/28/2008 | 146 | TRANSCRIPT of Proceedings as to Tone N. Grant held on 3-21-08 before Judge Naomi Reice Buchwald. (sjo) (Entered: 03/28/2008) |
| 03/28/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Jury Trial as to Tone N. Grant held on 3/28/2008. For Gov't: Neil Barofsky and Chris Garcia; for dft: Roger Zuckerman, Aitan Goerman. Testimony of Stephen Rossi, Arlene Busch, William Pappas, and Daniel Rouse. (ja) (Entered: 04/08/2008) |
| 03/31/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 3/31/2008. Present: For Govt,Neil Barofsky, Chris Garcia; For deft, Attorneys Roger Zuckerman. Aitan Goelman, Norman Eisen. Testimony by Gregory Rouse, Robert Trosten. (bw) (Entered: 04/14/2008) |
| 04/01/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 4/1/2008. Present: For Govt,Neil Barofsky, Chris Garcia; For deft, Attorneys Roger Zuckerman, Aitan Goelman, Norman Eisen. Testimony by Robert Trosten. (bw) (Entered: 04/14/2008) |
| 04/02/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 4/2/2008. Present: For Govt,Neil Barofsky, Chris Garcia; For deft, Attorneys Roger Zuckerman, Aitan Goelman, Norman Eisen. Testimony by Robert Trosten, Kathleen Fleming, Greg Burns. (bw) (Entered: 04/14/2008) |
| 04/03/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 4/3/2008. Present: For Govt,Neil Barofsky, Chris Garcia; For deft, Attorneys Roger Zuckerman, Aitan Goelman, Norman Eisen. Testimony by Robert Sydow, Scott Shoen. (bw) (Entered: 04/14/2008) |
| 04/04/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 4/4/2008. Present: For Govt,Neil Barofsky, Chris Garcia; For deft, Attorneys Roger Zuckerman. Aitan Goelman, Norman Eisen. Testimony by Scott Schoen, Santo Maggio. (bw) (Entered: 04/14/2008) |
| 04/14/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Tone N. Grant held on 4/14/2008. 4th Week of Trial. Testimony of Lisa Collura. Gov't rests. Defense Case: Testimony of Leck Forster, Carmen Cozza, John Hargrove, Calvin Hill, Charles Lewis, Olvrade Bambi Boye, James Howard. (ja) (Entered: 04/21/2008) |
| 04/15/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Jury Trial as to Tone N. Grant held on 4/15/2008. Closing arguments (ja) (Entered: 04/21/2008) |
| 04/16/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Jury Trial as to Tone N. Grant held on 4/16/2008. Closing |

| | | |
|---|---|---|
| | | arguments and jury charges; deliberations begin. (ja) (Entered: 04/21/2008) |
| 04/17/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Jury Trial as to Tone N. Grant held on 4/17/2008. For Government Neil Barofsky, Chris Garcia. For Deft Roger Zuckerman, Aitan Goelman, Norman Eisen. Jury reaches verdict: Deft found guilty on all counts (One through Five). Sentencing set for 8/7 at 10:45am. (jw) (Entered: 04/18/2008) |
| 04/17/2008 | | JURY VERDICT as to Tone N. Grant (3) Guilty on Count 1s,2s,4s,5s. (jw) (Entered: 04/18/2008) |
| 04/17/2008 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: as to Tone N. Grant; Sentencing set for 8/7/2008 at 10:45 AM before Judge Naomi Reice Buchwald. (jw) (Entered: 04/18/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/24/2008 14:44:57 | | | |
| PACER Login: | wr0657 | Client Code: | 81036-0014 |
| Description: | Docket Report | Search Criteria: | 1:05-cr-01192-NRB |
| Billable Pages: | 10 | Cost: | 0.80 |

# Exhibit I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ARCH INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) |
| JOHN D. AGOGLIA, *et al.*, | ) |
| Defendants. | ) |

Index No.: 08/600029

**STIPULATED ORDER FOR ENTRY
OF JUDGMENT AGAINST
DEFENDANT PHILLIP R. BENNETT**

Plaintiff Arch Insurance Company ("Arch") and Defendant Phillip R. Bennett ("Bennett"), by and through their undersigned attorneys, jointly file this Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett.

WHEREAS, Bennett previously sought coverage under the "Arch Policy" for the "Underlying Matters," as those terms are defined in the First Amended Complaint for Declaratory Judgment (the "FAC") filed by Arch on February 22, 2008;

WHEREAS, Bennett has since acknowledged that he is not entitled to any coverage under the Arch Policy for the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

NOW, THEREFORE, Arch and Bennett stipulate and agree as follows:

1.  Bennett waived formal service of process under C.P.L.R. 308 and acknowledged service and receipt of Arch's Amended Summons and the FAC on February 28, 2008;

2.  Bennett stipulates and agrees that the Arch Policy does not afford him any coverage whatsoever for any of the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

RECEIVED

APR 17 2008

NEW YORK
COUNTY CLERK'S OFFICE

3. Bennett stipulates, agrees and consents to the entry of judgment against him on Counts I and II of the FAC in the form annexed hereto as Exhibit A;

4. Bennett waives any right to appeal the judgment entered against him pursuant to this stipulation;

5. Arch and Bennett stipulate and agree that each party is to bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

Date:  April 17, 2008

Respectfully submitted,

_____
Jeffrey T. Golenbock
GOLENBOCK EISMAN ASSOR BELL
& PESKOE
437 Madison Avenue
New York, NY 10022
(212) 907-7373

*Attorneys for Defendant Phillip R. Bennett*

_____
John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Attorneys for Plaintiff Arch Insurance Company*

**SO ORDERED, this ____ day of _____, 2008**

**By:** _____

-2-

# Exhibit A

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>         Plaintiff,<br><br>v.<br><br>JOHN D. AGOGLIA, *et al.*,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Index No.: 08/600029

**[PROPOSED] JUDGMENT AGAINST
DEFENDANT PHILLIP R. BENNETT**

Before the Court is Plaintiff Arch Insurance Company ("Arch") and Defendant Phillip R. Bennett ("Bennett")'s Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett. The Parties' Stipulated Order having been "so ordered" and entered by the Court, it is hereby adjudged and declared that:

1.    Bennett waived formal service of process under C.P.L.R. 308 and acknowledged service and receipt of Arch's Amended Summons and the FAC on February 28, 2008;

2.    Pursuant to the Parties' stipulation, Bennett is not entitled to any coverage whatsoever under the Arch Policy for any of the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

3.    Pursuant to the Parties' stipulation, judgment is entered against Bennett on Count I of the FAC;

4.    Pursuant to the Parties' stipulation, judgment is entered against Bennett on Count II of the FAC;

5.    Bennett has waived any right to appeal the judgment entered against him; and

6.    Each party shall bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

By: _____
    Clerk

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

       FRANCINE TORMEY, being sworn, says:

        1.     I am not a party to the action, am over 18 years of age and reside in Queens, New York.

        2.    On April 17, 2008, I caused a true copy of the within **STIPULATED ORDER FOR ENTRY OF JUDGMENT AGAINST DEFENDANT PHILLIP R. BENNETT, WITH ANNEXED PROPOSED JUDGMENT AGAINST PHILLIP R. BENNETT** to be served by electronic and U.S. mail upon each defendant in this action through their counsel as follows:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D.<br>McCarthy, Peter J. | William Fleming<br>Gage Spencer & Fleming, LLP<br>410 Park Avenue<br>New York, NY 10022<br>(212) 768-4900<br>wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock<br>Golenbock Eisman Assor Bell &<br>Pesko LLP<br>437 Madison Avenue<br>New York, NY 10022<br>(212) 907-7373<br>jgolenbock@golenbock.com |

| | |
|---|---|
| Breitman, Leo R.<br>Gantcher, Nathan<br>Harkins, David V.<br>Jaekel, Scott L.<br>Lee, Thomas H.<br>O'Kelley, Ronald L.<br>Schoen, Scott A. | Paul A. Ferrillo<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8372<br>Paul.ferrillo@weil.com |
| Cox, Edwin | Martin R. Bennett, Esq.<br>Kugle, Skelton & Bennett<br>130 E. Corsicana, Ste. 302<br>Athens, TX 75751<br>(903) 675-5151<br>mbennett@ksbpc.com |
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA 94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL 60602<br>(312) 269-5675<br>Twolford@ngelaw.com |
| Grady, Stephen | Lawrence J. Kotler<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA 19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |

| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C. 20036<br>(202) 778-1858<br>wschreiner@zuckerman.com |
|---|---|
| Klejna, Dennis | Helen Kim<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY 10166<br>(212) 309-1053<br>shershman@hunton.com |
| Mutterer, Frank | Janet Costello<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |

| | |
|---|---|
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |
| Sexton, William M.<br>Sherer, Gerald | Ivan Kline<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>ikline@friedmanwittenstein.com |
| Silverman, Philip | Richard Cashman<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |
| Trosten, Robert C. | Barbara Moses<br>Morvillo, Abramowitz, Grand, Iason<br>& Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

3.    On April 17, 2008, I caused a true copy of the within **STIPULATED ORDER FOR ENTRY OF JUDGMENT AGAINST DEFENDANT PHILLIP R. BENNETT, WITH ANNEXED PROPOSED JUDGMENT AGAINST PHILLIP R. BENNETT** to be served by U.S. mail upon Richard N. Outridge at 24 Pennbrook Drive, Lincoln University, Pennsylvania 19352.

*Francine Tormey*
FRANCINE TORMEY

Sworn to before me this
17th day of April, 2008

*Nancy J. Neubauer*
Notary Public

NANCY J. NEUBAUER
Notary Public, State of New York
No. 01NE5041602
Qualified in New York County
Commission Expires April 10, 2011

NEWYORK/#194652.1

# Exhibit J

# VEDDERPRICE

VEDDER PRICE P.C.

1633 BROADWAY, 47TH FLOOR

NEW YORK, NEW YORK 10019

212-407-7700

FAX: 212-407-7799

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

JOHN H. EICKEMEYER
212-407-7760
jeickemeyer@vedderprice.com

April 21, 2008

**BY HAND**

Hon. Helen E. Freedman
New York County Supreme Court
Commercial Division
60 Centre Street
New York, NY 10007

   Re: **Arch Insurance Company v. Agoglia, et al.**
     **Index No. 08/600029**

Dear Justice Freedman:

   We represent plaintiff Arch Insurance Company in the above action and enclose a courtesy copy of a Stipulation of Partial Discontinuance With Prejudice as against Defendant Santo C. Maggio ("Maggio"), executed by counsel for plaintiff and Maggio and filed earlier today with the Clerk of the Court.

   We ask that the Court review the enclosed and, if it meets with your satisfaction, So Order the Stipulation.

   We thank the Court for its consideration in this matter.

        Respectfully submitted,

        John H. Eickemeyer

Enclosure

cc: Cara Tseng Duffield, Esq. (by electronic mail and regular mail)
  Marc E. Rindner, Esq. (by electronic mail and regular mail)
  Daniel J. Standish, Esq. (by electronic mail and regular mail)

  All Defense Counsel (by electronic mail and regular mail)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |  |
|---|---|---|
| ARCH INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Index No.: 08/600029 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN D. AGOGLIA, *et al.*, | ) | **STIPULATION OF PARTIAL** |
| | ) | **DISCONTINUANCE WITH** |
| Defendants. | ) | **PREJUDICE** |
| | ) | |
| | ) | |
| | ) | |

Plaintiff Arch Insurance Company ("Arch") and Defendant Santo C. Maggio ("Maggio"), by and through their undersigned attorneys, jointly file this Stipulation of Partial Discontinuance with Prejudice.

**WHEREAS,** certain individuals have sought coverage under the "Arch Policy" for the "Underlying Matters," as those terms are defined in the First Amended Complaint for Declaratory Judgment (the "FAC") filed by Arch on February 22, 2008;

**WHEREAS,** Maggio has acknowledged that he is not entitled to any coverage whatsoever under the Arch Policy for the Underlying Matters or for any other demand, action, proceeding or investigation, including, but not limited to, any demand, action, proceeding or investigation based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters; and

**WHEREAS,** no party to this action is an infant, incompetent or person for whom a committee has been appointed.

**NOW THEREFORE IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned, who have been duly authorized by Arch and Maggio to enter into this Stipulation, as follows:

1.    Maggio waives formal service of process under C.P.L.R. 308 and acknowledges service and receipt of Arch's Amended Summons and the FAC on March 6, 2008;

2.    Maggio agrees that the Arch Policy does not afford him any coverage whatsoever for any of the Underlying Matters or for any other action, proceeding or investigation, including, but not limited to, any matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

3.    Maggio agrees that he will not seek coverage under the Arch Policy for any action, proceeding or investigation, including, but not limited to, any matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

4.    Arch's causes of action asserted in the FAC are discontinued with prejudice as against Maggio only; and

5.    Each party shall bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

-2-

Dated: April _18_, 2008

_____
Scott E. Hershman
HUNTON & WILLIAMS
200 Park Avenue
43rd Floor
New York, New York  10166
(212) 309-1053

_Counsel for Defendant Santo C. Maggio_

_____
John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

_Counsel for Plaintiff Arch Insurance Company_

**SO ORDERED, this _____ day of _____, 2008**

**By:** _____

-3-

# Exhibit K

John D. Hughes
Michael P. Thompson
Robert W. DiUbaldo
EDWARDS ANGELL PALMER & DODGE, LLP
750 Lexington Avenue
New York, NY 10022
Telephone: (212) 308-4411
*Counsel to Allied World Assurance Company (U.S.), Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                                       :
                                                       :
In re:                                                 :        Chapter 11
                                                       :
REFCO INC., et al.,                                    :        Case No. 05-60006 (RDD)
                                                       :
                                                       :        (Jointly Administered)
                                                       :
                              Debtors.                 :
                                                       :
-------------------------------------------------------x
                                                       :
JOSEPH MURPHY, et al.,                                 :
                                                       :        Adv. Proc. No. 08-01133 (RDD)
                    Plaintiffs,                         :
                                                       :
v.                                                     :
                                                       :
ALLIED WORLD ASSURANCE                                 :
COMPANY (U.S.), INC. and ARCH                          :
INSURANCE COMPANY,                                     :
                                                       :
                Defendants, and.                       :
                                                       :
JOHN D. AGOGLIA, EDWIN L. COX,                         :
SUKHMEET DHILLON, THOMAS H.                            :
DITTMER, STEPHEN GRADY,                                :
THOMAS HACKL, ERIC G. LIPOFF,                          :
PETER MCCARTHY                                         :
and FRANK MUTTERER,                                    :
                                                       :
              Nominal Defendants                       :
                                                       :
-------------------------------------------------------x

BOS 621676.3

# TABLE OF CONTENTS

RELEVANT FACTS ............................................................................................................. 3

ARCH MOTION FOR RELIEF ...................................................................................... 5

AXIS ADVERSARY PROCEEDINGS ......................................................................... 6

ALLIED WORLD MOTION FOR RELIEF .............................................................. 7

ARGUMENT ..................................................................................................................... 8

THE REFERENCE TO BANKRUPTCY COURT SHOULD BE WITHDRAWN ...................... 8

    A.   The Standard for Withdrawal of the Reference ................................................. 8

    B.   The Allied World Adversary Proceeding is a Non-Core Proceeding .................................. 10

    C.   Interests of Judicial Economy, Fairness and Timing Strongly Favor a Withdrawal of the Reference ....................................................................................................... 12

CONCLUSION .................................................................................................................. 13

BOS 621676 3

## Cases

131 Liquidating Corp., 222 B.R. 209 (S.D.N.Y. 1998) ................................................. 10

Abondolo v. GGR Holbrook Medford, Inc., 285 B.R. 101 (E.D.N.Y. 2002) ................... 10

American Financial International Group, et al. v. Bennett, et al., No. 05 Civ. 8988 (S.D.N.Y.) ... 5

Best Payphones, Inc., 2007 WL 1630569 (S.D.N.Y. May 21, 2007) ............................. 10

Burger Boys, Inc., 94 F.3d 755 (2d Cir.) ................................................................. 10

Capital Management Select Fund Ltd. v. Bennett, et al., No. 07 Civ. 8688 (GEL) (S.D.N.Y.) ..... 5

Gardner, 913 F.2d 1515 (10th Cir.1990) .................................................................. 12

Kentile Floors, Inc., 1995 WL 479512 (S.D.N.Y. August 10,1995) ............................. 11

Kirschner v. Agoglia, et al., Adv. Proc. No. 07-3060 (RDD) (Bankr. S.D.N.Y.) ............. 5

Kirschner v. Grant Thornton LLP, et al., No. 2007-1-008818 (Ill. Cir. Ct.) ................... 5

Kirschner v. Thomas H. Lee Partners, L.P., et al., No. 07-7074 (GEL) (S.D.N.Y.) ......... 5

Magten Asset Mgt. Corp. v. Northwestern Corp. (In re Northwestern Corp.), 2005 WL 2320113 (D. Del. September 22, 2005) ................................................................. 14

Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431 (9th Cir. 1995) ............... 12

McMahon, 222 B.R. 205 (S.D.N.Y. 1988) ................................................................ 10

Mishkin v. Angeloff, 220 B.R. 784 (S.D.N.Y. 1998) ................................................. 14

Norkin v. DLA Piper Rudnik Gray Cary, LLP, 2006 WL 839079 (S.D.N.Y. March 31, 2006).. 12

Oneida Ltd. v. Pension Ben. Guar. Corp., 2007 WL 2067968 (S.D.N.Y. July 18, 2007) ....... 10

Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095 (2d Cir. 1993) ................ 10, 13

Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation, No. 06 Civ. 643 (GEL) (S.D.N.Y.) ................................................................................................. 5

Refco, Inc. Securities Litigation, No. 05 Civ. 8626 (GEL) (S.D.N.Y.) ......................... passim

V.R. Global Partners, L.P. v. Bennett, et al., No. 07 Civ. 8686 (GEL) (S.D.N.Y.) ......... 5

Wood v. Wood (In re Wood), 825 F.2d 90 (5th Cir. 1987) .......................................... 12

BOS 621676.3

**MOTION AND MEMORANDUM IN SUPPORT OF ALLIED WORLD
ASSURANCE CO. (U.S.) INC.'S MOTION TO WITHDRAW
THE REFERENCE FROM THE BANKRUPTCY COURT**

Defendant, Allied World Assurance Co. (U.S.) Inc. ("Allied World"), an issuer of an

Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197

(the "**Allied World Policy**,") to which Refco, Inc. ("**Refco**" or the "**Debtor**") is the Named

Corporation, hereby moves this Court for an Order pursuant to 28 U.S.C. § 157(d), Federal Rule of

Bankruptcy Procedure 5011(a) and Local Bankruptcy Rule 5011-1, for cause shown, withdrawing

the reference of this Adversary Proceeding to the Bankruptcy Court.  Plaintiffs assent to this

motion.

## RELEVANT FACTS

1.     Allied World is an excess directors' and officers' liability insurer of Refco and its

directors and officers.

2.     Allied World issued the Allied World Policy, the policy at issue in this litigation,

for the policy period of August 11, 2005 to August 11, 2006.  The Policy has a limit of liability

of $12.5 million excess of $27.5 million in underlying insurance.[1]

3.     The Debtor in conjunction with certain of its subsidiaries and affiliates

(collectively, the "**Debtors**") filed petitions for relief under chapter 11 of the Bankruptcy Code

on October 17, 2005 with the United States Bankruptcy Court for the Southern District of New

York (the "**Court**").

4.     On October 10, 2005, Refco announced that it had been carrying an undisclosed

receivable of $430 million from an entity controlled by Phillip R. Bennett, Refco's former

---

[1] Various other insurers also issued policies to Refco that are beneath Allied World's policy in the Refco tower of D&O insurance. U.S. Specialty Insurance Company issued a primary policy with a limit of $10 million excess of applicable retentions (the "Followed or Primary Policy").  Lexington Insurance Company issued a first excess policy with a limit of $7.5 million excess of $10 million (the "Lexington Policy").  Axis Reinsurance Company ("Axis") issued a second excess policy with a limit of $10 million excess of $17.5 million (the "Axis Policy").

- 3 -

Chairman, President and Chief Executive Officer. The next day, Refco announced that Bennett had repaid the $430 million receivable in full and provided further information on the nature of the receivable: "Based on the results of the internal investigation to date, the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998. These obligations were transferred periodically to the entity controlled by Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts. The fact that the receivable was from a company controlled by Bennett was hidden at the end of quarterly and annual reporting periods by reason of transfers to a third party customer account that we currently believe is unaffiliated with Mr. Bennett or anyone else at the Company."

5.    Beginning on or about October 12, 2005, various lawsuits were filed against the Plaintiffs, former directors and officers of Debtors (the "Underlying Litigation"), that allege, *inter alia*, that Refco's initial public offering registration statement and prospectus were materially false and misleading because they failed to disclose the existence of large receivables owed to Refco by an entity controlled by Bennett, as well as related-party transactions between Refco and that entity that were designed to hide those receivables. Plaintiff Tone Grant was also a defendant in one criminal action, in which trial began on March 24, 2008 and concluded with the conviction of Grant on April 17, 2008. Three senior officers of the Debtors, also named as defendants in criminal actions, have pled guilty and await sentencing.

6.    The Underlying Litigation includes: In re Refco, Inc. Securities Litigation, No. 05 Civ. 8626 (GEL) (S.D.N.Y.); In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation, No. 06 Civ. 643 (GEL) (S.D.N.Y.); American Financial International Group, et al. v.

- 4 -

Bennett, et al., No. 05 Civ. 8988 (S.D.N.Y.); V.R. Global Partners, L.P. v. Bennett, et al., No. 07 Civ. 8686 (GEL) (S.D.N.Y.); Capital Management Select Fund Ltd. v. Bennett, et al., No. 07 Civ. 8688 (GEL) (S.D.N.Y.); Kirschner v. Agoglia, et al., Adv. Proc. No. 07-3060 (RDD) (Bankr. S.D.N.Y.); Kirschner v. Thomas H. Lee Partners, L.P., et al., No. 07-7074 (GEL) (S.D.N.Y.); and Kirschner v. Grant Thornton LLP, et al., No. 2007-1-008818 (Ill. Cir. Ct.).

7.      Allied World has denied coverage to the Plaintiffs under the Allied World Policy.  Likewise, Defendant Arch Insurance Company ("Arch") has also denied coverage to the Plaintiffs under its Excess Insurance Policy, policy number DOX0009322-00, issued by Arch to Refco (the "Arch Policy," together with the Allied World Policy, the "**Policies**").

## ARCH MOTION FOR RELIEF

8.      On May 1, 2006, Arch filed in the Bankruptcy Court a Motion for Relief from the Automatic Stay, to the Extent Applicable, to Prosecute Coverage Litigation Against Directors and Officers of Debtors (the "Arch Motion").  Arch had, before filing the Arch Motion, commenced litigation to resolve certain coverage issues (the "Coverage Litigation") in the Supreme Court of the State of New York, County of New York, against the several directors and officers of Debtors.  In the Arch Motion, Arch sought relief from the stay to continue to prosecute the Coverage Litigation and amend its pleadings in the Coverage Litigation.  The Debtors, the Chapter 11 Trustee, the Official Committee of Unsecured Creditors and others objected to the Arch Motion.

9.      The Bankruptcy Court signed an Order granting the Arch Motion (the "Arch Order") on June 20, 2006.  Under the Arch Order, the Bankruptcy Court lifted the automatic stay "for the limited purpose to permit Arch to prosecute the Coverage Litigation... provided, however, that nothing in [the Arch] Order shall be construed to permit Arch to amend its

complaint in the Coverage Litigation, without leave of the Bankruptcy Court, by (i) adding a claim for rescission or cancellation of the Policy or (ii) adding as defendants to the Coverage Litigation (x) Refco Inc. or any of its subsidiaries and corporate affiliates (collectively, the "Refco Entities") or (y) any person who, as of the date of the amendment in the Coverage Litigation, is a duly appointed or elected director or officer of any of the Refco Entities." Arch Order, p. 2.

## AXIS ADVERSARY PROCEEDINGS

10.     On May 23, 2007, Axis filed an adversary proceeding before the Bankruptcy Court as a result of a coverage dispute between Axis and various former officers and directors of Refco (Adv. Proc. 07-01712 (RDD)) (the "Axis Adversary"). Axis' complaint in the Axis Adversary sought a declaration that the Axis Policy did not afford coverage for the Underlying Litigation. On July 13, 2007, certain directors and officers, Klejna, Murphy, Silverman, Sexton and Sherer, filed answers, counterclaims, and a motion to force Axis to advance defense costs in the Underlying Litigation. In addition, certain directors and officers moved to dismiss the Axis Adversary because the declaratory action was premature. Arch sought to move to intervene in the Axis Adversary to oppose the efforts to force the advancement of defense costs before the adjudication of coverage issues. On August 30, 2007, the Bankruptcy Court denied Arch's motion to intervene and granted the motion to dismiss the Axis Adversary.

11.     The Bankruptcy Court, in the Axis Adversary, retained jurisdiction over counterclaims by certain indicted officers seeking a declaration that Axis must advance defense costs under the Axis Policy. The Bankruptcy Court directed Axis to advance defense costs to these certain indicted officers on September 11, 2007. (Adv. Proc. 07-2005 (RDD)).

12.     On September 17, 2007, certain directors and officers filed a complaint and a motion to compel seeking a declaratory judgment and an order that Axis was required to advance defense costs of these directors and officers in connection with the Underlying Litigation. (Adv. Proc. No. 07-02032).

13.     In the midst of the Axis Adversary, on September 7, 2007, Axis filed a Motion to Withdraw the Reference (the "Axis Motion to Withdraw") seeking to withdraw the Axis Adversary. On October 5, 2007, this Court denied the Motion to withdraw because, *inter alia*, the Bankruptcy Court had expended significant time and energy in preparation for the October 12, 2007 hearing and because it appeared to this Court to be forum shopping. This Court did find, on the record, that the Axis Adversary was a non-core proceeding.

14.     On September 25, 2007, certain officers and directors filed motions for summary judgment in the Bankruptcy Court seeking to require Axis to advance defense costs for the Underlying Litigation.

15.     On October 12, 2007, the Bankruptcy Court granted the certain directors' and officers' Motions for Summary Judgment and determined that Axis was required to advance defense costs.

16.     On November 13, 2007, this Court entered an Order withdrawing the various Axis Adversary proceedings from the Bankruptcy Court.

## ALLIED WORLD MOTION FOR RELIEF

17.     On February 11, 2008, Allied World filed a Motion for Relief from the Stay (the "Motion for Relief") in order to resolve disputes with the Insureds arising under the Policy through arbitration or mediation, including any issues related to the advancement of defense costs. The Bankruptcy Court granted the Motion for Relief on March 13, 2008.

- 7 -

18.    On March 12, 2008, the eve of the Bankruptcy Court's hearing on the Motion for Relief, the Plaintiffs commenced an adversary proceeding against Allied World ("the Allied World Adversary Proceeding") seeking preliminary and permanent injunctions requiring Allied World to advance payment of their defense costs.

19.    The Plaintiffs amended their Complaint in the Allied World Adversary Proceeding to include Arch as a defendant on April 24, 2008.  In addition to their claims for preliminary and permanent injunctions, the Plaintiffs in the Amended Complaint bring claims for coverage, defense costs and other contractual issues under the Policies.

## ARGUMENT

## THE REFERENCE TO BANKRUPTCY COURT SHOULD BE WITHDRAWN

### A. The Standard for Withdrawal of the Reference

Pursuant to 28 U.S.C. §1334, district courts have original, but not exclusive jurisdiction of all civil proceedings "arising under title 11 or arising in or related to cases under title 11."  Under the amendments to Section 157(a), however, the district court may provide that "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Pursuant to the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.), any case or proceeding which falls under this rubric shall be routinely referred to the Bankruptcy Court.

Section 157(d), however, empowers a district court to withdraw a proceeding from the Bankruptcy Court on its own motion or on the timely motion of any party, and have the proceeding heard in district court, if there is "cause shown" for the removal.  "Cause shown" is not defined in the statute, and the legislative history of the 1984 Bankruptcy Amendments

- 8 -

provides little guidance in delineating factors which support permissive withdrawal of a bankruptcy reference.

The Second Circuit and the Southern District of New York, however, have provided general guidelines for consideration, which include whether the case is core or non-core, whether it is legal or equitable, interests of judicial economy, prevention of forum-shopping and confusion, promoting uniformity in bankruptcy administration, fostering the economical use of the debtor's and creditors' resources and the presence of a jury demand. In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir.); Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1101 (2d Cir. 1993); Oneida Ltd. v. Pension Ben. Guar. Corp., 2007 WL 2067968 (S.D.N.Y. July 18, 2007); In re Best Payphones, Inc., 2007 WL 1630569 (S.D.N.Y. May 21, 2007); In re 131 Liquidating Corp., 222 B.R. 209, 211 (S.D.N.Y. 1998).

The most important factor in determining whether to withdraw the reference of an adversary proceeding is whether the proceeding is core or non-core. Orion, 4 F.3d at 1101; Oneida, 2007 WL 2067968 at *4. In a non-core proceeding, a decision by the Bankruptcy Court - - both on the law and the facts - - is subject to de novo review in the district court. In re McMahon, 222 B.R. 205, 208 (S.D.N.Y. 1988); Abondolo v. GGR Holbrook Medford, Inc., 285 B.R. 101, 113 (E.D.N.Y. 2002). Thus, in a non-core matter, it is a more efficient use of judicial resources for this Court to hear the adversary proceeding in the first place. Id.; In re Kentile Floors, Inc., 1995 WL 479512 (S.D.N.Y. August 10, 1995). This factor strongly favors withdrawal of the reference. Id. If this Court does not withdraw the reference, it will have to conduct a *de novo* review of the Bankruptcy Court's rulings upon a party's written objection, resulting in the re-litigation of claims and significant additional costs and expenditure of time and effort to both parties. Id.

- 9 -

**B. The Allied World Adversary Proceeding is a Non-Core Proceeding**

28 USC 157 (b) (1) gives the Bankruptcy Court jurisdiction over "core proceedings" as follows:

> Bankruptcy judges may hear and determine all cases under title 11 (11 USC 101, et seq.) and *all core proceedings* arising under title 11. . . , or arising in a case under title 11 . . . , referred to under subsection (a) of this section, and may enter appropriate orders and judgments . . . .

(Emphasis added).

The Allied World Adversary Proceeding is a non-core proceeding. This Court unequivocally stated that it believed the Axis Adversary to be non-core both when it denied the Axis Motion to Withdraw, and when it subsequently granted the Axis Motion to Withdraw. Because the Allied World Adversary Proceeding mirrors the Axis Adversary, this Court should undoubtedly make the same finding that the Allied World Adversary Proceeding is non-core.

Such a finding makes absolute sense as the Bankruptcy Code defines core proceedings to include, *inter alia,* matters concerning the administration of the estate; orders to turn over property of the estate; and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship. 28 U.S.C. § 157(b) (2) (A), (E), and (O). "A proceeding is core under section 157 [of the Bankruptcy Code] if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987).

A matter is "non-core" if it involves a dispute that relates to, arises under or affects the bankruptcy case and would have been litigated elsewhere but for the bankruptcy case. See Norkin v. DLA Piper Rudnik Gray Cary, LLP, 2006 WL 839079 (S.D.N.Y. March 31, 2006) (a "core proceeding" with respect to which the Bankruptcy Court has jurisdiction must "arise

- 10 -

under" title 11 or "arise in" a bankruptcy case under title 11.); In re Gardner, 913 F.2d 1515,

1518 (10th Cir.1990) ("Actions which do not depend on the bankruptcy laws for their existence

and which could proceed in another court are not core proceedings.")

   The causes of action asserted concerning defense costs and coverage under the Policies were

not created or determined by a statutory provision of the Bankruptcy Code, and thus do not "arise

under" title 11. Moreover, the insurance coverage disputes that relate to the Policies will not

affect substantive rights under the Bankruptcy Code, do not depend on any bankruptcy laws, are

not created nor determined by Bankruptcy Code provisions and could properly proceed in other

forums outside of the Bankruptcy Court. See e.g., Maitland v. Mitchell (In re Harris Pine Mills),

44 F.3d 1431, 1435 (9th Cir. 1995). Accordingly, they are non-core proceedings, pursuant to

which the Bankruptcy Court has jurisdiction under 28 U.S.C. §157(c), as proceedings "related to"

a case under Title 11.

   As a non-core proceeding, the Bankruptcy Court's power will be limited to making

recommendations to this Court. If the Bankruptcy Court's findings or conclusions are challenged,

this Court would then be required to undertake a *de novo* review of the Bankruptcy Court's

findings of fact and conclusions of law and enter a final order. As such, it would be a more

efficient use of judicial resources for this Court to hear the Allied World Adversary Proceeding

in the first place. See In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993) (the fact that a

bankruptcy court's determination on non-core matters is subject to *de novo* review by the district

court could lead the latter to conclude that in a given case unnecessary costs could be avoided by

a single proceeding in the district court).

BOS 621676.3

**C.** <u>Interests of Judicial Economy, Fairness and Timing Strongly Favor a Withdrawal of the Reference</u>

This Court withdrew the reference of the Axis Adversary in a matter that mirrors the Allied World Adversary Proceeding before the Bankruptcy Court. This Court is now well acquainted with many of the coverage and contractual disputes that are at issue in the Allied World Adversary Proceeding. The interests of judicial economy and fairness should mandate that this Court also hear the Allied World Adversary Proceeding, as the Insureds are seeking the same relief in the Allied World Adversary Proceeding from Allied World and Arch as they sought in the Axis proceeding.

The Bankruptcy Court's retention of and decision on the Allied World Adversary Proceeding could lead to conflicting resolutions of the same issues, duplicative discovery and, thus, inequitable results. Indeed, Judge Drain implicitly recognized that an adversary such as this should be withdrawn when he suggested that "as a practical matter, it may make sense to move to withdraw the reference of this matter . . . ." Transcript of Hearing on August 30, 2007 p. 83 (Axis Adversary, Docket No. 81). Judge Drain then indicated during the hearing that he "would strongly encourage the parties if they were ultimately to pursue [the Axis Adversary] to pursue it in a different forum because of the jurisdictional concerns that I've raised." <u>Id.</u>, Transcript at pp. 59-60. He further noted, "given the existence of a securities action and the inevitable tie-ins to settlements[,] that a district judge might want to have the reference. . . ." <u>Id.</u>, Transcript at p. 87.

Moreover, withdrawing the reference in this matter will not adversely affect the uniform administration of bankruptcy law because the Allied World Adversary Proceeding raises issues governed solely by non-title 11 law.

- 12 -

In addition, it is appropriate to withdraw the reference at this early stage of litigation. <u>See</u> <u>Mishkin v. Angeloff,</u> 220 B.R. 784 (S.D.N.Y. 1998) (facts that proceedings were in the early stages of litigation favored the withdrawal of the reference); <u>Magten Asset Mgt. Corp. v. Northwestern</u> <u>Corp. (In re Northwestern Corp.)</u>, 2005 WL 2320113, at *2 (D. Del. September 22, 2005) (withdrawal of reference timely when made at "a relatively early stage in the proceedings and significant discovery has not yet occurred"). This Motion is filed approximately one and a half months after the Plaintiffs filed their initial Complaint for preliminary and permanent injunctions about which the Bankruptcy Court has held one hearing. Moreover, the Amended Complaint was filed only a week ago.

Finally, withdrawing the reference in this matter will not promote forum shopping, as Allied World seeks to remove the Adversary Proceeding to this Court, which is presently the Court handling the Axis Adversary.

Accordingly, in light of all of these circumstances, withdrawal of the reference of this Adversary Proceeding is warranted. Plaintiffs assent to this motion.

## CONCLUSION

Allied World respectfully requests that, for all of the foregoing reasons, the Court grant Allied World's motion to withdraw the reference of the Adversary Proceeding.

Dated: New York, New York
April 30, 2008

EDWARDS ANGELL PALMER & DODGE LLP

By: /s/ John D. Hughes
John D. Hughes
Michael P. Thompson
Robert W. DiUbaldo
750 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 308-4411
*Attorneys for Allied World Assurance Company (U.S.), Inc.*

- 13 -

# Exhibit L

# EDWARDS ANGELL PALMER&DODGE LLP

111 Huntington Avenue  Boston, MA  02199  617.239.0100  *fax* 617.227.4420  eapdlaw.com

John D. Hughes
617.951.3373
*fax* 617.227.4420
jhughes@eapdlaw.com

November 12, 2007

**VIA FACSIMILE and E-MAIL**
To Coverage Counsel for Insureds
(See attached Service List)

Re:     **Insured: Refco Group Ltd, LLC**
        **Excess Policy No.: 418197**
        **Policy Period: 8/11/05 – 8/11/06**
        **Claim No.: 648-010578**
        **Matters:**     *Various*

Dear All:

As you may know, we have been asked by Allied World Assurance Co. (U.S.), Inc. ("Allied World") to assist in connection with the above referenced matters.

On behalf of Allied World, we have denied coverage for all matters relating to the collapse of Refco that have been noticed to Allied World to date, by letters dated March 28, 2006, September 11, 2007 and November 12, 2007 and other correspondence incorporated by reference therein. Moreover, because Allied World has denied coverage for these matters, we believe that it has no duty to advance defense costs under the Policy.

While to date none of the Insureds has disputed Allied World's basis for its denial of coverage, we are informed that all underlying layers of coverage may soon be exhausted to payments of defense costs to Insureds. Moreover, by letter dated November 9, 2007, counsel for Dennis Klejna has requested coverage under the Policy and funding for a proposed settlement in the *In re Refco, Inc. Securities Litigation*. Therefore, Allied World calls your attention to par. X of its policy ("Alternative Dispute Resolution Process"), which states:

>    Any and all disputes or differences which may arise under this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss or the formation and validity of this policy, shall subject to the alternative dispute resolution process ("ADR") set forth in this clause.

>    Either the Insurer or the Insureds may elect the type of ADR discussed below: provided, however, that the Insureds shall have the right to reject the Insurer's

BOS 603188.1
BOSTON | FT. LAUDERDALE | HARTFORD | NEW YORK | PROVIDENCE | SHORT HILLS | STAMFORD | WEST PALM BEACH | WILMINGTON | LONDON

# EDWARDS ANGELL PALMER & DODGE LLP

Letter to Coverage Counsel
November 12, 2007
Page 2

>   choice of ADR at any time prior to its commencement, in which case the
>   Insureds' choice of ADR shall control.
>
>   * * *
>
>   The Named Corporation shall act on behalf of all Insureds in selection of the
>   ADR in accordance with this clause.

Allied World hereby expresses its intention to demand arbitration with respect to its obligations
under the Policy, including any duty to advance defense costs, as to all claims noticed to it.
Allied World will file for arbitration in accordance with the ADR clause in fourteen days from
the date of this letter unless, within thirteen days of the date of this letter, the Insureds reject
Allied World's election of arbitration, in which case the matter shall be submitted to mediation
pursuant to the terms of the ADR clause.

Allied World calls your attention to the provision requiring that the Insureds act collectively in
making their selection of ADR. Accordingly, the Insureds must agree to appoint a single
representative through which they will collectively make their ADR selection. In the absence of
a collective rejection of Allied World's choice of arbitration received within thirteen days of the
date of this letter, Allied World shall commence arbitration with respect to this matter.

On behalf of Allied World, we reserve all of its rights and defenses under the Policy and
available at law and in equity, including, but not limited to, the right to rescind the Policy as to
any and all Insureds. Likewise, we recognize that the Insureds reserve their rights under the
Policy and available at law and in equity as well.

Very truly yours,

*John D. Hughes*

John D. Hughes

cc:     R. Damian Brew, Marsh USA
        Andrea Lieberman, Marsh USA

BOS 603188.1

# Service List

| Name of Insured | Attorney(s) | Firm Name/Address |
|---|---|---|
| Phillip R. Bennett | Jeffrey T. Golenbock<br>jgolenbock@golenbock.com<br><br>Adam S. Silverstein<br>asilverstein@golenbock.com | Golenbock Eiseman Assor Bell & Peskoe, LLP<br>437 Madison Avenue<br>35th Floor<br>New York, NY 10022-7302<br>Fax: (212) 754-0330 |
| Joseph J. Murphy | John J. Jerome<br>jjerome@saul.com<br><br>Timothy Hoeffner (Philadelphia)<br>thoeffner@saul.com | Saul Ewing LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>Fax: (212) 672-1920<br><br>Centre Square West<br>1500 Market Street, 38th Floor<br>Philadelphia, PA 19102-2186 |
| Gerald M. Sherer | Stuart I. Friedman<br>sfriedman@friedmanwittenstein.com<br><br>Ivan Kline<br>ikline@friedmanwittenstein.com | Friedman & Wittenstein A Professional Corporation<br>600 Lexington Avenue<br>New York, NY 10022<br>Fax: (212) 223-8391 |
| Philip Silverman | Richard Cashman<br>richard.cashman@hellerehrman.com | Heller Ehrman LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Fax: (212) 763-7600 |
| William M. Sexton | Stuart I. Friedman<br>sfriedman@friedmanwittenstein.com<br><br>Ivan Kline<br>ikline@friedmanwittenstein.com | Friedman & Wittenstein A Professional Corporation<br>600 Lexington Avenue<br>New York, NY 10022<br>Fax: (212) 223-8391 |

PRV 918497.1

| Name of Insured | Attorney(s) | Firm Name/Address |
|---|---|---|
| Dennis A. Klejna | Helen B. Kim<br>hkim@bakerlaw.com<br><br>Matthew R. Goldman (Cleveland)<br>mgoldman@bakerlaw.com<br><br>Wendy J. Gibson (Cleveland)<br>wgibson@bakerlaw.com | Baker & Hostetler LLP<br>1200 Wilshire Blvd.,<br>Suite 1500<br>Los Angeles, CA 90025<br>Fax: (310) 820-8859<br><br>3200 National City<br>Center<br>1900 E. 9th Street<br>Cleveland, OH 44114 |
| Tone Grant | Norman L. Eisen<br>neisen@zuckerman.com<br>Direct Fax: (202) 822-8106<br><br>Thomas G. Macauley<br>tmacauley@zuckerman.com<br>Direct Fax: (302) 427-8242<br><br>Laura E. Neish<br>lneish@zuckerman.com | Zuckerman Spaeder<br>LLP<br>1540 Broadway, Suite<br>1604<br>New York, NY 10036-<br>4039<br>Fax: (212) 704-4256 |
| Santo C. Maggio | Scott E. Hershman<br>shershman@hunton.com<br><br>Stephen R. Blacklocks<br>sblacklocks@hunton.com<br><br>Richard Soto<br>rsoto@hunton.com | Hunton & Williams<br>LLP<br>200 Park Avenue<br>New York, NY 10166<br>Fax: (212) 309-1100 |
| Thomas H. Lee | Greg A. Danilow<br>greg.danilow@weil.com<br><br>Michael F. Walsh<br>michael.walsh@weil.com | Weil, Gotshal &<br>Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-<br>0119<br>Fax: (212) 310-8007 |
| Scott L. Jaeckel | Greg A. Danilow<br>greg.danilow@weil.com<br><br>Michael F. Walsh<br>michael.walsh@weil.com | Weil, Gotshal &<br>Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-<br>0119<br>Fax: (212) 310-8007 |

PRV 918497.1

| Name of Insured | Attorney(s) | Firm Name/Address |
|---|---|---|
| David V. Harkins | Greg A. Danilow<br>greg.danilow@weil.com<br><br>Michael F. Walsh<br>michael.walsh@weil.com | Weil, Gotshal &<br>Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Fax: (212) 310-8007 |
| Scott A. Schoen | Greg A. Danilow<br>greg.danilow@weil.com<br><br>Michael F. Walsh<br>michael.walsh@weil.com | Weil, Gotshal &<br>Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Fax: (212) 310-8007 |
| Leo R. Breitman | Greg A. Danilow<br>greg.danilow@weil.com<br><br>Michael F. Walsh<br>michael.walsh@weil.com | Weil, Gotshal &<br>Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Fax: (212) 310-8007 |
| Nathan Gantcher | Greg A. Danilow<br>greg.danilow@weil.com<br><br>Michael F. Walsh<br>michael.walsh@weil.com | Weil, Gotshal &<br>Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Fax: (212) 310-8007 |
| Ronald L. O'Kelley | Greg A. Danilow<br>greg.danilow@weil.com<br><br>Michael F. Walsh<br>michael.walsh@weil.com | Weil, Gotshal &<br>Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Fax: (212) 310-8007 |
| Robert C. Trosten | Gabriel Del Virginia<br>gabriel.delvirginia@verizon.net | Law Offices of Gabriel<br>Del Virginia<br>641 Lexington Avenue<br>New York, NY 10022<br>Fax: (212) 371-0460 |
| Robert C. Trosten | Barbara Moses<br>bmoses@maglaw.com<br><br>Rachel Korenblat<br>rkorenblat@maglaw.com | Morvillo, Abramowitz,<br>Grand, Iason, Anello &<br>Bohrer, P.C.<br>565 Fifth Avenue<br>New York, NY 10017<br>Fax: (212) 856-9494 |

- 3 -

| Name of Insured | Attorney(s) | Firm Name/Address |
|---|---|---|
| Axis Reinsurance Company | Wayne E. Borgeest<br>wborgeest@kbrlaw.com<br><br>Joan M. Gilbride<br>jgilbride@kbrlaw.com<br><br>Ann Marie Collins<br>acollins@kbrlaw.com<br><br>Robert A. Benjamin<br>rbenjamin@kbrlaw.com | Kaufman Borgeest & Ryan LLP<br>200 Summit Lake Drive<br>Valhalla, NY 10595<br>Fax: (914) 761-0025 |

PRV 918497.1

# Exhibit M

Hearing (Plaintiffs' & AWAC's Motions) : April 11, 2008, 10:00 a.m.

Hearing (Klejna's Motion): May 1, 2008, 10:00 a.m.
Response Deadline:  April 25, 2008, 4:00 p.m. ET

HELEN B. KIM (HK-8757)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:    310-788-4525
Facsimile:    310-788-4471

PHILIP A. NEMECEK (PN-3319)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022-2585
Telephone:    212-940-8834
Facsimile:    212-940-8776

*Attorneys for Plaintiff Dennis A. Klejna*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                                        :
REFCO INC., et al.,                                          :
                              Debtors.                       :
                                                             :
-------------------------------------------------------------x
JOSEPH MURPHY, WILLIAM M. SEXTON, DENNIS :
A. KLEJNA, GERALD SHERER, PHILIP            :
SILVERMAN, RICHARD N. OUTRIDGE, TONE        :
GRANT, LEO R. BREITMAN, NATHAN GANTCHER, :
DAVID V. HARKINS, SCOTT L. JAECKEL, THOMAS :
H. LEE, RONALD L. O'KELLEY, AND SCOTT A.    :
SCHOEN,                                     :
                              Plaintiffs,   :
               v.                           :
                                            :
ALLIED WORLD ASSURANCE COMPANY (U.S.),      :
INC.,                                       :
                              Defendant.    :
-------------------------------------------------------------x

Chapter 11

Case No. 05-60006 (RDD)

Jointly Administered


Adv. Proc. No. 08-01133 (RDD)


*Electronically Filed*

**PLAINTIFF DENNIS A. KLEJNA'S MEMORANDUM OF LAW IN OPPOSITION TO
ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.'S  MOTION TO DISMISS OR
STAY THE ADVERSARY PROCEEDING, IN SUPPORT OF MOTION TO ENJOIN
ARBITRATION IN FAVOR OF ADVERSARY PROCEEDING AND IN FURTHER
SUPPORT OF KLEJNA'S MOTION FOR ADVANCEMENT**

# TABLE OF CONTENTS

Statement of Relevant Facts.................................................................................3

    A.    The Refco Insurance Program and the Binder ...............................................3

    B.    The Policy and the ADR Provision.......................................................5

    C.    AWAC's Failure to Notify Refco Prior To Commencing Arbitration ...................6

ARGUMENT ...........................................................................................7

**I.    THE COURT SHOULD DENY AWAC'S MOTION TO DISMISS OR STAY THIS PROCEEDING AND ENJOIN THE ARBITRATION COMMENCED BY AWAC BECAUSE REFCO NEVER CONSENTED TO ARBITRATION**...........................................................................7

    A.    Applicable Legal Standards .................................................................7

    B.    AWAC's Motion to Dismiss or Stay Should Be Denied and Klejna's Motion to Enjoin the Arbitration Commenced by AWAC Should Be Granted Because Refco Did Not "Expressly and Unequivocally" Consent to Arbitration.........................................................8

    C.    AWAC Is Not Entitled to Dismissal or a Stay Because It Did Not Comply with the AWAC Policy's Preliminary Procedures and Klejna Timely Rejected Arbitration in Any Event ........................................11

**II.    THE COURT SHOULD GRANT MR. KLEJNA'S MOTION FOR ADVANCEMENT OF DEFENSE COSTS** ...............................................14

Conclusion ..............................................................................................14

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Advanced Bodycare Solutions, LLC v. Thione International, Inc.,*
514 F.Supp.2d 1326 (S.D. Fla. 2007) ............................................................ 8, 10-11

*AT & T Technologies v. Communications Workers of America,*
475 U.S. 643 (1986)..........................................................................................9

*Barbieri v. K-Sea Transp. Corp.,*
2006 WL 3751215 (E.D.N.Y. Dec. 19, 2006) ..............................................7

*Bensadoun v. Jobe-Riat,*
316 F.3d 171 (2d Cir. 2005)..........................................................................8

*Darrah v. Friendly Ice Cream Corp.,*
328 F.Supp.2d 319 (N.D.N.Y. 2004)...........................................................12

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995)........................................................................................9

*HIM Portland, LLC v. DeVito Builders,*
317 F.3d 41 (1st Cir. 2003).......................................................................9, 13

*Katz v. Feinberg,*
167 F.Supp.2d 556 (S.D.N.Y. 2001)............................................................9

*Kemiron Atlantic, Inc. v. Aguakem Intern., Inc.,*
290 F.3d 1287 (11th Cir. 2002) ...................................................................8

*Lynn v. Gen. Elec. Co.,*
2005 WL 701270 (D. Kan. Jan. 20, 2005) ...................................................8

*Motorola Credit Corp. v. Uzan,*
388 F.3d 39 (2d Cir. 2004)............................................................................9

*Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,*
391 F.3d 77 (2d Cir. 2004)............................................................................8

**STATE CASES**

*Bennacer v. Travelers Ins. Co.,*
265 A.D.2d 823, 695 N.Y.S.2d 846 (4th Dept. 1999) ...............................10

*Gerling Global Reinsurance Corp. v. Home Ins. Co.,*
302 A.D.2d 118, 752 N.Y.S.2d 611 (1st Dep't 2002) ................................9

*Lopez v. 14th Street Development LLC,*
40 A.D.3d 313, 835 N.Y.S.2d 186 (1st Dep't 2007) .................................12

ii

*Marlene Industries Corp. v. Carnac Textiles, Inc.*,
    45 N.Y.2d 327, 408 N.Y.S.2d 410 (1978) ................................................................9

**FEDERAL STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1 – 4 ........................................................... 8-11

iii

Plaintiff Dennis A. Klejna submits this memorandum of law (1) in opposition to the motion by defendant Allied World Assurance Company (U.S.), Inc. ("AWAC") to dismiss or stay this adversary proceeding in favor of arbitration; (2) in support of his motion to enjoin the arbitration commenced by AWAC in favor of this adversary proceeding and (3) in further support of the motion of Plaintiffs Dennis A. Klejna, William M. Sexton, Gerald Sherer, Philip Silverman, Richard N. Outridge, Joseph Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen and Tone N. Grant (collectively, the "Moving Insureds") for a preliminary injunction to require AWAC to pay defense costs.

AWAC's motion to dismiss or stay this adversary proceeding in favor of arbitration must be denied for the fundamental reason that neither Mr. Klejna nor Refco Inc. ("Refco") – the "Named Corporation" to whom AWAC issued its Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 (the "AWAC Policy") – agreed to the alternative dispute resolution ("ADR") provision in the AWAC Policy; AWAC failed to comply with the ADR provision and, in any event, Mr. Klejna timely rejected arbitration prior to AWAC's commencement of the arbitration proceeding.

As we demonstrate below, the insurance binder which governs the parties here contained *no* reference to any arbitration or alternative dispute resolution provision and, in direct contradiction to AWAC's position here, references a "service of suit" clause which would subject the insureds to the jurisdiction of the courts, not arbitration. Consequently, AWAC's motion runs counter to the well-established law which provides that no party can be compelled to arbitrate unless it has "expressly and unequivocally" agreed to do so.

Moreover, even if the Court were to find the ADR provision binding on Refco and the insureds, AWAC cannot require arbitration here because it has failed to comply with the

2

requirements for election under the policy's ADR provision. Here, it is undisputed that AWAC never notified Refco of its election to arbitrate, nor gave Refco – the only entity authorized under the ADR provision in the Policy to make an election – an opportunity to reject AWAC's election to arbitrate. Instead, AWAC materially departed from the terms of the ADR provision by (1) demanding that the individual insureds appoint some other representative to make their ADR selection; and (2) requiring that the individual insureds "collectively reject" arbitration. In addition, on March 7, 2008, Mr. Klejna timely objected to arbitration. AWAC's failure to follow the requirements of the ADR provision compels this Court to deny AWAC's motion to stay this adversary proceeding in favor of arbitration and to grant Mr. Klejna's cross-motion to stay the arbitration in favor of this proceeding.

With respect to Mr. Klejna's remaining arguments in opposition to AWAC's motion to dismiss or stay and in further support of his motion for a preliminary injunction advancing defense costs, Mr. Klejna joins in the reply papers filed by the other Moving Insureds.

**Statement of Relevant Facts**

The facts relevant to Mr. Klejna's opposition to AWAC's motion are set forth in the accompanying declaration of Pamela Sylwestrzak, senior vice president of Marsh USA, Inc. ("Marsh,"), dated April 8, 2008 ("Sylwestrzak Decl.") and in the reply declaration of Helen B. Kim, dated April 9, 2008 ("Reply Decl.").

A.    **The Refco Insurance Program and the Binder**

Marsh was the broker of record for a program of Directors and Officers ("D&O") liability insurance that was placed with various insurers for Refco for the policy period August 11, 2005 through August 11, 2006 (the "2005-2006 Program"). (Sylwestrzak Decl. ¶ 2). Sylwestrzak was the principal contact person at Marsh for the Refco entities with respect to the binding of the 2005-2006 Program and was involved in the purchase of insurance coverage for the Refco entities and their directors and officers. (*Id.*).

3

For the 2005-2006 Program, the tower of Refco's D&O insurance consisted of: (1) U.S. Specialty Insurance Company Directors, Officers and Corporation Liability Insurance Policy No. 24-MGU-05-A10821 ($10 million primary coverage); (2) Lexington Insurance Company Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924 ($7.5 million excess of $10 million); (3) Axis Reinsurance Company SecurExcess Policy No. RNN 506300 ($10 million excess of $17.5 million); (4) AWAC Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 ($12.5 million excess of $27.5 million) (*i.e.*, the AWAC Policy); (5) Arch Insurance Company Excess Insurance Policy No. DOX0009322-00 ($10 million excess of $40 million); and (6) XL Specialty Insurance Company Classic A-Side Management Liability Insurance Policy No. ELU089673-05 ($20 million excess of $50 million). (Sylwestrzak Decl. ¶ 3).

In connection with the 2005-2006 Program, AWAC issued a policy binder (the "Binder") to Refco through Marsh on August 10, 2005, for the period August 11, 2005 to August 11, 2006. (Sylwestrzak Decl. ¶ 4 and Ex. A thereto). Notably, unlike other provisions in the Binder, such as AWAC's intent to incorporate the most restrictive provisions in each of the underlying policies in the D&O Tower (Sylwestrzak Decl. Ex. A at p. 3), AWAC gave no notice of its intent to include an ADR provision. The Binder makes no mention of any arbitration or ADR clause, but instead includes among the listing of "applicable endorsements" a "Service of Suit Clause." (*Id.* ¶ 6 & Ex. A). In the course of the negotiations that led to the binding of the AWAC Policy, Marsh did not discuss with AWAC or agree to the inclusion of any provision for alternative dispute resolution provision, nor did any of the other insurers in the 2005-2006 Program request such a provision or include one in their respective policies. (*Id.* ¶ 5). By way of contrast, the Service of Suit Clause was listed in the Binder and included in the AWAC Policy as Endorsement No. 1. (*Id.* ¶ 6). AWAC also did not provide Marsh with a copy of the form of policy in connection with the binding of the AWAC Policy in August 2005. (*Id.* ¶ 7).

4

**B.**    **The Policy and the ADR Provision**

The AWAC Policy was issued to Refco on or shortly after the March 16, 2006 "Date of Issuance" listed on Endorsement Nos. 2 and 3 to the AWAC Policy. (Sylwestrzak Decl. ¶ 8 and Ex. B thereto).

Section X of the AWAC Policy, entitled "Alternative Dispute Resolution Process," provides that "[a]ny and all disputes or differences which may arise under this policy ... shall be subject to the alternative dispute resolution process ("ADR") set forth" in Section X. (Sylwestrzak Decl. Ex. B at § X). Section X provides only two choices: (1) non-binding mediation, followed by a 120-day litigation freeze; or (2) arbitration. Section X provides, in pertinent part:

> Either the Insurer or the Insureds may elect the type of ADR discussed below, provided, however, Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

(*Id.*). Section X further provides that:

> The Named Corporation [defined as in the declarations as Refco Inc.] shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

(*Id.*). Thus, the provision requires that, before an arbitration may be commenced, the Insurer must notify the Insureds, including Refco, of any election of ADR and give the "Named Corporation" – Refco – the opportunity to reject .

Refco's broker was unaware that the AWAC Policy included an alternative dispute resolution provision until late March 2006, when AWAC issued the AWAC Policy. (Sylwestrzak Decl. ¶ 9). At no time prior to binding did AWAC or any of the other excess carriers in the 2005-2006 Program request modification of the severability provisions in the Primary Policy. (*Id.* ¶ 10). Thus, Marsh understood that AWAC and the other excess carriers would follow form with respect to the severability provisions of the Primary Policy. (*Id.*).

5

**C.**    **AWAC's Failure to Notify Refco Prior To Commencing Arbitration**

By letter dated November 12, 2007, AWAC indicated its intent to demand arbitration with respect to its obligations under the AWAC Policy.  In that letter, AWAC specifically acknowledged that "[t]he Named Corporation shall act on behalf all Insureds in selection of the ADR in accordance with this clause." (Reply Decl. Ex. A).  Nevertheless, in contravention of the terms of the AWAC Policy, AWAC unilaterally imposed two conditions not contained in the AWAC Policy:  first, that "the Insureds must agree to appoint a single representative through which they will collectively make their ADR selection;" and second, that the Insureds must make "a collective rejection" of AWAC's arbitration choice within 13 days of the letter's date.  (*Id.*).  Notably, AWAC's November 17, 2007 letter was not sent to Refco – the Named Corporation under the AWAC Policy – or to RJM LLC, the Plan Administrator for Refco.  (*Id.*)

In late February 29, 2008, Mr. Klejna requested that AWAC advise him of any documentary or other evidence that Refco ever agreed or consented to arbitration.  (Reply Decl. Ex. B).  On March 6, 2008, AWAC responded that Weil Gotshal had done so.  (*Id.* Ex. C).  On March 7, 2008, Mr. Klejna promptly denied that Weil Gotshal had consented on behalf of Mr. Klejna to arbitrate.  (*Id.* Ex. D).

Notwithstanding Mr. Klejna's objection to arbitration, on March 14, 2008, AWAC commenced an arbitration against certain former Refco officers and directors, including Mr. Klejna, by filing a Demand for Arbitration with the American Arbitration Association. (Declaration of Michael P. Thompson in Support of the Motion by Allied World Assurance Company (U.S.), Inc. to Dismiss or Stay the Adversary Proceeding in Favor of Arbitration and in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated April 1, 2008, ¶ 5 & Ex. 5 thereto).

Since that time, counsel for RJM LLC, the Plan Administrator for Refco, has confirmed that, at no time prior to AWAC's commencement of the arbitration did AWAC request Refco's

consent to arbitration under Clause X of the AWAC Policy. (Reply Decl. ¶ 6.) Nor did AWAC

request Refco to act on behalf of all Insureds in the selection of the ADR in accordance with the

AWAC Policy. (*Id.*).

## ARGUMENT

**I.  THE COURT SHOULD DENY AWAC'S MOTION TO DISMISS OR STAY THIS PROCEEDING AND ENJOIN THE ARBITRATION COMMENCED BY AWAC BECAUSE REFCO NEVER CONSENTED TO ARBITRATION**

The Court should deny AWAC's motion to dismiss or stay and grant Mr. Klejna's motion

to enjoin the arbitration commenced by AWAC because Refco never consented to the alternative

dispute resolution provision in the AWAC Policy or to submit any dispute with AWAC to

arbitration. There is no reference to any arbitration clause – or indeed to any ADR provision – in

the Binder, and Marsh was unaware that the Policy would contain an ADR provision until the

Policy was issued. In addition, AWAC's failure to notify Refco of its election and provide Refco

with an opportunity to object, which is plainly a condition precedent to invoking arbitration, also

mandates the denial of AWAC's motion.

### A.  Applicable Legal Standards

In determining motions to compel arbitration or to stay judicial proceedings pending the

resolution of arbitration, the courts apply standards similar to those for summary judgment

motions. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2005); *Barbieri v. K-Sea Transp.*

*Corp.*, 2006 WL 3751215, * 3 (E.D.N.Y. Dec. 19, 2006). Consequently, "if there is an issue of

fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun,*

*supra*, 316 F.3d at 175. Furthermore, the court will liberally construe evidence presented in

favor of the party opposing the motion. *See Security Ins. Co. of Hartford v. Old Dominion*

*Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) (in assessing the record to determine whether a

genuine issue of material fact exists, "the court is required to resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought").

7

AWAC contends, without any analysis, that federal policy favors arbitration pursuant to the Federal Arbitration Act (the "FAA," 9 U.S.C. §§ 1 – 4), and purports to bring this motion pursuant to the FAA (AWAC Mem. at 10). However, the FAA does not control here for two reasons.

First, the FAA does not govern agreements, such as the Policy, where there is an ADR provision in which arbitration is optional and not mandatory. *See Advanced Bodycare Solutions, LLC v. Thione International, Inc.,* 514 F.Supp.2d 1326, 1333 (S.D. Fla. 2007) (finding that agreement which provided alternative means to resolve dispute, including either mediation or arbitration, was not subject to enforcement pursuant to the FAA); *Lynn v. Gen. Elec. Co.,* 2005 WL 701270 at *6 (D. Kan. Jan. 20, 2005) *citing Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc.,* 390 F.3d 684, 690 n. 3 (10th Cir. 2004) (holding that agreement to mediate is not subject to FAA).

Second, courts interpreting the FAA hold that its enforcement provisions are not applicable to agreements, such as the Policy, where the parties' right to arbitrate has not been triggered. *See Kemiron Atlantic, Inc. v. Aguakem Intern., Inc.* 290 F.3d 1287, 1291 (11th Cir. 2002) ("[b]ecause neither party requested mediation [a condition precedent to the arbitration] the arbitration provision has not been activated and the FAA does not apply"); *HIM Portland, LLC v. DeVito Builders,* 317 F.3d 41 (1st Cir. 2003) (same).

B.   **AWAC's Motion to Dismiss or Stay Should Be Denied and Klejna's Motion to Enjoin the Arbitration Commenced by AWAC Should Be Granted Because Refco Did Not "Expressly and Unequivocally" Consent to Arbitration**

The Second Circuit applies a two-prong test to determine whether or not to grant a party's motion to compel or to stay a judicial proceeding: (1) whether the parties agreed to arbitrate; and (2) whether the scope of any such agreement encompasses the claims. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d Cir. 2004) (denying motion to compel

8

arbitration pursuant to the first prong because the parties did not agree to arbitrate). The first prong of the test is critical because, even under the FAA, it is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 648 (1986).

In determining whether a party has agreed to submit to arbitration, "'the court looks to all terms of the parties' agreement bearing on arbitration. Even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute.'" *Katz v. Feinberg*, 167 F.Supp.2d 556, 566 (S.D.N.Y. 2001) quoting *Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home and Allied Services Union*, 788 F.2d 894, 898 (2d Cir. 1986). Courts should apply ordinary state law that governs the formation of contracts in determining whether the parties have agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under New York law, a party can only be compelled to arbitrate if the moving party proves that there is "'a clear and unequivocal' agreement to arbitrate." *Gerling Global Reinsurance Corp. v. Home Ins. Co.*, 302 A.D.2d 118, 123, 752 N.Y.S.2d 611 (1st Dep't 2002); *see also Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 333-34, 408 N.Y.S.2d 410 (1978) (granting motion to stay arbitration by party that did not "expressly and unequivocally" consent to arbitration).

Here, it cannot be disputed that Refco did not "expressly" or "unequivocally" consent to arbitration. Unlike other provisions in the Binder, such as AWAC's intent to incorporate the most restrictive provisions in each of the underlying policies in the D&O tower (*see* Sylwestrzak Decl. Ex. A at p. 3), AWAC gave no notice of its intent to include an ADR provision. The Binder contained no reference to any arbitration clause or ADR provision. Indeed, the only

conceivably relevant statement in the Binder was a reference to a "Service of Suit" provision

which plainly indicated that disputes would be resolved by the courts, not in arbitration. (*Id.* at

p. 2). In addition, as set forth at paragraph 5 of the Sylwestrzak Declaration, there was no

discussion of any arbitration or ADR clause during the Binder negotiations, nor did Marsh agree

to any such provision on behalf of the Insureds. Thus, where, as here, the Binder did not

expressly or unequivocally state an agreement to arbitrate, any resulting ambiguity must be

construed against the insurer, AWAC. *See Bennacer v. Travelers Ins. Co.,* 265 A.D.2d 823, 695

N.Y.S.2d 846 (4th Dep't 1999).

Thus, Marsh was unaware until late March 2006, when the Policy was issued (and long

after Refco had filed for bankruptcy), that it would contain an ADR provision that provided for

arbitration or mediation. (Sylwestrzak Decl. ¶ 6). Under these circumstances Refco did not

"expressly or .unequivocally" consent to arbitration. Thus, the Court should deny AWAC's

motion to stay this proceeding in favor of arbitration and should instead grant Mr. Klejna's

motion to enjoin the arbitration commenced by AWAC.

In addition, courts have denied motions to stay judicial proceedings where, as here, the

parties' agreement lacks a mandatory arbitration clause. For example, in *Advanced Bodycare*

*Solutions, LLC v. Thione International, Inc.*, 514 F.Supp.2d 1326 (S.D. Fla. 2007), plaintiff

commenced a litigation and defendant moved to dismiss or stay the action pending arbitration.

The alternative dispute clause in the parties' contract provided that if the parties could not

negotiate a resolution to their dispute, the dispute would be submitted to nonbinding arbitration

or mediation. Plaintiff contended that because the alternative dispute clause provided two

alternatives – "non binding arbitration or mediation" – there was no mandatory obligation to

arbitrate and thus the FAA did not apply.

The court agreed with plaintiff's position and denied the motion to dismiss or stay. It

found that:

10

[t]he parties' contract does not manifest an intent that arbitration be the exclusive means for addressing a dispute over a breach or termination of the agreement. Rather, by creating an option for the aggrieved party to call for either non-binding arbitration or mediation, the parties have made resort to arbitration the prerogative – not the obligation – of the aggrieved party. That is, this alternative dispute mechanism merely provides a forum for the parties to pursue pre-suit settlement negotiations: Within this forum, the arbitral procedure is simple one option that the aggrieved party may or may not invoke, having the alternative option of pursuing mediation. Because the contract does not require [plaintiff] to invoke the arbitral aspect of the alternative dispute resolution mechanism, and because an agreement to mediate is generally not susceptible to FAA enforcement ... there was no agreement to arbitrate this dispute within the meaning of the FAA and this court lacks authority to stay the case pending arbitration pursuant to [the FAA].

*Id.* at 1332-33.

Here, as in *Advanced Bodycare*, Mr. Klejna cannot be compelled to arbitrate because the AWAC Policy does not contain a mandatory arbitration clause: instead, it provides the parties with the choice of mediation or arbitration. Although AWAC may elect arbitration, Refco, Inc. may reject AWAC's election. Indeed, the ADR clause – which states that "in the event of mediation, either party shall have the right to commence a judicial proceeding" – specifically preserves the parties' right to litigate and demonstrates that, like in *Advance Bodycare*, arbitration is optional, not mandatory. For this reason, the FAA does not apply here and FAA enforcement is unavailable.

### C.    AWAC Is Not Entitled to Dismissal or a Stay Because It Did Not Comply with the AWAC Policy's Preliminary Procedures and Klejna Timely Rejected Arbitration in Any Event

In the event this Court determines that the ADR provision is binding on Refco, AWAC's motion should be denied nevertheless because AWAC failed to notify or otherwise obtain Refco's consent prior to commencing an arbitration, as the AWAC Policy's ADR provision clearly requires, and Mr. Klejna timely rejected arbitration in any event.

When a party fails to follow requisite procedures prior to commencing an arbitration, that party cannot stay a judicial proceeding or compel arbitration. *Darrah v. Friendly Ice Cream*

Corp., 328 F.Supp.2d 319, 321 (N.D.N.Y. 2004); *Application of Travelers Indem. Co.*, 195 A.D.2d 35, 40, 606 N.Y.S.2d 167, 171 (1st Dep't 1993). It is within the court's jurisdiction to determine whether a party complied with "'provisions which in point of time are intended to be preliminary to the institution of any arbitration proceeding.'" *Id.*, 195 A.D.2d at 40, 606 N.Y.S.2d at 171.

Courts routinely reject motions to compel arbitration where parties failed to follow mandatory preliminary steps prior to initiating an arbitration. For example, in *Darrah, supra*, 328 F.Supp.2d at 321-22, the parties' agreement required negotiations prior to the commencement of an arbitration. Although the plaintiff was willing to engage in the negotiations, the defendant refused and plaintiff subsequently initiated judicial proceedings. In denying the defendant's motion to stay the judicial proceedings and to compel arbitration, the district court held that the defendant could not enforce the arbitration clause because it failed to engage in the requisite preliminary negotiations. *See also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248 (1989) (finding that a court may only require arbitration agreements to be enforced "in accordance with their terms"); *Lopez v. 14th Street Development LLC*, 40 A.D.3d 313, 314, 835 N.Y.S.2d 186, 188 (1st Dep't 2007) (reversing lower court's order staying court proceeding where required conditions prior to initiating an arbitration were not met and where contract did not otherwise mandate arbitration of claims at issue); *HIM Portland, LLC v. DeVito Builders*, 317 F.3d 41, 44 (1st Cir. 2003) (affirming district court's refusal to compel arbitration because "the duty to arbitrate did not ripen until after the condition precedent of mediation had been satisfied").

As in these cases, AWAC's motion to dismiss or stay this proceeding must be denied because AWAC has not complied with the conditions in the AWAC Policy required before a party may invoke arbitration.

12

In November 2007, AWAC recognized that, in order to proceed with arbitration under Section X of the AWAC Policy, it was required to obtain consent to arbitration, as opposed to the option of mediation. (Reply Decl. Ex. A). But it is indisputable that AWAC did not provide notice to Refco as the Named Corporation or otherwise obtain Refco's consent before commencing the arbitration, as required by the terms of Section X. Instead, AWAC attempted unilaterally to impose new conditions with respect to Section X. (Reply Decl. ¶ 3 & Exhibit A thereto). Even as it recited that portion of the AWAC Policy's ADR provision requiring that "[t]he Named Corporation shall act on behalf all Insureds in selection of the ADR in accordance with this clause," AWAC unilaterally demanded that "the Insureds must agree to appoint a single representative through which they will collectively make their ADR selection," and that they must make "a collective rejection" of AWAC's arbitration choice within 13 days. (Id. Ex. A). No notice was given to Refco or its Plan Administrator. (Id.).

Thereafter, when Mr. Klejna challenged AWAC's assertion that "Refco ever agreed or consented to arbitration" (Reply Decl. Ex. B), AWAC asserted that Weil Gotshal, counsel for certain former directors of Refco, had provided such consent. (Reply Decl. Ex. C).

But Section X of the AWAC Policy does not permit anyone other than the Named Corporation to make any election between arbitration and mediation. And Weil Gotshal is not the Named Corporation. Nor does Section X require there to be a "collective rejection" among the insureds of arbitration. Thus, on March 7, 2008, Mr. Klejna denied that Weil Gotshal had ever consented on behalf of Mr. Klejna to arbitration and thereby rejected arbitration. (Reply Decl. Ex. D).

In view of AWAC's failure to follow the procedures set forth in Section X of the AWAC Policy, its commencement of an arbitration was in violation of Section X of the Policy. Section X does not give AWAC the unilateral right to demand arbitration nor the right to demand a "collective rejection" of arbitration. Thus, Mr. Klejna's rejection of arbitration was sufficient to

13

reject AWAC's election of arbitration, and consequently, the Court should deny AWAC's motion to dismiss or stay this proceeding and should grant Mr. Klejna's motion to enjoin the arbitration for this reason as well.

## II.    THE COURT SHOULD GRANT MR. KLEJNA'S MOTION FOR ADVANCEMENT OF DEFENSE COSTS

In the event this Court grants AWAC's motion to dismiss or stay this adversary proceeding, Mr. Klejna respectfully submits that this Court should nevertheless grant the Moving Insureds' motion for advancement of defense costs, based on this Court's equitable powers to grant injunctive relief in aid of arbitration.  On this issue and on the merits of why AWAC has an obligation under the terms of the AWAC Policy to advance defense costs, Mr. Klejna respectfully joins in the arguments raised by the other Moving Insureds in their Response to Allied World Assurance Company (U.S.), Inc.'s Motion to Dismiss or Stay Adversary Proceeding in Favor of Arbitration and to Allied World's Opposition to Request for Preliminary Injunction, dated April 9, 2008.

### Conclusion

Based on the foregoing, the Court should deny AWAC's motion to dismiss or stay this proceeding, grant Mr. Klejna's motion to enjoin the arbitration commenced by AWAC and grant the Moving Insureds' motion for advancement of defense costs.

Dated:  April 9, 2008                      Respectfully submitted,

                                           HELEN B. KIM (HK-8757)
                                           KATTEN MUCHIN ROSENMAN LLP

                                           /s/ Helen B. Kim
                                           2029 Century Park East, Suite 2600
                                           Los Angeles, CA 90068
                                           Telephone: 310-788-4525
                                           Facsimile:  310-712-8226

                                           PHILIP A. NEMECEK (PN-3319)
                                           KATTEN MUCHIN ROSENMAN LLP
                                           575 Madison Avenue

14

New York, NY  10022-2585
Telephone: 212-940-8834
Facsimile:  212-940-8776

*Attorneys for Plaintiff Dennis A. Klejna*

15

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                           ) ss.:
COUNTY OF NEW YORK  )

JOHN H. EICKEMEYER, being sworn, says:

1.     I am not a party to the action, am over 18 years of age and reside in Eastchester, New York.

2.     On May 8, 2008, I caused to be served the within **Affirmation of John H. Eickemeyer in Support of Arch Insurance Company's Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint** upon counsel to the following parties, via electronic mail and by depositing a true copy thereof enclosed in a post-paid wrapper addressed as follows into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the service for such delivery:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D. <br> McCarthy, Peter J. | William Fleming, Esq. <br> Gage Spencer & Fleming, LLP <br> 410 Park Avenue <br> New York, NY  10022 <br> (212) 768-4900 <br> wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock, Esq. <br> Golenbock Eisman Assor <br>   Bell & Pesko LLP <br> 437 Madison Avenue <br> New York, NY  10022 <br> (212) 907-7373 <br> jgolenbock@golenbock.com |
| Breitman, Leo R. <br> Gantcher, Nathan <br> Harkins, David V. <br> Jaekel, Scott L. <br> Lee, Thomas H. <br> O'Kelley, Ronald L. <br> Schoen, Scott A. | Paul A. Ferrillo, Esq. <br> Weil Gotshal & Manges LLP <br> 767 Fifth Avenue <br> New York, NY  10153 <br> (212) 310-8372 <br> Paul.ferrillo@weil.com |

| | |
|---|---|
| Cox, Edwin | Martin R. Bennett, Esq.<br>Kugle, Skelton & Bennett<br>130 E. Corsicana, Ste. 302<br>Athens, TX 75751<br>(903) 675-5151<br>mbennett@ksbpc.com |
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner, Esq.<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA 94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford, Esq.<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL 60602<br>(312) 269-5675<br>Twolford@ngelaw.com |
| Grady, Stephen | Lawrence J. Kotler, Esq.<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA 19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |
| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C. 20036<br>(202) 778-1858<br>wschreiner@zuckerman.com<br><br>Laura E. Neish, Esq.<br>Zuckerman Spaeder LLP<br>1540 Broadway, Suite 1604<br>New York, NY 10036<br>(212) 704-9600<br>lneish@zuckerman.com |

| Hackl, Thomas | Avraham Moskowitz, Esq.<br>Moskowitz & Book LLP<br>1372 Broadway, Suite 1402<br>New York, NY 10018<br>amoskowitz@moskowitz@book.com |
|---|---|
| Klejna, Dennis | Helen Kim, Esq.<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman, Esq.<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY 10166<br>(212) 309-1053<br>shershman@hunton.com |
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome, Esq.<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |

| Sexton, William M.<br>Sherer, Gerald | Ivan Kline, Esq.<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>jkline@friedmanwittenstein.com |
| --- | --- |
| Silverman, Philip | Richard Cashman, Esq.<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand, Iason &<br>Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

3.     On May 8, 2008, I caused a true copy of the within **Affirmation of John H. Eickemeyer in Support of Arch Insurance Company's Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint** to be served upon Richard N. Outridge at 24 Pennbrook Drive, Lincoln University, Pennsylvania 19352 by depositing a true copy thereof enclosed in a post-paid wrapper into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the service for such delivery

JOHN H. EICKEMEYER

Sworn to before me this
8th of May, 2008

Notary Public

FRANCINE TORMEY
Notary Public, State of New York
Registration No. 01TO6143179
Qualified In Queens County
Commission Expires April 3, 2010
Certificate on File in New York County

-7-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARCH INSURANCE COMPANY,

                         Plaintiff,

     -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER, STEPHEN
GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC
G. LIPOFF, SANTO C. MAGGIO, PETER
MCCARTHY, JOSEPH MURPHY, FRANK
MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN and ROBERT C.
TROSTEN,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No. 08/600029
IAS Part 39

Justice Helen E. Freedman

## PLAINTIFF ARCH INSURANCE COMPANY'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Of Counsel:
Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Counsel for Plaintiff Arch Insurance Company*

Date:  May 8, 2008

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND .................................................................................................. 2

ARGUMENT ................................................................................................. 11

I.    ARCH'S CHOICE OF THIS FORUM IS ENTITLED TO DEFERENCE ................... 11

    A.    As the first-filed action, this state court proceeding should not be
        dismissed in favor of the D&Os' later-filed bankruptcy court action ................ 11

    B.    Arch's choice of forum is entitled to deference because it is the plaintiff in
        this action and stands to suffer real injury in this coverage dispute. ................... 13

    C.    The D&Os are engaged in blatant forum shopping ............................................ 15

II.   THE SUBSTANTIVE STATE LAW ISSUES IN THIS COVERAGE DISPUTE
     SHOULD BE ADJUDICATED IN NEW YORK STATE COURT ............................ 17

    A.    This coverage dispute concerns novel questions of state law that should be
        adjudicated by a New York state court in the first instance ................................ 17

    B.    The federal court will be required to abstain from adjudicating the D&Os'
        recently filed action ........................................................................................... 19

III.  THE INTERESTS OF JUDICIAL EFFICIENCY DO NOT FAVOR HAVING
     THIS DISPUTE ADJUDICATED IN FEDERAL COURT ........................................ 20

    A.    The Court may simply stay adjudication of Count I of Arch's first
        amended complaint ............................................................................................. 20

    B.    The D&Os overstate the substantive connection to the Underlying Matters
        before Judge Lynch ............................................................................................. 22

CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ace Fire Underwriters Ins. Co. v. ITT Indus., Inc.*,
   14 Misc. 3d 1211(A), 2006 WL 3849060 (N.Y. Sup. Ct. Jul 19, 2006).....................12

*Ace Fire Underwriters Ins. Co. v. ITT Indus., Inc.*,
   44 A.D.3d 404, 405, 843 N.Y.S.2d 579 (1st Dep't 2007) ...........................................11

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*,
   337 B.R. 22 (S.D.N.Y. 2005)......................................................................................20

*Certain Underwriters at Lloyd's, London v. Hartford Accident and Indem. Co.*,
   16 A.D.3d 167, 791 N.Y.S.2d 90 (1st Dep't 2005) .....................................................11

*Certain Underwriters at Lloyd's, London v. Millennium Holdings LLC*,
   13 Misc. 3d 1204(A), 2006 WL 2546202 (N.Y. Sup. Ct. Aug. 8, 2006) ...................22

*Continental Insurance Companies v. Wickes Companies, Inc.*,
   No. 90 CIV 8215 (KMW), 1991 WL 183771 (S.D.N.Y. Sept. 6, 1991)...............14, 15

*Federal Insurance Company v. Kozlowski*,
   18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dep't 2005) ..............................................17, 18

*In re Leco Enterprises*,
   144 B.R. 244 (S.D.N.Y. 1992)....................................................................................19

*In re Perceptron, Inc.*,
   34 A.D.3d 1215, 824 N.Y.S.2d 521 (4th Dep't 2006)................................................11

*In re S.G. Phillips Constructors, Inc.*,
   45 F.3d 702 (2d Cir. 1995).........................................................................................23

*In re Topps Co. Shareholder Litig.*,
   19 Misc. 3d 1103(A), 2007 WL 5018882 (N.Y. Sup. Ct. Jun. 8, 2007)...............11, 15

*Jordan Int'l Trading Inc. v. Yang*,
   2 Misc. 3d 1010(A), 2004 WL 829438 (N.Y. Sup. Ct. Apr. 6, 2004) .......................15

*L-3 Communications Corp. v. Safenet, Inc.*,
   45 A.D.3d 1, 841 N.Y.S.2d 82 (1st Dep't 2007) ........................................................12

*Maryland Cas. Co. v. Aselco, Inc.*,
   223 B.R. 217 (D. Kan. 1998)......................................................................................20

*Mt. McKinley Ins. Co. v. Corning Inc.*,
  399 F.3d 436 (2d Cir. 2005)..................................................................19

*Reckson Assoc. Realty Corp. v. Blasland, Bouck & Lee, Inc.*,
  230 A.D.2d 723, 645 N.Y.S.2d 873 (2nd Dep't 1996)................................11

*San Ysidro Corp. v. Robinow*,
  1 A.D.3d 185, 768 N.Y.S.2d 191 (1st Dep't 2003) ....................................11

*St. Paul Fire and Marine Ins. Co. v. A.P.I., Inc.*,
  No. Civ. 05-139, 2005 WL 679072 (D. Minn. Mar. 23, 2005) ...................20

*Wheeling-Pittsburgh Corp. v. American Ins. Co.*,
  267 B.R. 535 (N.D. W. Va. 2001) ..........................................................20

*White Light Productions, Inc. v. On the Scene Productions, Inc.*,
  231 A.D.2d 90, 660 N.Y.S.2d 568 (1st Dep't 1997) .......................11, 12, 15

## STATUTES

18 U.S.C. § 3663A.................................................................................14

28 U.S.C. § 1334(c)(2)...........................................................................19

## **INTRODUCTION**

In this coverage action, Arch Insurance Company ("Arch") seeks a declaration that the excess directors and officers liability insurance policy (the "Arch Policy") it issued to Refco, Inc. ("Refco") affords no coverage for certain former Refco directors and officers (the "D&Os") in connection with various civil and criminal proceedings arising out of the collapse of Refco (the "Underlying Matters"). Despite the fact that this action has been pending since January 4, 2008, on April 24, 2008 the D&Os instituted duplicative coverage proceedings against Arch before the bankruptcy court presiding over the Refco bankruptcy case (the "Adversary Proceeding"). The D&Os now move to dismiss this action in favor of their later-filed Adversary Proceeding.

Arch's present action is only the most recent chapter in the history of its efforts to obtain a declaration of its rights and obligations with respect to the D&Os' claims for coverage. In March 2006, Arch instituted coverage proceedings against certain of the D&Os in this Court (the "Arch I Action"). The D&Os never contended that this Court was not the proper forum for the coverage dispute. The Court ultimately dismissed the Arch I Action without prejudice in February 2007, citing ripeness concerns. Ironically, while the D&Os now insist that the Refco bankruptcy court must adjudicate the coverage issues, only eight months ago, the D&Os blocked Arch from intervening in bankruptcy court proceedings concerning the D&Os and a lower-level excess carrier. At that time, the D&Os argued that it was improper for Arch to litigate its coverage issues in the bankruptcy forum and suggested that Arch would be attempting an "end run" around this Court's February 2007 order if it attempted to litigate anywhere other than this Court. After they blocked Arch's intervention, the D&Os pursued their claims against the lower-level carriers in the bankruptcy court and obtained injunctive relief there. These circumstances strongly suggest that forum shopping motivates the D&Os' change of heart.

1

In any event, this Court is the proper forum for determining coverage issues under the Arch Policy. The coverage dispute concerns only questions of state law, including some novel issues of insurance law with potentially far-reaching consequences. These issues properly should be decided by a New York court in the first instance. This insurance coverage case has only an indirect connection to the Refco bankruptcy. Moreover, Arch shortly will file a motion asking the federal court to abstain from hearing the Adversary Proceeding, and that court will be required to abstain as long as this Court can timely adjudicate this action.

Finally, there are no significant judicial efficiencies to be gained by dismissing this action. The D&Os contend that they will be faced with duplicative litigation and the risk of inconsistent verdicts if this Court adjudicates Count I of Arch's first amended complaint. The D&Os complain about a problem of their own making, since they elected to seek an adjudication of the same issues raised in Count I of Arch's first amended complaint in a different forum after this action already had been commenced. In any event, the D&Os' concern can be remedied short of dismissing this action.

## BACKGROUND

*The Arch Policy.* The Arch Policy issued to Refco is an excess directors, officers and corporate liability policy. The Arch Policy has a limit of liability of $10 million excess of $40 million in underlying insurance. *See* Ex. H to Affirmation of Richard Cashman ("Cashman Aff."). Various other insurers issued underlying insurance policies to Refco. U.S. Specialty Insurance Company issued a primary policy with limits of $10 million excess of applicable retentions (the "Primary Policy") (Ex. B to Cashman Aff.). Lexington Insurance Company issued a first excess policy with limits of $7.5 million excess of $10 million (the "Lexington Policy"). Axis Reinsurance Company issued a second excess policy with limits of $10 million

2

excess of $17.5 million (the "Axis Policy"). Allied World Assurance Company issued a third

excess policy with limits of $12.5 million excess of $27.5 million (the "AWAC Policy").

In general, the Arch Policy applies in conformance with the terms and conditions of the

Primary Policy and in conformance with the terms and conditions of the Arch Policy or any other

underlying insurance "further limiting or restricting coverage." Arch Policy, Section I.C. The

Arch Policy specifically provides that "[i]n no event shall this Policy grant broader coverage than

that provided by the most restrictive policy included in the Underlying Insurance." *Id.*

Two provisions in the Arch Policy have particular relevance to this case. First, the

Primary Policy, to which the Arch Policy follows form in certain respects, states as follows:

> (1)     The Insurer will have no duty under this Policy to defend
> any Claim. The Insureds must defend any Claim made against
> them. . . .
>
> (2)     The Insurer will pay *covered* Defense Costs on an as-
> incurred basis. If it is finally determined that any Defense Costs
> paid by the Insurer are not covered under this Policy, the Insureds
> agree to repay such non-covered Defense Costs to the Insurer.

Primary Policy, Conditions (D)(1)-(2) (emphasis added) (the "Advancement Provision").

Second, the Arch Policy contains the following provision:

> If *any* Insured as of August 11, 2005 has any knowledge of or
> information concerning any act, error, omission, fact, matter or
> circumstance that might give rise to a Claim under this Policy, the
> Excess Insurer shall not be liable to make any payment under this
> Policy as a result of a Claim arising out of, based upon or
> attributable to any such act, error, omission, fact, matter or
> circumstance.

Arch Policy, Endorsement No. 4 (the "Arch Prior Knowledge Exclusion") (emphasis added).

**The Events at Refco and the Underlying Litigation.** Refco conducted its initial public

offering on August 11, 2005. The Arch Policy incepted the same day. *See* First Am. Compl.

¶ 47.

On October 10, 2005, Refco issued a press release announcing that the public should not rely upon certain of Refco's financial statements included in its initial public offering registration statement and prospectus because it had been carrying an undisclosed receivable of $430 million from an entity controlled by its CEO Phillip Bennett. *Id.* ¶ 48; *see also* "Refco Announces Undisclosed Affiliate Transaction" (Oct. 10, 2005), Ex. A to Affirmation of John H. Eickemeyer ("Eickemeyer Aff."). On October 11, 2005, Refco issued a second press release, stating that "the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998. These obligations were transferred periodically to the entity controlled by Mr. Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts. The fact that the receivable was from a company controlled by Mr. Bennett was hidden at the end of quarterly and annual reporting periods." First Am. Compl. ¶ 49; *see also* "Refco Supplements Prior Disclosure" (Oct. 11, 2005), Ex. B to Eickemeyer Aff. On October 17, 2005, Refco filed for Chapter 11 bankruptcy protection.

Following Refco's October announcements, numerous lawsuits were filed against the former directors and officers of Refco, who are named as defendants in this action. Central to all of these lawsuits are the allegations that, prior to Refco's August 11, 2005 initial public offering, Bennett and others at Refco engaged in a scheme to conceal Refco's true financial position by hiding millions of dollars of uncollectible debt in the form of a related-party receivable to Refco Group Holdings, Inc. (the "RGHI Receivable Scheme").[1] Collectively, these actions are referenced herein as the "Underlying Matters."

---

[1]     The lawsuits include *United States v. Bennett, et al.*, No. 05-1192 (S.D.N.Y.) (the "Criminal Action"); *In re Refco, Inc. Securities Litigation*, No. 05-8626 (S.D.N.Y.); *Thomas H. Lee Equity Fund V, L.P. v. Bennett, et al.*, No. 05-9608 (S.D.N.Y.); *American Financial International Group v. Bennett et al.*, No. 05-8988 (S.D.N.Y.); *In re Refco Capital Markets Ltd. Brokerage Customer Securities Litigation*, No. 06-643 (S.D.N.Y.); *Kirschner v. Thomas H.*

*The First Arch Coverage Action.* Arch denied coverage for the Underlying Matters

citing, among other grounds, the Arch Prior Knowledge Exclusion. On March 9, 2006, Arch

filed a declaratory judgment action in this Court (the "Arch I Action") seeking a declaration that

the Arch Policy did not afford coverage for the Underlying Matters. *See* Arch I First Amended

Complaint, Ex. U to Cashman Aff.

In September 2006, the defendant insureds filed motions to stay and/or dismiss Arch's

coverage action. *First*, Bennett moved to stay the action in light of his pending criminal trial.

Specifically, Bennett conceded that a "verdict against Bennett [in the Criminal Action] would

resolve many of the issues in this case" and "obviate the need to conduct discovery or have a trial

of this action." Reply Br. in Supp. of Bennett Mot. to Stay, Ex. C to Eickemeyer Aff., at 5 &

n.1. Bennett urged the Court to stay Arch's action in the interests of judicial efficiency given the

"possibility of a guilty verdict, and the resulting collateral estoppel effect." *Id.* at 6. *Second*, a

number of former Refco officers (Klejna, Murphy, Silverman, Sexton, Sherer, Trosten, Grant

and Rotkowitz) moved to dismiss the action on the grounds that the action was not ripe, arguing

that the Arch Policy would not attach until $40 million in underlying insurance had been

exhausted and that the possibility of such exhaustion was speculative and remote. In addition,

the officer defendants emphasized the overlap between the issues central to the Arch Prior

Knowledge Exclusion and the Underlying Matters, stating that "Bennett's knowledge of Refco's

financial condition is one of the key factual questions" in the Underlying Matters. Reply Mem.

in Supp. of Officer Defs.' Mot. to Dismiss, Ex. D to Eickemeyer Aff., at 6-7. The officer

defendants also specifically contended that Arch would not suffer any prejudice from dismissal

of its coverage action because it had denied coverage:

---

*Lee Partners, L.P. et al.*, No. 07-7074 (S.D.N.Y.); *Kirschner v. Grant Thornton LLP et al.*, No. 07-11604
(S.D.N.Y.); and *Kirschner v. Agoglia , et al.*, No. 05-60006, Adv. Pro. No. 07-3060 (Bankr. S.D.N.Y.).

> Arch has already denied coverage based on the prior knowledge
> exclusions. In the context, its remedy is quite clear and adequate:
> in conformance with its denial letter, it may simply refuse to
> indemnify any of the Defendants when and if their liability ever
> does exceed $40 million so as to trigger the Arch Policy.

*Id.* at 8-9. ***Third***, certain director defendants moved to dismiss on the grounds that the Arch

Policy unequivocally required Arch to advance defense costs.

In an Order dated February 20, 2007, this Court dismissed Arch's coverage action

without prejudice. *See* Feb. 20, 2007 Order, Ex. V to Cashman Aff. The Court granted the

officer defendants' motion to dismiss, holding that Arch's action was not ripe because the

possibility that the underlying insurance would be exhausted was remote. The Court also held

that the "accusations against Bennett [that Bennett concealed related party transactions and

uncollectible receivables] are central to the Underlying Matters" and that "if a carrier's

obligation to indemnify its insured turns on an issue of fact that the underlying action will

determine, the carrier cannot bring a declaratory judgment action to determine the issue." *Id.* at

3. The Court declined to reach Bennett's motion to stay or the director defendants' motion to

dismiss. *Id.* at 3-4.

***The Axis Bankruptcy Court Proceedings.*** In May 2007, Axis, the second-level excess

carrier, filed an adversary proceeding in the Refco bankruptcy court. Axis sought a declaration

that certain provisions of its policy barred coverage for various lawsuits filed against the Refco

director and officers. In July 2007, certain officer defendants filed a motion for preliminary

injunction. The officer defendants argued that, like Arch, Axis was prevented from obtaining an

adjudication of its coverage issues because those issues overlapped with fact issues to be

determined in the Underlying Matters. Nevertheless, the officer defendants sought to force Axis

to advance defense costs despite Axis's denial of coverage and in advance of a court

determination of the coverage issues on the merits.

6

Arch sought to intervene in these proceedings for the limited purpose of addressing the issue whether the policies imposed an obligation to advance defense costs when the insurers had denied coverage and in the absence of a judicial determination of coverage. Arch highlighted that the Arch I Action had been dismissed by this Court but noted that the advancement issue was a distinct issue that this Court had not reached (indeed, it had declined to reach a motion on this precise issue). *See* Arch Mot. to Intervene, Ex. P to Cashman Aff., at 3.

The officer defendants opposed Arch's motion to intervene. Specifically, the officers argued that the question of advancement under the Arch Policy was not ripe because another $22.5 million in underlying coverage would need to be exhausted before the Arch Policy was triggered. *See* Opp'n to Mot. to Intervene, Ex. E to Eickemeyer Aff., at 10. The officer defendants also argued that Arch was "attempting an 'end run' around the Dismissal Order in its New York action, which held that the Officer Defendants do not yet have to litigate with Arch over the Arch Policy." *Id*. at 10-11.

At a hearing on August 30, 2007, the bankruptcy court denied Arch's motion to intervene. The bankruptcy court reasoned that:

> To my mind, ***it would therefore be inefficient to include Arch in the litigation*** at this time, and it would instead be efficient to pursue the issues that are truly before the Court at this time: that is, the issues involving Axis and the directors' and officers' claims against Axis and ***not use this litigation as a funnel to invite any prospective insurer to join some sort of massive proceeding*** . . . .
>
> I continue to have some concern given (a) that Refco's plan is confirmed and effective and substantially consummated and (b) that Refco, the debtor, has no participation in this litigation at all, as to the extent of my jurisdiction over it. And in light of all the other factors I've already mentioned arguing that I should not exercise my discretion to further expand this adversary proceeding to involve other insurers, ***it seems to me that Arch's issues, if they're brought at all, should be brought in another court when they become ripe.***

Aug. 30, 2007 Hr'g Tr. 17-18, Ex. F to Eickemeyer Aff. (emphasis added).

The bankruptcy court also granted the insureds' motions for a preliminary injunction requiring Axis to advance defense costs until it obtained a judicial declaration of non-coverage. Accordingly, Axis began advancing defense costs under its policy.

*The Guilty Pleas.* On December 19, 2007, Maggio pleaded guilty to a four-count criminal information charging him with conspiracy, securities fraud and wire fraud. Specifically, the information charged Maggio with participating in the RGHI Receivable Scheme in the several years prior to August 11, 2005. At his plea allocution, Maggio admitted to participating in the RGHI Receivable Scheme prior to August 11, 2005. First Am. Compl. ¶¶ 65-69; *see also* December 19, 2007 Hr'g Tr. 17-18, Ex. J to Arch First Am. Compl.

On February 15, 2008, Bennett pleaded guilty to all charges against him in the Criminal Action, as set forth in the third superseding indictment (the "S3 Indictment"), including conspiracy, money laundering, making false statements to the SEC and securities, wire and bank fraud. The S3 Indictment alleged, among other things, that Bennett had knowledge of, and actively participated in, the RGHI Receivable Scheme before August 11, 2005. First Am. Compl. ¶¶ 52-61; S3 Indictment, ¶¶ 7-9, 13-17, 21-25, 28, 31-36, 38-54, Ex. F to Arch First Am. Compl. At his plea allocution, Bennett admitted his knowledge of the RGHI Receivable Scheme. *See* Feb. 15, 2008 Hr'g Tr. 16-20, Ex. G to Arch First Am. Compl.

On February 20, 2008, Trosten also acknowledged his involvement in the RGHI Receivable Scheme and pleaded guilty to conspiracy, money laundering and securities, wire and bank fraud. According to the S3 Indictment, Trosten had knowledge of the RGHI Receivable Scheme before August 11, 2005 as well. *See* S3 Indictment, ¶¶ 7-9, 21, 25-26, 31-34, 37-41, 43-

8

44. At his plea allocution, Trosten confirmed his knowledge of the RGHI Receivable Scheme. First Am. Compl. ¶¶ 62-64; Feb. 20, 2008 Hr'g Tr. 17-20, Ex. H to Arch First Am. Compl.

A fourth superseding indictment was filed against Tone Grant in the Criminal Action on February 26, 2008 (the "S4 Indictment"). *See* Ex. G to Eickemeyer Aff. The charges include conspiracy to commit securities fraud, wire fraud, bank fraud and money laundering; securities fraud; wire fraud; bank fraud; and money laundering. Like the S3 Indictment, the S4 Indictment states that Grant had knowledge of the RGHI Receivable Scheme before August 11, 2005. *See* S4 Indictment ¶¶ 15, 17, 20, 24, 25, 32, 54, 60, 62, 64, 66, 68. On April 17, 2008, a jury found Grant guilty on all counts. *See* Criminal Docket, *United States v. Grant*, April 17, 2008 Minute Entry, Ex. H to Eickemeyer Aff.

***Arch's Renewed State Court Action.*** In the wake of Maggio's guilty plea, on January 4, 2008, Arch reinstated its coverage action in this Court ("Arch II"). After Bennett and Trosten similarly pleaded guilty, Arch filed a first amended complaint on February 21, 2008. In exchange for the defendants' agreement to waive formal service under C.P.L.R. 308 and accept service, the parties agreed that the defendants would have until April 28, 2008 to respond to Arch's first amended complaint.

Arch's first amended complaint presents two separate and independent bases for denying coverage for the Underlying Matters. Count I seeks a declaration that, based on an exclusion in the underlying AWAC Policy, the Arch Policy does not afford coverage for any loss arising out of the Underlying Matters. Count II seeks a judicial declaration that, based on the Arch Prior Knowledge Exclusion, the Arch Policy does not provide coverage for any loss arising out of the Underlying Matters.

On April 17, 2008, Bennett stipulated "that the Arch Policy does not afford him any coverage whatsoever for any of the Underlying Matters." *See* Stipulation of Judgment against Defendant Phillip R. Bennett, Ex. I to Eickemeyer Aff. Bennett also "agree[d] to the entry of judgment against him on Counts I and II of [Arch's Amended Complaint]." *Id.* Arch is informed that this Court has signed the stipulation. On April 21, 2008, Maggio stipulated that he was not entitled to any coverage under the Arch Policy. In return, Arch agreed to a voluntary discontinuance of its action against him. *See* Stipulation of Partial Discontinuance, Ex. J to Eickemeyer Aff. Arch is informed that this stipulation also has been signed by the Court.

***The AWAC Bankruptcy Court Proceedings.*** On March 6, 2008, Axis advised that it had exhausted the $10 million limit of liability of its policy. *See* Mar. 6, 2008 letter, Ex. T to Cashman Aff. On March 12, 2008, certain Refco officers and defendants (Murphy, Sexton, Klejna, Sherer, Silverman, Outridge, Grant, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley and Schoen) filed an adversary proceeding against AWAC, the third-level excess carrier, *i.e.,* the excess carrier directly below Arch. On the same day, those insureds filed a motion for preliminary injunction seeking to compel AWAC to begin advancing defense costs. On April 21, 2008, the bankruptcy court ordered AWAC to begin advancing defense costs. *See* Apr. 21, 2008 Order, Ex. X to Cashman Aff.

On April 24, 2008, shortly before the agreed-upon deadline for their response to Arch's first amended complaint in the Arch II Action, the D&Os amended their complaint in the AWAC bankruptcy proceedings to include for the first time Arch as a defendant and claims for coverage under the Arch Policy. On April 28, 2008, the D&Os responded to Arch's first amended complaint in this action by arguing that the state court action should be dismissed in favor of the newly filed bankruptcy court proceeding against Arch.

## ARGUMENT

**I.     ARCH'S CHOICE OF THIS FORUM IS ENTITLED TO DEFERENCE**

> **A.     As the first-filed action, this state court proceeding should not be dismissed in favor of the D&Os' later-filed bankruptcy court action.**

It is well established that, when determining a motion to dismiss under N.Y. C.P.L.R. 33211(a)(4), courts give priority to the first-filed action. The "court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere." *White Light Productions, Inc. v. On the Scene Productions, Inc.*, 231 A.D.2d 90, 96, 660 N.Y.S.2d 568, 572 (1st Dep't 1997). *See also In re Topps Co. Shareholder Litig.*, 19 Misc. 3d 1103(A), 2007 WL 5018882, at *3 (N.Y. Sup. Ct. Jun. 8, 2007); *In re Perceptron, Inc.*, 34 A.D.3d 1215, 1215, 824 N.Y.S.2d 521, 522 (4th Dep't 2006); *Reckson Assoc. Realty Corp. v. Blasland, Bouck & Lee, Inc.*, 230 A.D.2d 723, 725, 645 N.Y.S.2d 873, 874-75 (2nd Dep't 1996) (all affirming denial of C.P.L.R. 3211(a)(4) motions to dismiss a first-filed action). The D&Os do not and cannot dispute that Arch's action is the first-filed action.

None of the limited exceptions New York courts have recognized to the first-filed rule applies here. Courts will dismiss a first-filed action pursuant to C.P.L.R. 3211(a)(4) where two actions were filed close in time and when the first-filed action was "vexatious, oppressive or instituted by duplicity," *Topps*, 2007 WL 5018882, at *3, *Certain Underwriters at Lloyd's, London v. Hartford Accident and Indem. Co.*, 16 A.D.3d 167, 168, 791 N.Y.S.2d 90, 91 (1st Dep't 2005); where it is clearly more convenient to litigate in another forum, *see San Ysidro Corp. v. Robinow*, 1 A.D.3d 185, 186-87, 768 N.Y.S.2d 191, 193 (1st Dep't 2003); or where the second-filed action is more comprehensive than the first-filed action, *see Ace Fire Underwriters Ins. Co. v. ITT Indus., Inc.*, 44 A.D.3d 404, 405, 843 N.Y.S.2d 579, 582 (1st Dep't 2007). The

11

inapplicability of these exceptions serves only to highlight that Arch properly instituted this action and that coverage issues under the Arch Policy should be adjudicated in this Court.

As an initial matter, the D&Os contend that the Court should disregard the "first filed" rule because the D&O Adversary Proceeding was filed "close in time" to the Arch State Court Action. D&O Mem. at 19. Here, the D&Os filed their Adversary Proceeding nearly four full months after Arch instituted this action and more than two years after Arch first sought relief in this Court. Accordingly, the Adversary Proceeding cannot be considered to have been filed "close in time" to this action. Indeed, the cases the D&Os cite attest to this point. *See L-3 Commcn's Corp. v. Safenet, Inc.*, 45 A.D.3d 1, 9, 841 N.Y.S.2d 82, 88-89 (1st Dep't 2007) (actions filed four days apart); *Ace Fire Underwriters Ins. Co. v. ITT Indus., Inc.*, 14 Misc. 3d 1211(A), 2006 WL 3849060, at *10 (N.Y. Sup. Ct. Jul 19, 2006) (actions filed seven days apart).

Even if the actions were filed "close in time" to each other, it still would be improper to dismiss this action. Arch did not engage in any procedural gamesmanship in filing this action. The D&Os have been on notice since March 2006 that Arch intended to litigate its coverage issues in this Court. Indeed, Arch even sought and obtained leave from the Refco bankruptcy court to do so. Nor did Arch file this action in a remote forum that lacks a reasonable connection to the issues in dispute. While courts may grant motions to dismiss under C.P.L.R. 3211(a)(4) for *forum non conveniens* type reasons, *see, e.g., White Light Productions,* 231 A.D.2d at 95, here, the D&Os concede that New York is the correct forum and simply seek to litigate the case in a federal courthouse several blocks away. Finally, the D&Os argue that the Adversary Proceeding is more complete because AWAC is a party to that action. But, as discussed in more detail below, *see infra* Section III.A, any concerns about judicial efficiency or inconsistent

judgments can be addressed without dismissing this action. Accordingly, there is no reason for this Court not to retain Arch's first-filed action.

**B.    Arch's choice of forum is entitled to deference because it is the plaintiff in this action and stands to suffer real injury in this coverage dispute.**

The D&Os contend that Arch's choice of forum for litigating its coverage issues is entitled to no deference. Specifically, the D&Os argue that

> [I]t is the Moving Insureds who are the putative injured parties and should be entitled to their choice of forum, not Arch. In improperly denying coverage under its Policy, Arch has deprived the Moving Insureds (along with the other Insureds) of insurance coverage to which they are entitled, leaving them without coverage at a critical juncture in the Underlying Actions. And by anticipating the possible filing of a suit by the Insureds, Arch has reversed the usual roles of plaintiff and defendant. As a result, Arch has improperly deprived the Moving Insureds of having this dispute heard in the forum of their choice, further warranting dismissal in favor of the Adversary Proceeding.

D&O Mem. at 18. Each premise of this argument is demonstrably false.

First, Arch stands to suffer real injury in this coverage dispute. In this case, obtaining a declaratory judgment is not merely a preemptive strike on Arch's part. In both the Axis and AWAC proceedings before the bankruptcy court, the D&Os prevailed in arguing that those insurers had a duty to advance defense costs for the Underlying Matters unless and until they actually obtained a judicial determination that the Underlying Matters are not covered. *See* Exs. O, X to Cashman Aff.[2] The bankruptcy court ruled that an insurer's denial of coverage is meaningless until it is judicially blessed — in other words, regardless of whether exclusions are

---

[2]    In this regard, the position the D&Os espoused in the bankruptcy court was directly opposite to the position they advocated before this Court. In the Arch I Action, in connection with their arguments that the action was not ripe, certain D&Os argued that Arch would not be prejudiced by dismissal of the action because "Arch has already denied coverage based on the prior knowledge exclusions. In the context, its remedy is quite clear and adequate: in conformance with its denial letter, it may simply refuse to indemnify any of the Defendants when and if their liability ever does exceed $40 million so as to trigger the Arch Policy." Reply Mem. in Supp. of Officer Defs.' Mot. to Dismiss, at 8-9.

unambiguous and plainly applicable, the presumption is that the policy is an open coffer affording coverage for defense costs until a court says it does not. The D&Os conceded that the insurers would be entitled to repayment of defense costs from the insureds if the insurers succeeded in obtaining judicial declarations of non-coverage. But the likelihood of repayment is slim in these circumstances, where the insureds (including Grant, who has been convicted on criminal charges and may need to make restitution to victims, *see* 18 U.S.C. § 3663A) face ongoing defense costs and potential settlements and judgments against them. The bankruptcy court's rulings were erroneous and, in any event, are not binding on this Court. Nevertheless, in light of those rulings, Arch stands to lose its $10 million policy limit, and the D&Os stand to gain $10 million in free, unbargained-for coverage, if Arch does not quickly obtain an adjudication of its coverage defenses — something Arch has been seeking for over two years.

In contrast, the D&Os have yet to suffer any actual injury as a result of Arch's coverage denial. The Arch Policy is excess of $40 million in underlying insurance. AWAC, the carrier directly below Arch, recently was ordered to begin advancing defense costs. Arch understands that the D&Os presently have submitted defense invoices to AWAC that total approximately $8 million. In response to Arch's prior efforts to timely litigate and resolve coverage issues, the D&Os contended that the dispute was not ripe. *See* Opp'n to Mot. to Intervene, at 9 ("the Officer Defendants have never sought advancement under the Arch Policy"). Arch therefore has a narrow window in which to obtain an adjudication of its coverage defenses before the D&Os can claim any injury based on Arch's coverage denial.

Finally, the notion that Arch somehow has denied the D&Os their chosen forum should be rejected out of hand. The D&Os cite *Continental Insurance Companies v. Wickes Companies, Inc.*, No. 90 CIV 8215 (KMW), 1991 WL 183771 (S.D.N.Y. Sept. 6, 1991), but in

that case the insurer had filed its action before the policyholder even was aware of the insurer's denial of coverage. The court held that a party should not be rewarded for "winning a race to the courthouse which it had completed before its adversary heard the starting gun." *Id.* at *5. Here, the D&Os have been on notice that Arch intended to litigate its coverage issues in this forum since March 2006. The D&Os did not object to this forum in the Arch I Action. And they have had since February 2007 to select their own forum in which to litigate coverage issues under the Arch Policy. Until now, Arch has done nothing to keep the D&Os from litigating this matter in federal court. To the contrary, it was the D&Os who insisted a mere eight months ago that Arch could not litigate in bankruptcy court.

C.    **The D&Os are engaged in blatant forum shopping.**

The D&Os are attempting to move this litigation to federal court for the simple reason that, based on their track record with two lower-level excess carriers, they believe they have a better chance of prevailing there. This is forum shopping at its essence. *See Jordan Int'l Trading Inc. v. Yang,* 2 Misc. 3d 1010(A), 2004 WL 829438 (N.Y. Sup. Ct. Apr. 6, 2004) (declining to grant C.P.L.R. 3211(a)(4) motion to dismiss where movant had engaged in "transparent forum shopping antics"); *White Light Productions,* 231 A.D.2d at 96 (consideration whether action is "vexatious, oppressive or instituted to obtain some unjust or inequitable advantage" is proper under C.P.L.R. 3211(a)(4)); *accord Topps,* 2007 WL 5018882, at *3.

The D&Os' timing in filing the Adversary Proceeding demonstrates that that action is motivated purely by forum shopping. Eight months ago, the D&Os strenuously opposed Arch's attempt to litigate coverage issues under the Arch Policy in the Refco bankruptcy court, the very forum they now insist upon. Arch attempted to intervene in the Axis bankruptcy proceedings — the first coverage proceedings before the bankruptcy court — at their outset in August 2007. Unsure of the result they would obtain, the D&Os opted for a "divide and conquer" strategy and

15

moved to keep Arch out of the proceedings.  Since that time, however, the D&Os have obtained

preliminary injunctions from the bankruptcy court ordering advancement of defense costs by

both Axis and AWAC.

The D&Os' forum choice is rendered even more suspect in light of the rulings Judge

Drain entered when he denied Arch's motion for intervention.  The D&Os denied that there were

any efficiencies to be gained from a proceeding in which both Axis and Arch were parties.  *See*

Opp'n to Mot. to Intervene, at 9-11.  In addition, in arguing that Arch was attempting to

circumvent this Court's order (which the D&Os characterized as holding that they "do not yet

have to litigate with Arch over the Arch Policy" despite the obviously changed circumstances)

the D&Os strongly intimated that the only proper forum for resolving coverage issues under the

Arch Policy was in this Court.  *Id.* at 10-11.  Judge Drain largely agreed with the D&Os.  First,

Judge Drain noted that he had serious reservations about the basis for federal jurisdiction over

the Axis proceedings and thus was not inclined to extend that jurisdiction to disputes concerning

the Arch Policy.  *See* Aug. 30, 2007 Hr'g Tr. 17-18.  Second, Judge Drain stated that, in light of

the different policy provisions in the Axis Policy and the Arch Policy, he did not see any judicial

efficiency to be gained by Arch's intervention and he did not want to "use this litigation as a

funnel to invite any prospective insurer to join some sort of massive proceeding."  *Id.* at 17.

Finally, in deference to the fact that this Court already had addressed coverage issues between

Arch and the D&Os, Judge Drain held that "it seems to me that Arch's issues, if they're brought

at all, should be brought in another court when they become ripe."  *Id.*  The D&Os' present

attempts to haul Arch back into federal court flies in the face of each of these rulings.

## II.    THE SUBSTANTIVE STATE LAW ISSUES IN THIS COVERAGE DISPUTE SHOULD BE ADJUDICATED IN NEW YORK STATE COURT

### A.    This coverage dispute concerns novel questions of state law that should be adjudicated by a New York state court in the first instance.

These coverage proceedings raise the question whether an insurer's denial of coverage for defense costs entitles the insurer to withhold payment of defense costs until a court determines that the insurer's coverage denial is incorrect on the merits.[3]  In the Axis and AWAC bankruptcy court proceedings, the D&Os argued that, although those insurers had denied coverage, the insurers nevertheless were obligated to advance defense costs until they actually had obtained judicial confirmation that their coverage denials were correct.  The bankruptcy court agreed and entered injunctions against Axis and AWAC on this basis.

Existing New York law signals that the bankruptcy court was incorrect.  The principal New York authority upon which the bankruptcy court relied was *Federal Insurance Company v. Kozlowski*, 18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dep't 2005), a case with which this Court is familiar.  In *Kozlowski*, the New York Appellate Division held that an insurer could not "unilaterally" rescind an insurance policy.  Rather, the policy remained in force until a court determined that it was in fact void *ab initio*.  Accordingly, the court held that the insurers could not escape their duty to advance defense costs solely by contending they were entitled to rescind the policy.

---

[3]    Judge Lynch has not yet addressed the merits of the advancement issue.  The bankruptcy court has decided the advancement issue with respect to Axis and AWAC, but both decisions addressed circumstances distinct from those that concern Arch.  At the time the bankruptcy court determined the advancement issue with respect to Axis, none of the D&Os had pled guilty in the Criminal Action.  Moreover, the D&Os raised significant questions whether the exclusion Axis relied upon to deny coverage was properly a part of the Axis Policy.  With respect to AWAC, the bankruptcy court held that AWAC could not avail itself of the Bennett, Trosten and Maggio guilty pleas because the pleas constituted hearsay and because, among other reasons, those individuals were not party to the AWAC coverage proceedings.  *See* Ex. X to Cashman Aff.  In contrast, Arch already has obtained a stipulated judgment against Bennett in this action.  *See* Ex. I to Eickemeyer Aff.

The bankruptcy court extended the holding of *Kozlowski* beyond the rescission context and into circumstances in which an insurer simply denies coverage based on an exclusion in its policy. Yet in *Kozlowski* the Appellate Division explicitly distinguished between rescission and enforcement of a policy exclusion. In *Kozlowski*, the insurer sought to rescind the policy and deny coverage based on a "personal profit" exclusion. The court held that the insurer's rescission defense was not a justification for withholding advancement of defense costs. With respect to the exclusion, however, the court held that "[t]o the extent such liabilities are excluded from coverage by the personal profit exclusion, *Federal is not required to pay for defense costs*." 792 N.Y.S.2d at 404 (emphasis added). The court considered the exclusion on the merits and ultimately found that the personal profit exclusion would not exclude coverage for the underlying matters in their entirety. *Id*. at 402-03. *Kozlowski* shows that, contrary to the bankruptcy court's ruling, when an insurer has denied coverage based on a policy exclusion, there is no duty to advance defense costs unless a court has determined that the insurer's coverage position is incorrect.

The outcome of the advancement issue will have profound consequences for insurers and insureds alike. In essence, the Refco bankruptcy court's ruling mandates that an insurer must file a declaratory judgment action whenever it wishes to deny coverage for defense costs and the policyholder disputes the coverage denial. That is a litigation-maximizing, expensive and burdensome proposition, for insurers, insureds and the court system alike. If insurers are unable meaningfully to deny coverage and must litigate every claim in order to shut off liability for defense costs, policy premiums necessarily will skyrocket. Insureds will suffer the cost of higher premiums, to the extent they are not priced out of the D&O insurance market altogether. Both insurers and insureds will bear the cost of coverage litigation every time a claim is filed. Finally,

courts would see their dockets increase substantially. Accordingly, the issue whether an insurer can "unilaterally" deny coverage is properly an issue for the New York state courts to address in the first instance.

**B.      The federal court will be required to abstain from adjudicating the D&Os' recently filed action.**

The D&Os' motion to dismiss should be denied for the further reason that the federal court may abstain from adjudicating the Adversary Proceeding. Under 28 U.S.C. § 1334(c)(2), a federal court is ***required*** to abstain from exercising its jurisdiction over a case where (1) a motion to abstain is timely made; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the state court action can be timely adjudicated. *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446 (2d Cir. 2005). Here, the D&Os likely would concede that the first five factors will be satisfied. Arch will be filing its motion to abstain before the May 29, 2008 deadline for responding to the D&Os' complaint. The Adversary Proceeding, like this action, is an insurance coverage proceeding that turns on questions of state law. The D&Os agree that the Adversary Proceeding is a non-core proceeding.[4] *See* AWAC Mot. to Withdraw Reference, Ex. K to Eickemeyer Aff., at 3, 10-11. There is no potential basis for federal jurisdiction other than Section 1334 of the bankruptcy code. Finally, this action already had been commenced at the time the D&Os added Arch to the Adversary Proceeding.

Thus, the federal court will be required to abstain from hearing the D&Os' Adversary Proceeding as long as this Court can timely adjudicate this action. There is no reason for the

---

[4]      The question whether a civil proceeding "arises in" a bankruptcy case or "arises under" the bankruptcy code asks whether the proceeding is a "core" or "non-core" proceeding. *In re Leco Enterprises*, 144 B.R. 244, 249 (S.D.N.Y. 1992) (citations omitted); *Mt. McKinley*, 399 F.3d at 447-48.

federal court to assume that this Court will not be able to timely adjudicate this action. As an

initial matter, this Court already has some familiarity with the issues in this case from the Arch I

Action. Moreover, this is a straightforward insurance coverage dispute, a type of case which the

Commercial Division handles as a matter of routine. *See, e.g., Certain Underwriters at Lloyd's,*

*London v. ABB Lummus Global, Inc.,* 337 B.R. 22, 27 (S.D.N.Y. 2005) ("a declaratory judgment

action concerning insurance coverage would be a routine action in state court. There is no basis

to find that this action cannot be timely adjudicated in New York state courts"); *see also St. Paul*

*Fire and Marine Ins. Co. v. A.P.I., Inc.,* No. Civ. 05-139, 2005 WL 679072, at *3 (D. Minn. Mar.

23, 2005); *Wheeling-Pittsburgh Corp. v. American Ins. Co.,* 267 B.R. 535, 539-40 (N.D. W. Va.

2001); *Maryland Cas. Co. v. Aselco, Inc.,* 223 B.R. 217, 220-221 (D. Kan. 1998) (all holding

that mandatory abstention was appropriate because state court could timely adjudicate insurance

coverage proceedings).

## III. THE INTERESTS OF JUDICIAL EFFICIENCY DO NOT FAVOR HAVING THIS DISPUTE ADJUDICATED IN FEDERAL COURT

### A. The Court may simply stay adjudication of Count I of Arch's first amended complaint.

The D&Os' arguments for dismissing this action turn almost exclusively on Count I of

Arch's first amended complaint, which seeks a declaration that the AWAC Prior Knowledge

Exclusion bars coverage for the Underlying Matters. The D&Os contend that, with respect to the

issue of the AWAC Prior Knowledge Exclusion, the Adversary Proceeding is more complete

than this proceeding because AWAC is a party to the Adversary Proceeding. The D&Os further

contend that if this action is not dismissed, they may be subject to inconsistent judgments in state

and federal court regarding the effect of the AWAC Prior Knowledge Exclusion.[5] Notably, these

---

[5]    In the Arch I Action, Arch also sought a declaration that the AWAC Prior Knowledge Exclusion barred coverage for the Underlying Matters. Certain of the D&Os argued that the AWAC Policy contained a mandatory

arguments apply only with respect to Count I of Arch's first amended complaint and have no

bearing on Count II, which seeks a declaration as to the *Arch* Prior Knowledge Exclusion.

The existence of Count I in Arch's first amended complaint seeking a declaration as to

the AWAC Prior Knowledge Exclusion is not a reason to dismiss this action. The asserted

problems the D&Os identify — duplication of discovery efforts and the risk of inconsistent

judgments — are solely problems of their own creation. The Arch I Action, Arch's initial

complaint in this action, and Arch's first amended complaint all include counts seeking a

declaration of non-coverage as result of the AWAC Prior Knowledge Exclusion. This action

was pending at the time the D&Os instituted the AWAC bankruptcy proceedings on March 12,

2008. Yet, the D&Os elected to sue AWAC regarding the same issues in a different forum.

Arch should not be penalized for the D&Os' gamesmanship.

Moreover, Arch already has obtained a stipulated judgment from Bennett in which

Bennett agreed to the entry of judgment against him on Count I of Arch's first amended

complaint. In stipulating to the judgment, Bennett agreed that "as of August 11, 2005,

Bennett . . . possessed knowledge of facts and circumstances that a reasonable person would

suppose might afford valid grounds for a claim or that would indicate the probability of any such

claim." Arch First Amended Compl. ¶ 114. Thus, determination of the effect of the AWAC

Prior Knowledge Exclusion will be streamlined in this action.

---

ADR provision and that litigating with Arch over the AWAC exclusion would deprive the D&Os of their right to have the exclusion adjudicated through mediation or arbitration. Feb 20, 2007 Order at 3. (The Court did not reach the issue in dismissing the Arch I Action without prejudice.) On November 12, 2007, AWAC announced its intention to invoke arbitration under the AWAC ADR provision. *See* Nov. 12, 2007 letter from John D. Hughes, Ex. L to Eickemeyer Aff. In March 2008 the D&Os instituted proceedings against AWAC in the Refco bankruptcy court arguing that the ADR provision was not properly a part of the AWAC Policy at all and that AWAC had no right to invoke arbitration. *See* Klejna Mem. of Law in Supp. of Mot. to Enjoin Arbitration, Ex. M to Eickemeyer Aff., at 9-10. The D&Os' change of heart as to the ADR provision they clung to so ardently in the Arch I Action is further evidence of their procedural gamesmanship. The D&Os renounced the ADR provision and insisted they had the right to litigate with AWAC before the bankruptcy court only after they already had obtained an injunction against Axis, the underlying carrier, from the bankruptcy court.

To the extent the Court believes that proceeding with adjudicating Count I of Arch's first amended complaint somehow would conflict with the D&Os' later-filed suit against AWAC, the most practical solution would be for this Court simply to stay adjudication of Count I in favor of a resolution of the effect of the AWAC Prior Knowledge Exclusion in the Adversary Proceeding. It is within the Court's discretion to stay or dismiss a portion of this action in the interests of justice. *See* C.P.L.R. 2201; C.P.L.R. 3211(a)(4); *see also Certain Underwriters at Lloyd's, London v. Millennium Holdings LLC*, 13 Misc. 3d 1204(A), 2006 WL 2546202, at *7-8 (N.Y. Sup. Ct. Aug. 8, 2006) (granting C.P.L.R. 3211(a)(4) motion to dismiss portions of complaint as to certain defendants while retaining jurisdiction to adjudicate other portions of complaint).

**B.      The D&Os overstate the substantive connection to the Underlying Matters before Judge Lynch.**

The D&Os note that the Adversary Proceeding likely will end up before Judge Lynch. The D&Os argue that it would be more efficient for Judge Lynch to determine coverage issues under the Arch Policy because (1) Judge Lynch is presiding over the majority of the Underlying Matters; and (2) coverage disputes between the D&Os and other insurers on the Refco D&O program either are presently before Judge Lynch or will end up before him. *See* D&O Mem. at 17. These judicial efficiencies are overstated.

First, the fact that Judge Lynch is presiding over certain of the Underlying Matters has little practical relevance to these insurance coverage proceedings. The coverage issues involve contract interpretation and New York insurance law. The Arch Prior Knowledge Exclusion provides that

> If any Insured as of August 11, 2005 has any knowledge of or information concerning any act, error, omission, fact, matter or circumstance that might give rise to a Claim under this Policy, the Excess Insurer shall not be liable to make any payment under this Policy as a result of a Claim arising out of, based upon or

22

attributable to any such act, error, omission, fact, matter or circumstance.

Arch Policy, Endorsement No. 4.  The first question, whether "any Insured as of August 11, 2005 has knowledge of or information concerning any act, error, omission, fact matter or circumstance that might give rise to a Claim under this Policy" already has been resolved by the guilty pleas entered by Bennett, Trosten and Maggio and the stipulated judgment entered against Bennett in this action.  The second question, whether the Underlying Matters constitute "Claim[s] arising out of, based upon or attributable to any such act, error, omission, fact, matter or circumstance," simply requires a review of the operative pleadings in the Underlying Matters.

Nor should the fact that Judge Lynch likely will preside over coverage proceedings as to Axis, AWAC and XL be determinative.  Discounting the D&Os' Adversary Proceeding that seeks to duplicate the issues in this action, none of those actions concerns coverage under the Arch Policy or the Arch Prior Knowledge Exclusion.  The distinctness of the exclusions in each of the excess policies was precisely one of the reasons Judge Drain gave for denying Arch's motion to intervene in the Axis bankruptcy proceedings.  *See* Aug. 30, 2007 Hr'g Tr. 17-18.  In addition, it does not appear that Judge Lynch has yet devoted any resources to adjudicating the coverage issues on the merits.[6]  Axis's appeal of the preliminary injunction entered by the bankruptcy court remains pending.  The parties to the AWAC bankruptcy proceedings only recently filed a motion to withdraw the reference, and no motions on the merits of the coverage issues have yet been filed in front of Judge Lynch.  Similarly, the XL coverage action only was

---

[6]     The D&Os note that Judge Drain has significant familiarity with the coverage issues involving the Refco D&O policies.  *See* D&O Mem. at 7 n.9.  However, Judge Drain's familiarity with the issues will be irrelevant because the D&Os already have agreed that they do not intend to oppose the withdrawal of the reference regarding the Adversary Proceeding.  Judge Lynch will be reviewing the bankruptcy court's decisions *de novo.  See, e.g., In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 704 (2d Cir. 1995) ("[w]ith respect to non-core claims, unless the parties consent, the bankruptcy court can only make recommended findings of fact and conclusions of law which are subject to de novo review in the district court").

filed on April 22, 2008, and it is unclear whether all defendants even have been served. At any rate, the time for defendants to respond to XL's complaint has not yet elapsed.

Importantly, the Arch coverage proceedings are in a distinct procedural posture. Unlike the issues involving the other insurers, resolution of the question whether the Arch Prior Knowledge Exclusion applies to the Underlying Matters can occur on an expedited basis. As noted above, the Arch Prior Knowledge Exclusion raises two questions: whether any Insured had knowledge of facts or circumstances that might give rise to a Claim; and whether the Claims at issue (*i.e.*, the Underlying Matters) arise out of the facts and circumstances of which the Insured had knowledge. A stipulated judgment has been entered against Bennett in this action. Bennett has agreed that Arch is entitled to a declaration that the Arch Prior Knowledge Exclusion bars coverage for the Underlying Matters because "[a]s of August 11, 2005, Bennett . . . possessed knowledge or information concerning acts, errors omissions, facts, matters or circumstances that might give rise to a Claim under the Arch Policy." First Am. Compl. ¶ 118. In agreeing that Arch is entitled to the declaration it seeks in Count Two of the first amended complaint, Bennett has agreed that, as of August 11, 2005, he had knowledge of facts and circumstances triggering the Arch Prior Knowledge Exclusion. In light of Bennett's stipulated judgment, Arch expects that this litigation will implicate little or no discovery.

The second question posed by the Arch Prior Knowledge Exclusion, whether the Underlying Matters arise out of the facts and circumstances of which Bennett had knowledge as of August 11, 2005, also is uniquely poised for determination in this action. In the Arch I Action, certain D&Os argued that Arch's coverage action must be stayed precisely because the Underlying Matters all arose out of Bennett's alleged knowledge of the RGHI Receivable Scheme. *See* Reply Mem. in Support of Officer Mot. to Dismiss at 6-7 ("Bennett's knowledge

of Refco's financial condition is one of the key factual questions" in the Underlying Matters);
*see also* Feb. 20, 2007 Order at 2 (the Underlying Matters "like the criminal proceeding, accuse
Bennett of concealing Refco's bad debt through a series of sham transactions").  Given the
D&Os' prior arguments and the Court's own findings, the question whether the Underlying
Matters "arise out of" Bennett's knowledge of the RGHI Receivable Scheme can be quickly
resolved.

Finally, to the extent the coverage proceedings all implicate the advancement issue
discussed above in Section II.A, this important issue of state law should be determined in the
first instance by a New York court.  Indeed, the importance of having a New York court address
the coverage issues is a reason for Judge Lynch to abstain, not a reason to move this state court
action into federal court.

## CONCLUSION

For the foregoing reasons, Arch respectfully requests that the Court deny the D&Os'
motion to dismiss this action.

Date:  May 8, 2008

Respectfully submitted,

By: _____

John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

OF COUNSEL:

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Counsel for Plaintiff Arch Insurance Company*

25

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NEW YORK  )

      JOHN H. EICKEMEYER, being sworn, says:

      1.     I am not a party to the action, am over 18 years of age and reside in Eastchester, New York.

      2.     On May 8, 2008, I caused to be served the within **Plaintiff Arch Insurance Company's Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint** upon counsel to the following parties via electronic mail and by depositing a true copy thereof enclosed in a post-paid wrapper addressed as follows into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the service for such delivery:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D.<br>McCarthy, Peter J. | William Fleming, Esq.<br>Gage Spencer & Fleming, LLP<br>410 Park Avenue<br>New York, NY 10022<br>(212) 768-4900<br>wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock, Esq.<br>Golenbock Eisman Assor<br>   Bell & Pesko LLP<br>437 Madison Avenue<br>New York, NY 10022<br>(212) 907-7373<br>jgolenbock@golenbock.com |
| Breitman, Leo R.<br>Gantcher, Nathan<br>Harkins, David V.<br>Jaekel, Scott L.<br>Lee, Thomas H.<br>O'Kelley, Ronald L.<br>Schoen, Scott A. | Paul A. Ferrillo, Esq.<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8372<br>Paul.ferrillo@weil.com |

| | |
|---|---|
| Cox, Edwin | Martin R. Bennett, Esq.<br>Kugle, Skelton & Bennett<br>130 E. Corsicana, Ste. 302<br>Athens, TX  75751<br>(903) 675-5151<br>mbennett@ksbpc.com |
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner, Esq.<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA  94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford, Esq.<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL  60602<br>(312) 269-5675<br>Twolford@ngelaw.com |
| Grady, Stephen | Lawrence J. Kotler, Esq.<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA  19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |
| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C.  20036<br>(202) 778-1858<br>wschreiner@zuckerman.com<br><br>Laura E. Neish, Esq.<br>Zuckerman Spaeder LLP<br>1540 Broadway, Suite 1604<br>New York, NY  10036<br>(212) 704-9600<br>lneish@zuckerman.com |

| | |
|---|---|
| Hackl, Thomas | Avraham Moskowitz, Esq.<br>Moskowitz & Book LLP<br>1372 Broadway, Suite 1402<br>New York, NY 10018<br>amoskowitz@moskowitzandbook.com |
| Klejna, Dennis | Helen Kim, Esq.<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman, Esq.<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY 10166<br>(212) 309-1053<br>shershman@hunton.com |
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome, Esq.<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |

| | |
|---|---|
| Sexton, William M.<br>Sherer, Gerald | Ivan Kline, Esq.<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>jkline@friedmanwittenstein.com |
| Silverman, Philip | Richard Cashman, Esq.<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand, Iason &<br>Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

3.     On May 8, 2008, I caused a true copy of the within **Plaintiff Arch Insurance Company's Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint** to be served upon Richard N. Outridge at 24 Pennbrook Drive, Lincoln University, Pennsylvania 19352 by depositing a true copy thereof enclosed in a post-paid wrapper into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the service for such delivery

JOHN H. EICKEMEYER

Sworn to before me this
8th of May, 2008

Notary Public

FRANCINE TORMEY
Notary Public, State of New York
Registration No. 01TO6143179
Qualified In Queens County
Commission Expires April 3, 2010
Certificate on File in New York County

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ARCH INSURANCE COMPANY,

                              Plaintiff,

        -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER, STEPHEN
GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC
G. LIPOFF, SANTO C. MAGGIO, PETER
MCCARTHY, JOSEPH MURPHY, FRANK
MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN and ROBERT C.
TROSTEN,

                              Defendants.

Index No. 08/600029
IAS Part 39

Justice Helen E. Freedman

**<u>NOTICE OF ENTRY</u>**



FILE
MAY 08 2008
NEW YORK
COUNTY CLERK'S OFFICE

**PLEASE TAKE NOTICE** that annexed as Exhibit A hereto is a true copy of a

Stipulated Order for Entry of Judgment Against Defendant Philip R. Bennett in this action, So

Ordered by the Honorable Helen E. Freedman on April 21, 2008, and entered in the office of the

Clerk of the Court on April 24, 2008.

2008 JUN 26  P 2: 21

312404

Dated: New York, New York
      May 8, 2008

                                  Respectfully submitted,

                                  VEDDER PRICE P.C.

By: _____

                                  John H. Eickemeyer, Esq.
                                  Daniel C. Green, Esq.
                                  1633 Broadway, 47th Floor
                                  New York, New York 10019
                                  (212) 407-7700

                                  *Attorneys for Plaintiff*
                                  *Arch Insurance Company*

TO:

William Flemming
Gage Spencer & Fleming, LLP
410 Park Avenue
New York, NY 10022
(212) 768-4900
*Attorneys for Defendants John D. Agoglia and Peter J. McCarthy*

Jeffrey T. Golenbock
Golenbock Eisman Assor Bell & Pesko LLP
437 Madison Avenue
New York, NY 10022
(212) 907-7373
*Attorneys for Defendant Phillip R. Bennett*

Paul A. Ferrillo
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8372
*Attorneys for Defendants Leo R. Breitman, Nathan Gantcher, David V. Harkins,*
*Scott L. Jaekel, Thomas H.Lee, Ronald L. O'Kelley, and Scott A. Schoen*

Martin R. Bennett
Kugle Skelton & Bennett, PC
130 E. Corsicana, Ste. 302
Athens, TX 75751
(903) 675-5151
*Attorneys for Defendant Edwin Cox*

NEWYORK/#195519.1

Neil A. Goteiner
Farella, Braun & Martel
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
(415) 954-4485
*Attorneys for Defendants Sukhmeet Dillon and Eric Lipoff*

Thomas C. Wolford
Neal Gerber & Eisenberg, LLP
2 North LaSalle Street
Chicago, IL 60602
(312) 269-5675
*Attorneys for Defendant Thomas H. Dittmer*

Lawrence J. Kotler
Duane Morris & Heckscher, LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1514
*Attorneys for Defendant Stephen Grady*

William A. Schreiner, Jr., Esq.
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
(202) 778-1858
*Attorneys for Defendant Tone Grant*

Laura E. Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036
(212) 704-9600
*Attorneys for Defendant Tone Grant*

Helen Kim
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4525
*Attorneys for Defendant Dennis Klejna*

3

Scott E. Hershman
Hunton & Williams
200 Park Avenue, 43rd Floor
New York, NY  10166
(212) 309-1053
*Attorneys for Defendant Santo C. Maggio*

John R. Jerome
Saul Ewing, LLP
245 Park Avenue
24th Floor
New York, NY  10167
*Attorneys for Defendant Joseph Murphy*

Avraham Moskowitz
Moskowitz & Book LLP
1372 Broadway, Suite 1402
New York, NY  10018
*Attorneys for Defendant Thomas Hackl*

Janet Costello
Gibbons, P.C.
One Gateway Center
Newark, NJ  07102
973-596-4825
*Attorneys for Defendant Frank Mutterer*

Claire P. Gutekunst
Proskauer Rose, LLP
1585 Broadway
New York, NY  10036
(212) 969-3421
*Attorneys for Defendant Richard N. Outridge*

Ivan Kline
Friedman & Wittenstein, P.C.
600 Lexington Avenue
New York, NY  10022
(212) 750-8700
*Attorneys for Defendants William M. Sexton and Gerald Sherer*

4

Richard Cashman
Heller Ehrman, LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 847-8796
*Attorneys for Defendant Philip Silverman*

Barbara Moses
Morvillo, Abramowitz, Grand, Iason & Silberberg, PC
565 Fifth Avenue
New York, NY 10017
(212) 880-9540
*Attorneys for Defendant Robert C. Trosten*

5

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NEW YORK   )

      JOHN H. EICKEMEYER, being sworn, says:

      1.      I am not a party to the action, am over 18 years of age and reside in Eastchester, New York.

      2.      On May 8, 2008, I caused to be served the within **NOTICE OF ENTRY** upon counsel to the following parties, via electronic mail and by depositing a true copy thereof enclosed in a post-paid wrapper addressed as follows into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the service for such delivery:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D. <br> McCarthy, Peter J. | William Fleming, Esq. <br> Gage Spencer & Fleming, LLP <br> 410 Park Avenue <br> New York, NY 10022 <br> (212) 768-4900 <br> wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock, Esq. <br> Golenbock Eisman Assor <br>    Bell & Pesko LLP <br> 437 Madison Avenue <br> New York, NY 10022 <br> (212) 907-7373 <br> jgolenbock@golenbock.com |
| Breitman, Leo R. <br> Gantcher, Nathan <br> Harkins, David V. <br> Jaekel, Scott L. <br> Lee, Thomas H. <br> O'Kelley, Ronald L. <br> Schoen, Scott A. | Paul A. Ferrillo, Esq. <br> Weil Gotshal & Manges LLP <br> 767 Fifth Avenue <br> New York, NY 10153 <br> (212) 310-8372 <br> Paul.ferrillo@weil.com |

| | |
|---|---|
| Cox, Edwin | Martin R. Bennett, Esq.<br>Kugle, Skelton & Bennett<br>130 E. Corsicana, Ste. 302<br>Athens, TX  75751<br>(903) 675-5151<br>mbennett@ksbpc.com |
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner, Esq.<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA  94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford, Esq.<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL  60602<br>(312) 269-5675<br>Twolford@ngelaw.com |
| Grady, Stephen | Lawrence J. Kotler, Esq.<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA  19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |
| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C.  20036<br>(202) 778-1858<br>wschreiner@zuckerman.com<br><br>Laura E. Neish, Esq.<br>Zuckerman Spaeder LLP<br>1540 Broadway, Suite 1604<br>New York, NY  10036<br>(212) 704-9600<br>lneish@zuckerman.com |

7

| | |
|---|---|
| Hackl, Thomas | Avraham Moskowitz, Esq.<br>Moskowitz & Book LLP<br>1372 Broadway, Suite 1402<br>New York, NY 10018<br>amoskowitz@moskowitz@book.com |
| Klejna, Dennis | Helen Kim, Esq.<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman, Esq.<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY 10166<br>(212) 309-1053<br>shershman@hunton.com |
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome, Esq.<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |

| Sexton, William M.<br>Sherer, Gerald | Ivan Kline, Esq.<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>jkline@friedmanwittenstein.com |
|---|---|
| Silverman, Philip | Richard Cashman, Esq.<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand, Iason &<br>Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

3.    On May 8, 2008, I caused a true copy of the within **NOTICE OF ENTRY** to be served upon Richard N. Outridge at 24 Pennbrook Drive, Lincoln University, Pennsylvania 19352 by depositing a true copy thereof enclosed in a post-paid wrapper into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the service for such delivery

JOHN H. EICKEMEYER

Sworn to before me this
8th of May, 2008

Notary Public

FRANCINE TORMEY
Notary Public, State of New York
Registration No. 01TO6143179
Qualified in Queens County
Commission Expires April 3, 2010
Certificate on File in New York County

NEWYORK/#195519.1

# Exhibit A

COURTESY
COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ARCH INSURANCE COMPANY,                    )
                                           )
            Plaintiff,                     )        Index No.: 08/600029
                                           )
v.                                         )
                                           )
JOHN D. AGOGLIA, et al.,                   )        **STIPULATED ORDER FOR ENTRY**
                                           )        **OF JUDGMENT AGAINST**
            Defendants.                    )        **DEFENDANT PHILLIP R. BENNETT**
                                           )
                                           )
_____   )

Plaintiff Arch Insurance Company ("Arch") and Defendant Phillip R. Bennett ("Bennett"), by and through their undersigned attorneys, jointly file this Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett.

**WHEREAS**, Bennett previously sought coverage under the "Arch Policy" for the "Underlying Matters," as those terms are defined in the First Amended Complaint for Declaratory Judgment (the "FAC") filed by Arch on February 22, 2008;

**WHEREAS**, Bennett has since acknowledged that he is not entitled to any coverage under the Arch Policy for the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

**NOW, THEREFORE**, Arch and Bennett stipulate and agree as follows:

1.      Bennett waived formal service of process under C.P.L.R. 308 and acknowledged service and receipt of Arch's Amended Summons and the FAC on February 28, 2008;

2.      Bennett stipulates and agrees that the Arch Policy does not afford him any coverage whatsoever for any of the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

**FILED**
**APR 24 2008**

NEW YORK
COUNTY CLERK'S OFFICE

3.   Bennett stipulates, agrees and consents to the entry of judgment against him on Counts I and II of the FAC in the form annexed hereto as Exhibit A;

4.   Bennett waives any right to appeal the judgment entered against him pursuant to this stipulation;

5.   Arch and Bennett stipulate and agree that each party is to bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

Date:   April 17, 2008

Respectfully submitted,

Jeffrey T. Golenbock
GOLENBOCK EISMAN ASSOR BELL
   & PESKOE
437 Madison Avenue
New York, NY  10022
(212) 907-7373

*Attorneys for Defendant Phillip R. Bennett*

John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Attorneys for Plaintiff Arch Insurance Company*

SO ORDERED, this 21 day of April 2008

By: _____

**FILED**
APR 24 2008
NEW YORK
COUNTY CLERK'S OFFICE

-2-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ARCH INSURANCE COMPANY,

                    Plaintiff,

       -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER, STEPHEN
GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC
G. LIPOFF, SANTO C. MAGGIO, PETER
MCCARTHY, JOSEPH MURPHY, FRANK
MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN and ROBERT C.
TROSTEN,

                    Defendants.

Index No. 08/600029
IAS Part 39

Justice Helen E. Freedman

**CORRECTED
AFFIDAVIT OF SERVICE**



STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF NEW YORK  )

       JOHN H. EICKEMEYER, being sworn, says:

       1.     I am not a party to the action, am over 18 years of age and reside in Eastchester,
New York.

       2.     On May 8, 2008, I caused to be served the within **NOTICE OF ENTRY** upon
counsel to the following parties, via electronic mail and by depositing a true copy thereof
enclosed in a post-paid wrapper addressed as follows into the custody of an overnight delivery
service for overnight delivery, prior to the latest time designated by the service for such delivery:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D.<br>McCarthy, Peter J. | William Fleming, Esq.<br>Gage Spencer & Fleming, LLP<br>410 Park Avenue<br>New York, NY 10022<br>(212) 768-4900<br>wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock, Esq.<br>Golenbock Eisman Assor<br>    Bell & Pesko LLP<br>437 Madison Avenue<br>New York, NY 10022<br>(212) 907-7373<br>jgolenbock@golenbock.com |
| Breitman, Leo R.<br>Gantcher, Nathan<br>Harkins, David V.<br>Jaekel, Scott L.<br>Lee, Thomas H.<br>O'Kelley, Ronald L.<br>Schoen, Scott A. | Paul A. Ferrillo, Esq.<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8372<br>Paul.ferrillo@weil.com |
| Cox, Edwin | Martin R. Bennett, Esq.<br>Kugle, Skelton & Bennett<br>130 E. Corsicana, Ste. 302<br>Athens, TX 75751<br>(903) 675-5151<br>mbennett@ksbpc.com |
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner, Esq.<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA 94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford, Esq.<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL 60602<br>(312) 269-5675<br>Twolford@ngelaw.com |

NEWYORK/#195519.1

| Defendant(s) | Counsel |
|---|---|
| Grady, Stephen | Lawrence J. Kotler, Esq.<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA  19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |
| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C.  20036<br>(202) 778-1858<br>wschreiner@zuckerman.com<br><br>Laura E. Neish, Esq.<br>Zuckerman Spaeder LLP<br>1540 Broadway, Suite 1604<br>New York, NY  10036<br>(212) 704-9600<br>lneish@zuckerman.com |
| Hackl, Thomas | Avraham Moskowitz, Esq.<br>Moskowitz & Book LLP<br>1372 Broadway, Suite 1402<br>New York, NY  10018<br>amoskowitz@moskowitzandbook.com |
| Klejna, Dennis | Helen Kim, Esq.<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA  90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman, Esq.<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY  10166<br>(212) 309-1053<br>shershman@hunton.com |

3

| Defendant(s) | Counsel |
|---|---|
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome, Esq.<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |
| Sexton, William M.<br>Sherer, Gerald | Ivan Kline, Esq.<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>ikline@friedmanwittenstein.com |
| Silverman, Philip | Richard Cashman, Esq.<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand, Iason &<br>Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

3.      On May 8, 2008, I caused a true copy of the within **NOTICE OF ENTRY** to be served upon Richard N. Outridge at 24 Pennbrook Drive, Lincoln University, Pennsylvania 19352 by depositing a true copy thereof enclosed in a post-paid wrapper into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the service for such delivery

JOHN H. EICKEMEYER

Sworn to before me this
9th of May, 2008

Notary Public

```
FRANCINE TORMEY
Notary Public, State of New York
Registration No. 01TO6143179
Qualified in Queens County
Commission Expires April 3, 2010
Certificate on File in New York County
```

NEWYORK/#195519.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARCH INSURANCE COMPANY,

                    Plaintiff,

       -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER, STEPHEN
GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC
G. LIPOFF, SANTO C. MAGGIO, PETER
MCCARTHY, JOSEPH MURPHY, FRANK
MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN and ROBERT C.
TROSTEN,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No. 08/600029
IAS Part 39

Justice Helen E. Freedman

**NOTICE OF ENTRY**

      **PLEASE TAKE NOTICE** that annexed as Exhibit A hereto is a true copy of a Stipulated Order for Entry of Judgment Against Defendant Philip R. Bennett in this action, So Ordered by the Honorable Helen E. Freedman on April 21, 2008, and entered in the office of the Clerk of the Court on April 24, 2008.

Dated: New York, New York
      May 8, 2008

                    Respectfully submitted,

                    VEDDER PRICE P.C.

By: _____
                    John H. Eickemeyer, Esq.
                    Daniel C. Green, Esq.
                    1633 Broadway, 47th Floor
                    New York, New York  10019
                    (212) 407-7700

                    *Attorneys for Plaintiff*
                    *Arch Insurance Company*

TO:

William Flemming
Gage Spencer & Fleming, LLP
410 Park Avenue
New York, NY  10022
(212) 768-4900
*Attorneys for Defendants John D. Agoglia and Peter J. McCarthy*

Jeffrey T. Golenbock
Golenbock Eisman Assor Bell & Pesko LLP
437 Madison Avenue
New York, NY  10022
(212) 907-7373
*Attorneys for Defendant Phillip R. Bennett*

Paul A. Ferrillo
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8372
*Attorneys for Defendants Leo R. Breitman, Nathan Gantcher, David V. Harkins,*
*Scott L. Jaekel, Thomas H.Lee, Ronald L. O'Kelley, and Scott A. Schoen*

Martin R. Bennett
Kugle Skelton & Bennett, PC
130 E. Corsicana, Ste. 302
Athens, TX 75751
(903) 675-5151
*Attorneys for Defendant Edwin Cox*

2

NEWYORK/#195519.1

Neil A. Goteiner
Farella, Braun & Martel
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
(415) 954-4485
*Attorneys for Defendants Sukhmeet Dillon and Eric Lipoff*

Thomas C. Wolford
Neal Gerber & Eisenberg, LLP
2 North LaSalle Street
Chicago, IL 60602
(312) 269-5675
*Attorneys for Defendant Thomas H. Dittmer*

Lawrence J. Kotler
Duane Morris & Heckscher, LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1514
*Attorneys for Defendant Stephen Grady*

William A. Schreiner, Jr., Esq.
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
(202) 778-1858
*Attorneys for Defendant Tone Grant*

Laura E. Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036
(212) 704-9600
*Attorneys for Defendant Tone Grant*

Helen Kim
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4525
*Attorneys for Defendant Dennis Klejna*

3

Scott E. Hershman
Hunton & Williams
200 Park Avenue, 43rd Floor
New York, NY 10166
(212) 309-1053
*Attorneys for Defendant Santo C. Maggio*

John R. Jerome
Saul Ewing, LLP
245 Park Avenue
24th Floor
New York, NY 10167
*Attorneys for Defendant Joseph Murphy*

Avraham Moskowitz
Moskowitz & Book LLP
1372 Broadway, Suite 1402
New York, NY 10018
*Attorneys for Defendant Thomas Hackl*

Janet Costello
Gibbons, P.C.
One Gateway Center
Newark, NJ 07102
973-596-4825
*Attorneys for Defendant Frank Mutterer*

Claire P. Gutekunst
Proskauer Rose, LLP
1585 Broadway
New York, NY 10036
(212) 969-3421
*Attorneys for Defendant Richard N. Outridge*

Ivan Kline
Friedman & Wittenstein, P.C.
600 Lexington Avenue
New York, NY 10022
(212) 750-8700
*Attorneys for Defendants William M. Sexton and Gerald Sherer*

4

Richard Cashman
Heller Ehrman, LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 847-8796
*Attorneys for Defendant Philip Silverman*

Barbara Moses
Morvillo, Abramowitz, Grand, Iason & Silberberg, PC
565 Fifth Avenue
New York, NY 10017
(212) 880-9540
*Attorneys for Defendant Robert C. Trosten*

5

COURTESY
COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ARCH INSURANCE COMPANY,         ) | |
|            ) | |
| Plaintiff,         ) | Index No.: 08/600029 |
|            ) | |
| v.            ) | |
|            ) | |
| JOHN D. AGOGLIA, *et al.*,       ) | STIPULATED ORDER FOR ENTRY |
|            ) | OF JUDGMENT AGAINST |
| Defendants.      ) | DEFENDANT PHILLIP R. BENNETT |
|            ) | |
|            ) | |
| _____ ) | |

Plaintiff Arch Insurance Company ("Arch") and Defendant Phillip R. Bennett ("Bennett"), by and through their undersigned attorneys, jointly file this Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett.

WHEREAS, Bennett previously sought coverage under the "Arch Policy" for the "Underlying Matters," as those terms are defined in the First Amended Complaint for Declaratory Judgment (the "FAC") filed by Arch on February 22, 2008;

WHEREAS, Bennett has since acknowledged that he is not entitled to any coverage under the Arch Policy for the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

NOW, THEREFORE, Arch and Bennett stipulate and agree as follows:

1.      Bennett waived formal service of process under C.P.L.R. 308 and acknowledged service and receipt of Arch's Amended Summons and the FAC on February 28, 2008;

2.      Bennett stipulates and agrees that the Arch Policy does not afford him any coverage whatsoever for any of the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

FILED
APR 24 2008

NEW YORK
COUNTY CLERK'S OFFICE

3. Bennett stipulates, agrees and consents to the entry of judgment against him on Counts I and II of the FAC in the form annexed hereto as Exhibit A;

4. Bennett waives any right to appeal the judgment entered against him pursuant to this stipulation;

5. Arch and Bennett stipulate and agree that each party is to bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

Date:  April 17, 2008

Respectfully submitted,

_____
Jeffrey T. Golenbock
GOLENBOCK EISMAN ASSOR BELL
& PESKOE
437 Madison Avenue
New York, NY 10022
(212) 907-7373

*Attorneys for Defendant Phillip R. Bennett*

_____
John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Attorneys for Plaintiff Arch Insurance Company*

SO ORDERED, this 21 day of April 2008

By: _____

**FILED**
APR 24 2008
NEW YORK
COUNTY CLERK'S OFFICE

-2-

J. 14-05

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

```
--------------------------------------------------------- x
ARCH INSURANCE COMPANY,                        :
                                               :
                     Plaintiff,                :        Index No.:  08/600029
                                               :
          v.                                   :        IAS Part 39 (Freedman, J.)
                                               :
JOHN D. AGOGLIA, PHILLIP R. BENNETT,           :
LEO R. BREITMAN, EDWIN L. COX,                 :
SUKHMEET DHILLON, THOMAS H.                    :
DITTMER, NATHAN GANTCHER,                      :
STEPHEN GRADY, TONE GRANT,                     :
THOMAS HACKL, DAVID V. HARKINS,                :
SCOTT L. JAECKEL, DENNIS A. KLEJNA,            :
THOMAS H. LEE, ERIC G. LIPOFF, SANTO           :
C. MAGGIO, PETER MCCARTHY, JOSEPH              :
MURPHY, FRANK MUTTERER, RICHARD                :
N. OUTRIDGE, RONALD L. O'KELLEY,               :
SCOTT A. SCHOEN, WILLIAM M. SEXTON,            :
GERALD SHERER, PHILIP SILVERMAN and            :
ROBERT C. TROSTEN,                             :
                                               :
                     Defendants.               :
--------------------------------------------------------- x
```

## REPLY AFFIRMATION OF RICHARD CASHMAN

RICHARD CASHMAN, an attorney duly admitted to practice in the courts of the State of New York, affirms under penalties of perjury the following:

1.      I am a member of the bar of the State of New York, and am Special Counsel to Heller Ehrman, LLP ("Heller Ehrman"). Heller Ehrman represents Defendant Philip Silverman.

2.      I respectfully submit this reply affirmation in further support of the

motion of Defendants John Agoglia, Leo R. Breitman, Nathan Gantcher, Tone Grant,

David Harkins, Scott L. Jaeckel, Dennis A. Klejna, Thomas H. Lee, Peter McCarthy,

Joseph Murphy, Frank Mutterer, Richard N. Outridge, Ronald L. O'Kelley, Scott A.

Schoen, William M. Sexton, Gerald Sherer, and Philip Silverman (collectively, the

"Moving Insureds") to dismiss or stay the First Amended Complaint of Arch Insurance

Company (the "Motion").

3.      The following is a list of the exhibits cited in the Reply

Memorandum of Law submitted by the Moving Insureds in support of the Motion. A

true and correct copy of each document is attached hereto.

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Notice of Motion to Withdraw the Reference to the Bankruptcy Court dated April 30, 2008, filed by Allied World Assurance Company (U.S), Inc. |
| B | Letter dated May 9, 2008 from John H. Eickemeyer, counsel for Arch Insurance Company, to the Hon. Gerard E. Lynch. |
| C | Consent to Allied World Assurance Co. (U.S.) Inc.'s Motion to Withdraw the Reference from the Bankruptcy Court, filed by the Insureds on May 13, 2008. |
| D | Notice of Motion for Abstention, filed by Arch Insurance Company on May 13, 2008. |

Dated: May 14, 2008
      New York, New York


*Richard Cashman*
Richard Cashman

# Exhibit A

John D. Hughes
Michael P. Thompson
Robert W. DiUbaldo
EDWARDS ANGELL PALMER & DODGE, LLP
750 Lexington Avenue
New York, NY 10022
Telephone: (212) 308-4411
*Counsel to Allied World Assurance Company (U.S.), Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| REFCO INC., et al., | : | Case No. 05-60006 (RDD) |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |

-----------------------------------------------------x

|  |  |  |
|---|---|---|
| JOSEPH MURPHY, et al., | : |  |
|  | : | Adv. Proc. No. 08-01133 (RDD) |
| Plaintiffs, | : |  |
| v. | : |  |
|  | : |  |
| ALLIED WORLD ASSURANCE | : | Civ. Action No. _____ |
| COMPANY (U.S.), INC. and ARCH | : |  |
| INSURANCE COMPANY, | : |  |
|  | : |  |
| Defendants, and. | : |  |
|  | : |  |
| JOHN D. AGOGLIA, EDWIN L. COX, | : |  |
| SUKHMEET DHILLON, THOMAS H. | : |  |
| DITTMER, STEPHEN GRADY, | : |  |
| THOMAS HACKL, ERIC G. LIPOFF, | : |  |
| PETER MCCARTHY | : |  |
| and FRANK MUTTERER, | : |  |
|  | : |  |
| Nominal Defendants | : |  |

-----------------------------------------------------x

## NOTICE OF MOTION TO WITHDRAW
## THE REFERENCE TO THE BANKRUPTCY COURT

PLEASE TAKE NOTICE that, upon the annexed Memorandum, the Declaration of

Michael P. Thompson and the exhibits annexed thereto, the pleadings and papers on file, and

upon such other matters as may be presented to the Court at the time of hearing, defendant

Allied World Assurance Co. (U.S.) Inc. ("Allied World"), by its undersigned attorneys, will

move in the United States District Court for the Southern District of New York, at Daniel P.

Moynihan United States Courthouse, 500 Pearl Street, New York, New York, before a judge to

be assigned, at a date and time to be determined by this Court, for the entry of an Order, pursuant

to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), and Local Bankruptcy

Rule 5011-01, for cause shown, withdrawing the reference to the United State Bankruptcy Court for

the Southern District of New York of the above-captioned adversary proceeding filed by certain

former directors and officers of Refco, Inc. and/or its subsidiaries, for the reasons more fully set

forth in the Memorandum, together with such other relief as the Court may deem just and proper.

The Plaintiffs have assented to this Motion.

BOS 622046.1

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Local Civil Rule 6.1(b),

answering papers, if any, shall be served upon the undersigned no later than ten business days

after service of this Notice of Motion. Allied World's reply shall be served within five days

of service of any opposition papers.


Date: April 30, 2008

Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP

By: /s/ John D. Hughes
John D. Hughes
Michael P. Thompson
Robert W. DiUbaldo
750 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 308-4411

*Attorneys for Allied World*
*Assurance Company (U.S.), Inc.*

# Exhibit B

# VEDDERPRICE

JOHN H. EICKEMEYER
212-407-7760
jeickemeyer@vedderprice.com

VEDDER PRICE P.C.

1633 BROADWAY, 47TH FLOOR

NEW YORK, NEW YORK 10019

212-407-7700

FAX: 212-407-7799

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

May 9, 2008

**BY HAND**

Hon. Gerard E. Lynch
United States District Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:  **Murphy, et al. v. Allied Word Assurance Company (U.S.), Inc., et al.;
> Case Nos. 08-CV-4105 and 08-CV-4196**

Dear Judge Lynch:

We are counsel for defendant Arch Insurance Company ("Arch"). On April 24, 2008, Arch was added, by filing of an amended complaint, as a defendant in an adversary proceeding entitled *Murphy, et al. v. Allied World Assurance Company (U.S.), Inc., et al.*, (Adv Proc. No. 08-01133 (RDD)) commenced in connection with the *In Re Refco, et al.* bankruptcy proceeding (Case No. 05-60006 (RDD)). On April 29, 2008, Arch filed a motion to withdraw the reference only as to the claims made against Arch in the adversary proceeding. The Arch motion has been assigned Case No. 08-CV-4105 and has been referred to Your Honor as possibly related to another action pending before Your Honor (*Axis Reinsurance Co. v. Bennett*, Case No. 07-CV-7924 (GEL)).

On April 30, 2008, co-defendant Allied World Assurance Company (U.S.), Inc. ("AWAC") filed a motion to withdraw the reference as to the entire adversary proceeding. The AWAC motion has been assigned Case No. 08-CV-4196, and has also been referred to Your Honor. As noted in AWAC's motion, the plaintiffs to the adversary proceeding do not oppose the withdrawal of the reference as to the entire adversary proceeding. Arch also does not oppose

VEDDERPRICE

Hon. Gerard E. Lynch
May 9, 2008
Page 2

the relief sought by AWAC and we write simply to bring to the Court's attention the fact that
granting AWAC's motion would render Arch's motion moot and obviate any need for the Court
to consider Arch's motion separately.

Respectfully,

John K. Eickemeyer

cc:     All Counsel (by electronic mail)
        Nominal Defendants (by regular mail)

# Exhibit C

GREG A. DANILOW
MICHAEL F. WALSH
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
*Attorneys for Plaintiffs Leo R. Breitman,*
*Nathan Gantcher, David V. Harkins,*
*Scott L. Jaeckel, Thomas H. Lee, Ronald*
*L. O'Kelley, and Scott A. Schoen*

HELEN B. KIM
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: (310) 788-4525
Facsimile: (310) 788-4471

-and-

PHILIP A. NEMECEK
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-8834
Facsimile: (212) 940-8776
*Attorneys for Plaintiff Dennis A. Klejna*

STUART I. FRIEDMAN
IVAN KLINE
FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391
*Attorneys for Plaintiffs William M.*
*Sexton and Gerald M. Sherer*

RICHARD CASHMAN
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524
Telephone: (212) 832-8300
Facsimile: (212) 763-7600
*Attorneys for Plaintiff Philip*
*Silverman*

JOHN J. JEROME
TIMOTHY E. HOEFFNER
SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, New York 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920
*Attorneys for Plaintiff Joseph Murphy*

NORMAN L. EISEN
LAURA E. NEISH
ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, New York 10036
Telephone: (212) 704-9600

-and-

BLAKE T. HANNAFAN
HANNAFAN & HANNAFAN
One East Wacker Dr.
Suite 2800
Chicago, IL 60601
Telephone: (312) 527-0055
Facsimile: (312) 527-0220
*Attorneys for Plaintiff Tone N. Grant*

CLAIRE P. GUTEKUNST
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
*Attorneys for Plaintiff Richard N.*
*Outridge*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re                                              :    Case No. 08-04196
REFCO INC., et al.,                                :
                        Debtors.                   :    (Referred to Judge Gerard E. Lynch)
                                                   :
                                                   :
-----------------------------------------------------------------x

[caption continued on next page]

**CONSENT TO ALLIED WORLD ASSURANCE CO. (U.S.) INC.'S**
**MOTION TO WITHDRAW REFERENCE FROM THE BANKRUPTCY COURT**

```
---------------------------------------------------------x
In re                                         :    Chapter 11
REFCO INC., et al.,                           :    Case No. 05-60006 (RDD)
                    Debtors.                   :    (Jointly Administered)
                                              :
---------------------------------------------------------x
JOSEPH MURPHY, WILLIAM M. SEXTON, DENNIS      :
A. KLEJNA, GERALD SHERER, PHILIP              :    Adv. Proc. No. 08-01133 (RDD)
SILVERMAN, RICHARD N. OUTRIDGE, TONE          :
GRANT, LEO R. BREITMAN, NATHAN GANTCHER,      :
DAVID V. HARKINS, SCOTT L. JAECKEL, THOMAS    :
H. LEE, RONALD L. O'KELLEY, AND SCOTT A.      :
SCHOEN,                                       :
                    Plaintiffs,               :
         v.                                   :
                                              :
ALLIED WORLD ASSURANCE COMPANY (U.S.),        :
INC. and ARCH INSURANCE COMPANY,              :
                                              :
                    Defendants, and           :
                                              :
JOHN D. AGOGLIA, EDWIN L. COX, SUKHMEET        :
DHILLON, THOMAS H. DITTMER, STEPHEN           :
GRADY, THOMAS HACKL, ERIC G. LIPOFF, PETER    :
MCCARTHY and FRANK MUTTERER.                  :
                                              :
                    Nominal Defendants.        :
---------------------------------------------------------x
```

Plaintiffs William M. Sexton, Gerald Sherer, Philip Silverman, Joseph Murphy,

Richard N. Outridge, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel,

Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Dennis A. Klejna, and Tone N. Grant,

each a former officer or director of Refco, Inc., or one of its direct or indirect subsidiaries,

hereby consent to the withdrawal of the reference of the above-captioned adversary proceeding

from the United States Bankruptcy Court for the Southern District of New York, as requested by

Allied World Assurance Company (U.S.), Inc. in its Motion to Withdraw the Reference from the

Bankruptcy Court, dated April 30, 2008 [Dkt. No. 1].

Dated:  May 13, 2008                              Respectfully submitted,


/s/ Michael F. Walsh                              /s/ Ivan Kline
GREG A. DANILOW                                   STUART I. FRIEDMAN
MICHAEL F. WALSH                                  IVAN KLINE
WEIL, GOTSHAL & MANGES LLP                        FRIEDMAN & WITTENSTEIN
767 Fifth Avenue                                  A Professional Corporation
New York, NY 10153-0119                           600 Lexington Avenue
Telephone: (212) 310-8000                         New York, NY 10022
Facsimile: (212) 310-8007                         Telephone: (212) 750-8700
                                                  Facsimile: (212) 223-8391

*Attorneys for Plaintiffs Leo R. Breitman, Nathan
Gantcher, David V. Harkins, Scott L. Jaeckel,*    *Attorneys for Plaintiffs William M. Sexton*
*Thomas H. Lee, Ronald L. O'Kelley, and Scott A.* *and Gerald M. Sherer*
*Schoen*


/s/ Helen B. Kim                                  /s/ Norman L. Eisen
HELEN B. KIM                                      NORMAN L. EISEN
KATTEN MUCHIN ROSENMAN LLP                        LAURA E. NEISH
2029 Century Park East, Suite 2600                ZUCKERMAN SPAEDER LLP
Los Angeles, CA 90067                             1540 Broadway, Suite 1604
Telephone: (310) 788-4525                         New York, NY 10036
Facsimile: (310) 788-4471                         Telephone: (212) 704-9600


        -and-                                             -and-


PHILIP A. NEMECEK                                 BLAKE T. HANNAFAN
KATTEN MUCHIN ROSENMAN LLP                        HANNAFAN & HANNAFAN
575 Madison Avenue                                One East Wacker Dr., Suite 2800
New York, NY 10022-2585                           Chicago, IL 60601
Telephone: (212) 940-8834                         Telephone: (312) 527-0055
Facsimile: (212) 940-8776                         Facsimile: (312) 527-0220


*Attorneys for Plaintiff Dennis A. Klejna*        *Attorneys for Plaintiff Tone N. Grant*


/s/ John J. Jerome                                /s/ Claire P. Gutekunst
JOHN J. JEROME                                    CLAIRE P. GUTEKUNST
TIMOTHY E. HOEFFNER                               PROSKAUER ROSE LLP
SAUL EWING LLP                                    1585 Broadway
245 Park Avenue, 24th Floor                       New York, NY 10036-8299
New York, NY  10167                               Telephone: (212) 969-3000
Telephone: (212) 672-1996                         Facsimile: (212) 969-2900
Facsimile: (212) 672-1920
                                                  *Attorneys for Plaintiff Richard N. Outridge*

*Attorneys for Plaintiff Joseph Murphy*

/s/ Richard Cashman
RICHARD CASHMAN
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY  10036-6524
Telephone:  (212) 832-8300
Facsimile:  (212) 763-7600

*Attorneys for Plaintiff Philip Silverman*

# Exhibit D

Hearing Date:  July 11, 2008, at 10:00 a.m.
Objection Date: July 3, 2008, at 5:00 p.m.
Reply Date:  July 10, 2008, at 10:00 a.m.

John H. Eickemeyer (JE-8302)
Daniel C. Green (DG-0059)
**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019
Tel.:  (212) 407-7700
Fax:  (212) 407-7799

*Attorneys for Defendant Arch Insurance Company*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>REFCO, INC. et al.<br><br>      Debtors. | Chapter 11<br>Case No. 05-60006 (RDD)<br>(Jointly Administered) |
| JOSEPH MURPHY, WILLIAM M. SEXTON,<br>DENNIS A. KLEJNA, GERALD SHERER,<br>PHILIP SILVERMAN, RICHARD N.<br>OUTRIDGE, TONE GRANT, LEO R.<br>BREITMAN, NATHAN GANTCHER,<br>DAVID V. HARKINS, SCOTT L. JAECKEL,<br>THOMAS H. LEE, RONALD O'KELLEY,<br>and SCOTT A. SCHOEN,<br><br>      Plaintiffs,<br><br>  v.<br><br>ALLIED WORLD ASSURANCE COMPANY<br>(U.S.), INC. and ARCH INSURANCE<br>COMPANY,<br><br>      Defendants.<br><br>JOHN D. AGOGLIA, EDWIN L. COX,<br>SUKHMEET DHILLON, THOMAS H.<br>DITTMER, STEPHEN GRADY,THOMAS<br>HACKL, ERIC G. LIPOFF, PETER<br>MCCARTHY and FRANK MUTTERER,<br><br>      Nominal Defendants. | Adv. Proc. No. 08-01133 (RDD)<br><br><br>**NOTICE OF MOTION FOR<br>ABSTENTION BY DEFENDANT<br>ARCH INSURANCE COMPANY** |

NEWYORK/#195703.1

PLEASE TAKE NOTICE that a hearing will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, on July 11, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the United States Bankruptcy Court for the Southern District of New York, Room 610, One Bowling Green, New York, New York 10004, to consider Defendant Arch Insurance Company's Motion for Abstention ("Motion").

PLEASE TAKE FURTHER NOTICE that, pursuant to the July 5, 2006, amended case management order in this case, objections, if any, to the relief sought in the Motion shall be made in writing and served so as to actually be received by the Court and the undersigned by 5:00 p.m. on July 3, 2008.

Date: May 13, 2008

Respectfully submitted,

By:   /s/  John H. Eickemeyer
John H. Eickemeyer  (JE-8302)
Daniel C. Green  (DG-0059)
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

*Counsel for Defendant
Arch Insurance Company*

OF COUNSEL:

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

2

John H. Eickemeyer (JE-8302)
Daniel C. Green (DG-0059)
**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019
Tel.: (212) 407-7700
Fax: (212) 407-7799

*Attorneys for Defendant Arch Insurance Company*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>REFCO, INC. et al.<br><br>                        Debtors. | Chapter 11<br>Case No. 05-60006 (RDD)<br>(Jointly Administered) |
| JOSEPH MURPHY, WILLIAM M. SEXTON, DENNIS A. KLEJNA, GERALD SHERER, PHILIP SILVERMAN, RICHARD N. OUTRIDGE, TONE GRANT, LEO R. BREITMAN, NATHAN GANTCHER, DAVID V. HARKINS, SCOTT L. JAECKEL, THOMAS H. LEE, RONALD O'KELLEY, and SCOTT A. SCHOEN,<br><br>                      Plaintiffs,<br>      v.<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.), INC. and ARCH INSURANCE COMPANY,<br><br>                      Defendants.<br><br>JOHN D. AGOGLIA, EDWIN L. COX, SUKHMEET DHILLON, THOMAS H. DITTMER, STEPHEN GRADY,THOMAS HACKL, ERIC G. LIPOFF, PETER MCCARTHY and FRANK MUTTERER,<br><br>                    Nominal Defendants. | Adv. Proc. No. 08-01133 (RDD)<br><br><br>**<u>CERTIFICATE OF SERVICE</u>** |

I, JOHN H. EICKEMEYER, hereby certify that on May 13, 2008, I caused a copy of the **Notice of Motion for Abstention by Defendant Arch Insurance Company** to be served upon all parties who have made appearances in the above-captioned action by electronically filing same, thereby ensuring that counsel to each such party, received same, as registered e-filers who are registered to receive e-notices in this case;

I, JOHN H. EICKEMEYER, also hereby certify that on May 13, 2008, I caused copies of the **Declaration of John H. Eickemeyer in Support of Defendant Arch Insurance Company's Motion for Abstention** to be served upon all parties who have not yet made appearances in the above-captioned case by dispatching true copies of same into the custody of a courier service for overnight delivery, prior to the latest time designated by that service for such delivery, addressed as follows:

> John D. Agoglia
> Peter McCarthy
> c/o William Fleming, Esq.
> Gage Spencer & Fleming, LLP
> 410 Park Avenue, 9th Floor
> New York, NY  10022-4900
>
> Edwin L. Cox
> c/o Martin R. Bennett, Esq.
> Kugle Skelton & Bennett, PC
> 130 E. Corsicana, Ste. 302
> Athens, TX  75751
>
> Sukhmeet Dhillon
> 2 Glastonbury Place
> Laguna Niguel, CA  92677-5310
>
> Thomas H. Dittmer
> c/o Thomas C. Wolford
> Neal Gerber & Eisenberg, LLP
> 2 North LaSalle Street
> Chicago, Illinois, 60602
>
> Stephen Grady
> c/o Lawrence J. Kotler, Esq.
> Duane, Morris & Heckscher LLP
> 30 South 17th Street
> Philadelphia, PA  19103
>
> Eric G. Lipoff
> 16 Clay
> Irvine, CA  92620-3322

1

Peter McCarthy
38 South Bridge Street
Poughkeepsie, NY  12601

Frank Mutterer
2043 Bay Blvd.
Seaside Heights, NJ  08751-1001

DATED:  May 13, 2008


                               ___/s/  John H. Eickemeyer_____
                               John H. Eickemeyer

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

*5-14-08*

```
------------------------------------------------- x
ARCH INSURANCE COMPANY,                           :
                                                  :
                    Plaintiff,                    :      Index No.:  08/600029
                                                  :
           v.                                     :      IAS Part 39 (Freedman, J.)
                                                  :
JOHN D. AGOGLIA, PHILLIP R. BENNETT,              :
LEO R. BREITMAN, EDWIN L. COX,                    :
SUKHMEET DHILLON, THOMAS H.                       :
DITTMER, NATHAN GANTCHER,                         :
STEPHEN GRADY, TONE GRANT,                        :
THOMAS HACKL, DAVID V. HARKINS,                   :
SCOTT L. JAECKEL, DENNIS A. KLEJNA,               :
THOMAS H. LEE, ERIC G. LIPOFF, SANTO              :
C. MAGGIO, PETER MCCARTHY, JOSEPH                 :
MURPHY, FRANK MUTTERER, RICHARD                   :
N. OUTRIDGE, RONALD L. O'KELLEY,                  :
SCOTT A. SCHOEN, WILLIAM M. SEXTON,               :
GERALD SHERER, PHILIP SILVERMAN and               :
ROBERT C. TROSTEN,                                :
                                                  :
                    Defendants.                   :
------------------------------------------------- x
```

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## THE INSUREDS' MOTION TO DISMISS THE FIRST
## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022
Telephone:  (212) 940-8800
Facsimile:  (212) 940-8776

*Attorneys for Defendant Dennis A. Klejna*

FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, New York 10022
Telephone:  (212) 750-8700
Facsimile:  (212) 223-8391

*Attorneys for Defendants William M. Sexton and Gerald M. Sherer*

HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY  10036-6524
Telephone:  (212) 832-3300
Facsimile:  (212) 763-7600

*Attorneys for Defendant Philip Silverman*

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, New York 10036
Telephone: (212) 704-9600
Facsimile: (212) 704-4256

*Attorneys for Defendant Tone N. Grant*

SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, New York 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920

*Attorneys for Defendant Joseph Murphy*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen*

PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
Telephone: (212) 969-3421
Facsimile: (212) 969-2900

*Attorneys for Defendant Richard N. Outridge*

GAGE SPENCER & FLEMING, LLP
410 Park Avenue, 9th Floor
New York, NY 10022-4407
Telephone: (212) 768-4900
Facsimile: (212) 768-3629

*Attorneys for Defendants John D. Agoglia and Peter McCarthy*

GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Telephone: (212) 649-4700
Facsimile: (212) 333-5980

*Attorneys for Defendant Frank Mutterer*

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................... ii

Preliminary Statement ............................................................................. 1

ARGUMENT .......................................................................................... 3

    THE COURT SHOULD DISMISS THIS ACTION IN
    FAVOR OF THE ADVERSARY PROCEEDING TO AVOID
    DUPLICATIVE LITIGATION AND POTENTIALLY
    CONFLICTING RULINGS CONCERNING THE AWAC POLICY ................... 3

        A.    Dismissal or Stay of the Action Pursuant to
              CPLR 3211(a)(4) is Proper ................................................. 3

        B.    The Instant Coverage Dispute Can Be Properly
              Adjudicated in Federal Court ............................................. 8

        C.    The Interests of Judicial Efficiency Clearly
              Support Dismissal ........................................................... 10

CONCLUSION ..................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

**Cases**

Bondi v. Grant Thornton Int'l,
  322 B.R. 44 (S.D.N.Y. 2005); .................................................................. 10

CPLR 3211(a)(4) .............................................................................. 1, 3, 13

In re Global Crossing, Ltd. Sec. Litig.,
  311 B.R. 345 (S.D.N.Y. 2003) (Lynch, J.) ................................................ 10

In re Topps Co., Inc. Shareholder Litig.,
  19 Misc.3d 1103(A), No. 600715/07, 2007 WL 5018882 (N.Y. Sup. Ct. June 8, 2007) 3

Kirschner v. Grant Thornton LLP,
  07 MDL No. 1902 (GEL), 2008 WL 1827644 (S.D.N.Y. Apr. 21, 2008) .................. 10

L-3 Commc'ns Corp. v. Safenet, Inc.,
  45 A.D.3d 1, 841 N.Y.S.2d 82 (1st Dept. 2007) ............................................ 4

San Ysidro Corp. v. Robinow,
  1 A.D.3d 185, 768 N.Y.S.2d 191 (1st Dept. 2003) ........................................ 3

Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505 (S.D.N.Y. 2004) ......... 6


**Statutes**

CPLR § 2201 .................................................................................... 1, 13

CPLR 3211(a)(4) .............................................................................. 1, 3, 13

28 U.S.C. § 157(a), (d) ......................................................................... 6

28 U.S.C. § 1334(b) ............................................................................ 6

28 U.S.C. § 1334(c)(2) ......................................................................... 9

ii

Defendants John Agoglia, Leo R. Breitman, Nathan Gantcher, Tone Grant, David Harkins, Scott L. Jaeckel, Dennis A. Klejna, Thomas H. Lee, Peter McCarthy, Joseph Murphy, Frank Mutterer, Richard N. Outridge, Ronald L. O'Kelley, Scott A. Schoen, William M. Sexton, Gerald Sherer, and Philip Silverman (collectively, the "Moving Insureds")[1] respectfully submit this Reply Memorandum of Law in support of their motion, pursuant to CPLR 3211(a)(4), to dismiss the First Amended Complaint For Declaratory Judgment (the "Arch Complaint") in favor of another action that is pending between the parties for the same causes of action, or in the alternative, to stay this action pursuant to CPLR § 2201.

### Preliminary Statement

Plaintiff Arch Insurance Company's ("Arch's") Opposition to Certain Defendants' Motion to Dismiss the First Amended Complaint (the "Opposition," or "Opp. Br.") blatantly ignores the fact that the Adversary Proceeding is a more comprehensive action, as well as the clear benefits to be gained by dismissing the instant action pursuant to CPLR 3211(a)(4). As set forth below and in the Moving Brief, such benefits include promoting an efficient resolution of the insurance coverage disputes, conserving judicial resources and avoiding potentially inconsistent results as to the prior knowledge exclusion in the insurance policy of Allied World Assurance Company (U.S.), Inc. ("AWAC") that is the subject of Count I of Arch's Complaint in this action and is in issue in the Adversary Proceeding. (See Mov. Br. at pp. 15-17). Because the Moving Insureds have now consented to the withdrawal of the Bankruptcy Court reference for the entire Adversary Proceeding, dismissal will allow all actions involving Refco's excess insurers – Axis, AWAC, Arch and XL – to be determined in a single

---

[1] All terms not specifically defined herein shall have the definition set forth in the Memorandum of Law in Support of the Insureds' Motion to Dismiss the First Amended Complaint for Declaratory Judgment (the "Moving Brief," or "Mov. Br.").

forum, before the Honorable Gerard E. Lynch in the United States District Court for the

Southern District of New York (the "District Court"). In addition to the insurance actions, the

vast majority of the Underlying Actions involving Refco are also currently pending before Judge

Lynch.

The mere status of the instant 2008 Arch DJ Action as "first-filed" is insufficient

to avoid dismissal, particularly where, as here, both the Arch DJ Action and the Adversary

Proceeding are in their earliest stages and, as indicated above, coverage under each of Refco's

other excess insurance policies will be determined by Judge Lynch in the District Court.

Likewise, Arch's accusations of forum shopping ring hollow, particularly where the Moving

Insureds' actions in including Arch in the Adversary Proceeding are entirely consistent with their

desire to resolve the dispute with Arch only when ripe, and then in the most efficient manner

possible.

Other arguments by Arch to avoid dismissal are equally unpersuasive. For

example, Arch does not "stand to suffer real injury" from the possibility of being required by the

District Court to advance defense costs in accordance with the terms of its Policy. It is the

Moving Insureds, individuals forced to litigate with Arch and the other insurers at their own

expense in order to obtain coverage to which they are entitled, who have been injured as a result

of Arch's wrongful denial of coverage. In addition, Arch's attempt to characterize this dispute as

concerning "novel questions of state law" should be rejected because insurance policy disputes,

such as the instant action, are primarily guided by the policy language itself. Arch's abstention

argument also fails to support its position because this Court is not the proper court to rule on

whether a federal court must abstain from hearing the claims in the Adversary Proceeding

against Arch.

## ARGUMENT

### THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF THE ADVERSARY PROCEEDING TO AVOID DUPLICATIVE LITIGATION AND POTENTIALLY CONFLICTING RULINGS CONCERNING THE AWAC POLICY

**A.    Dismissal or Stay of the Action Pursuant to CPLR 3211(a)(4) is Proper**

Arch's sole basis for opposing dismissal is that the instant action should be given priority as the first-filed action. (See Opp. Br. at p. 11.) Contrary to Arch's position, case law cited by Arch itself explicitly recognizes that "technical priority in the commencement of actions is a factor to be considered, [but that] it is not necessarily dispositive, particularly where both actions are at the earliest stages of litigation, [or] where one forum's connections clearly predominate." San Ysidro Corp. v. Robinow, 1 A.D.3d 185, 768 N.Y.S.2d 191, 193 (1st Dept. 2003). See also In re Topps Co., Inc. Shareholder Litig., 19 Misc.3d 1103(A), No. 600715/07, 2007 WL 5018882, at *3 (N.Y. Sup. Ct. June 8, 2007) ("Although priority in the commencement of the action is a factor to be considered in determining whether dismissal pursuant to CPLR 3211(a)(4) is appropriate, it is not necessarily dispositive."); Certain Underwriters at Lloyd's, London v. Hartford Accident & Indem. Co., 16 A.D.3d 167, 791 N.Y.S.2d 90, 91 (1st Dept. 2005) (same).

Arch summarily states that "[n]one of the limited exceptions New York courts have recognized to the first-filed rule applies here." (Opp. Br. at p. 11). However, Arch fails to adequately address any of the points made by the Moving Insureds which bring this action within recognized exceptions to the "first-filed rule," including that: (i) both the 2008 Arch DJ Action and the Adversary Proceeding involve interpretation of the AWAC Policy, thus putting the Insureds at risk that the two courts will reach inconsistent results; (ii) the scope of the Adversary Proceeding is more comprehensive than the 2008 Arch DJ Action, as AWAC is a party to the Adversary Proceeding; (iii) discovery in the Adversary Proceeding and the 2008 Arch DJ Action

3

concerning the AWAC prior knowledge exclusion will overlap; and (iv) dismissal will allow all the insurance actions – those suits involving excess carriers Axis, AWAC, Arch and XL – to be determined in a single forum, the District Court, where the Axis litigation, the XL action and almost all the Underlying Actions are pending, and where the Adversary Proceeding will be heard following the withdrawal of the bankruptcy reference.

Arch further states that because the Adversary Proceeding was filed "nearly four full months" after Arch instituted the instant action, "the Adversary Proceeding cannot be considered to have been filed 'close in time' to this action." (Opp. Br. at p. 12).[2] However, Arch offers no support from the case law for its position that the actions were not filed "close in time," and utterly fails to address the fact that both actions are in their "earliest stages," with no discovery yet taking place in either case. See L-3 Commc'ns Corp. v. Safenet, Inc., 45 A.D.3d 1, 9, 841 N.Y.S.2d 82, 89 (1st Dept. 2007) (short time period between filing of actions and that both actions were in their earliest states at the time of the motion to dismiss weighed against application of the first-filed rule).

Indeed, a decision cited by Arch, Certain Underwriters at Lloyd's, London v. Hartford Accident & Indemnity Co., 16 A.D.3d 167, 791 N.Y.S.2d 90 (1st Dept. 2005), is instructive and further supports dismissal under the facts here. In Certain Underwriters at Lloyd's, the First Department affirmed dismissal of the "technically" prior New York state court declaratory action in favor of an action in Connecticut, reasoning that "[c]omplex litigation concerning the reinsurance contracts [at issue was] already pending in Connecticut and encompass[ed] the same underlying insured, the same reinsurance contracts, and the same source

---

[2] Arch's reliance on the January 4, 2008 filing of its Complaint is somewhat misleading, as it did not serve the Complaint at that time; the Amended Complaint, which Arch did serve (together with the Complaint), was filed on February 22, 2008, two months prior to the filing of the Adversary Proceeding naming Arch and Allied World as defendants.

4

of losses." Id. at 91. Here, the obligations of Axis, AWAC and Arch to advance defense costs and provide coverage arise under the same underlying Primary Policy and the dispute with each excess insurer involves various forms of "prior knowledge" exclusions. These issues are presently pending before Judge Lynch in the District Court.[3] It thus makes little sense to risk inconsistent decisions and to expend duplicative judicial effort solely to stand on the ceremony of "first to file."

Arch's unsupported argument that its choice of forum should be "entitled to deference because it is the plaintiff in this action and stands to suffer real injury in this coverage dispute" turns this controversy on its head and should be flatly rejected. (See Opp. Br. at p. 13). It is the Moving Insureds – individuals who have been forced to litigate with Arch and the other insurers, at their own expense, in order to obtain coverage to which they are entitled and which has been repeatedly and wrongfully denied by these insurers – who are the injured parties. Arch cannot, in any event, suffer any legally cognizable "injury" from being required to advance defense costs in accordance with the terms of its policy.[4] Further, there is no reason to believe that the District Court is any less capable than this Court of properly determining an advancement motion against Arch, if and when such a motion is made. Arch's claim of "injury" is plainly wrong and, in any event, insufficient to avoid dismissal.

Arch's argument that dismissal should be denied because the Moving Insureds "are engaged in blatant forum shopping" is also factually wrong, and unsupported by the case law. (Opp. Br. at p. 15). Courts have stated that, for purposes of the first-filed rule, "[f]orum shopping occurs when a litigant selects a forum with only a slight connection to the factual

---

[3]  To be clear, in the case of AWAC and Arch, these issues will be pending before the District Court upon the withdrawal of the Bankruptcy reference, as described herein.

[4]  Moreover, Arch will be entitled to repayment of such advances if it ultimately prevails in the coverage dispute.

circumstances of his action, or where forum shopping alone motivated the choice." Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 513 (S.D.N.Y. 2004). "A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping." Id. at 513-14.

Here, the "timing in filing of the Adversary Proceeding" does not demonstrate that the action was "motivated purely by forum shopping," as Arch suggests. (Opp. Br. at p. 15). Rather, the plaintiffs' inclusion of Arch, in addition to AWAC, in the Adversary Proceeding is entirely consistent with the Insureds' position all along that litigation with Arch should wait until the dispute is ripe. At the time the complaint in the Adversary Proceeding was amended to include Arch, AWAC, the insurer directly below Arch on the "tower" of Refco D&O insurance, had just been ordered to advance defense costs pending a final determination of coverage under the AWAC Policy, and thus the AWAC Policy began to be depleted. The Adversary Proceeding was commenced against Arch (and AWAC) in the Bankruptcy Court because that court was the proper initial forum for a controversy involving assets of Refco's chapter 11 estates, including the various excess insurance policies.[5]

Arch's accusation that the Moving Insureds are engaged in forum shopping is further contradicted by the Insureds' consent to AWAC's motion to withdraw the reference as to the entire Adversary Proceeding. (See Cashman Reply Aff. Ex. C). As set forth in our Moving

---

[5] While the District Court has subject matter jurisdiction over the Adversary Proceeding under 28 U.S.C. § 1334(b), as an action related to the Refco Chapter 11 cases, in the Southern District of New York there is a standing order by which all such cases are referred to the Bankruptcy Court in accordance with 28 U.S.C. § 157(a), and thus the Adversary Proceeding was required to be filed in the Bankruptcy Court in the first instance. Pursuant to 28 U.S.C. § 157(d), the District Court may withdraw the reference to the Bankruptcy Court for a particular action on motion of a party. As our Moving Brief stated would occur (Moving Br. at 14 n.7, 17), AWAC has filed a motion to withdraw the reference for the Adversary Proceeding, which Arch (which also filed its own motion) and the Moving Insureds have consented to. (See Reply Affirmation of Richard Cashman ("Cashman Reply Aff."), Exs. A (AWAC motion), B (Letter from Arch to Judge Lynch) and C (Consent of Insureds).

Brief, the Moving Insureds' goal when they added Arch as a defendant in the Adversary Proceeding was to have all coverage-related disputes with Refco's D&O insurance carriers proceed in the District Court, not in the Bankruptcy Court.  In fact, each of the other excess insurers – Axis, AWAC and XL – now recognizes that the District Court is the most efficient forum to address their disputes with the Insureds regarding coverage.  The fact that any advancement motion against Arch in the Adversary Proceeding will be brought before Judge Lynch – and not Judge Drain, who has ordered advancement by Axis and AWAC – further indicates that the Moving Insureds are truly concerned with efficiency of the proceedings, and are clearly not engaged in forum shopping.   Indeed, it is Arch, and not the Moving Insureds, that is engaged in forum shopping by its insistence that two separate courts construe identical policy provisions and rule on the impact of prior knowledge exclusions.

Finally, the opposition by certain of the Insureds to Arch's attempt to intervene in the Axis Adversary Proceeding does not remotely show that the Moving Insureds have engaged in forum shopping.  Approximately eight months ago, such Insureds opposed Arch's intervention because Arch sought to inject facts and issues into that proceeding that were beyond the scope of the issues before the Bankruptcy Court at that time.  Specifically, Arch sought to have the Bankruptcy Court separately construe its policy with respect to advancement of defense costs at a time when no demand for advancement had been made of Arch.  As such, the Insureds were well within their rights to oppose Arch's motion to intervene, and the fact that the Insureds now seek to consolidate the coverage disputes in the District Court does not constitute forum shopping.

**B.**     **The Instant Coverage Dispute Can Be Properly Adjudicated in Federal Court**

In its Opposition Brief, Arch attempts to characterize the instant coverage dispute as concerning "novel questions of state law that should be adjudicated by a New York state court in the first instance." (Opp. Br. at p. 17). Arch specifically asserts in this regard that "[t]he outcome of the advancement issue will have profound consequences for insurers and insureds alike." (Id. at p. 18). Arch's concern is unfounded. In reaching his decisions regarding advancement under the Axis and AWAC policies, Judge Drain merely interpreted the language in those policies, as well as the language contained in the Primary Policy, in light of relevant federal and state court decisions on advancement. (See, e.g., Cashman Aff. Ex. O).

In fact, Judge Drain's decisions ordering advancement in connection with the Axis and AWAC policies reveal that the Bankruptcy Court was guided primarily by the language of the insurance contracts themselves, including language of the Primary Policy that was incorporated by reference into the Axis and AWAC policies. (See id. at p. 4) (noting that insurance policy disputes "hinge, as this one does, on the terms of the contract").[6] The Bankruptcy Court read these provisions, which it determined "contemplate[ ] that defense costs will be advanced subject to later refund if the coverage dispute ultimately is determined in the insurer's favor," in light of well-established principles of contract interpretation under New York law, including the obligation to construe any ambiguity against an insurer and to construe insurance policies in favor of the insured when interpreting the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability. (Id. at pp. 5-7, 13). The Bankruptcy Court observed that it was not "writing on a clean slate,"

---

[6]  Condition (D)(2) of the Primary Policy, which was incorporated by reference into the Axis and AWAC policies and interpreted by Judge Drain in connection with his advancement decisions involving Axis and AWAC, is also incorporated by reference into the Arch Policy. (See Cashman Aff. Ex. B at Condition (D)(2); Ex. H at Insuring Agreement (C)).

and specifically cited to other federal and state court decisions granting advancement of defense costs. (See id. at pp. 15-22). Because, as recognized by Judge Drain, the advancement determination is primarily guided by the policy language itself, the dispute with Arch fails to present "novel" issues of state law requiring a decision by the New York state courts "in the first instance."

Arch further argues that the Moving Insureds' motion to dismiss "should be denied . . . [because] the federal court may abstain from adjudicating the Adversary Proceeding" pursuant to the mandatory abstention provisions of the United States Code. However, this Court is not the proper court to rule on whether a federal court must or should abstain from hearing the claims in the Adversary Proceeding against Arch. Following the withdrawal of the reference for the Adversary Proceeding, Arch's motion for abstention, filed in the Bankruptcy Court on May 13, 2008 (see Cashman Reply Aff. Ex. D (Notice of Motion to Abstain)), will be decided by the District Court, where Judge Lynch will make the determination as to whether abstention is warranted.

Moreover, Arch has failed to adequately set forth the elements required for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2). Specifically, a party seeking mandatory abstention must demonstrate that: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) § 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be "timely adjudicated" in state court. In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 331 (S.D.N.Y. 2003).

Under the circumstances present here, with numerous related actions pending before Judge Lynch, the final element – that the claims can be "timely adjudicated" in state court – is not met.[7]  See Bondi v. Grant Thornton Int'l, 322 B.R. 44, 50 (S.D.N.Y. 2005); In re Global Crossing, Ltd. Sec. Litig., 311 B.R. 345, 349 (S.D.N.Y. 2003) (Lynch, J.) (rejecting abstention and recognizing that, rather than promoting "timely adjudicat[ion]" of claims, a state court action "would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court").  In fact, Judge Lynch recently rejected an abstention motion for a case related to the Refco bankruptcy for, inter alia, failure of the movant to meet its burden of proving that its claims can be "timely adjudicated" in the state court action where there were, as here, numerous related cases pending in the District Court.  See Kirschner v. Grant Thornton LLP, 07 MDL No. 1902 (GEL), 2008 WL 1827644, at *11 (S.D.N.Y. Apr. 21, 2008).[8]

**C.    The Interests of Judicial Efficiency Clearly Support Dismissal**

In arguing that "[t]he Court may simply stay adjudication of Count I of Arch's [Complaint]" in favor of the Adversary Proceeding (see Opp. Br. at p. 20), Arch implicitly acknowledges, as set forth in the Moving Brief, that the Adversary Proceeding is the more comprehensive action, and that allowing the instant action to proceed subjects the Moving Insureds not only to conducting discovery in two forums, but also to the possibility of inconsistent judgments.  (See Mov. Br. at pp. 16-17; Opp. Br. at pp. 20-21).  Such circumstances strongly indicate that judicial efficiency is promoted by dismissal of this action in favor of the Adversary Proceeding.  (See Mov. Br. at pp. 15-17).  Moreover, Arch's proposed "solution" is

---

[7]  The Moving Insureds, by their discussion of Arch's clear failure to meet the final, "timely adjudication" element for mandatory abstention, do not concede that Arch has met each of the other five elements.  As discussed above, that determination will be made by Judge Lynch following briefing on Arch's abstention motion.

[8]  As Arch has filed its abstention motion, this Court may wish to defer any decision on the present motion to dismiss until Judge Lynch has decided such motion.

fundamentally flawed.  If Arch did not remain a defendant in the Adversary Proceeding, then the

Moving Insureds would still have to re-litigate issues under the AWAC prior knowledge

exclusion in this action after prevailing on such issues in the Adversary Proceeding as against

AWAC.  If Arch did remain a defendant in the Adversary Proceeding, then the Moving Insureds

would be simultaneously litigating the same issues with Arch in two forums.

        Arch further attempts to rely upon the Stipulated Order for Entry of Judgment

between Bennett and Arch (the "Stipulated Order") to support its position that determining "the

effect of the AWAC Prior Knowledge Exclusion will be streamlined in this action" and thus,

dismissal is unwarranted.  (Opp. Br. at p. 21).  However, Arch dramatically misrepresents the

contents of the Stipulated Order.  In its Opposition Brief, Arch states that "[i]n stipulating to the

judgment, Bennett agreed that 'as of August 11, 2005, [he] . . . possessed knowledge of facts and

circumstances that a reasonable person would suppose might afford valid grounds for a claim or

that would indicate the probability of any such claim." (Id.).  The actual text of the Stipulated

Order reveals no such stipulation by Bennett, but merely states that Bennett "agrees that the Arch

Policy does not afford him any coverage whatsoever for any of the Underlying Matters" and

"consents to the entry of judgment against him on Counts I and II of the [Complaint]." (See

Affirmation of John H Eickemeyer in Support of Arch's Opposition to Certain Defendants'

Motion to Dismiss the First Amended Complaint ("Eickemeyer Aff.") Ex. I).

        Moreover, Arch's argument as to the "streamlining" effect of the Stipulated Order

is grossly overstated, as Arch has completely ignored, among other things, the severability

provisions of the Primary Policy, to which the Arch Policy "follows form." (See Mov. Br. at pp.

5-6).  Specifically, as set forth in the Moving Brief, the Primary Policy includes a "Full

Severability" endorsement, which provides that "[n]o knowledge or information possessed by

any Insured will be imputed to any other Insured." (Mov. Br. at pp. 5-6. See also Cashman Aff.
Ex. B. at Endorsement No. 10). The Primary Policy also provides that for purposes of
determining the application of an exclusion, "[n]o Wrongful Act of any Insured person will be
imputed to any other Insured Person who did not have actual knowledge of, or directly
participate in the commission of, such Wrongful Act. . . ." (Mov. Br. at p. 6; Cashman Aff.
Ex. B at Exclusions).

The Stipulated Order is thus far from dispositive as to the coverage disputes
between the Moving Insureds and AWAC (or Arch) even if it does somehow establish
"knowledge" as to Bennett. In any event, Arch has not explained how the Stipulated Order
would have any more of a "streamlining" effect in this Court than in the District Court. In sum,
the Stipulated Order is irrelevant to the determination of the present motion.

Finally, the importance of the Primary Policy's provisions in interpreting excess
policy provisions which "follow form" makes clear that the Moving Insureds do not "overstate"
the substantive connection to the actions before Judge Lynch. (See Opp. Br. at p. 22). Arch's
argument that "none of the [coverage proceedings before Judge Lynch as to Axis, AWAC and
XL] concern[s] coverage under the Arch Policy or the Arch Prior Knowledge Exclusion" clearly
ignores that the Axis and AWAC policies, like the Arch Policy, "follow form" with the Primary
Policy. (Id. at p. 23). As a result, in both the Adversary Proceeding and the Axis Adversary
Proceeding, Judge Lynch will be required to construe the same provisions of the Primary Policy
in order to determine coverage under each of the Axis, AWAC and Arch policies.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Moving Brief,

this Court should exercise its broad discretion and dismiss or stay the present action pursuant to

CPLR 3211(a)(4) or CPLR § 2201 in favor of the Adversary Proceeding in order to promote

judicial efficiency, conserve judicial resources and avoid potentially inconsistent results.

Dated: May 14, 2008

KATTEN MUCHIN ROSENMAN LLP

Helen B. Kim
575 Madison Avenue
New York, NY 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for Defendant Dennis A. Klejna*

HELLER EHRMAN LLP

Richard Cashman
Times Square Tower
7 Times Square
New York, NY 10036-6524
Telephone: (212) 832-8300
Facsimile: (212) 763-7600

*Attorneys for Defendant Philip Silverman*

FRIEDMAN & WITTENSTEIN
A Professional Corporation

Ivan Kline
600 Lexington Avenue
New York, NY 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391

*Attorneys for Defendants William M. Sexton
and Gerald M. Sherer*

ZUCKERMAN SPAEDER LLP

Norman L. Eisen (*pro hac vice* pending)
Laura Neish
1540 Broadway, Suite 1604
New York, NY 10036
Telephone: (212) 704-9600
Facsimile: (212) 740-4256

*Attorneys for Defendant Tone N. Grant*

13

SAUL EWING LLP

_(signature)_ /NB
_____
John J. Jerome
245 Park Avenue, 24th Floor
New York, NY 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920

*Attorneys for Defendant Joseph Murphy*


WEIL, GOTSHAL & MANGES LLP

_(signature)_ /NB
_____
Greg A. Danilow
Michael F. Walsh
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Leo R. Breitman,
Nathan Gantcher, David V. Harkins, Scott L.
Jaeckel, Thomas H. Lee, Ronald L. O'Kelley,
and Scott A. Schoen*


PROSKAUER ROSE LLP

_(signature)_ /NB
_____
Claire P. Gutekunst
1585 Broadway
New York, NY 10036-8299
Telephone: (212) 969-3421
Facsimile: (212) 969-2900

*Attorneys for Defendant Richard N. Outridge*


GAGE SPENCER & FLEMING, LLP

_(signature)_ /NB
_____
William Fleming
410 Park Avenue, 9th Floor
New York, NY 10022-4407
Telephone: (212) 768-4900
Facsimile: (212) 768-3629

*Attorneys for Defendants John D. Agoglia and
Peter McCarthy*


GIBBONS P.C.

_(signature)_ /NB
_____
Lawrence S. Lustberg
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Telephone: (212) 649-4700
Facsimile: (212) 333-5980

*Attorneys for Defendant Frank Mutterer*

14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ARCH INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN D. AGOGLIA, PHILLIP R. | ) |
| BENNETT, LEO R. BREITMAN, EDWIN | ) |
| L. COX, SUKHMEET DHILLON, | ) |
| THOMAS H. DITTMER, NATHAN | ) |
| GANTCHER, STEPHEN GRADY, TONE | ) |
| GRANT, THOMAS HACKL, DAVID V. | ) |
| HARKINS, SCOTT L. JAECKEL, | ) |
| DENNIS A. KLEJNA, THOMAS H. LEE, | ) |
| ERIC G. LIPOFF, SANTO C. MAGGIO, | ) |
| PETER MCCARTHY, JOSEPH | ) |
| MURPHY, FRANK MUTTERER, | ) |
| RICHARD N. OUTRIDGE, RONALD L. | ) |
| O'KELLEY, SCOTT A. SCHOEN, | ) |
| WILLIAM M. SEXTON, GERALD | ) |
| SHERER, PHILIP SILVERMAN and | ) |
| ROBERT C. TROSTEN | ) |
| | ) |
| Defendants. | ) |
| | ) |

Index No.: 08/600029

**AFFIDAVIT OF SERVICE**

FILED

MAY 1 6 2008

NEW YORK
COUNTY CLERK'S OFFICE

DISTRICT OF COLUMBIA    :
                        :  SS.:
                        :

**MARC E. RINDNER,** being duly sworn, deposes and says:

1.    I am a partner at Wiley Rein, LLP, resident in its Washington, D.C. office, and am counsel to plaintiff Arch Insurance Company in the above-captioned litigation.

2.    On February 28, 2008, I caused a copy of the Summons and Complaint and Amended Summons and Amended Complaint of plaintiff Arch Insurance Company to be

1

delivered to defendants Sukhmeet Dhillon and Eric Lipoff by and through their counsel Neil A. Goteiner, Esq., Farella, Braun & Martel, LLP, 235 Montgomery Street, 30th Floor, San Francisco, CA 90067.

3.      On May 13, 2008 I received confirmation that defendants Dhillon and Lipoff, by and through their counsel, did waive formal service under C.P.L.R. 308 and accept service of the aforementioned filings.

4.      Further affiant sayeth not.

_____
Marc E. Rindner

Sworn to and subscribed before me
on this the *14* day of *May*_____, 2008.

_____
Notary Public
*My Commission expires 6-14-10*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARCH INSURANCE COMPANY,

                            Plaintiff,

             -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER, STEPHEN
GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC
G. LIPOFF, SANTO C. MAGGIO, PETER
MCCARTHY, JOSEPH MURPHY, FRANK
MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN and ROBERT C.
TROSTEN,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No. 08/600029
IAS Part 39

Justice Helen E. Freedman

**NOTICE OF MOTION
FOR VOLUNTARY
DISCONTINUANCE AS
AGAINST DEFENDANTS
THOMAS H. DITTMER
AND STEPHEN GRADY**



     **PLEASE TAKE NOTICE** that, upon the annexed affirmation of Daniel C. Green, sworn to May 16, 2008, and all the papers and proceedings heretofore had herein, Plaintiff Arch Insurance Company ("Arch") will move this Court, on the 12th day of June, 2008, at 9:30 a.m., at Room 130 of the Supreme Court of New York, County of New York, 60 Centre Street, New York, New York, for an Order pursuant to N.Y. C.P.L.R. 3217(b) discontinuing the above-captioned action without prejudice as against defendants Thomas H. Dittmer and Stephen Grady.

     **PLEASE TAKE FURTHER NOTICE** that, pursuant to C.P.L.R. 2214(b), opposing papers, if any, must be served such that the undersigned has them in hand no later than June 5, 2008.

Dated: New York, New York
       May 16, 2008

                                        Respectfully submitted,

                                        VEDDER PRICE P.C.

                                        By: _____

                                            John H. Eickemeyer, Esq.
                                            Daniel C. Green, Esq.
                                            1633 Broadway, 47th Floor
                                            New York, New York  10019
                                            (212) 407-7700

                                            Of Counsel:
                                            Daniel J. Standish
                                            Marc E. Rindner
                                            Cara Tseng Duffield
                                            WILEY REIN LP
                                            1776 K Street, N.W.
                                            Washington, D.C.  20006
                                            (202) 719-7000

                                            *Attorneys for Plaintiff*
                                            *Arch Insurance Company*

TO:

William Flemming
Gage Spencer & Fleming, LLP
410 Park Avenue
New York, NY  10022
(212) 768-4900
*Attorneys for Defendants John D. Agoglia and Peter J. McCarthy*

Jeffrey T. Golenbock
Golenbock Eisman Assor Bell & Pesko LLP
437 Madison Avenue
New York, NY  10022
(212) 907-7373
*Attorneys for Defendant Phillip R. Bennett*

Paul A. Ferrillo
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8372
*Attorneys for Defendants Leo R. Breitman, Nathan Gantcher, David V. Harkins,*
*Scott L. Jaekel, Thomas H.Lee, Ronald L. O'Kelley, and Scott A. Schoen*

2

Martin R. Bennett
Kugle Skelton & Bennett, PC
130 E. Corsicana, Ste. 302
Athens, TX 75751
(903) 675-5151
*Attorneys for Defendant Edwin Cox*

Neil A. Goteiner
Farella, Braun & Martel
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
(415) 954-4485
*Attorneys for Defendants Sukhmeet Dillon and Eric Lipoff*

Thomas C. Wolford
Neal Gerber & Eisenberg, LLP
2 North LaSalle Street
Chicago, IL 60602
(312) 269-5675
*Attorneys for Defendant Thomas H. Dittmer*

Lawrence J. Kotler
Duane Morris & Heckscher, LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1514
*Attorneys for Defendant Stephen Grady*

William A. Schreiner, Jr., Esq.
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
(202) 778-1858
*Attorneys for Defendant Tone Grant*

Laura L. Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036
(212) 704-9600
*Attorneys for Defendant Tone Grant*

Helen Kim
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA  90067
(310) 788-4525
*Attorneys for Defendant Dennis Klejna*

Scott E. Hershman
Hunton & Williams
200 Park Avenue, 43rd Floor
New York, NY  10166
(212) 309-1053
*Attorneys for Defendant Santo C. Maggio*

John R. Jerome
Saul Ewing, LLP
245 Park Avenue
24th Floor
New York, NY  10167
*Attorneys for Defendant Joseph Murphy*

Janet Costello
Gibbons, P.C.
One Gateway Center
Newark, NJ  07102
973-596-4825
*Attorneys for Defendant Frank Mutterer*

Claire P. Gutekunst
Proskauer Rose, LLP
1585 Broadway
New York, NY  10036
(212) 969-3421
*Attorneys for Defendant Richard N. Outridge*

Ivan Kline
Friedman & Wittenstein, P.C.
600 Lexington Avenue
New York, NY  10022
(212) 750-8700
*Attorneys for Defendants William M. Sexton and Gerald Sherer*

4

Richard Cashman
Heller Ehrman, LLP
Times Square Tower
7 Times Square
New York, NY  10036
(212) 847-8796
*Attorneys for Defendant Philip Silverman*

Barbara Moses
Morvillo, Abramowitz, Grand, Iason & Silberberg, PC
565 Fifth Avenue
New York, NY  10017
(212) 880-9540
*Attorneys for Defendant Robert C. Trosten*

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ARCH INSURANCE COMPANY, | Index No. 08/600029 |
| | IAS Part 39 |
| Plaintiff, | |
| | |
| -against- | Justice Helen E. Freedman |
| | |
| JOHN D. AGOGLIA, PHILLIP R. BENNETT, | **AFFIRMATION OF DANIEL** |
| LEO R. BREITMAN, EDWIN L. COX, | **C. GREEN IN SUPPORT OF** |
| SUKHMEET DHILLON, THOMAS H. | **MOTION FOR VOLUNTARY** |
| DITTMER, NATHAN GANTCHER, STEPHEN | **DISCONTINUANCE AS** |
| GRADY, TONE GRANT, THOMAS HACKL, | **AGAINST DEFENDANTS** |
| DAVID V. HARKINS, SCOTT L. JAECKEL, | **THOMAS H. DITTMER** |
| DENNIS A. KLEJNA, THOMAS H. LEE, ERIC | **AND STEPHEN GRADY** |
| G. LIPOFF, SANTO C. MAGGIO, PETER | |
| MCCARTHY, JOSEPH MURPHY, FRANK | |
| MUTTERER, RICHARD N. OUTRIDGE, | |
| RONALD L. O'KELLEY, SCOTT A. SCHOEN, | |
| WILLIAM M. SEXTON, GERALD SHERER, | |
| PHILIP SILVERMAN and ROBERT C. | |
| TROSTEN, | |
| | |
| Defendants. | |

Daniel C. Green, an attorney duly admitted to practice law before the courts of this State, under the penalties of perjury, hereby affirms as follows:

1.      I am an attorney associated with Vedder Price P.C., attorneys of record for Arch Insurance Company ("Arch") herein. I make this affirmation in support of Arch's motion for an Order pursuant to N.Y. C.P.L.R. 3217(b) discontinuing without prejudice the above-captioned action as against defendants Thomas H. Dittmer ("Dittmer") and Stephen Grady ("Grady").

2.      Copies of the Summons and Complaint and the Amended Summons and Amended Complaint were delivered to defendant Dittmer by and through his counsel, Thomas C. Wolford of Neal, Gerber & Eisenberg, LLP, by overnight delivery on February 25, 2008.

Written confirmation that Dittmer accepted service of the aforementioned filings was received from his counsel on or around March 7, 2008.

3.    Copies of the Summons and Complaint and the Amended Summons and Amended Complaint were delivered to defendant Grady by and through his counsel, Lawrence J. Kotler of Duane, Morris & Heckscher, LLP, by overnight delivery on February 28, 2008. Written confirmation that Grady accepted service of the aforementioned filings was received from his counsel on or around March 3, 2008.

4.    Now, having entered into Settlement and Release Agreements with Dittmer and Grady, Arch wishes to discontinue the action as to both of them.

5.    No party would be prejudiced by this partial discontinuance.

WHEREFORE, it is respectfully requested that an Order pursuant to N.Y. C.P.L.R. 3217(b) be entered discontinuing this action as against defendants Thomas H. Dittmer and Stephen Grady.

Dated: May 16, 2008

_____
Daniel C. Green

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>           Plaintiff,<br><br>      -against-<br><br>JOHN D. AGOGLIA, PHILLIP R. BENNETT,<br>LEO R. BREITMAN, EDWIN L. COX,<br>SUKHMEET DHILLON, THOMAS H.<br>DITTMER, NATHAN GANTCHER, STEPHEN<br>GRADY, TONE GRANT, THOMAS HACKL,<br>DAVID V. HARKINS, SCOTT L. JAECKEL,<br>DENNIS A. KLEJNA, THOMAS H. LEE, ERIC<br>G. LIPOFF, SANTO C. MAGGIO, PETER<br>MCCARTHY, JOSEPH MURPHY, FRANK<br>MUTTERER, RICHARD N. OUTRIDGE,<br>RONALD L. O'KELLEY, SCOTT A. SCHOEN,<br>WILLIAM M. SEXTON, GERALD SHERER,<br>PHILIP SILVERMAN and ROBERT C.<br>TROSTEN,<br><br>           Defendants. | Index No. 08/600029<br>IAS Part 39<br><br><br>Justice Helen E. Freedman<br><br><br><br>**AFFIDAVIT OF SERVICE** |

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NEW YORK  )

      DANIEL C. GREEN, being sworn, says:

      1.     I am not a party to the action, am over 18 years of age, and reside in New York, New York.

      2.     On May 16, 2008, I caused to be served the within **Notice of Motion for Voluntary Discontinuance as Against Defendants Thomas H. Dittmer and Stephen Grady and Affirmation of Daniel C. Green in Support of Motion for Voluntary Discontinuance as Against Defendants Thomas H. Dittmer and Stephen Grady, with accompanying Order,** upon counsel to the following parties via electronic mail, and by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within this State, addressed to each person named below at the address indicated:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D.<br>McCarthy, Peter J. | William Fleming, Esq.<br>Gage Spencer & Fleming, LLP<br>410 Park Avenue<br>New York, NY  10022<br>(212) 768-4900<br>wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock, Esq.<br>Golenbock Eisman Assor<br>   Bell & Pesko LLP<br>437 Madison Avenue<br>New York, NY  10022<br>(212) 907-7373<br>jgolenbock@golenbock.com |
| Breitman, Leo R.<br>Gantcher, Nathan<br>Harkins, David V.<br>Jaekel, Scott L.<br>Lee, Thomas H.<br>O'Kelley, Ronald L.<br>Schoen, Scott A. | Paul A. Ferrillo, Esq.<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY  10153<br>(212) 310-8372<br>Paul.ferrillo@weil.com |
| Cox, Edwin | Martin R. Bennett, Esq.<br>Kugle, Skelton & Bennett<br>130 E. Corsicana, Ste. 302<br>Athens, TX  75751<br>(903) 675-5151<br>mbennett@ksbpc.com |
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner, Esq.<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA  94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford, Esq.<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL  60602<br>(312) 269-5675<br>Twolford@ngelaw.com |

2

| Defendant(s) | Counsel |
|---|---|
| Grady, Stephen | Lawrence J. Kotler, Esq.<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA  19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |
| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C.  20036<br>(202) 778-1858<br>wschreiner@zuckerman.com<br><br>Laura E. Neish, Esq.<br>Zuckerman Spaeder LLP<br>1540 Broadway, Suite 1604<br>New York, NY  10036<br>(212) 704-9600<br>lneish@zuckerman.com |
| Klejna, Dennis | Helen Kim, Esq.<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA  90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman, Esq.<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY  10166<br>(212) 309-1053<br>shershman@hunton.com |

3

| Defendant(s) | Counsel |
|---|---|
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome, Esq.<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |
| Sexton, William M.<br>Sherer, Gerald | Ivan Kline, Esq.<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>ikline@friedmanwittenstein.com |
| Silverman, Philip | Richard Cashman, Esq.<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |

4

| Defendant(s) | Counsel |
|---|---|
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand, Iason &<br>Silberberg, PC<br>565 Fifth Avenue<br>New York, NY  10017<br>(212) 880-9540<br>bmoses@magislaw.com |

DANIEL C. GREEN

Sworn to before me this
16th of May, 2008

Notary Public

FRANCINE TORMEY
Notary Public, State of New York
Registration No. 01TO6143179
Qualified in Queens County
Commission Expires April 3, 2010
Certificate on File in New York County

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------

ARCH INSURANCE COMPANY,

                          Plaintiff,

            -against-

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER, STEPHEN
GRADY, TONE GRANT, THOMAS HACKL,
DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC
G. LIPOFF, SANTO C. MAGGIO, PETER
MCCARTHY, JOSEPH MURPHY, FRANK
MUTTERER, RICHARD N. OUTRIDGE,
RONALD L. O'KELLEY, SCOTT A. SCHOEN,
WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN and ROBERT C.
TROSTEN,

                        Defendants.

------------------------------------------------

Index No. 08/600029
IAS Part 39

Justice Helen E. Freedman

**ORDER FOR VOLUNTARY
DISCONTINUANCE AS
AGAINST DEFENDANTS
THOMAS H. DITTMER
AND STEPHEN GRADY**

NYS SUPREME COURT
RECEIVED
MAY 1 6 2008
MOTION SUPPORT OFFICE

    **THIS MATTER,** having been brought by Vedder Price P.C., 1633 Broadway, 47th Floor, New York, New York 10019, attorneys for plaintiff Arch Insurance Company ("Arch"), for an Order, pursuant to N.Y. C.P.L.R. 3217(b), discontinuing the above-captioned action without prejudice as against defendants Thomas H. Dittmer and Stephen Grady, and the Court having considered the papers submitted and for good cause shown;

    It is on this _____ day of _____, 2008,

    **ORDERED** that the above-captioned action is discontinued without prejudice as against defendants Thomas H. Dittmer and Stephen Grady; and it is

**FURTHER ORDERED** that a copy of this order shall be served on all parties to this action within ten (10) days.

_____

Hon. Helen E. Freedman, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK



ARCH INSURANCE COMPANY,

        Plaintiff,

        v.

JOHN D. AGOGLIA, *et al.*,

        Defendants.

Index No.: 08/600029

004615

SO ORDERED

FILED

STIPULATION OF PARTIAL
DISCONTINUANCE WITH
PREJUDICE

MAY 27 2008

NEW YORK
COUNTY CLERK'S OFFICE

Plaintiff Arch Insurance Company ("Arch") and Defendant Santo C. Maggio ("Maggio"), by and through their undersigned attorneys, jointly file this Stipulation of Partial Discontinuance with Prejudice.

**WHEREAS,** certain individuals have sought coverage under the "Arch Policy" for the "Underlying Matters," as those terms are defined in the First Amended Complaint for Declaratory Judgment (the "FAC") filed by Arch on February 22, 2008;

**WHEREAS,** Maggio has acknowledged that he is not entitled to any coverage whatsoever under the Arch Policy for the Underlying Matters or for any other demand, action, proceeding or investigation, including, but not limited to, any demand, action, proceeding or investigation based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters; and

**WHEREAS,** no party to this action is an infant, incompetent or person for whom a committee has been appointed.

**NOW THEREFORE IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned, who have been duly authorized by Arch and Maggio to enter into this Stipulation, as follows:

1.     Maggio waives formal service of process under C.P.L.R. 308 and acknowledges service and receipt of Arch's Amended Summons and the FAC on March 6, 2008;

2.     Maggio agrees that the Arch Policy does not afford him any coverage whatsoever for any of the Underlying Matters or for any other action, proceeding or investigation, including, but not limited to, any matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

3.     Maggio agrees that he will not seek coverage under the Arch Policy for any action, proceeding or investigation, including, but not limited to, any matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

4.     Arch's causes of action asserted in the FAC are discontinued with prejudice as against Maggio only; and

5.     Each party shall bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

Dated: April *18*, 2008

_____
Scott E. Hershman
HUNTON & WILLIAMS
200 Park Avenue
43rd Floor
New York, New York  10166
(212) 309-1053

*Counsel for Defendant Santo C. Maggio*

_____
John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Counsel for Plaintiff Arch Insurance Company*

SO ORDERED, this 8 day of May, 2008

By: _____

FILED

MAY 27 2008

NEW YORK
COUNTY CLERK'S OFFICE

-3-

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                         ) ss.:

COUNTY OF NEW YORK  )

FRANCINE TORMEY, being sworn, says:

1.     I am not a party to the action, am over 18 years of age and reside in Queens, New York.

2.     On April 21, 2008, I caused a true copy of the within **STIPULATION OF PARTIAL DISCONTINUANCE WITH PREJUDICE** to be served by electronic and U.S. mail upon each defendant in this action through their counsel as follows:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D.<br>McCarthy, Peter J. | William Fleming, Esq.<br>Gage Spencer & Fleming, LLP<br>410 Park Avenue<br>New York, NY 10022<br>(212) 768-4900<br>wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock, Esq.<br>Golenbock Eisman Assor<br>   Bell & Pesko LLP<br>437 Madison Avenue<br>New York, NY 10022<br>(212) 907-7373<br>jgolenbock@golenbock.com |
| Breitman, Leo R.<br>Gantcher, Nathan<br>Harkins, David V.<br>Jaekel, Scott L.<br>Lee, Thomas H.<br>O'Kelley, Ronald L.<br>Schoen, Scott A. | Paul A. Ferrillo, Esq.<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8372<br>Paul.ferrillo@weil.com |
| Cox, Edwin | Martin R. Bennett, Esq.<br>Kugle, Skelton & Bennett<br>130 E. Corsicana, Ste. 302<br>Athens, TX 75751<br>(903) 675-5151<br>mbennett@ksbpc.com |

| Defendant(s) | Counsel |
|---|---|
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner, Esq.<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA 94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford, Esq.<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL 60602<br>(312) 269-5675<br>Twolford@ngelaw.com |
| Grady, Stephen | Lawrence J. Kotler, Esq.<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA 19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |
| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C. 20036<br>(202) 778-1858<br>wschreiner@zuckerman.com |
| Klejna, Dennis | Helen Kim, Esq.<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman, Esq.<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY 10166<br>(212) 309-1053<br>shershman@hunton.com |

| Defendant(s) | Counsel |
|---|---|
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome, Esq.<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |
| Sexton, William M.<br>Sherer, Gerald | Ivan Kline, Esq.<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>ikline@friedmanwittenstein.com |
| Silverman, Philip | Richard Cashman, Esq.<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand, Iason & Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

3.      On April 21, 2008, I caused a true copy of the within **STIPULATION OF PARTIAL DISCONTINUANCE WITH PREJUDICE** to be served by U.S. mail upon Richard N. Outridge at 24 Pennbrook Drive, Lincoln University, Pennsylvania 19352.

FRANCINE TORMEY

Sworn to before me this
21st day of April, 2008

Notary Public

NANCY J. NEUBAUER
Notary Public, State of New York
No. 01NE5041602
Qualified in New York County
Commission Expires April 10, 2011

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **HELEN E. FREEDMAN**    PART  39
*Justice*

Arcg Ins. Co.,

                       **Plaintiff,**

- v -

John D. Aboglia et al.,

                       **Defendants**

INDEX NO.  600029/08

MOTION DATE  _____

MOTION SEQ. NO.  001

MOTION CAL. NO.  _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits -- Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

## Cross-Motion: ☐ Yes  ☐ No

Motion for an order granting *pro hac vice* admission is granted without opposition; Cara Tseng Duffield, Marc E. Rindner, and Daniel J. Standish,  Esqs. may appear on behalf of plaintiff in this action only.  This is the order of the Court.

*(vertical left margin)* MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

**FILED**

JUN 02 2008

COUNTY CLERKS OFFICE NEW YORK

Dated: **May 22, 2008**

_____
Helen E. Freedman, J.S.C.

2008 JUN 21  P 2: 22        312410

Check one: ☐ **FINAL DISPOSITION**    ☑ **NON-FINAL DISPOSITION**

Check if appropriate    ☐ **DO NOT POST**

Page 1 of  1

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____        PART _____

_____
*Justice*

INDEX NO. *600029-08*

MOTION DATE _____

MOTION SEQ. NO. *#003*

MOTION CAL. NO. _____

Index Number : 600029/2008

**ARCH INSURANCE COMPANY**

VS.

**AGOGLIA, JOHN D.**

SEQUENCE NUMBER :  # 003

OTHER          (PRO HAC VICE)

...ere read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:**  ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion *for pro hac vice admission of Norman Eisen is granted w/o opposition for this case.*

**FILED**

JUN 06 2008

COUNTY CLERK'S OFFICE
NEW YORK

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: *6/5/08* _____        _____ J.S.C.

Check one:  ☐ **FINAL DISPOSITION**    ☑ **NON-FINAL DISPOSITION**

Check if appropriate:  ☐ **DO NOT POST**        ☐ **REFERENCE**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

ARCH INSURANCE COMPANY,

            Plaintiff,

       Index No.: 08/600029

      - against -

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER,
STEPHEN GRADY, TONE GRANT,
THOMAS HACKL, DAVID V.
HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE,
ERIC G. LIPOFF, SANTO C. MAGGIO,
PETER MCCARTHY, JOSEPH MURPHY,
FRANK MUTTERER, RICHARD N.
OUTRIDGE, RONALD L. O'KELLEY,
SCOTT A. SCHOEN, WILLIAM M.
SEXTON, GERALD SHERER, PHILIP
SILVERMAN and ROBERT C. TROSTEN,

          Defendants.
------------------------------------------------------------X

**NOTICE OF FILING
NOTICE OF REMOVAL**

FILED

JUN 10 2008

NEW YORK
COUNTY CLERK'S OFFICE

TO THE CLERK OF THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY
OF NEW YORK:

      PLEASE TAKE NOTICE that on June 9, 2008, Defendant Eric G. Lipoff, by and
through his attorney, filed the attached Notice of Removal in the United States District Court for
the Southern District of New York.

Dated: New York, New York
       June 2008

FARELLA BRAUN & MARTEL LLP

By:

Neil A. Goteiner

235 Montgomery Street
San Francisco, CA 94104
(415) 954-4485

*Attorneys for Defendant Eric G. Lipoff*

2008 JUN 26  P 2: 23

3 1 2 4 1 2

6 10 08

# Exhibit A

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x

ARCH INSURANCE COMPANY,             :

              Plaintiff,             :

      v.             :

JOHN D. AGOGLIA, PHILLIP R. BENNETT,    :
LEO R. BREITMAN, EDWIN L. COX,          :
SUKHMEET DHILLON, THOMAS H.             :
DITTMER, NATHAN GANTCHER,               :
STEPHEN GRADY, TONE GRANT,              :
THOMAS HACKL, DAVID V. HARKINS,         :
SCOTT L. JAECKEL, DENNIS A. KLEJNA,     :
THOMAS H. LEE, ERIC G. LIPOFF, SANTO    :
C. MAGGIO, PETER MCCARTHY, JOSEPH       :
MURPHY, FRANK MUTTERER, RICHARD         :
N. OUTRIDGE, RONALD L. O'KELLEY,        :
SCOTT A. SCHOEN, WILLIAM M. SEXTON,     :
GERALD SHERER, PHILIP SILVERMAN and     :
ROBERT C. TROSTEN,                      :

            Defendants.             :

---------------------------------------------------- x



**NOTICE OF REMOVAL OF
ACTION PURSUANT TO 28
U.S.C. § 1452**



**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    **PLEASE TAKE NOTICE** that, on this date, Eric G. Lipoff, Removing Defendant, by

his undersigned counsel, files this Notice of Removal pursuant to 28 U.S.C. § 1452 removing

this entire action from the Supreme Court of the State of New York, County of New York ("New

York State Court"), to the United States District Court for the Southern District of New York

("Court" or "New York District Court"). This Court has original jurisdiction over this matter

pursuant to 28 U.S.C. § 1334(b).

    In support of this Notice of Removal, the Removing Defendant states as follows:

1

**THE COMPLAINT**

      1.      This insurance action for declaratory relief arises out of the 2005 collapse of Refco, a provider of brokerage and clearing services in the international derivatives, currency and futures markets. Refco's collapse spawned numerous lawsuits (the "Underlying Matters"), almost all of which are pending in this Court.

      2.      Plaintiff Arch Insurance Company ("Arch") is the fourth tier excess carrier for a tower of Directors & Officers liability insurance under which certain defendants are additional insureds.

      3.      On or about January 4, 2008, Arch commenced a civil action by filing a summons and complaint in the New York State Court, captioned *Arch Insurance Co., et al. v. Agoglia, et al.*, Index No. 08600029. Upon information and belief, Arch made no attempt to serve that summons or complaint.

      4.      On or about February 22, 2008, Arch filed a First Amended Complaint seeking a declaratory judgment that Arch's excess policy (the "Arch Policy") affords no coverage for the Defendants in connection with the Underlying Matters. A copy of the Amended Summons and First Amended Complaint are attached to this Notice of Removal, as Exhibit A (hereinafter "Arch Compl.").

      5.      Specifically, Arch seeks a declaration that no coverage is available under its policy because of a "prior-knowledge" exclusion contained in the third tier excess policy issued by Allied World Assurance Company (U.S.), Inc. ("AWAC") (Count I), and because of a similar "prior knowledge" exclusion in the Arch Policy itself (Count II). (*See* Arch Compl. at ¶¶ 113-20).

20371\1605859.1

6.      Pursuant to 28 U.S.C. § 1446(a), the Removing Defendant represents that apart from the Summons and Complaint attached hereto as Exhibit A, the Removing Defendant has received no other process, pleadings, motions, or orders in this action.

7.      The Arch Complaint mirrors, in substantial part, coverage litigation with two other excess carriers, Axis Reinsurance Company and XL Specialty Insurance Company, which have also denied coverage based on "prior knowledge" exclusions in their policies. Both of those coverage actions are also pending in this Court. *See Axis Reinsurance Co. v. Bennett et al.,* 07 Civ. 7924 (S.D.N.Y. Sept. 7, 2007) and Adv. Pro. No. 07-01712 (Bankr. S.D.N.Y. May 23, 2007), reference withdrawn, No. 08-Civ. 3242); and *XL Specialty Insurance Co. v. Agoglia et al.,* 08-Civ.-3821 (S.D.N.Y. Apr. 22, 2008). In addition, a third coverage litigation with the third excess tier carrier, Allied World Assurance Company (U.S.), Inc., is currently pending in the United States Bankruptcy Court for the Southern District of New York, and motions to withdraw the reference to the Bankruptcy Court, filed by Arch and Allied World Assurance Company (U.S.), Inc., are currently pending in this Court. *See Murphy v. Allied World Assurance Company (U.S.), Inc.,* Adv. Pro. No. 08-01133 (Bankr. S.D.N.Y. Mar. 12, 2008), motions to withdraw reference pending, 08 Civ. 4196 (S.D.N.Y. 2008).

## GROUNDS FOR REMOVAL PURSUANT TO 28 U.S.C. 1452(A)

8.      Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under § 1334 of this title." Under 28 U.S.C. § 1334(b), this Court has jurisdiction to hear all civil proceedings that are "related to cases under title 11," which is the Bankruptcy Code.

9.      This action is "related to" the Refco's Chapter 11 bankruptcy, which is currently pending in this district, See *In re Refco, Inc.,* No. 05-60006 (RDD) Bankr. S.D.N.Y.). The Arch

3

20371\1605859.1

Policy, which is the subject of the Arch Complaint, is an asset of Refco's Chapter 11 estates. Indeed, it is precisely because the excess insurance policies are assets of the Refco's Chapter 11 estates that the Bankruptcy Court exercised its jurisdiction and ordered two other excess carriers to advance defense fees and costs for certain of the named defendants. *See Axis Reinsurance Co. v. Bennett et al.,* Adv. Pro. No. 07-01712 (Bankr. S.D.N.Y. May 23, 2007), reference withdrawn, No. 08-Civ. 3242; *Murphy v. Allied World Assurance Company (U.S.), Inc.,* Adv. Pro. No. 08-01133 (Bankr. S.D.N.Y. Mar. 12, 2008), motions to withdraw reference pending, 08 Civ. 4105 (S.D.N.Y. 2008).

10. The policies at issue, including the Arch Policy, also pertain to litigation pending before Judge Lynch in the Southern District of New York.

11. Accordingly, this action is "related to" the Refco Chapter 11 Cases, and removal is proper under 28 U.S.C. § 1452(a).

**TIMELINESS**

12. The Removing Defendant has timely filed this Notice of Removal within 30 days of receipt, through service or otherwise, of a copy of the initial pleading in accordance with 28 U.S.C. § 1446(b) and Fed. R. Bankr. P. 9027(a)(3). The Removing Defendant received, through service or otherwise, a copy of the initial pleading no earlier than May 13, 2008.

13. The Removing Defendant will promptly serve a copy of this Notice on counsel for Arch and file a copy of this Notice with the Clerk of the New York State Court in accordance with the terms of 28 U.S.C. § 1446(d) and Fed. R. Bankr. 9027(b) and (c). A true and correct copy of the Certificate of Service for this Notice of Removal is attached hereto as Exhibit B.

4

**NON-CORE**

14.    As required under Fed. R. Bankr. P. 9027(a)(1), the Removing Defendant states

that the claims asserted against him are non-core, within the meaning of 28 U.S.C. § 157(b), and

that he does not consent to entry of final orders or judgment by a bankruptcy judge.

**RELATED CASES**

15.    In addition to the Refco Chapter 11 Cases, the instant action is related to three

other insurance coverage actions and numerous other civil litigations coordinated or consolidated

for pre-trial purposes by the Judicial Panel on Multidistrict Litigation as a multi-district litigation

in this Court under the caption In *re: Refco Securities Litigation*, No. 07 MDL 1902 (Dec. 28,

2007).[1]  Many of the factual allegations in the Refco MDL, which concern the alleged fraudulent

scheme by certain alleged Refco insiders, serve as the basis for Arch's position that it has no

obligation to provide insurance coverage under the Arch Policy.  Indeed, Arch's first cause of

action brought in this action, relies upon the prior knowledge exclusion in the AWAC Policy, has

already been brought in the Refco MDL by the very same defendants as those here as part of a

declaratory judgment against AWAC.  The Refco MDL includes the following 14 civil actions,

coordinated or consolidated for pre-trial purposes before the Honorable Gerard E. Lynch:

(a)    the consolidated securities class action, *In re Refco, Inc. Sec. Litig.*, 05

Civ. 8626 (S.D.N.Y. 2005) (consolidating 19 separate and independently filed actions);

(b)    the consolidated customer class action, *In re Refco Capital Mkts., Ltd.

Brokerage Customer Sec. Litig.*, 06 Civ. 643 (S.D.N.Y. 2006) (consolidating two separate and

independently filed actions);

(c)    *Kirschner v. Grant Thornton LLP et al.*, No. 07 Civ. 11604 (S.D.N.Y.

---

[1] Another related action for which coverage has been sought under the Arch Policy is *Kirschner v. Agoglia, et al.*, Case No. 07-03060 (Bkrptcy. S.D.N.Y.)

(d)     *Am. Fin. Int'l Group Asia, LLC v. Refco, Inc. et al.*, 05 Civ. 8988

(e)     *Carmona v. Paulson et. al.*, 05 Civ. 9327 (S.D.N.Y. 2005);

(f)     *Thomas H. Lee Equity Fund V. L.P. et al. v. Bennett et. al.*, 05 Civ. 9608 (S.D.N.Y. 2005);

(g)     *Kirschner v. Thomas H. Lee Partners, L.P. et al.*, 07 Civ. 7074 (S.D.N.Y. 2007);

(h)     *Thomas H. Lee Equity Fund V, L.P. et al. v. Mayer, Brown, Rowe & Maw L.L.P.*, 07 Civ. 6767 (S.D.N.Y. 2007).

(i)     *Kirschner v. Phillip R. Bennett, et al.*, 07 Civ. 8165 (S.D.N.Y. 2007);

(j)     *Axis Reinsurance Co. v. Bennett et al.*, 07 Civ. 7924 (S.D.N.Y. 2007);

(k)     *In re Refco Inc.*, 07 Civ. 9420 (S.D.N.Y. 2007),

(l)     *Kirschner v. Hackl*, 07 Civ. 9238 (S.D.N.Y. 2007),

(m)     *XL Specialty Co. v. Agoglia*, 08 Civ. 3821 (S.D.N.Y. 2008) and

(n)     *Murphy v. Allied World Assurance Company (U.S.), Inc.*, 08 Civ. 4105 (S.D.N.Y. 2008).

16.     In light of the substantial body of related litigation involving many of the same parties, and common questions of law and fact, pending in the New York District Court, the Removing Defendant will promptly file a notice of tag-along action with the Judicial Panel on Multidistrict Litigation pursuant to J.P.M.L. Rule 7.4 to have this case coordinated or consolidated for pre-trial proceedings with the related civil cases in Paragraph 15 above. According to J.P.M.L. Rule 7.5(a), the Panel need not take any action in order to coordinate or consolidate this action with the Refco MDL because this action has been filed in the transferee district in which the Refco MDL is pending.  Accordingly, the Removing Defendant, pursuant to

6

Local Rule 1.6(a), has noted on the Civil Cover Sheet filed with this Notice that this action is related to the Refco MDL.

WHEREFORE, the Removing Defendant respectfully requests that this Court accept this Notice of Removal of Action and grant him such other and further relief as the Court deems just and proper.

Dated: June 4, 2008

Respectfully submitted,

NEIL GOTEINER
PARELLA BRAUN & MARTEL LLP

Neil A. Goteiner
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4485
Facsimile: (415) 954-4480

*Attorneys for Defendant Eric G. Lipoff*

7

# EXHIBIT A.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

ARCH INSURANCE COMPANY,                    )
                                            )
                    Plaintiff,              )        Index No.: 08/600029
                                            )
        v.                                  )
                                            )
JOHN D. AGOGLIA, PHILLIP R.                 )
BENNETT, LEO R. BREITMAN, EDWIN             )        **AMENDED SUMMONS**
L. COX, SUKHMEET DHILLON,                   )
THOMAS H. DITTMER, NATHAN                   )
GANTCHER, STEPHEN GRADY, TONE               )
GRANT, THOMAS HACKL, DAVID V.               )
HARKINS, SCOTT L. JAECKEL,                  )
DENNIS A. KLEJNA, THOMAS H. LEE,            )
ERIC G. LIPOFF, SANTO C. MAGGIO,            )
PETER MCCARTHY, JOSEPH                      )
MURPHY, FRANK MUTTERER,                     )
RICHARD N. OUTRIDGE, RONALD L.              )
O'KELLEY, SCOTT A. SCHOEN,                  )
WILLIAM M. SEXTON, GERALD                   )
SHERER, PHILIP SILVERMAN and                )
ROBERT C. TROSTEN                           )
                                            )
                    Defendants.             )
                                            )

NEW YORK
COUNTY CLERKS OFFICE

FEB 22 2008

NOT COMPARED
WITH COPY FILE

**TO THE ABOVE NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve

a copy of your answer, or if the Complaint is not served with this summons, to serve a notice of

appearance on plaintiff's attorneys, within twenty (20) days after the service of this summons,

exclusive of the day of service (or within thirty (30) days after the service is complete if this

summons is not personally delivered to you in the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the Complaint. Plaintiff designates New York County as the place of trial.

NEWYORK/#191889.1

The basis for venue is that plaintiff Arch Insurance Company's principal place of business is located at One Liberty Plaza, 53rd Floor, New York, NY 10006, and the County of New York is therefore the proper venue for trial pursuant to CPLR §503(a).

Dated:  February 21, 2008                    Respectfully submitted,

                                             VEDDER PRICE P.C.


                                             By: _____
                                                 John H. Eickemeyer
                                                 Daniel C. Green

                                             1633 Broadway
                                             47th Floor
                                             New York, New York 10019

                                             (212) 407-7700

                                             Of Counsel:

                                             Daniel J. Standish
                                             Marc E. Rindner
                                             Cara Tseng Duffield
                                             WILEY REIN LLP
                                             1776 K Street, NW
                                             Washington, DC 20006
                                             202-719-7000

                                             *Attorneys for Plaintiff*
                                             *Arch Insurance Company*

To:

John D. Agoglia
3 Sweet Hollow Ct.
St. James, NY 11780

Phillip R. Bennett
125 Colt Lane
Gladstone, NJ  07934

2

NEWYORK/#191889.1

Leo R. Breitman
7767 Wind Key Drive
Boca Raton, FL 33434

Edwin L. Cox
c/o Brian O'Connor, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Sukhmeet Dhillon
1 Upper Vintage
Laguna Niguel, CA 92677-9202

Thomas H. Dittmer
150 S. Wacker Drive, Suite 1200
Chicago, IL 60606-4201

Nathan Gantcher
86 Birchall Drive
Scarsdale, NY 10583

Stephen Grady
c/o Lawrence J. Kotler, Esq.
Duane, Morris & Heckscher LLP
30 South 17th Street
Philadelphia, PA 19103

Tone Grant
680 North Lake Shore Drive, Apt. 1620
Chicago, IL 60611

Thomas Hackl
c/o Avraham C. Moskowitz, Esq.
Moskowitz and Book, LLP
1372 Broadway
New York, NY 10018

David V. Harkins
Corn Point Road
Marblehead, MA 01945

Scott L. Jaeckel
151 Tremont Street, Apt. 25E
Boston, MA 02111-1123

3

Dennis A. Klejna
2301 E Street NW, Apt. A1010
Washington, DC 20037-2829

Thomas H. Lee
322 E. 57th Street
New York, NY 10022

Eric G. Lipoff
c/o Stephen M. Ray, Esq.
Robert A. Greenfield, Esq.
Stutman, Treister & Glatt PC
1901 Avenue of Stars, 12th Floor
Los Angeles, CA 90067

Santo C. Maggio
1825 8th Street South
Naples, FL 34102

Peter McCarthy
38 South Bridge Street
Poughkeepsie, NY 12601

Joseph Murphy
1038 Bloom Street
Hoboken, NJ 07030

Frank Mutterer
c/o Lawrence S. Lustberg, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

Ronald L. O'Kelley
6001 Trophy Drive, Apt. 1002
Naples, FL 34110

Richard N. Outridge
24 Pennbrook Dr.
Lincoln University, PA 19352

Scott A. Schoen
191 Kings Grant Road
Weston, MA 02493

4

William M. Sexton
c/o Stuart I. Friedman, Esq.
Ivan Kline, Esq.
Friedman & Wittenstein, P.C.
600 Lexington Avenue
New York, NY 10022

Gerald Sherer
333 Central Park West, Apt. 81
New York, NY  10025-7145

Philip Silverman
3 Edie Drive
Marlboro, NJ 07746

Robert C. Trosten
895 Scioto Drive
Franklin Lakes, NJ 07417

NEWYORK/#191889.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————
ARCH INSURANCE COMPANY,                )
                                       )
            Plaintiff,                 )        Index No.: 08-600029
                                       )
      v.                               )
                                       )
JOHN D. AGOGLIA, PHILLIP R.            )        **FIRST AMENDED COMPLAINT**
BENNETT, LEO R. BREITMAN, EDWIN        )        **FOR DECLARATORY JUDGMENT**
L. COX, SUKHMEET DHILLON,              )
THOMAS H. DITTMER, NATHAN              )
GANTCHER, STEPHEN GRADY, TONE          )
GRANT, THOMAS HACKL, DAVID V.          )
HARKINS, SCOTT L. JAECKEL,             )
DENNIS A. KLEJNA, THOMAS H. LEE,       )
ERIC G. LIPOFF, SANTO C. MAGGIO,       )
PETER MCCARTHY, JOSEPH                 )
MURPHY, FRANK MUTTERER,                )
RICHARD N. OUTRIDGE, RONALD L.         )
O'KELLEY, SCOTT A. SCHOEN,             )
WILLIAM M. SEXTON, GERALD              )
SHERER, PHILIP SILVERMAN and           )
ROBERT C. TROSTEN,                     )
                                       )
            Defendants.                )
                                       )
———————————————————

      In support of its first amended complaint against defendants, plaintiff Arch Insurance

Company ("Arch") alleges as follows:

                              **INTRODUCTION**

      1.    Arch issued an excess directors, officers and corporate liability insurance policy to

Refco, Inc. ("Refco") for the period from August 11, 2005 to August 11, 2006 (the "Arch

Policy"). Since August 11, 2005, numerous lawsuits and governmental and/or regulatory

investigations (the "Underlying Matters") involving certain individuals insured under the Arch

Policy have been instituted and various of those individuals have tendered the Underlying

Matters to Arch for coverage under the Arch Policy. Arch brings this action against the defendants named herein ("Defendants") to seek a declaration that the Arch Policy affords no coverage for the Defendants in connection with the Underlying Matters.

2. This is the second lawsuit that Arch has filed in this court for a declaration regarding the parties' rights and responsibilities under the Arch Policy. The first lawsuit (Index No. 600805/06) was dismissed without prejudice by Justice Freedman in an opinion dated February 20, 2007 based on two factors that no longer exist. First, the Arch Policy contains a limit of liability that is $10 million excess of $40 million in underlying limits, and Justice Freedman ruled that it was entirely speculative whether the Underlying Matters would ever generate losses that would implicate the Arch Policy. Since that ruling, the limits of the underlying policies have been depleted at a voracious pace. As of the filing of this first amended complaint, the underlying insurers have advanced approximately $27.5 million in attorneys' fees and costs, and the bevy of law firms representing the individual insureds is generating over $2 million per month in additional fees and costs. Thus, contrary to the position that the individual insureds advanced before this Court when Arch filed its first action, it is far from speculative whether, setting aside the dispositive coverage issues that Arch outlines in this complaint based on the unique terms of its Policy, the Arch limit will be implicated.

3. Justice Freedman also held that Arch could not proceed with the first action because the question whether any insured had knowledge of facts or circumstances that might give rise to a claim as of the Arch Policy inception date – key issue for purposes of the exclusions that form the basis for Arch's denial of coverage – would overlap with issues that were not yet adjudicated in the Underlying Matters. That impediment no longer exists. Beginning on December 19, 2007, three former executives of Refco – namely, its former Chairman, President and Chief

2

Executive Officer, Phillip R. Bennett, its former Chief Financial Officer, Robert C. Trosten, and its former Executive Vice President, Santo C. Maggio – pleaded guilty to a number of federal charges, including conspiracy, securities, wire and bank fraud, making false filings with the SEC, making false statements to Refco's auditors and money laundering. In connection with their guilty pleas, Bennett, Trosten and Maggio, all of whom are insureds under the Arch Policy, each admitted that he knew of and participated in the wrongdoing that is at the heart of the allegations in the Underlying Matters. These guilty pleas and related admissions of fact, which establish that Bennett, Trosten and Maggio knew of the wrongdoing at the time of the inception of the Arch Policy, trigger the applicability of the exclusions identified in this amended complaint as to all of the Defendants in this action with respect to the Underlying Matters without regard to the outcome of any unresolved proceeding involving any other Defendant. Thus, the second ground for the dismissal of Arch's first action no longer exists.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction to resolve an actual controversy between Arch and the Defendants pursuant to the New York Declaratory Judgment Act, CPLR § 3001.

5.  Personal jurisdiction over Defendants is proper pursuant to CPLR § 301 and § 302. Defendants possess sufficient minimum contacts with the state of New York to render the exercise of jurisdiction by a New York court permissible under traditional notions of fair play and substantial justice. Defendants were directors or officers of Refco, a corporation with its principal place of business in New York.[1] As directors and/or officers of Refco, Defendants

---

[1] "Refco", as used herein, refers to Refco, Inc., the publicly-traded company formed in connection with an August 2005 initial public offering, Refco Group Ltd., LLC ("RGL"), the company through which Refco, Inc.'s business primarily was conducted prior to the offering, and the subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

3

transacted business in the state of New York. In addition, some or all of Defendants seek coverage under the Arch Policy for the Underlying Matters. Accordingly, Defendants have an ongoing contractual relationship with Arch, a corporation with its principal place of business in New York. Finally, most of the lawsuits comprising the Underlying Matters were filed in the federal courts located in New York. These lawsuits allege that Defendants committed acts in the state of New York and/or acts outside the state of New York that could reasonably be expected to have consequences in the state of New York.

6. Venue is proper in this County under CPLR § 503 because Arch has its principal place of business in this County.

**PARTIES**

7. Arch is an insurance company that is organized and exists pursuant to the laws of the state of Missouri. Arch has its principal place of business in New York County, New York.

8. Defendant John D. Agoglia ("Agoglia") served as a senior vice president at Refco Securities, LLC, a subsidiary of Refco, Inc., at times relevant to this action. Upon information and belief, Agoglia is a citizen of New York.

9. Defendant Phillip R. Bennett ("Bennett") served as the Chairman, President and Chief Executive Officer of Refco until October 2005, when he took a leave of absence at the request of the Refco board of directors. Upon information and belief, Bennett is a citizen of New Jersey.

10. Defendant Leo R. Breitman ("Breitman") served as a director of Refco at times relevant to this action. Upon information and belief, Breitman is a citizen of Florida.

11. Defendant Edwin L. Cox ("Cox") served as a director of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Cox is a citizen of Texas.

4

12. Defendant Sukhmeet Dhillon ("Dhillon") served as Executive Vice President of Refco Group Ltd., LLC and as Executive Vice President of the entity that became Refco LLC, during times relevant to this complaint. Upon information and belief, Dhillon is a citizen of California.

13. Thomas H. Dittmer ("Dittmer") served as Chairman and CEO of Refco during times relevant to this action. Upon information and belief, Dittmer is a citizen of Illinois.

14. Defendant Nathan Gantcher ("Gantcher") served as a director of Refco at times relevant to this action. Upon information and belief, Gantcher is a citizen of New York.

15. Defendant Stephen Grady ("Grady") was COO of Refco Global Futures LLC, a Refco subsidiary, during times relevant to this action. Upon information and belief, Grady is a citizen of New Jersey.

16. Defendant Tone Grant ("Grant") served as President of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Grant is a citizen of Illinois.

17. Defendant Thomas Hackl ("Hackl") served as Executive Vice President of RGL at times relevant to this action. Upon information and belief, Hackl is a citizen of Geneva, Switzerland.

18. Defendant David V. Harkins ("Harkins") served as a Director of Refco at times relevant to this action. Upon information and belief, Harkins is a citizen of Massachusetts.

19. Defendant Scott L. Jaeckel ("Jaeckel") served as a Director of Refco at times relevant to this action. Upon information and belief, Jaeckel is a citizen of Massachusetts.

20. Defendant Dennis A. Klejna ("Klejna") served as Executive Vice President and General Counsel of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Klejna is a citizen of Washington, D.C.

5

21. Defendant Thomas H. Lee ("Lee") served as a Director of Refco at times relevant to this action. Upon information and belief, Lee is a citizen of New York.

22. Defendant Eric G. Lipoff ("Lipoff ") served as Executive Vice President of a Refco subsidiary at times relevant to this action. Upon information and belief, Lipoff is a citizen of California.

23. Defendant Santo C. Maggio ("Maggio") served as an Executive Vice President of Refco and as President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd. at times relevant to this action. Upon information and belief, Maggio is a citizen of Florida.

24. Defendant Peter McCarthy ("McCarthy") served as Executive Vice-President of Refco Securities at times relevant to this action. Upon information and belief, McCarthy is a citizen of New Jersey.

25. Defendant Joseph Murphy ("Murphy") served as President of Refco from October 2005 to November 28, 2005, when he resigned. Murphy also served as Chief Executive Officer of Refco Global Futures and President of Refco, LLC at times relevant to this action. Upon information and belief, Murphy is a citizen of New Jersey.

26. Defendant Frank Mutterer ("Mutterer") served as Controller of Refco Group Ltd., LLC, during times relevant to this action. Upon information and belief, Mutterer is a citizen of New Jersey.

27. Defendant Richard N. Outridge ("Outridge") served as CFO of Refco Capital Management at times relevant to this action. Upon information and belief, Outridge is a citizen of Pennsylvania.

6

28. Defendant Ronald L. O'Kelley ("O'Kelley") served as a Director of Refco at times relevant to this action. Upon information and belief, O'Kelley is a citizen of Florida.

29. Defendant Scott A. Schoen ("Schoen") served as a Director of Refco at times relevant to this action. Upon information and belief, Schoen is a citizen of Massachusetts.

30. Defendant William M. Sexton ("Sexton") served as Executive Vice President and Chief Operating Officer of Refco at times relevant to this action. Upon information and belief, Sexton is a citizen of Iowa.

31. Defendant Gerald Sherer ("Sherer") served as Executive Vice President and Chief Financial Officer of Refco at times relevant to this action. Upon information and belief, Sherer is a citizen of New York.

32. Defendant Philip Silverman ("Silverman") served as Secretary of Refco at times relevant to this action. Upon information and belief, Silverman is a citizen of New Jersey.

33. Robert C. Trosten ("Trosten") served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Trosten is a citizen of New Jersey.

## FACTUAL ALLEGATIONS

### The Arch Policy

34. The Arch Policy is an excess directors, officers and corporate liability policy. It has a policy period of August 11, 2005 to August 11, 2006 and a limit of liability of $10 million excess of $40 million in underlying insurance. A copy of the Arch Policy is attached as Exhibit A.

35. Various other insurers issued underlying insurance policies to Refco. U.S. Specialty Insurance Company issued a primary policy with limits of $10 million excess of applicable retentions (the "Primary Policy"). A copy of the Primary Policy is attached as Exhibit B. Lexington Insurance Company issued a first excess policy with limits of $7.5 million excess of

7

$10 million (the "Lexington Policy"). A copy of the Lexington Policy is attached as Exhibit C.

Axis Reinsurance Company issued a second excess policy with limits of $10 million excess of

$17.5 million (the "Axis Policy"). A copy of the Axis Policy is attached as Exhibit D. Allied

World Assurance Company issued a third excess policy with limits of $12.5 million excess of

$27.5 million (the "AWAC Policy"). A copy of the AWAC Policy is attached as Exhibit E.

Each of the underlying policies has a policy period of August 11, 2005 to August 11, 2006.

36. In general, the Arch Policy applies in conformance with the terms and conditions of

the Primary Policy and in conformance with the terms and conditions in the Arch Policy or any

other underlying insurance "further limiting or restricting coverage." Arch Policy, Section I.C.

The Arch Policy provides that "[i]n no event shall this Policy grant broader coverage than that

provided by the most restrictive policy included in the Underlying Insurance." *Id.* The Arch

Policy provides that coverage thereunder applies only after exhaustion of the **Underlying Limit**

solely as a result of actual payment under the **Underlying Insurance** in connection with

**Claim(s)**. *Id.*, Section I.B.[2]

37. Subject to all of its terms and conditions, the Arch Policy affords five types of

specified coverage. First, the Arch Policy affords specified coverage to **Insured Persons** for

"**Loss** arising from **Claims** first made during the **Policy Period** . . . for **Wrongful Acts**, except

when and to the extent that the **Company** has paid such **Loss** to or on behalf of the **Insured**

**Persons** as indemnification or advancement." Primary Policy, Insuring Agreement (A).

**Insured Persons** is defined in relevant part as "any past, present or future director or officer of

---

[2] Policy language appearing herein in bold typeface is defined in the policy being quoted, and
appears in bold typeface in that policy.

8

the Company . . . ." Primary Policy, Definition F(1). The "**Company**" is Refco Inc. and its

subsidiaries. Primary Policy, Definitions (C), (H), (O), Declarations Item 1.

38. Second, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the Company for "**Loss** arising from . . . **Claims** first made during the **Policy**

**Period** . . . against the **Insured Persons** for Wrongful Acts, if the **Company** has paid such **Loss**

to or on behalf of the **Insured Persons** as indemnification or advancement." Primary Policy,

Insuring Agreement (B)(1).

39. Third, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the Company for "**Loss** arising from Securities **Claims** first made during the **Policy**

**Period** . . . against the **Company** for Wrongful Acts." Primary Policy, Insuring Agreement

(B)(2).

40. Fourth, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the "**Controlling Shareholder**," defined as Bennett, for "**Loss** arising from a

**Securities Claim** first made during the **Policy Period** . . . against such **Controlling Shareholder**

for Wrongful Acts, provided, that one or more **Insured Persons** and/or the **Company** are and

remain co-defendants in such **Securities Claim** along with such **Controlling Shareholder**."

Primary Policy, Endorsement No. 15.

41. Fifth, subject to all of its terms and conditions, the Arch Policy affords specified

coverage to the Company for "all **Derivative Demand Investigation Costs** incurred by the

**Company** as a result of a **Derivative Demand** first received by the **Company**'s Board of

Directors and reported in writing to the Insurer during the **Policy Period** . . . up to the amount of

the **Derivative Demand Investigation Costs Sub-Limit**" of $250,000. Primary Policy,

Endorsement No. 11.

9

42. The AWAC Policy contains the following provision: "It is hereby understood and agreed that the Insurer shall not be liable for Loss in connection with any claim or claims made against the Insureds alleging, arising out of, based upon, in consequence of, or attributable to facts or circumstances of which any Insured had knowledge as of inception and (i) which a reasonable person would suppose might afford valid grounds for a claim which would fall within the scope of the coverage hereunder; or (ii) which indicate the probability of any such claim." AWAC Policy, Endorsement No. 3 ("AWAC Prior Knowledge Exclusion").

43. The Arch Policy contains the following provision: "If any Insured as of August 11, 2005 has any knowledge of or information concerning any act, error, omission, fact, matter or circumstance that might give rise to a Claim under this Policy, the Excess Insurer shall not be liable to make any payment under this Policy as a result of a Claim arising out of, based upon or attributable to any such act, error, omission, fact, matter or circumstance." Arch Policy, Endorsement No. 4 (the "Arch Prior Knowledge or Information Exclusion").

44. The Arch Policy defines Insured(s) as "any person(s) or entity(ies) that are entitled to coverage under the Followed Policy at its inception." Arch Policy, § III.B. The "Followed Policy" is the Primary Policy. Arch Policy, § III.C.; Declarations, Item 4.

45. The Arch Policy and underlying insurance policies contain other terms, conditions and limitations that may ultimately be implicated in this action.

46. Defense Costs have been advanced to certain Defendants under the Primary Policy, the Lexington Policy and the Axis Policy.[3] As of the filing of this first amended complaint, the

---

[3] The coverage defenses that Arch advances in this action are unique to the Arch Policy; thus, the fact that U.S. Specialty and Lexington advanced fees and costs has no bearing on the coverage issues presented in this case. Axis was ordered by the Refco bankruptcy court to advance fees and costs despite its denial of coverage based on its unique policy provisions and

advancement of defense costs has exhausted the $10 million limit of the Primary Policy, the

$7.5 million limit of the Lexington Policy, and the $10 million limit of the Axis Policy. The law

firms representing the defendants in the Underlying Matters are currently generating attorneys'

fees and costs in the vicinity of $2 million *per month*. Thus, it is far from conjectural that the

Arch Policy limits will be implicated unless this Court promptly adjudicates the coverage issues

presented in this case.

**The Events at Refco**

47. The Arch Policy incepted on August 11, 2005. On the same day, Refco conducted its

initial public offering.

48. On October 10, 2005, Refco issued a press release. The press release announced that

the Company had been carrying an undisclosed receivable of $430 million from an entity

controlled by Bennett. Refco stated that "[b]ased on the results of the review to date, the

Company believes that the receivable was the result of the assumption by an entity controlled by

Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company,

which may have been uncollectible." Moreover, Refco stated that although the receivable "was

reflected on the Company's prior period financials, as well as on the Company's May 31, 2005

balance sheet," the receivable "was not shown as a related party transaction in any such

financials. For that reason, and after consultation by the Audit Committee with the Company's

independent accountants, the Company determined, on October 9, 2005, that its financial

statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28,

---

contrary to the language in the operative policies. Axis has appealed that order to the United
States District Court for the Southern District of New York.

2004, February 28, 2005, and May 31, 2005, taken as a whole, for each of Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon."

49. On October 11, 2005, Refco issued a second press release. The press release announced that Bennett had repaid the $430 million receivable in full. The press release also provided further information on the nature of the receivable: "Based on the results of the internal investigation to date, the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998. These obligations were transferred periodically to the entity controlled by Mr. Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts. The fact that the receivable was from a company controlled by Mr. Bennett was hidden at the end of quarterly and annual reporting periods by reason of transfers to a third party customer account that we currently believe is unaffiliated with Mr. Bennett or anyone else at the Company."

50. On October 17, 2005, Refco and certain of its unregulated subsidiaries filed for Chapter 11 bankruptcy protection.

51. On January 16, 2007, a federal grand jury returned a third superseding indictment against Bennett, Trosten and Grant (the "S3 Indictment"). The S3 Indictment charged Bennett, Trosten and Grant with securities fraud, conspiracy to commit securities fraud, wire fraud, bank fraud and money laundering. The S3 Indictment also charged Bennett with making false filings with the SEC and making false statements to Refco's auditors. A copy of the S3 Indictment is attached hereto as Exhibit F.

52. On February 15, 2008, Bennett, who is an **Insured** under the Arch Policy, pleaded guilty to all charges against him in the S3 Indictment. Five days later, on February 20, 2008,

12

Trosten, who also is an **Insured** under the Arch Policy, similarly pleaded guilty to charges of conspiracy, securities, wire and bank fraud and money laundering.

53. The S3 Indictment charged that, beginning in the mid 1990's, Bennett, Trosten and their co-conspirators engaged in a scheme to mask the true financial performance of Refco. Specifically,

> [s]tarting at least as early as the mid 1990s, BENNETT and GRANT schemed to hide the true financial health of Refco from its banks, counterparties, auditors, and investors. Starting at least as early as the late 1990s, BENNETT and GRANT embarked on a strategy to mask the true performance of Refco's business in order to sell the company for their own benefit and that of Refco's other owners. To that end, over the ensuing years, BENNETT, TROSTEN, GRANT and others known and unknown systematically (1) covered up both Refco's own losses and customer losses for which Refco became responsible; (2) moved Refco operating expenses off the company's books; and (3) padded Refco's revenues, all in an effort to mislead Refco's banks, counterparties, auditors and investors, with the goals of keeping Refco in business and then selling it for the maximum benefit to its owners and senior management.

S3 Indictment, ¶ 7.

54. According to the S3 Indictment, in furtherance of the scheme, Bennett, Trosten and their co-conspirators made and caused Refco and others on its behalf to make false and fraudulent statements to Refco's banks, counterparties, customers, auditors and investors, and to create false audited financial statements and false public filings with the SEC.

55. The S3 Indictment charged that the scheme permitted Refco to engage in, among other things, Refco's August 2005 initial public offering of stock, in which the public purchased approximately $583 million of Refco common stock based on a false and fraudulent registration statement. S3 Indictment, ¶ 8.

56. According to the S3 Indictment, the scheme was hatched in 1997, when Refco directly and indirectly incurred a series of substantial trading losses that threatened the continued

13

viability of its business.  S3 Indictment, ¶ 9.  In response to those losses, Bennett, Trosten and

others moved losses and expenses out of Refco and into Refco Group Holdings, Inc. ("RGHI"),

an entity that owned Refco and that was owned by, among others, Bennett and Grant, in an effort

to mask Refco's financial condition.  This strategy increased the debt owed by RGHI to Refco

(the "RGHI Receivable"), which ultimately grew to over $1 billion.  *Id.*

57.  The S3 Indictment charged that, beginning as early as February 1998, Bennett and

others directed a series of transactions every year designed to hide the "huge and growing"

RGHI Receivable from, among others, Refco's auditors, by temporarily paying down all or part

of the RGHI Receivable over Refco's fiscal year-end and replacing it with a receivable from one

or more other entities not related to Bennett or Refco.  S3 Indictment at ¶ 21.  Bennett and others

caused this cover-up to occur "at every fiscal year-end from at least the fiscal year-end on

February 28, 1998 through the fiscal year-end on February 29, 2004."  *Id.*  Beginning in 2004,

Bennett and others began causing these cover-up transactions to occur at the ends of Refco's

quarterly reporting periods.  *Id.* at ¶ 46.

58.  The S3 Indictment further charged that Bennett, Trosten and others participated in a

scheme to defraud participants in the 2004 leveraged buyout of Refco, which was led by private

equity fund Thomas H. Lee Partners, by misleading the fund and purchasers of the $600 million

in notes and $800 million in bank debt about the true financial health of Refco.  S3 Indictment, ¶

34.

59.  Based on these and other allegations, the S3 Indictment charged Bennett as follows:



| 1 | Conspiracy to commit securities fraud, wire fraud, to make false filings with the SEC, to make material misstatements to auditors, bank fraud and money laundering |
|---|---|

| Count | Charge |
|---|---|
| 2 | Securities fraud in connection with the sale of 9% Senior Subordinated Notes due 2012 |
| 3 | Securities fraud in connection with the purchase and sale of Refco common stock |
| 4 | False filing with the SEC in connection with the filing of Refco's Form 10-K under the Exchange of 1934 on July 19, 2005 |
| 5, 6 | False filing with the SEC in connection with the filing of certain registration statements under the Securities Act of 1933 on April 6, 2005 and August 8, 2005 |
| 7 – 13 | Wire fraud in connection with certain electronic communications between June 22, 2004 and August 5, 2005, including the transmission of Refco's Form 10-K on July 19, 2005 and its registration statements on April 6, 2005 and August 8, 2005 |
| 14 | Material misstatements to auditors |
| 15 | Bank fraud in connection with the 2004 leverage buyout transaction |
| 16 – 20 | Money laundering in connection with proceeds of the 2004 leverage buyout transaction |

60. On February 15, 2008, Bennett pleaded guilty to all twenty counts against him in the S3 Indictment. A copy of the transcript of the hearing ("2/15 Tr.") is attached hereto as Exhibit G. During the hearing at which Bennett pleaded guilty, the following exchange occurred between the Court and Bennett:

THE COURT: Mr. Bennett, did you commit the crimes for which you've been charged?

THE DEFENDANT: I did, your honor.

THE COURT: Would you tell me in your own words what you did?

15

THE DEFENDANT: Your Honor, during the period that I served as CEO of Refco, I agreed with other Refco executives to enter into a series of transactions at the end of Refco's financial reporting periods to make it appear as if a receivable due to Refco from Refco Upholdings, Inc. [sic], a related party, was instead due from an independent third-party customer.

The IGHI [sic] receivable was composed of, amongst other things, historical customer losses, bad debts, and expenses that IGHI [sic] had incurred on behalf of Refco.

I, along with other Refco executives, have caused Refco to enter into these transactions in order to conceal the size and nature of the IGHI [sic] receivable. We concealed the receivable from, amongst others, Refco's auditors, Thomas H. Lee Partners, various lenders who, in 2004, participated in Refco's senior secured credit facility, and the issuance of 9 percent senior subordinated notes, and also investors in Refco's common stock.

Among the lenders to whom I knowingly caused the IGHI [sic] receivable to be misrepresented was HSBC Bank, referenced in Count Fifteen of the indictment. I and other Refco executives also used the interstate wires to accomplish these acts within this district, as referenced in Counts Seven through Thirteen. Furthermore, I caused funds obtained from the transaction with Thomas H. Lee Partners, referenced in paragraph 34 of the indictment, to be wired to various parties receiving proceeds from the transaction, as referenced in Counts Sixteen through Twenty, knowing that this money had been unlawfully obtained.

The IGHI [sic] receivable and related party transaction used to conceal it were material information that Refco investors and lenders would have wanted to have known prior to investing in or lending money to Refco. While I believed that I would be able to pay the IGHI [sic] receivable down over time, and did, in fact, ultimately pay [sic] off the receivable balance in its entirety, I knew that obtaining funds from Refco's investors and lenders based on misleading financial statements was also wrong.

I also caused Refco to file documents with the SEC, namely S1, S4, and 10-K that did not disclose the full extent of the IGHI [sic] receivable or the transactions used to conceal it; and, thus, were false and misleading with respect to material facts. I knew that failing to disclose these facts in public filings and in connection with Refco's sale and registration of Refco's notes and common stock was wrong , and I deeply regret having done so.

16

Your Honor, I take full responsibility for my actions . . . .

2/15 Tr. at 16-20.

61. At the conclusion of the February 15, 2008 hearing, the Court found that Bennett

pleaded guilty knowingly and voluntarily:

> THE COURT: Mr. Bennett, I'm satisfied that you understand the nature of the charges against you and the consequences of your plea; and that your plea is made voluntarily and knowingly; and that there is a sufficient factual basis for it.  Accordingly, I will accept your plea of guilty . . . .

2/15 Tr. at 20.

62. The S3 Indictment charged Trosten as follows:

| | |
|---|---|
| 1 | Conspiracy to commit securities fraud, wire fraud, to make false filings with the SEC, to make material misstatements to auditors, bank fraud and money laundering |
| 2 | Securities fraud in connection with the sale of 9% Senior Subordinated Notes due 2012 |
| 7, 8 | Wire fraud in connection with certain electronic communications between June 22, 2004 and August 3, 2004 5, 2005, including e-mails to representatives of Thomas H. Lee Partners |
| 15 | Bank fraud in connection with the 2004 leverage buyout transaction |
| 17-18 | Money laundering in connection with proceeds of the 2004 leverage buyout transaction |

63. On February 20, 2008, Trosten pleaded guilty to Counts 1, 2, 7, 15 and 17 against

him in the S3 Indictment.  A copy of the transcript of the hearing ("2/20 Tr.") is attached hereto

as Exhibit H.  During the hearing at which Trosten pleaded guilty, the following exchange

occurred between the Court and Trosten:

17

THE COURT: Mr. Trosten, did you commit the offenses that you are pleading guilty to?

THE DEFENDANT: I did, your honor.

THE COURT: Would you tell me, please, what you did?

*    *    *

THE DEFENDANT: Your Honor, while I was employed at Refco, I agreed with other Refco executives to hide the true nature of Refco's finances on Refco's financial statements. I knew that Refco's financial statements did not accurately reflect Refco's financial condition, because the financial statements did not disclose the full amount that Refco Group Holdings, Inc., a related party, owed to Refco. I understood that the RGHI receivable was underreported because Phillip Bennett, Refco's former chief executive officer, and other Refco executives, including me, were involved in a series of transaction at the end of Refco's financial reporting periods to make it appear as if a receivable was due from third-party customers rather than from a related party.

The RGHI receivable was composed of, amongst other things, historic customer losses, bad debts, and expenses that RGHI incurred on behalf of Refco.

In addition, I participated in a number of transactions that padded or inflated Refco's income. For example, I participated in transactions that shifted expenses off the books of Refco and onto the books of Refco Group Holdings, Inc.

I, along with other Refco executives, agreed to conceal the true size and nature of the RGHI receivable from, amongst others, Refco's auditors, Thomas H. Lee Partners; HSBC, which, in 2004, participated in Refco's senior secured credit facility, as referenced in . . . paragraph 41 and Count Fifteen of the indictment; and investors who purchased bonds that Refco issued in 2004, as referenced in Count Two of the indictment.

I left the company in August 2004, one year before the IPO of Refco. I and other executives used the interstate wires to accomplish these acts within this district, as referenced in Count Seven of the indictment.

Furthermore, I received funds obtained from the transaction with Thomas H. Lee Partners, referenced in paragraph 34 of the indictment, which I knew were proceeds from unlawful activity, as referenced in Count Seventeen.

18

> The RGHI receivable and transactions used to conceal it were material information that Refco investors and lenders would have wanted to know before investing in or lending money to Refco.
>
> I knew that obtaining funds from Refco investors and lenders based on misleading financial information was wrong . . . .
>
> Your Honor, I take full responsibility for my actions and my conduct . . . .

2/20 Tr. at 17-20.

64. At the conclusion of the February 20, 2008 hearing, the Court found that Trosten pleaded guilty knowingly and voluntarily:

> THE COURT: Mr. Trosten, I am satisfied that you understand the nature of the charges against you and the consequences of your plea, and that your plea is made voluntarily and knowingly, and that there is a factual basis for your. I will, therefore, accept your plea of guilty.

2/20 Tr. at 20.

65. Meanwhile, on December 19, 2007, Maggio, who is an Insured under the Arch Policy, pleaded guilty to a four-count criminal information (the "Maggio Information") charging him with conspiracy, securities fraud and wire fraud. A copy of the Maggio Information is attached hereto as Exhibit L.

66. The Maggio Information, which included nearly all of the same charges of misconduct as the S3Indictment, charged that Maggio was one of Bennett's and Trosten's co-conspirators and that he participated in the conduct underlying the conspiracy. In particular, the Maggio Information charged that Maggio participated in the scheme to hide the RGHI Receivable and to mask the true financial condition of Refco in the several years prior to the August 11, 2005 initial public offering.

67. Based on these and other allegations, the Maggio Information charged Maggio as follows:

19

| 1 | Conspiracy to commit securities fraud, wire fraud, to make false filings with the SEC, to make material misstatements to auditors, bank fraud and money laundering |
| 2 | Securities fraud in connection with the sale of 9% Senior Subordinated Notes due 2012 |
| 3 | Securities fraud in connection with the purchase and sale of Refco common stock |
| 4 | Wire fraud in connection with the electronic transmission of Refco's Form 10-K on July 19, 2005 |

68. On December 19, 2007, Maggio pleaded guilty to every count in the Maggio

Information. A copy of the transcript of the hearing ("12/19 Tr.") is attached hereto as Exhibit J.

During the hearing at which Maggio pleaded guilty, the following exchange occurred between

the Court and Maggio:

> THE COURT: Did you commit the offenses for which you have been charged, Mr. Maggio?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Tell me what you did.
>
> \*      \*      \*
>
> THE DEFENDANT: Your Honor, from the late 1990s to October 2005 I was a senior executive at Revko [sic] Ink [sic]. During that period I participated with others to hide the true financial health of Revko [sic] from banks, counter-parties, auditors and investors. With my knowledge and active participation Revko's [sic] substantial losses were covered up as revenues padded [sic] and certain operating expenses were moved off its book. Among the acts I personally engaged in [sic] the signing of loan agreements referencing paragraphs 61-D [loan agreement signed in furtherance of the conspiracy on or about February 20, 2004] and 61-P [loan agreement signed in furtherance of the conspiracy on or about February 23, 2005] of the indictment.
>
> As a result of my conduct and that of my coconspirators false financial statements were issued to obtain debt financing

20

from the public including 9 percent senior subordinated notes referenced in Count Two of the indictment.

To consummate the sale of 57 percent of Revko [sic] to a group headed by Thomas H. Lee in 2004 and to obtain $800 million in bank financing the same year and to effect the Revko [sic] initial public offering in 2005. [sic] Moreover, with my knowledge false financial statements were filed with the SEC including form 10K referencing Count Four. The mails and interstate wires were used as part of the fraudulent scheme.

I deeply regret my conduct and the harm that it has caused.

THE COURT: First of all, with respect to all of the activities that you've indicate you participated in it knowingly?

THE DEFENDANT: Yes.

12/19 Tr. at 17-18.

69. At the conclusion of the December 19, 2007 hearing, the Court found that Maggio

pleaded guilty knowingly and voluntarily:

Based on defendant's allocution and the recommendations by the government I find that the defendant understands the nature, the charges and consequences of his guilty plea. I also find that the plea is voluntary and that there is a factual basis for the plea. I, therefore, recommend that the plea be accepted . . . .

12/19 Tr. at 20.

70. As demonstrated by each of their guilty pleas to counts that alleged their knowledge

of, *inter alia*, efforts to hide the RGHI Receivable from the investing public prior to 2005,

Bennett, Trosten and Maggio, as of August 11, 2005, had knowledge of or information

concerning acts, errors, omissions, facts, matters or circumstances that might give rise to a Claim

under the AWAC Policy or the Arch Policy.

## The Underlying Matters

71. Beginning on October 12, 2005, various lawsuits were filed against the Defendants.

21

72. A criminal complaint was filed against Bennett (the "Bennett Criminal Complaint") on October 12, 2005 in *United States v. Bennett*, No. 05-1720 (S.D.N.Y.).

73. The Bennett Criminal Complaint alleged that Bennett knowingly "hid from investors in [Refco's] August 2005 initial public offering of stock . . . the existence of hundreds of millions of dollars of related party transactions between Refco and a company controlled by Bennett, including causing Refco to file a false and fraudulent S-1 registration statement with the Securities and Exchange Commission." Bennett Criminal Complaint, ¶ 9. A federal grand jury in New York subsequently returned a criminal "Indictment" against Bennett that was filed on or about November 10, 2005 in *United States v. Bennett, et al.*, No. 05-1192 (S.D.N.Y.). This indictment repeated and expanded upon the allegations in the Bennett Criminal Complaint. On or about October 24, 2006, the grand jury returned a "Superseding Indictment" that named both Bennett and Trosten, and a "Second Superseding Indictment" against them on or about November 16, 2006. On January 16, 2007, a "Third Superseding Indictment" – referred to above as the "Bennett Indictment" – that added Grant as a defendant was filed. On December 19, 2007, the Information against Maggio was filed. Each of these filings alleged, among other things, that the defendant(s) named therein engaged in a scheme to hide the RGHI receivable from the investing public. Collectively, the proceedings initiated by these filings will be referred to herein as the "Criminal Proceedings".

74. The Bennett Criminal Complaint was tendered to Arch for coverage under the Arch Policy on or about October 13, 2005, and the Indictment, the Superseding Indictment, the Second Superseding Indictment and/or the Third Superseding Indictment were tendered to Arch for coverage under the Arch Policy thereafter.

22

75. The suits *Mazur et al. v. Refco, Inc., et al.*, No. 05-8626 (S.D.N.Y.), *Frontpoint Fin. Serv., Inc. v. Refco, Inc., et al.*, No. 05-8663 (S.D.N.Y.), *Lieber v. Refco, Inc., et al.*, No. 05-8667 (S.D.N.Y.), *Weiss v. Refco, Inc., et al.*, No. 05-8691 (S.D.N.Y.), *Glaubach v. Refco, Inc., et al.*, No. 05-8692 (S.D.N.Y.), *Gross v. Refco, Inc., et al.*, No. 05-8697 (S.D.N.Y.), *Salamone v. Refco, Inc. et al.*, No. 05-8716 (S.D.N.Y.), *RD Partners LLC v. Refco, Inc., et al.*, No. 05-8737 (S.D.N.Y.), *Wakefield v. Refco, Inc., et al.*, No. 05-8742 (S.D.N.Y.), *Gaugler v. Bennett, et al.*, No. 05-8886 (S.D.N.Y.), *Baker v. Bennett, et al.*, No. 05-8923 (S.D.N.Y.), *Nathanson v. Bennett, et al.*, No. 05-8926 (S.D.N.Y.), *Becker v. Refco, Inc., et al.*, No. 05-8929 (S.D.N.Y.), *Mettupatti v. Bennett, et al.*, No. 05-9048 (S.D.N.Y.), *Weiss v. Bennett, et al.*, No. 05-9126 (S.D.N.Y.), *Weit v. Bennett, et al.*, No. 05-9611 (S.D.N.Y.), *Esses v. Bennett, et al.*, No. 05-9654 (S.D.N.Y.), *City of Pontiac General Employees Retirement System v. Bennett et al.*, No. 05-9941 (S.D.N.Y.), *Gensheimer v. Bennett*, No. 05-10318 (S.D.N.Y) and *Teachers' Retirement System of the State of Illinois et al. v. Lee, et al.*, No. 05-10403 (S.D.N.Y.) are purported class action securities fraud lawsuits that have been consolidated for pre-trial purposes under Case No. 05-8626 (the "Securities Litigation"). The First Amended Consolidated Class Action Complaint ("FAC") was filed in the consolidated proceedings on May 5, 2006, and the Second Amended Consolidated Class Action Complaint was filed on or about December 3, 2007.

76. The FAC and SAC allege that Refco's initial public offering registration statement and prospectus were materially false and misleading. Specifically, they allege that the registration statement and prospectus failed to disclose the existence of the RGHI Receivable. The FAC further alleges that the Refco financial statements incorporated in Refco's registration statement and prospectus were inaccurate because they failed to disclose the related-party transactions between Refco and RGHI designed to hide the RGHI Receivable. Included among

23

the defendants named in the SAC are Bennett, Sherer, Sexton, Maggio, Murphy, Silverman, Klejna, Trosten, Grant, O'Kelley, Breitman, Gantcher, Lee, Harkins, Jaeckel, and Schoen.

77. Beginning on or about October 14, 2005, some of the lawsuits comprising the Securities Litigation were tendered to Arch for coverage under the Arch Policy. The FAC was tendered to Arch by letter dated April 28, 2006.

78. The suits *David Fine v. Bennett, et al.*, No. 05-8701 (S.D.N.Y.), and *Mehta v. Bennett, et al.*, No. 05-8748 (S.D.N.Y.), which were shareholder derivative actions (the "Derivative Litigation"), have been dismissed. Bennett, Sherer, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley, Schoen, Sexton and Murphy, among others, were named as defendants in the Derivative Litigation.

79. The complaints in the Derivative Litigation alleged that Refco's initial public offering registration statement and prospectus were materially false and misleading. Specifically, the complaints alleged that the registration statement and prospectus failed to disclose the existence of the RGHI Receivable. The complaints further alleged that the Refco financial statements incorporated in its registration statement and prospectus were inaccurate because they failed to disclose the related-party transactions between Refco and RGHI that were designed to hide the RGHI Receivable.

80. The *Mehta* complaint was tendered to Arch for coverage under the Arch Policy on or about October 17, 2005.

81. The suit *Bawag P.S.K. Bank v. Refco Inc., et al.*, No. 05-60006 (S.D.N.Y. Bankr.), Adv. No. 05-03161, was filed on November 16, 2005 (the "Bawag Action"). The Bawag Action names Bennett (among others) as a defendant.

24

82. The complaint in the Bawag Action alleges that the plaintiff was fraudulently induced to loan approximately $420 million to Bennett on October 10, 2005. The complaint alleges that Bennett failed to disclose that he sought the loan to pay off the RGHI Receivable, a "related-party receivable resulting from the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to Refco [that] likely was impaired and not collectible." Bawag Action Complaint, § 17. The complaint alleges that Bennett "knew that if BAWAG had been aware of any of the key facts set forth in [Refco's] October 10, 2005 Press Release, BAWAG would not have made the Loan." *Id.*, § 30.

83. The Bawag Action was tendered to Arch for coverage under the Arch Policy on or about November 30, 2005.

84. The suit *Thomas H. Lee Equity Fund V, L.P., et al. v. Bennett, et al.*, No. 05-9608 (S.D.N.Y.), was filed on November 14, 2005 (the "THL Funds Action"). The THL Funds Action names Bennett, Grant and Maggio, among others, as defendants.

85. The complaint in the THL Funds Action alleges that in June 2004, the plaintiffs invested approximately $507 million in Refco. The complaint alleges that despite the plaintiffs' due diligence efforts, they were unaware that "Bennett intentionally and deliberately engaged in accounting fraud in order to mask a group of largely worthless receivables, bad debts and questionable obligations that, if accurately portrayed on the Company's financial statements, would have materially reduced Refco's value." THL Funds Action Complaint, § 4. Specifically, the complaint alleges that Bennett "nowhere disclosed to the THL Funds that what appeared to be a good and valid receivable from a third-party customer was actually a receivable from RGHI, an entity controlled by Bennett, representing hundreds of million dollars [sic] of customer losses and obligations that would never be repaid to the Company." *Id.*, § 30. The complaint alleges

25

that the Refco financial statements provided to the plaintiffs during their due diligence review in 2003 and 2004 were materially false and misleading.

86. The THL Funds Action was tendered to Arch for coverage under the Arch Policy on or about February 13, 2006.

87. The complaint in *Unovalores Ltd. v. Bennett*, No. L1564-05 (Sup. Ct. of New Jersey, Somerset County, Law Division) (the "Unovalores Action") was filed in New Jersey state court on or about November 1, 2005.

88. The plaintiff in the Unovalores Action, which identifies itself as a Refco Capital account holder, names only Mr. Bennett as a defendant. Plaintiff alleges that it entered into a Repurchase Transaction with Refco on August 31, 2005, in reliance upon representations in Refco's registration statement and other filings concerning Refco's financial health. Those representations were false, according to the complaint, because they concealed massive receivables owed by an entity controlled by Mr. Bennett and at least one-half billion dollars of related party transactions with Mr. Bennett.

89. The Unovalores Action was tendered to Arch for coverage under the Arch Policy on or about February 13, 2006.

90. The complaint in *American Financial International Group v. Refco, Inc., et al.*, No. 05-8988 (S.D.N.Y.) (the "American Financial Action"), was filed in the Southern District of New York on or about October 21, 2005, an amended complaint was filed on April 13, 2006, and a second amended complaint was filed on June 30, 2006.

91. The plaintiff in the American Financial Action identifies itself as a Delaware LLC that traded currencies through an account at Refco F/X Associates, LLC ("RefcoFX"). The suit is a purported class action brought on behalf of all persons who traded currencies through, or had

26

currency trading accounts with, RefcoFX from August 11, 2005 through the date the amended

complaint was filed and who have been damaged.  Included among the defendants named in the

second amended complaint are Bennett, Sherer, Sexton, Maggio, Trosten, Mutterer and

Silverman.  The second amended complaint generally alleges the same conduct that is the subject

of the Criminal Proceedings and the Securities Litigation.

92. The complaint in the American Financial Action was tendered to Arch for coverage

under the Arch Policy on or about October 25, 2005, and the amended complaint was tendered to

Arch in May 2006.

93. The complaint in *Global Management Worldwide Limited v. Philip R. Bennett, et al.,*

No. 06-0643 (S.D.N.Y.) (the "Global Management Litigation"), was filed in the Southern

District of New York on or about January 26, 2006, and a Consolidated Amended Class Action

Complaint was filed in September 2006.

94. The plaintiff in the Global Management Litigation identifies itself as a corporation

organized under the laws of Nassau, the Bahamas, that was a brokerage customer of Refco

Capital Markets, Ltd. ("RCM").  The suit is a purported class action brought on behalf of all

brokerage customers of RCM who, at any time from October 17, 2000 to October 17, 2005,

entrusted securities to RCM and/or Refco Securities, LLC, directly or indirectly, as custodian

and broker for safe-keeping, and continued to hold positions with RCM on October 17, 2005 or

thereafter.  Plaintiffs generally allege that, during the purported class period, Refco, either

directly or through its affiliates, incurred billions of dollars in losses, and tried to hide those

losses by surreptitiously selling securities held by RCM in custody for class members.  Plaintiffs

allege that the financial statements filed by Refco with the SEC during the purported class period

were false and misleading because they fraudulently omitted these losses, as well as the scheme

27

to hide the losses by selling securities stolen from plaintiffs and by building up and hiding the RGHI Receivable. Plaintiffs further allege that they relied upon these false and misleading financial statements and the purported financial integrity of Refco in entrusting securities to RCM.

95. The Global Management Litigation was tendered to Arch for coverage under the Arch Policy on or about March 14, 2006.

96. On or about October 9, 2007, two separate lawsuits were brought by seven investment entities that maintained accounts at RCM: (1) *VR Global Partners L.P., et al. v. Bennett, et al.*, Case No. 07-8686 (S.D.N.Y.) and (2) *Capital Management Select Fund Ltd., et al., v. Bennett, et al.*, Case No. 07-8688 (S.D.N.Y.). The complaints, which were tendered to Arch in October 2007, also allege that Refco insiders schemed to hide the RGHI Receivable, thereby inducing plaintiffs to maintain accounts at RCM, and converted securities owned by plaintiffs to hide losses incurred by Refco. The defendants in the *VR Global* and *Capital Management* litigations include Bennett, Sexton, Maggio, Murphy, Silverman, Trosten, Grant, Lee, Harkins, Jaeckel, Schoen and Outridge. By order dated November 20, 2007, the Global Management Litigation was consolidated for pre-trial purposes with the *VR Global* and *Capital Management* litigations. The consolidated proceedings will be referred to herein as the "RCM Brokerage Customer Securities Litigation."

97. The complaint in *Kirschner v. Thomas H. Lee Partners, L.P.*, No. 07-7074 (S.D.N.Y) (the "Trustee/THL Partners Litigation"), was filed in the Southern District of New York on or about August 8, 2007.

98. The plaintiff in the Trustee/THL Partners Litigation identifies himself as the trustee of the Refco Litigation Trust ("Trustee"). The individual defendants named in the complaint are

28

Lee, Harkins, Jaeckel, and Schoen. The Trustee generally alleges that the individual defendants breached fiduciary duties owed to Refco by failing to inform themselves of Refco's true financial state – including efforts to hide the RGHI Receivable – before making business decisions on behalf of Refco.

99. The complaint in the Trustee/THL Partners Litigation was tendered to Arch for coverage under the Arch Policy by letter dated August 16, 2007.

100.    The complaint in *Kirschner v. Grant Thornton LLP, et al.*, No. 2007L008818 (Cook County, Ill.) (the "Grant Thornton Litigation"), was filed in Illinois state court on August 21, 2007, and was removed to federal court on or about September 19, 2007 as Case No. 07-cv-05306 (N.D. Ill.).

101.    The Grant Thornton Litigation was brought by the Trustee. The individual defendants named in the complaint include Bennett, Maggio, Trosten, and Grant. The Trustee generally alleges that these defendants engaged in a scheme to hide Refco's true financial condition, which included efforts to hide the RGHI Receivable.

102.    The complaint in the Grant Thornton Litigation was tendered to Arch for coverage under the Arch Policy by letter dated September 20, 2007.

103.    The complaint in *Kirschner v. Agoglia, et al.*, Adv. Pro. No. 07-3060 (Bankr. S.D.N.Y.) (the "Agoglia Litigation"), was filed on or about October 15, 2007.

104.    The Agoglia Litigation was brought by the Trustee. The individual defendants named in the complaint are Agoglia, Bennett, Cox, Dittmer, Dhillon, Grady, Grant, Lipoff, Maggio, McCarthy, Murphy, Mutterer, Sexton, and Trosten. The Trustee alleges that Bennett and others "orchestrated a massive financial fraud designed to inflate Refco's financial position artificially until such time as it could be sold", Compl. ¶ 59, a fraud that included the hiding of

29

the RGHI Receivable. The Trustee seeks to recover transfers made to defendants under avoidance provisions of the Bankruptcy Code and to recover the value of the transfers under a theory of unjust enrichment.

105.    The complaint in the Agoglia Litigation was tendered to Arch for coverage under the Arch Policy by letters dated November 8 and November 21, 2007.

106.    The complaint in *Kirschner v. Thomas Hackl, et al.*, No. 07-9238 (S.D.N.Y.) (the "Hackl Litigation"), was filed on or about October 15, 2007.

107.    The Hackl Litigation was brought by the Trustee. The only individual defendant named in the complaint is Hackl. The Trustee alleges that Bennett, Hackl and others engaged in a scheme to hide the true financial condition of Refco, including efforts to hide the RGHI Receivable, and seeks recovery from Hackl under counts alleging, *inter alia*, breach of fiduciary duty, civil conspiracy, aiding and abetting fraud, and unjust enrichment.

108.    The complaint in *Kirschner v. Bennett, et al.*, Case No. 602869 (New York County, New York) (the "Trustee/Bennett Litigation"), was filed in the Supreme Court of New York on or about August 27, 2007, and was removed to federal court on or about September 17, 2007 as Case No. 07-08165 (S.D.N.Y.).

109.    The plaintiff in the Trustee/Bennett Litigation identifies himself as the trustee of the Refco Private Actions Trust and assignee of all claims related to Refco belonging to, among others, certain former Refco customers who maintained accounts at, and entrusted funds to, RCM. The individual defendants named in the complaint are Bennett, Maggio, Trosten and Grant. The complaint alleges, *inter alia*, that these defendants engaged in a scheme to hide Refco's true financial condition, including engaging in steps to hide the RGHI Receivable. This

conduct allegedly induced RCM customers to entrust assets with RCM, which allegedly were later converted for Refco's use.

110.    The Trustee/THL Partners Litigation, the Grant Thornton Litigation, the Trustee/Bennett Litigation, the Agoglia Litigation and the Hackl Litigation are collectively referred to herein as the "Trustee Litigation."

111.    Upon information and belief, various governmental and/or regulatory investigations of or proceedings involving one or more of the defendants (the "Regulatory Matters") are ongoing, and one or more of the defendants has sought or may seek coverage for such matters.

112.    The proceedings discussed above, including the Criminal Proceedings, the Securities Litigation, the Derivative Litigation, the Bawag Action, the THL Funds Action, the Unovalores Action, the American Financial Action, the RCM Brokerage Customer Securities Litigation, the Trustee Litigation, and the Regulatory Matters, collectively are referenced herein as the "Underlying Matters."

<u>COUNT I</u>

<u>DECLARATORY JUDGMENT THAT THE AWAC PRIOR KNOWLEDGE
EXCLUSION BARS COVERAGE FOR THE UNDERLYING MATTERS</u>

113.    Arch incorporates by reference each of the allegations of paragraphs 1 through 112 above.

114.    As of August 11, 2005, Bennett, Trosten and Maggio possessed knowledge of facts and circumstances that a reasonable person would suppose might afford valid grounds for a claim or that would indicate the probability of any such claim.

31

115.    The Underlying Matters consist of Claims alleging, arising out of, based upon, in consequence of, or attributable to such facts and circumstances.

116.    Arch seeks a declaration that based upon the AWAC Prior Knowledge Exclusion, the Arch Policy does not provide coverage for any loss arising out of the Underlying Matters.

## COUNT II

### DECLARATORY JUDGMENT THAT THE
### ARCH PRIOR KNOWLEDGE OR INFORMATION EXCLUSION
### BARS COVERAGE FOR THE UNDERLYING MATTERS

117.    Arch incorporates by reference each of the allegations of paragraphs 1 through 116 above.

118.    As of August 11, 2005, Bennett, Trosten and Maggio possessed knowledge or information concerning acts, errors, omissions, facts, matters or circumstances that might give rise to a Claim under the Arch Policy.

119.    The Underlying Matters consist of Claims arising out of, based upon, or attributable to such acts, errors, omissions, facts, matters or circumstances.

120.    Arch seeks a declaration that, based upon the Arch Prior Knowledge or Information Exclusion, the Arch Policy does not provide coverage for any loss arising out of the Underlying Matters.

### OTHER COVERAGE DEFENSES

121.    Other Arch Policy terms and conditions may ultimately be implicated.  Nothing in this Complaint should be construed as a waiver by Arch of any other coverage defenses under the Arch Policy or underlying policies with respect to any claim or potential claim and Arch reserves the right to raise all other terms and conditions of the Arch Policy and underlying policies as defenses to coverage as appropriate.

32

WHEREFORE, Arch requests that the Court enter a declaration and judgment in its

favor:

A.    Declaring that, for the reasons set forth in Count I, the Arch Policy does not provide coverage to any Defendant for any Loss incurred in connection with the Underlying Matters;

B.    Declaring that, for the reasons set forth in Count II, the Arch Policy does not provide coverage to any Defendant for any Loss incurred in connection with the Underlying Matters;

C.    Awarding Arch such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

D.    Awarding Arch its fees and costs incurred in prosecuting this action.

Dated: February 21, 2008           Respectfully submitted,

VEDDER PRICE P.C.

By: _____
      John H. Eickemeyer
      Daniel C. Green

1633 Broadway
47th Floor
New York, New York 10019
(212) 407-7700

Of Counsel:

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Attorneys for Plaintiff*
*Arch Insurance Company*

33

**CERTIFICATE OF SERVICE**

I, Kay Arentsen, declare:

I am a resident of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 235 Montgomery Street, 17th Floor, San Francisco, California 94104. On June 4, 2008, I served a copy of the within document(s):

**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28**
**U.S.C. § 1452**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

See Attached Service List

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2008, at San Francisco, California.

_____
Kay Arentsen

1

2
    Claire P. Gutekunst
    PROSKAUER ROSE LLP
    1585 Broadway

3
    New York, NY  10036-8299
    Telephone:    (212) 969-3421

4
    Facsimile:    (212) 969-2900

5
    *Attorneys for Defendant Richard N.*
    *Outridge*

6

William Fleming
GAGE SPENCER & FLEMING, LLP
410 Park Avenue – 9th Floor
New York, NY  10022
Telephone:    (212) 768-4900
Facsimile:    (212) 768-3629

*Attorneys for Defendants John D. Agoglia and Peter McCarthy*

7
    Greg A. Danilow
    Michael F. Walsh

8
    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue

9
    New York, NY  10153-0119
    Telephone:    (212) 310-8000

10
    Facsimile:    (212) 310-8007

11

12
    *Attorneys for Defendants Leo R.*
    *Breitman, Nathan Gantcher, David V.*
    *Harkins, Scott L. Jaeckel, Thomas H.*

13
    *Lee, Ronald L. O'Kelley, and Scott A.*
    *Schoen*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28