John H. Eickemeyer (JE-8302)
Daniel C. Green (DG-0059)
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019

Daniel J. Standish (*pro hac vice*)
Marc E. Rindner (*pro hac vice*)
Cara Tseng Duffield (*pro hac vice*)
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006

*Attorneys for Plaintiff Arch Insurance Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **ARCH INSURANCE COMPANY,** | ) | **No. 08-CIV-5252 (GEL)** |
| | ) | **ECF Case** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHN D. AGOGLIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF ARCH INSURANCE COMPANY'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.      THE D&OS HAVE FAILED TO RAISE A GENUINE ISSUE OF MATERIAL
        FACT THAT THE ARCH PRIOR KNOWLEDGE EXCLUSION IS
        SEVERABLE ........................................................................................................... 2

        A.     The Unambiguous Policy Language Establishes that the Full Severability
               Endorsement Does Not Apply to the Arch Prior Knowledge Exclusion............... 2

        B.     The Sylwestrzak Declaration Does Not Create Any Fact Issues .......................... 4

        C.     The D&Os Have Failed to Demonstrate the Need for Further Discovery............ 6

II.     EACH OF THE UNDERLYING MATTERS ARISES OUT OF THE FACTS
        AND CIRCUMSTANCES OF WHICH BENNETT HAD KNOWLEDGE
        PRIOR TO AUGUST 11, 2005 ................................................................................ 7

III.    THE BENNETT JUDGMENT CONCLUSIVELY ESTABLISHES THAT AS
        OF AUGUST 11, 2005 BENNETT POSSESSED KNOWLEDGE OF FACTS
        AND CIRCUMSTANCES GIVING RISE TO THE UNDERLYING MATTERS ........ 8

CONCLUSION ................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

*Axis Reinsurance Co. v. Bennett*, 07 Civ. 7924, 2008 WL. 2485388
  (S.D.N.Y. Jun. 19, 2008) ...................................................................................2, 4, 6

*Brady v. Lynes*, No. 05 Civ. 6540, 2008 WL 2276518
  (S.D.N.Y. Jun. 2, 2008) .........................................................................................8

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919
  (2d Cir. 1985)..........................................................................................................6

*Canfield v. Elmer E. Harris & Co.*, 252 N.Y. 502, 170 N.E. 121 (N.Y. 1930)................10

*Cutter & Buck, Inc. v. Genesis Insurance Co.*, 306 F. Supp. 2d 988
  (W.D. Wash. 2004) .................................................................................................3

*DeTrano v. DeTrano*, 266 B.R. 282 (E.D.N.Y. 2001).......................................................10

*McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007) ..............................................................10

*MDL Capital Mngt., Inc. v. Federal Insurance Co.*, No. 05cv1396,
  2008 WL. 2944890 (W.D. Pa. Jul. 25, 2008) ..............................................9

*Mishkin v. Peat Marwick*, No. 86 Civ. 4301 (KMW), 1988 WL. 391648
  (S.D.N.Y. Nov. 7, 1988) .......................................................................................10

*National Union Fire Insurance Co. v. Stroh Companies, Inc.*, 265 F.3d 97
  (2d Cir. 2001)..........................................................................................................6

*Official Committee of Unsecured Creditors v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003)....................................................................................8

*R/S Associate v. N.Y. Job Development Authority*, 98 N.Y.2d 29, 771 N.E.2d 240
  (N.Y. 2002) .............................................................................................................4

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
  867 F. Supp. 262 (S.D.N.Y. 1994)..........................................................................6

*Slayko v. Security Mutual Insurance Co.*, 98 N.Y.2d 289, 774 N.E.2d 208 (N.Y.
  2002) .......................................................................................................................4

ii

**<u>INTRODUCTION</u>**

In the wake of Bennett's criminal conviction and sentencing, the D&Os' ability to contest the application of the Arch Prior Knowledge Exclusion has contracted sharply.  In their opposition brief, the D&Os concede that, as of August 11, 2005, Bennett had knowledge of facts or circumstances that might give rise to a Claim.[1]  The D&Os also do not dispute that each of the Underlying Matters centrally alleges and therefore arises out of the RGHI Receivable Scheme that Bennett orchestrated.

The D&Os instead focus their efforts on arguing that the Arch Prior Knowledge Exclusion is severable, but those arguments are unavailing.  The language of the Primary and Arch Policies makes clear that the Full Severability Endorsement in the Primary Policy was not intended to apply to the Arch Prior Knowledge Exclusion.  Because the D&Os have failed to demonstrate any textual ambiguity, their attempts to introduce extrinsic evidence and requests for additional discovery should be denied.

For the reasons set forth below, Arch is entitled to summary judgment on Count II of its first amended complaint seeking a declaration that the Arch Prior Knowledge Exclusion bars coverage for the Underlying Matters.[2]

---

[1]    Defendants Klejna, Murphy, Sexton, Sherer, Outridge, Silverman, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley, Schoen, Agoglia and McCarthy filed an opposition to Arch's motion for summary judgment which Grant has joined.  Defendants Dhillon, Lipoff and Mutterer have not filed any opposition to Arch's motion. Pursuant to Local Rule 7.1(a), their failure to file a memoranda of law opposing summary judgment constitutes sufficient cause to grant Arch's motion as to these defendants.

[2]    Arch also moved for summary judgment on Count I of its first amended complaint, which seeks a declaration that the AWAC Prior Knowledge Exclusion independently bars coverage for the Underlying Matters. The D&Os did not address the AWAC Prior Knowledge Exclusion in their opposition brief in this action and instead incorporated by reference the arguments made in their opposition brief in the case *Murphy v. Allied World Assurance Co. (U.S.), Inc.*, No. 08-4196 (GEL) (S.D.N.Y.) (the "AWAC Action").  Arch accordingly adopts and incorporates the arguments made by AWAC regarding the AWAC Prior Knowledge Exclusion in its reply brief on summary judgment filed this day in the AWAC Action.

1

I.      **THE D&OS HAVE FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT THAT THE ARCH PRIOR KNOWLEDGE EXCLUSION IS SEVERABLE**

   A.      **The Unambiguous Policy Language Establishes that the Full Severability Endorsement Does Not Apply to the Arch Prior Knowledge Exclusion.**

   The D&Os fail to offer any reasonable interpretation of the Arch Policy language to support their assertion that the Full Severability Endorsement applies to the Arch Prior Knowledge Exclusion.  Faced with this Court's holding regarding the Full Severability Endorsement in *Axis Reinsurance Company v. Bennett*, the D&Os present a "new" argument based on the amendment of Condition M in the Primary Policy form by the Full Severability Endorsement.  The language of each provision is quoted below:

| Condition M | Full Severability Endorsement |
|---|---|
| The Insureds represent that the particulars and statements contained in the Application are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any Insured will be imputed to any other Insured except for material facts or information known to the person or persons who signed the Application.  If any of the particulars or statements in the Application is untrue, this Policy will be void with respect to any Insured who knew of such untruth or to whom such knowledge is imputed. | The Insureds represent that the particulars and statements contained in the Application are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any Insured will be imputed to any other Insured.  If any of the particulars or statements in the Application is untrue, this Policy will be void with respect to any Insured who knew of such untruth. |

Focusing on the third sentence of Condition M and its amendment in the Full Severability Endorsement, the D&Os contend that, in light of the amendment, "one must conclude either that (i) the provision was intended by the parties to broaden severability beyond the representations in the application or (ii) the scope of the intended severability is ambiguous."  D&O Opp'n at 8.

   The D&Os' "new" argument suffers from the same flaw the Court previously identified in *Axis*:  it focuses on a single sentence in the Full Severability Endorsement while ignoring the rest of the provision.  When read as a whole, both Condition M and the Full Severability

2

Endorsement clearly speak only to severability with respect to the insurer's right to rescind (*i.e.*, void the policy) based on misrepresentations contained in the Application. It is inconceivable that the parties would have left the first and second sentences of Condition M entirely unchanged, and the last sentence materially unchanged, if it were in fact their intention to provide severability outside the rescission context.

The existence of a separate severability provision in the Primary Policy specifically addressing exclusions further undercuts the D&Os' argument that the Full Severability Provision applies beyond the rescission context to exclusions. The Primary Policy form contains a partial severability provision in its "Exclusions" section. Primary Policy (IJX 26) at 5. If the D&Os were correct, and the Full Severability Endorsement were intended to apply to severability with respect to exclusions as well as to severability in the rescission context, the severability-of-exclusions provision would be rendered superfluous and even contradictory.

While the D&Os' arguments fail as a purely textual matter, it bears noting that the premise of their argument is flawed as well. The D&Os suggest that the Full Severability Endorsement only could provide a benefit to the Insureds over the original Condition M if the amendment is construed to "broaden severability beyond the representations in the application." D&O Opp'n at 8. This is incorrect: even when properly viewed as limited to the rescission context, the Full Severability Endorsement did provide a benefit to the insureds over the language in the policy form. Bennett signed the Application. If U.S. Specialty had attempted to rescind its policy, under the unamended Condition M, U.S. Specialty would have been permitted to rescind the policy as to all Insureds based on Bennett's knowledge alone. Under the Full Severability Endorsement, however, U.S. Specialty would need to prove separately the knowledge of each Insured in order to rescind the policy as to that individual. *See, e.g., Cutter &*

*Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1011-1013 (W.D. Wash. 2004) (addressing whether insurer was entitled to rescind policy as to all insureds based on imputation of knowledge held by application signor), *aff'd* 144 Fed. Appx. 600 (9th Cir. 2005).

As a final "Hail Mary," the D&Os assert that coverage under the Arch Policy is illusory if the Arch Prior Knowledge Exclusion is not fully severable. But the Prior Knowledge Exclusion does not render coverage illusory simply because it bars coverage for the Underlying Matters under the present circumstances. Notably, the Arch Prior Knowledge Exclusion only bars coverage where any Insured had requisite knowledge **before** the Arch Policy incepted on August 11, 2005. Had the relevant conduct occurred **after** the Arch Policy incepted, the Arch Prior Knowledge Exclusion would not bar coverage for resulting Claims. *See, e.g., Slayko v. Security Mut. Ins. Co.*, 98 N.Y.2d 289, 294, 774 N.E.2d 208, 211 (N.Y. 2002) (coverage not illusory where exclusion leaves coverage for certain types of liability intact).

As this Court previously recognized in *Axis*, the Full Severability Endorsement governs severability only in those situations in which an insurer attempts to void its policy based on misrepresentations in the Application. *See Axis*, 2008 WL 2485388, at *10. Here, Arch has not sought to rescind the Arch Policy; rather, it is attempting to enforce the terms of the policy by denying coverage for particular matters based on an exclusion. The Full Severability Endorsement simply is inapplicable to the Arch Prior Knowledge Exclusion.

**B.      The Sylwestrzak Declaration Does Not Create Any Fact Issues.**

The Sylwestrzak Declaration does not aid the D&Os' attempt to avoid summary judgment. For the reasons set forth above, the D&Os have not proffered a reasonable interpretation of the policy language and thus cannot demonstrate the existence of an ambiguity. Accordingly, extrinsic evidence is not admissible to interpret the contract. *See R/S Assoc. v. N.Y. Job Development Auth.*, 98 N.Y.2d 29, 33, 771 N.E.2d 240, 242 (N.Y. 2002).

4

Even if the Court were inclined to consider the Sylwestrzak Declaration, it would find that Sylwestrzak's testimony does nothing to advance the D&Os' position. The declaration simply makes certain observations that are evident from the plain language of the Primary and Arch Policies. For instance, Sylwestrzak states that "Endorsement No. 10 deleted the language in the third sentence of Condition (M) relating to the application." Sylwestrzak Decl. ¶ 6. Arch does not dispute the wording in the Full Severability Endorsement's third sentence. Rather, it disputes that that sentence can be read in isolation from the rest of the endorsement. Similarly, Sylwestrzak states that "it is my understanding that Arch follows form to the 'full severability' provision of the U.S. Specialty Policy." *Id*. ¶ 10. Again, Arch does not dispute that the Arch Policy follows form to the Full Severability Endorsement. It does dispute, however, that the endorsement has any relevance to the Arch Prior Knowledge Exclusion.

Sylwestrzak's testimony is most noteworthy for what it does ***not*** say. Sylwestrzak does not dispute that the parties intended to include the Arch Prior Knowledge Exclusion in the Arch Policy.[3] Nor does Sylwestrzak attest that Marsh was unaware of the specific language that would be used in the Arch Prior Knowledge Exclusion at the time that it agreed to bind coverage. Indeed, the D&Os admit in their Rule 56.1 statement that the "inclusion of the Arch Prior Knowledge Exclusion in the Arch Policy is consistent with the binder Arch issued to Refco." D&O Rule 56.1 Statement ¶ 7. Because there is no dispute about the terms of the Arch Policy, the interpretation of those terms is a straightforward issue of contract interpretation that the Court can determine as a matter of law.[4]

---

[3] Any insinuation that it was improper for Arch to issue its policy some months after lawsuits had been filed is a red herring. Arch's policy was the fourth excess policy in the Refco D&O tower, and its issuance was specifically conditioned on the prior issuance of the underlying policies. *See* Ex. J to Eickemeyer Decl. Arch timely issued its binder, and the parties do not dispute that the binder included the Arch Prior Knowledge Exclusion.

[4] The D&Os cite the Sylwestrzak Declaration as support for the proposition that the Arch Prior Knowledge Exclusion was a substitute for Bennett's answering question 12(b) on the Application. The D&Os argue that if

**C.     The D&Os Have Failed to Demonstrate the Need for Further Discovery.**

The D&Os have not met the requirements for a Rule 56(f) continuance.  *See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985), *accord Natl Union Fire Ins. Co. v. Stroh Co.*, 265 F.3d 97, 117 (2d Cir. 2001) (Rule 56(f) affidavit must set forth "the nature of the uncompleted discovery" and "how those facts are reasonably expected to create a genuine issue of material fact").  The D&Os have not explained how the discovery they seek might reasonably demonstrate the existence of genuine issues of material fact.  In their July 29, 2008 document requests, the D&Os seek Arch's underwriting and claims file materials.  *See* Ex. A to Kline Decl.  As an initial matter, the D&Os are not entitled to discovery because they have failed to demonstrate any ambiguity in the policy language at issue.  *See, e.g., Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 867 F. Supp. 262, 267-68 (S.D.N.Y. 1994).  Moreover, per the Court's instruction at the July 1, 2008 status conference, Arch produced a copy of its underwriting file to the D&Os when it filed its summary judgment motion.  The D&Os have failed to cite any documents in Arch's underwriting file that would even suggest the existence of a question of material fact.  The D&Os also have had many months to obtain documents and testimony from Marsh.  The Sylwestrzak Declaration thus represents the D&Os' "best shot," and there is no need for further discovery into the negotiation and procurement of

---

Bennett had answered question 12(b), the Full Severability Endorsement would apply, and it would be inequitable for Arch to be in a better position simply because it was permitted to include the Prior Knowledge Exclusion instead.  D&O Opp'n at 16-17.  There are several flaws with this line of argument, which is based on impermissible extrinsic evidence.  First, the D&Os do not dispute that Marsh was aware that Arch would be adding the Arch Prior Knowledge Exclusion to its policy.  Second, Arch could have obtained a stand-alone warranty statement, a possibility Sylwestrzak does not discuss.  As the Court recognized in *Axis*, such a warranty statement would be outside the scope of the Full Severability Endorsement.  *Axis*, 2008 WL 2485388, at *10.  Finally, the Full Severability Endorsement would not apply even if Bennett had answered question 12(b) and Arch sought to deny coverage on this basis.  Question 12(b) is followed by language stating that "Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b)."  Ex. B to Sylwestrzak Decl.  This language concerns the insurer's right to deny coverage for specific Claims, not the Insurer's right to rescind the entire policy.  As noted above, the Full Severability Endorsement is limited to instances in which the insurer rescinds its policy.

6

the policies.  Nor do the D&Os even attempt to explain how Arch's claims file materials are relevant to this coverage dispute.  Accordingly, their request to delay summary judgment pending additional discovery should be denied.

## II.     EACH OF THE UNDERLYING MATTERS ARISES OUT OF THE FACTS AND CIRCUMSTANCES OF WHICH BENNETT HAD KNOWLEDGE PRIOR TO AUGUST 11, 2005

In their opposition, the D&Os do not attempt to rebut Arch's analysis of the operative complaints in the Underlying Matters showing that the RGHI Receivable Scheme is central to the allegations in each of those actions.  Rather, they apparently concede that each of the Underlying Matters, as a whole, arises out of the RGHI Receivable Scheme.  Indeed, as Arch noted in its opening brief, certain of the D&Os would be judicially estopped from taking a contrary position.  Arch Mem., Section II.B.

Instead, the D&Os contend that Arch has not carried its summary judgment burden because each of the Underlying Matters contains numerous "claims" and Arch must demonstrate the "'arising out of' link between each of the claims asserted in the Underlying Matters and Bennett's knowledge."  D&O Opp'n at 19.  There is no foundation for this argument.  The Arch Prior Knowledge Exclusion provides that

> If any Insured as of August 11, 2005 has any knowledge of or information concerning any act, error, omission, fact, matter or circumstance that might give rise to *a Claim* under this Policy, the [] Insurer shall not be liable to make any payment under this Policy as a result of *a Claim* arising out of, based upon or attributable to any such act, error, omission, fact, matter or circumstance.

Arch Policy (IJX 30) End. 4 (emphasis added).  The Arch Prior Knowledge Exclusion uses the capitalized term "Claim," defined to mean "any civil proceeding commenced by service of a complaint or similar pleading" or "a criminal proceeding commenced by return of an indictment."  Primary Policy (IJX 26), Definitions (B)(2), (B)(4).  The exclusion does not use the

7

undefined term "claim," nor do the D&Os even opine on what that term means. Indeed, the

D&Os themselves already have taken the position that each of the Underlying Matters

constitutes a single Claim, alleging in their first amended complaint in the AWAC Action that

"[e]ach of the Underlying Actions is a 'Claim' against Plaintiffs . . . ." First Am. Compl. ¶ 62,

*Murphy et al. v. Allied World Assurance Co. (U.S.), Inc.*, No. 08-4196 (GEL) (S.D.N.Y. Apr. 24,

2008). These allegations constitute binding judicial admissions. *See Official Comm. of*

*Unsecured Creditors v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003); *Brady v.*

*Lynes*, No. 05 Civ. 6540, 2008 WL 2276518, *8 n.12 (S.D.N.Y. Jun. 2, 2008). It is thus entirely

appropriate for Arch and this Court to analyze the operative complaints in each of the

Underlying Matters to determine whether each lawsuit, as a whole, arises out of the acts, errors,

omissions, facts, matters or circumstances of which Bennett had prior knowledge.[5]

## III. THE BENNETT JUDGMENT CONCLUSIVELY ESTABLISHES THAT AS OF AUGUST 11, 2005 BENNETT POSSESSED KNOWLEDGE OF FACTS AND CIRCUMSTANCES GIVING RISE TO THE UNDERLYING MATTERS

Both the Bennett stipulated judgment and the judgment against Bennett in the Criminal

Action demonstrate that, as of August 11, 2005, Bennett had knowledge of facts and

circumstances that might give rise to a Claim. *See* Arch Mem., Sections I.A, I.B. The D&Os do

not dispute that the Criminal Action judgment establishes Bennett's prior knowledge of the

---

[5]     Even if the D&Os were correct that the Arch Prior Knowledge Exclusion requires some analysis of "claims" (and they are not), Arch still would be entitled to partial summary judgment. As set forth in Arch's opening brief, *see* Arch Mem., Section II.C., the VR Global Partners Action, the Capital Management Action, the Sphinx Action, the T.H. Lee Trustee Action, the Grant Thornton Trustee Action and the Agoglia Action all were filed after the Arch Policy Period expired on August 11, 2006. Given the D&Os' apparent contention that the "claims" in these suits have no connection to Bennett's prior knowledge, the actions cannot be deemed "Claims first made" during the Policy Period. Arch therefore is entitled to summary judgment as a matter of law because these actions do not fall within the policy's insuring agreement.

RGHI Receivable Scheme. They do, however, dispute that the Bennett stipulated judgment has any effect on Arch's claims against them.[6]

The D&Os contend that because only Bennett and Arch were parties to the Bennett stipulated judgment, the judgment "has no impact on Arch's claims against other defendants." D&O Opp'n at 22. But Arch is not contending that the Bennett stipulated judgment in and of itself constitutes a judgment against the other D&Os. Rather, the Bennett stipulated judgment is a judgment against Bennett, and competent summary judgment evidence, that as of August 11, 2005, Bennett had knowledge of facts and circumstances giving rise to each of the Underlying Matters. The terms of the Arch Policy then determine the impact of Bennett's admitted knowledge. Because the Arch Prior Knowledge Exclusion is not severable, Bennett's knowledge suffices to bar coverage for the Underlying Matters for all the D&Os. Similarly, the D&Os' arguments that the Bennett stipulated judgment has no preclusive effect as to them are irrelevant. The issue is not collateral estoppel, but rather severability. *See, e.g., MDL Capital Mngt., Inc. v. Federal Ins. Co.*, No. 05cv1396, 2008 WL 2944890, at *16 (W.D. Pa. Jul. 25, 2008) (determining application of prior knowledge exclusion and rejecting as irrelevant arguments that judgment in criminal action against one insured had no collateral estoppel effect as to other insureds due to "lack of privity and inability to present defenses"; exclusion at issue "inquired about the knowledge of '***any***' director, officer, or employee and [ ] provides that any such knowledge eliminates coverage for 'any claim arising from such facts or circumstances'").

---

[6]     By stipulating that Arch is entitled to a declaration that the Arch Prior Knowledge Exclusion bars coverage for the Underlying Matters, Bennett agreed that he possessed knowledge of facts and circumstances giving rise to each of the Underlying Matters, whether those Underlying Matters arise out of the RGHI Receivable Scheme or other facts or circumstances. This presumably is why the D&Os address the effect of the Bennett stipulated judgment despite their concession regarding the Criminal Action judgment. Should the Court find that each of the Underlying Matters arises out of the RGHI Receivable Scheme, it need not address the effect of the Bennett stipulated judgment.

The D&Os also appear to argue that the stipulated judgment would have no force and effect even as to Bennett himself. The D&Os contend that "Bennett stipulated that judgment should be entered against him but he did not stipulate to any of the facts underlying the judgment." D&O Opp'n at 23. The D&Os imply that Bennett has made no binding admission that he in fact had knowledge of facts and circumstances giving rise to the Underlying Matters. This is clearly incorrect. *See Canfield v. Elmer E. Harris & Co.*, 252 N.Y. 502, 505, 170 N.E. 121, 122 (N.Y. 1930) (stipulated judgment is a "conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim").[7]

## CONCLUSION

For the foregoing reasons, Arch respectfully requests that the Court grant summary judgment on Count II of Arch's first amended complaint.

Date: August 15, 2008                                  Respectfully submitted,

                                                        By:  s/ John H. Eickemeyer

    Daniel J. Standish (*pro hac vice*)              John H. Eickemeyer  (JE-8302)
    Marc E. Rindner (*pro hac vice*)                 Daniel C. Green (DG-0059)
    Cara Tseng Duffield (*pro hac vice*)             VEDDER PRICE P.C.
    WILEY REIN LLP                                   1633 Broadway, 47th Floor
    1776 K Street, N.W.                              New York, NY 10019
    Washington, D.C. 20006                           (212) 407-7700
    (202) 719-7000

                                                        *Counsel for Plaintiff Arch Insurance Company*

---

[7]    New York law governs the effect of a judgment rendered by a New York state court. *See McKithen v. Brown*, 481 F.3d 89, 103-04 (2d Cir. 2007). The D&Os cite *DeTrano v. DeTrano*, 266 B.R. 282 (E.D.N.Y. 2001), and *Mishkin v. Peat Marwick*, No. 86 Civ. 4301 (KMW), 1988 WL 391648 (S.D.N.Y. Nov. 7, 1988), for the proposition that "courts decline to infer a stipulation of underlying facts from a consent judgment." D&O Opp'n at 24. Neither case is apposite. In *DeTrano* the court held that the defendant's stipulation of settlement to pay a certain sum of money to settle a fraud action did not constitute conclusive evidence that the defendant had committed fraud. *DeTrano*, 266 B.R. at 284-85, 291-92. Here, Bennett has stipulated to the entry of a declaratory judgment against him. In *Mishkin*, the court considered whether a consent judgment between the SEC and certain defendants had collateral estoppel effect in a subsequent proceeding. The initial judgment was rendered in a federal court, not a New York court. Moreover, *Mishkin* did not address the question whether a stipulated judgment constitutes a binding admission of facts necessary to the judgment as to the parties to the stipulation.

10

## CERTIFICATE OF SERVICE

I, Daniel C. Green, hereby declare, pursuant to 28 U.S.C. 1746, under penalty of perjury, as follows:

1.      On August 15, 2008, I caused a copy of the within Plaintiff Arch Insurance Company's Reply Brief in Support of its Motion for Summary Judgment to be served upon all parties who have made appearances and are registered to receive e-notices in the above-captioned action by electronically filing same, thereby ensuring that counsel to each such party received same; and

2.      On August 15, 2008, I caused copies of the within Plaintiff Arch Insurance Company's Reply Brief in Support of its Motion for Summary Judgment to be served upon all parties who have not yet registered to receive e-notices in the above-captioned action by depositing true copies of same into the custody of the United States Postal Service, addressed to their counsel as follows:

| Party | Counsel |
|-------|---------|
| Agoglia, John D.<br>McCarthy, Peter J. | William Fleming, Esq.<br>Gage Spencer & Fleming, LLP<br>410 Park Avenue<br>New York, NY 10022<br>(212) 768-4900<br>wfleming@gagespencer.com |
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>(973) 596-4825<br>jcostello@gibbonslaw.com |
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand,<br>   Iason & Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

Dated:  August 15, 2008

s/ Daniel C. Green
Daniel C. Green